**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| NICOLE LAWTONE-BOWLES<br>　　　　　Plaintiff(s),<br><br>vs.<br><br>PURDUE UNIVERSITY GLOBAL,<br>PURDUE GLOBAL LAW SCHOOL<br>(FORMERLY CONCORD LAW<br>SCHOOL)<br>　　　　　Defendant(s). | Case No.:　4:26-cv-28<br><br>**NOTICE OF MOTION AND MOTION**<br>**FOR TEMPORARY RESTRAINING**<br>**ORDER AND PRELIMINARY**<br>**INJUNCTION EXHIBITS**<br><br>**DATE: April 6, 2026**<br>**TIME: 09:00AM**<br>**DEPT:** |

# EXHIBITS



## Purdue University Global Grade Report

Date: 04/04/2026

| Student Information | Academic Status | | School Information |
| --- | --- | --- | --- |
| **Student ID:** XXX | **Status:** | Active | www.purdueglobal.edu |
| **Name:** Nicole Lawtone-Bowles | **Program:** | Juris Doctor | **Main Campus:** |
| **Address:** 56 Center Street Highland Falls, NY, 10928 | **Cumulative GPA:** | 3.02 | Purdue University Global 2550 Northwestern Ave., Ste. 1100 West Lafayette, IN 47906 |
| | **Cumulative Credits:** | 62.00 | |
| | **Enrollment Date:** | 07/22/2025 | **Office of the Registrar:** |
| | **Start Date:** | 09/03/2025 | Purdue University Global |
| | **Graduation Date:** | 08/25/2026 | 2550 Northwestern Ave., Ste. 1100 |
| | **Last Day of Attendance:** | 04/01/2026 | West Lafayette, IN 47906 Phone: 866-522-7747 Email: Registrar@PurdueGlobal.edu Fax: 800-588-4127 (Toll Free) V: 866-522-7747 |

## 2605L Summer 2026 Law Term

| COURSE CODE | COURSE SECTION | COURSE NAME | COURSE CREDIT | COURSE START DATE | COURSE END DATE | GRADE | GRADE POINTS | CREDITS EARNED | QUALITY POINTS |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| CL781 | 01 | Capstone II | 2 | 05/06/2026 | 08/25/2026 | Scheduled | -- | -- | -- |
| CL760 | 02 | Community Property | 2 | 05/06/2026 | 08/25/2026 | Scheduled | -- | -- | -- |
| CL751 | 01 | Estates, Wills, and Trusts II | 2 | 05/06/2026 | 08/25/2026 | Scheduled | -- | -- | -- |
| CL711 | 01 | Evidence II | 3 | 05/06/2026 | 08/25/2026 | Scheduled | -- | -- | -- |
| CL761 | 01 | Family Law Practicum | 2 | 05/06/2026 | 08/25/2026 | Scheduled | -- | -- | -- |
| CL740 | 01 | Modern Law Practice | 2 | 05/06/2026 | 08/25/2026 | Scheduled | -- | -- | -- |

## 2601L Spring 2026 Law Term

| COURSE CODE | COURSE SECTION | COURSE NAME | COURSE CREDIT | COURSE START DATE | COURSE END DATE | GRADE | GRADE POINTS | CREDITS EARNED | QUALITY POINTS |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| CL780 | 01 | Capstone I | 2 | 01/07/2026 | 04/28/2026 | Current | -- | -- | -- |
| | | Community Property | 2 | 01/07/2026 | 04/28/2026 | F | 0.00 | 0.00 | 0.00 |

Brian A Victor

| COURSE CODE | COURSE SECTION | COURSE NAME | COURSE CREDIT | COURSE START DATE | COURSE END DATE | GRADE | GRADE POINTS | CREDITS EARNED | QUALITY POINTS |
|---|---|---|---|---|---|---|---|---|---|
| CL651 | 01 | Constitutional Law II | 3 | 01/07/2026 | 04/28/2026 | Current | -- | -- | -- |
| CL701 | 01 | Corporations and Business Organizations II | 2 | 01/07/2026 | 04/28/2026 | Current | -- | -- | -- |
| | | Education Law | 4 | 01/07/2026 | 04/28/2026 | Current | -- | -- | -- |
| | | Federal Taxation | 4 | 01/07/2026 | 04/28/2026 | Current | -- | -- | -- |
| CL735 | 01 | Professional Responsibility | 2 | 01/07/2026 | 04/28/2026 | Current | -- | -- | -- |

Sara Diab

## 2509L Fall 2025 Law Term

| COURSE CODE | COURSE SECTION | COURSE NAME | COURSE CREDIT | COURSE START DATE | COURSE END DATE | GRADE | GRADE POINTS | CREDITS EARNED | QUALITY POINTS |
|---|---|---|---|---|---|---|---|---|---|
| CL650 | 01 | Constitutional Law I | 3 | 09/03/2025 | 12/23/2025 | A | 4.00 | 3.00 | 12.00 |
| CL700 | 01 | Corporations and Business Organizations I | 2 | 09/03/2025 | 12/23/2025 | B+ | 3.30 | 2.00 | 6.60 |
| CL631 | 02 | Criminal Law II | 3 | 09/03/2025 | 12/23/2025 | B+ | 3.30 | 3.00 | 9.90 |
| CL750 | 01 | Estates, Wills, and Trusts I | 2 | 09/03/2025 | 12/23/2025 | B | 3.00 | 2.00 | 6.00 |
| CL710 | 01 | Evidence I | 3 | 09/03/2025 | 12/23/2025 | A- | 3.70 | 3.00 | 11.10 |
| CL830 | 01 | Health Law | 4 | 09/03/2025 | 12/23/2025 | A | 4.00 | 4.00 | 16.00 |
| CL772 | 02 | Remedies | 2 | 09/03/2025 | 12/23/2025 | B- | 2.70 | 2.00 | 5.40 |

**Term Honors**
- Distinguished Scholar

## Self Paced Term

| COURSE CODE | COURSE SECTION | COURSE NAME | COURSE CREDIT | COURSE START DATE | COURSE END DATE | GRADE | GRADE POINTS | CREDITS EARNED | QUALITY POINTS |
|---|---|---|---|---|---|---|---|---|---|
| PG762 | 424 | Phi Alpha Delta | 0 | | 05/01/2027 | Scheduled | -- | -- | -- |
| PG675 | 923 | Student Bar Association | 0 | | 09/15/2026 | Scheduled | -- | -- | -- |

| Student Information | Academic Status | School Information |
|---|---|---|
| **Student ID:** ▨▨▨<br>**Name:** Nicole Lawtone-Bowles | **Status:** Transfer To Other Program | |

| Address: | 56 Center Street Highland Falls, NY, 10928 |
|---|---|

| Program: | Juris Doctor |
|---|---|
| Cumulative GPA: | 2.93 |
| Cumulative Credits: | 43.00 |
| Enrollment Date: | 03/19/2024 |
| Start Date: | 05/01/2024 |
| Graduation Date: | 12/22/2026 |
| Last Day of Attendance: | 08/23/2025 |

www.purdueglobal.edu

**Main Campus:**
Purdue University Global
2550 Northwestern Ave., Ste. 1100
West Lafayette, IN 47906

**Office of the Registrar:**
Purdue University Global
2550 Northwestern Ave., Ste. 1100
West Lafayette, IN 47906
Phone: 866-522-7747
Email: Registrar@PurdueGlobal.edu
Fax: 800-588-4127 (Toll-Free)
V: 866-522-7747

## 2505L Summer 2025 Law Term

| COURSE CODE | COURSE SECTION | COURSE NAME | COURSE CREDIT | COURSE START DATE | COURSE END DATE | GRADE | GRADE POINTS | CREDITS EARNED | QUALITY POINTS |
|---|---|---|---|---|---|---|---|---|---|
| CL729 | 01 | Advanced Legal Analysis and Writing - Litigation | 2 | 05/07/2025 | 08/26/2025 | B- | 2.70 | 2.00 | 5.40 |
| CL671 | 01 | Civil Procedure II | 3 | 05/07/2025 | 08/26/2025 | B | 3.00 | 3.00 | 9.00 |
| CL630 | 02 | Criminal Law I | 3 | 05/07/2025 | 08/26/2025 | A- | 3.70 | 3.00 | 11.10 |
| | | Criminal Procedure | 4 | 05/07/2025 | 08/26/2025 | B- | 2.70 | 4.00 | 10.80 |
| | | Real Property II | 4 | 05/07/2025 | 08/26/2025 | A- | 3.70 | 4.00 | 14.80 |

**Victoria Vidt**

**Term Honors**
- Dean's List

## 2501L Spring 2025 Law Term

| COURSE CODE | COURSE SECTION | COURSE NAME | COURSE CREDIT | COURSE START DATE | COURSE END DATE | GRADE | GRADE POINTS | CREDITS EARNED | QUALITY POINTS |
|---|---|---|---|---|---|---|---|---|---|
| CL670 | 01 | Civil Procedure I | 3 | 01/08/2025 | 04/29/2025 | B | 3.00 | 3.00 | 9.00 |
| CL730 | 01 | Electronic Legal Research | 2 | 01/08/2025 | 04/29/2025 | B | 3.00 | 2.00 | 6.00 |
| CL727 | 02 | Legal Analysis and Writing | 2 | 01/08/2025 | 04/29/2025 | B- | 2.70 | 2.00 | 5.40 |
| CL660 | 01 | Real Property I | 4 | 01/08/2025 | 04/29/2025 | B | 3.00 | 4.00 | 12.00 |

## 2408L Fall 2024 Law Term

| COURSE CODE | COURSE SECTION | COURSE NAME | COURSE CREDIT | COURSE START DATE | COURSE END DATE | GRADE | GRADE POINTS | CREDITS EARNED | QUALITY POINTS |
|---|---|---|---|---|---|---|---|---|---|
| CL611 | 02 | Contracts II | 4 | 08/28/2024 | 12/17/2024 | B- | 2.70 | 4.00 | 10.80 |
| CL601 | 02 | Introduction to Legal Analysis II | 1 | 08/28/2024 | 12/17/2024 | A | 4.00 | 1.00 | 4.00 |
| CL624 | 02 | Torts II | 3 | 08/28/2024 | 12/17/2024 | B | 3.00 | 3.00 | 9.00 |

**Term Honors**

➤ Micro-credential: Legal Analysis

## 2405L Summer 2024 Law Term

| COURSE CODE | COURSE SECTION | COURSE NAME | COURSE CREDIT | COURSE START DATE | COURSE END DATE | GRADE | GRADE POINTS | CREDITS EARNED | QUALITY POINTS |
|---|---|---|---|---|---|---|---|---|---|
| CL610 | 02 | Contracts I | 4 | 05/01/2024 | 08/20/2024 | C+ | 2.30 | 4.00 | 9.20 |
| CL600 | 04 | Introduction to Legal Analysis I | 1 | 05/01/2024 | 08/20/2024 | B- | 2.70 | 1.00 | 2.70 |
| CL623 | 02 | Torts I | 3 | 05/01/2024 | 08/20/2024 | C+ | 2.30 | 3.00 | 6.90 |

## Self Paced Term

| COURSE CODE | COURSE SECTION | COURSE NAME | COURSE CREDIT | COURSE START DATE | COURSE END DATE | GRADE | GRADE POINTS | CREDITS EARNED | QUALITY POINTS |
|---|---|---|---|---|---|---|---|---|---|
| CL550 | 2408L | Fundamentals II | 0 | | 12/23/2024 | Scheduled | -- | -- | -- |

THE FACE OF THIS DOCUMENT IS PRINTED IN BLUE INK

# EASTERN GATEWAY COMMUNITY COLLEGE

4000 SUNSET BOULEVARD • STEUBENVILLE, OHIO 43952-3512

(740) 264-5591

Program/Degree:

Business Management with Labor Studies Certificate-AAB - Graduate (12/17/2023)

Business Management with Cannabis Certificate-AAB - In Progress

Associate of Arts-AA - Graduate (05/23/2021)

Paralegal-AAB - Graduate (06/06/2020)

Graduation Honor: Cum Laude, Cum Laude, Cum Laude

Student: LawtoneBowles, Nicole

ID:

DOB: 12/04/1971

| Course | School | Term | Start | End | Status | Grade | Credit | GPACredit | Q.P. |
|---|---|---|---|---|---|---|---|---|---|
| COM999 - Communication Elect | CUNY Borough of Manhattan Community College | | | | Transfer | TC | 3.00 | | 0 |
| ENG999 - English Elective | CUNY Borough of Manhattan Community College | | | | Transfer | TC | 3.00 | | 0 |
| PSY101 - General Psychology | CUNY Borough of Manhattan Community College | | | | Transfer | TC | 3.00 | | 0 |
| SOC111 - Introduction to Social Work | CUNY Borough of Manhattan Community College | | | | Transfer | TC | 3.00 | | 0 |
| | | | | Future Summary: | | 0.00 | 12.00 | | 0.00 |
| | | | | Semester GPA: | | 0.00 | | | |
| | | | | **Cumulative Summary:** | | **0.00** | **12.00** | | **0.00** |
| COM101 - Public Speaking | Eastern Gateway Community College | 2019 SPRING SEC8 | 03/18/2019 | 05/12/2019 | Completed | A | 3.00 | 3.00 | 12 |
| PLG101 - Introduction to Paralegalism and Et | Eastern Gateway Community College | 2019 SPRING SEC8 | 03/18/2019 | 05/12/2019 | Completed | B | 3.00 | 3.00 | 9 |
| | | | | 2019 SPRING SEC8 Summary: | | 3.50 | 6.00 | 6.00 | 21.00 |
| | | | | 2019 SPRING Semester GPA: | | 3.50 | | | |
| | | | | **Cumulative Summary:** | | **3.50** | **18.00** | **18.00** | **21.00** |
| CIS101 - Personal Computer Applications | Eastern Gateway Community College | 2019 SUMMER FULL | 05/28/2019 | 07/21/2019 | Completed | A | 3.00 | 3.00 | 12 |
| PLG102 - Legal Research & Writing I | Eastern Gateway Community College | 2019 SUMMER FULL | 05/28/2019 | 07/21/2019 | Completed | A | 3.00 | 3.00 | 12 |

*William K Rupert*

William K. Rupert, Registrar

THE FACE OF THIS DOCUMENT IS PRINTED IN BLUE INK

# EASTERN GATEWAY COMMUNITY COLLEGE

4000 SUNSET BOULEVARD · STEUBENVILLE, OHIO 43952-3512

(740) 264-5591

| Course | Institution | Term | Start | End | Status | Grade | Attempted | Earned | Points |
|---|---|---|---|---|---|---|---|---|---|
| PLG105 - Litigation/Civil Procedures | Eastern Gateway Community College | 2019 SUMMER FULL | 05/28/2019 | 07/21/2019 | Completed | A | 3.00 | 3.00 | 12 |
| PLG201 - Real Property/Real Estate Law | Eastern Gateway Community College | 2019 SUMMER FULL | 05/28/2019 | 07/21/2019 | Completed | A | 3.00 | 3.00 | 12 |
| | | | 2019 SUMMER FULL Summary: | | | 4.00 | 12.00 | 12.00 | 48.00 |
| | | | 2019 SUMMER Semester GPA: | | | 4.00 | | | |
| | | | **Cumulative Summary:** | | | **3.83** | **30.00** | **30.00** | **69.00** |
| PLG103 - Legal Research & Writing II | Eastern Gateway Community College | 2019 FALL FIRST8 | 08/19/2019 | 10/13/2019 | Completed | A | 3.00 | 3.00 | 12 |
| PLG203 - Torts | Eastern Gateway Community College | 2019 FALL FIRST8 | 08/19/2019 | 10/13/2019 | Completed | A | 3.00 | 3.00 | 12 |
| PLG205 - Contracts | Eastern Gateway Community College | 2019 FALL FIRST8 | 08/19/2019 | 10/13/2019 | Completed | A | 3.00 | 3.00 | 12 |
| PLG210 - Criminal Law | Eastern Gateway Community College | 2019 FALL FIRST8 | 08/19/2019 | 10/13/2019 | Completed | B | 3.00 | 3.00 | 9 |
| PLG212 - Estate Law | Eastern Gateway Community College | 2019 FALL FIRST8 | 08/19/2019 | 10/13/2019 | Completed | A | 3.00 | 3.00 | 12 |
| PLG215 - Family Law | Eastern Gateway Community College | 2019 FALL FIRST8 | 08/19/2019 | 10/13/2019 | Completed | C | 3.00 | 3.00 | 6 |
| | | | 2019 FALL FIRST8 Summary: | | | 3.50 | 18.00 | 18.00 | 63.00 |
| | | | **Cumulative Summary:** | | | **3.67** | **48.00** | **48.00** | **132.00** |
| CSS106 - Succeeding in College | Eastern Gateway Community College | 2019 FALL SEC8 | 10/14/2019 | 12/08/2019 | Completed | A | 1.00 | 1.00 | 4 |
| MTH128 - Statistics | Eastern Gateway Community College | 2019 FALL SEC8 | 10/14/2019 | 12/08/2019 | Completed | C | 3.00 | 3.00 | 6 |
| | | | 2019 FALL SEC8 Summary: | | | 2.50 | 4.00 | | 10.00 |
| | | | 2019 FALL Semester GPA: | | | 3.32 | | | |
| | | | **Cumulative Summary:** | | | **3.55** | **52.00** | | **142.00** |
| BUS203 - Business Law I | EGCC - Online | 2020 SPRING FIRST8 | 01/13/2020 | 03/08/2020 | Completed | B | 3.00 | 3.00 | 9 |

*William K Rupert*

William K. Rupert, Registrar

THE FACE OF THIS DOCUMENT IS PRINTED IN BLUE INK

# EASTERN GATEWAY COMMUNITY COLLEGE

4000 SUNSET BOULEVARD • STEUBENVILLE, OHIO 43952-3512

(740) 264-5591

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ENG101 - English Composition I | EGCC - Online | 2020 SPRING FIRST8 | 01/13/2020 | 03/08/2020 | Completed | B | 3.00 | 3.00 | 9 |
| ENG103 - Business Communications | EGCC - Online | 2020 SPRING FIRST8 | 01/13/2020 | 03/08/2020 | Completed | A | 3.00 | 3.00 | 12 |
| MGT201 - Principles of Management | EGCC - Online | 2020 SPRING FIRST8 | 01/13/2020 | 03/08/2020 | Completed | B | 3.00 | 3.00 | 9 |
| PLG207 - Law Office Technology | EGCC - Online | 2020 SPRING FIRST8 | 01/13/2020 | 03/08/2020 | Completed | A | 3.00 | 3.00 | 12 |
| PSC101 - American Government | EGCC - Online | 2020 SPRING FIRST8 | 01/13/2020 | 03/08/2020 | Completed | A | 3.00 | 3.00 | 12 |
| SOC205 - Social Problems | EGCC - Online | 2020 SPRING FIRST8 | 01/13/2020 | 03/08/2020 | Completed | B | 3.00 | 3.00 | 9 |

|  | | | | |
|---|---|---|---|---|
| 2020 SPRING FIRST8 Summary: | 3.43 | 21.00 | 21.00 | 72.00 |
| Cumulative Summary: | 3.51 | 73.00 | 73.00 | 214.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| PLG250 - Paralegal Practicum | EGCC - Online | 2020 SPRING FULL | 01/13/2020 | 05/10/2020 | Completed | A | 2.00 | 2.00 | 8 |

|  | | | | |
|---|---|---|---|---|
| 2020 SPRING FULL Summary: | 4.00 | 2.00 | 2.00 | 8.00 |
| Cumulative Summary: | 3.52 | 75.00 | 75.00 | 222.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ACC204 - Tax Accounting | EGCC - Online | 2020 SPRING LAST8 | 03/16/2020 | 05/10/2020 | Completed | A | 4.00 | 4.00 | 16 |
| ENG102 - English Composition II | EGCC - Online | 2020 SPRING LAST8 | 03/16/2020 | 05/10/2020 | Completed | A | 3.00 | 3.00 | 12 |

|  | | | | |
|---|---|---|---|---|
| 2020 SPRING LAST8 Summary: | 4.00 | 7.00 | 7.00 | 28.00 |
| 2020 SPRING Semester GPA: | 3.60 | | | |
| Cumulative Summary: | 3.57 | 82.00 | 82.00 | 250.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| PLA100 - Portfolio Development | EGCC - Online | 2020 SUMMER FULL | 06/01/2020 | 07/26/2020 | Completed | A | 1.00 | 1.00 | 4 |

|  | | | | |
|---|---|---|---|---|
| 2020 SUMMER FULL Summary: | 4.00 | 1.00 | 1.00 | 4.00 |
| 2020 SUMMER Semester GPA: | 4.00 | | | |
| Cumulative Summary: | 3.58 | 83.00 | 83.00 | 254.00 |

*William K Rupert*

William K. Rupert, Registrar

THE FACE OF THIS DOCUMENT IS PRINTED IN BLUE INK

# EASTERN GATEWAY COMMUNITY COLLEGE

4000 SUNSET BOULEVARD · STEUBENVILLE, OHIO 43952-3512

(740) 264-5591

| Course | Source | Term | Start | End | Status | Grade | Credit | Earned | Points |
|---|---|---|---|---|---|---|---|---|---|
| PSY101 - General Psychology | CUNY Borough of Manhattan Community College | Transfer | 06/01/2020 | 07/26/2020 | Transfer | TC | 3.00 | | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Transfer Summary: | 0.00 | 3.00 | | 0.00 |
| Transfer Semester GPA: | 0.00 | | | |
| **Cumulative Summary:** | **3.58** | **86.00** | | **254.00** |

| Course | Source | Term | Start | End | Status | Grade | Credit | Earned | Points |
|---|---|---|---|---|---|---|---|---|---|
| BIO107 - Human Anatomy/Physiology I | EGCC - Online | 2020 FALL FIRST8 | 08/17/2020 | 10/11/2020 | Completed | A | 4.00 | 4.00 | 16 |
| ENG104 - Technical and Professional Writing | EGCC - Online | 2020 FALL FIRST8 | 08/17/2020 | 10/11/2020 | Completed | A | 3.00 | 3.00 | 12 |

| | | | | |
|---|---|---|---|---|
| 2020 FALL FIRST8 Summary: | 4.00 | 7.00 | | 28.00 |
| **Cumulative Summary:** | **3.62** | **93.00** | | **282.00** |

| Course | Source | Term | Start | End | Status | Grade | Credit | Earned | Points |
|---|---|---|---|---|---|---|---|---|---|
| ART101 - Survey of Art History | EGCC - Online | 2020 FALL LAST8 | 10/26/2020 | 12/20/2020 | Completed | A | 3.00 | 3.00 | 12 |
| BIO108 - Human Anatomy/Physiology II | EGCC - Online | 2020 FALL LAST8 | 10/26/2020 | 12/20/2020 | Completed | A | 4.00 | 4.00 | 16 |
| COM105 - Interpersonal Communication | EGCC - Online | 2020 FALL LAST8 | 10/26/2020 | 12/20/2020 | Completed | A | 3.00 | 3.00 | 12 |
| ENG201 - Introduction to Literature | EGCC - Online | 2020 FALL LAST8 | 10/26/2020 | 12/20/2020 | Completed | A | 3.00 | 3.00 | 12 |
| SOC101 - Introduction to Sociology | EGCC - Online | 2020 FALL LAST8 | 10/26/2020 | 12/20/2020 | Completed | A | 3.00 | 3.00 | 12 |
| SPA101 - Elementary Spanish I | EGCC - Online | 2020 FALL LAST8 | 10/26/2020 | 12/20/2020 | Completed | C | 4.00 | 4.00 | 8 |

| | | | | |
|---|---|---|---|---|
| 2020 FALL LAST8 Summary: | 3.60 | 20.00 | 20.00 | 72.00 |
| 2020 FALL Semester GPA: | 3.70 | | | |
| **Cumulative Summary:** | **3.61** | **113.00** | **113.00** | **354.00** |

| Course | Source | Term | Start | End | Status | Grade | Credit | Earned | Points |
|---|---|---|---|---|---|---|---|---|---|
| PHI101 - Introduction to Philosophy | EGCC - Online | 2021 SPRING FIRST8 | 01/11/2021 | 03/07/2021 | Completed | B | 3.00 | 3.00 | 9 |
| PHI202 - Ethics | EGCC - Online | 2021 SPRING FIRST8 | 01/11/2021 | 03/07/2021 | Completed | A | 3.00 | 3.00 | 12 |

*William K. Rupert*

William K. Rupert, Registrar

THE FACE OF THIS DOCUMENT IS PRINTED IN BLUE INK

# EASTERN GATEWAY COMMUNITY COLLEGE

4000 SUNSET BOULEVARD • STEUBENVILLE, OHIO 43952-3512

(740) 264-5591

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2021 SPRING FIRST8 Summary: | | 3.50 | 6.00 | 6.00 | 21.00 |
| | | | | | 2021 SPRING Semester GPA: | | 3.50 | | | |
| | | | | | **Cumulative Summary:** | | **3.61** | **119.00** | **119.00** | **375.00** |
| BUS209 - Customer Service | Prior Learning Assessment | | 01/11/2021 | 05/09/2021 | Transfer | PP | 3.00 | | | 0 |
| | | | | | Future Summary: | | 0.00 | 3.00 | | 0.00 |
| | | | | | Semester GPA: | | 0.00 | | | |
| | | | | | **Cumulative Summary:** | | **3.61** | **122.00** | | **375.00** |
| ECO102 - Microeconomics | EGCC - Online | 2021 SPRING MID8 | 01/25/2021 | 03/28/2021 | Completed | A | 3.00 | 3.00 | | 12 |
| | | | | | 2021 SPRING MID8 Summary: | | 4.00 | 3.00 | 3.00 | 12.00 |
| | | | | | **Cumulative Summary:** | | **3.62** | **125.00** | **125.00** | **387.00** |
| ECO101 - Macroeconomics | EGCC - Online | 2021 SPRING LAST8 | 03/29/2021 | 05/23/2021 | Completed | A | 3.00 | 3.00 | | 12 |
| | | | | | 2021 SPRING LAST8 Summary: | | 4.00 | 3.00 | | 12.00 |
| | | | | | 2021 SPRING Semester GPA: | | 4.00 | | | |
| | | | | | **Cumulative Summary:** | | **3.63** | **128.00** | | **399.00** |
| ART999 - Art Elective | SUNY Empire State College | | 06/07/2021 | 08/01/2021 | Transfer | TC | 3.00 | | | 0 |
| CJT101 - Introduction: Criminal Justice | SUNY Empire State College | | 06/07/2021 | 08/01/2021 | Transfer | TC | 3.00 | | | 0 |
| CJT102 - Procedural Law | SUNY Empire State College | | 06/07/2021 | 08/01/2021 | Transfer | TC | 3.00 | | | 0 |
| CJT999 - Criminal Just Elect | SUNY Empire State College | | 06/07/2021 | 08/01/2021 | Transfer | TC | 3.00 | | | 0 |
| PSY999 - Psychology Elective | SUNY Empire State College | | 06/07/2021 | 08/01/2021 | Transfer | TC | 3.00 | | | 0 |
| BUS101 - Introduction to Business | CUNY Borough of Manhattan Community College | | 01/10/2022 | 05/08/2022 | Transfer | TC | 3.00 | | | 0 |

*William K Rupert*

William K. Rupert, Registrar

THE FACE OF THIS DOCUMENT IS PRINTED IN BLUE INK

# EASTERN GATEWAY COMMUNITY COLLEGE

4000 SUNSET BOULEVARD · STEUBENVILLE, OHIO 43952-3512

(740) 264-5591

|  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  | Future Summary: | 0.00 | 18.00 |  | 0.00 |
|  |  |  |  |  | Semester GPA: | 0.00 |  |  |  |
|  |  |  |  |  | **Cumulative Summary:** | **3.63** | **146.00** |  | **399.00** |
|  |  |  |  |  |  |  |  |  |  |
| CAN101 - Introduction to Cannabis | EGCC - Online | 2022 SPRING FOURTH | 03/28/2022 | 05/22/2022 | Completed | A | 3.00 | 3.00 | 12 |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  | 2022 SPRING FOURTH Summary: | 4.00 | 3.00 | 3.00 | 12.00 |
|  |  |  |  | 2022 SPRING Semester GPA: | 4.00 |  |  |  |
|  |  |  |  | **Cumulative Summary:** | **3.64** | **149.00** | **149.00** | **411.00** |
|  |  |  |  |  |  |  |  |  |  |
| CAN102 - Cannabis Policy and Law | EGCC - Online | 2022 FALL FIRST | 08/15/2022 | 10/09/2022 | Completed | A | 3.00 | 3.00 | 12 |
| CAN103 - Cannabis Symptom Management | EGCC - Online | 2022 FALL FIRST | 08/15/2022 | 10/09/2022 | Completed | A | 3.00 | 3.00 | 12 |
| CAN104 - Cannabis Customer Service | EGCC - Online | 2022 FALL FIRST | 08/15/2022 | 10/09/2022 | Completed | A | 3.00 | 3.00 | 12 |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  | 2022 FALL FIRST Summary: | 4.00 | 9.00 | 9.00 | 36.00 |
|  |  |  |  | **Cumulative Summary:** | **3.66** | **158.00** | **158.00** | **447.00** |
|  |  |  |  |  |  |  |  |  |  |
| MGT210 - Leadership Development and Team Building | Liberty University |  | 01/09/2023 | 05/07/2023 | Transfer | TC | 3.00 |  | 0 |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  | Future Summary: | 0.00 | 3.00 |  | 0.00 |
|  |  |  |  |  | Semester GPA: | 0.00 |  |  |  |
|  |  |  |  |  | **Cumulative Summary:** | **3.66** | **161.00** |  | **447.00** |
|  |  |  |  |  |  |  |  |  |  |
| MGT218 - Contract Administration | EGCC - Online | 2023 SUMMER FULL | 06/05/2023 | 07/30/2023 | Completed | A | 3.00 | 3.00 | 12 |
| MGT221 - Law of the Workplace | EGCC - Online | 2023 SUMMER FULL | 06/05/2023 | 07/30/2023 | Completed | A | 3.00 | 3.00 | 12 |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  | 2023 SUMMER FULL Summary: | 4.00 | 6.00 | 6.00 | 24.00 |

*William K. Rupert*

William K. Rupert, Registrar

THE FACE OF THIS DOCUMENT IS PRINTED IN BLUE INK

# EASTERN GATEWAY COMMUNITY COLLEGE

4000 SUNSET BOULEVARD · STEUBENVILLE, OHIO 43952-3512

(740) 264-5591

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | 2023 SUMMER Semester GPA: | | | | 4.00 | | | |
| | | **Cumulative Summary:** | | | | **3.68** | **167.00** | **167.00** | **471.00** |

2023 SUMMER Semester Honor: President's List GPA 4.00

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ACC111 - Financial Accounting I | EGCC - Online | 2023 FALL FIRST | 08/14/2023 | 10/08/2023 | Completed | C | 3.00 | 3.00 | 6 |
| MGT217 - Intro to Labor and Workplace Studies | EGCC - Online | 2023 FALL FIRST | 08/14/2023 | 10/08/2023 | Completed | A | 3.00 | 3.00 | 12 |
| MGT229 - Collective Bargaining | EGCC - Online | 2023 FALL FIRST | 08/14/2023 | 10/08/2023 | Completed | A | 3.00 | 3.00 | 12 |
| | | | 2023 FALL FIRST Summary: | | | 3.33 | 9.00 | 9.00 | 30.00 |
| | | | **Cumulative Summary:** | | | **3.66** | **176.00** | **176.00** | **501.00** |
| BUS201 - Principles of Marketing | EGCC - Online | 2023 FALL SECOND | 08/28/2023 | 10/22/2023 | Completed | A | 3.00 | 3.00 | 12 |
| MGT202 - Organizational Behavior | EGCC - Online | 2023 FALL SECOND | 08/28/2023 | 10/22/2023 | Completed | A | 3.00 | 3.00 | 12 |
| MGT208 - Human Resources Management | EGCC - Online | 2023 FALL SECOND | 08/28/2023 | 10/22/2023 | Completed | A | 3.00 | 3.00 | 12 |
| | | | 2023 FALL SECOND Summary: | | | 4.00 | 9.00 | 9.00 | 36.00 |
| | | | **Cumulative Summary:** | | | **3.68** | **185.00** | **185.00** | **537.00** |
| ACC103 - Office Accounting | EGCC - Online | 2023 FALL FOURTH | 10/23/2023 | 12/17/2023 | Completed | A | 3.00 | 3.00 | 12 |
| MGT206 - Business Management Capstone | EGCC - Online | 2023 FALL FOURTH | 10/23/2023 | 12/17/2023 | Completed | A | 3.00 | 3.00 | 12 |
| | | | 2023 FALL FOURTH Summary: | | | 4.00 | 6.00 | | 24.00 |
| | | | 2023 FALL Semester GPA: | | | 3.75 | | | |
| | | | **Cumulative Summary:** | | | **3.69** | **191.00** | | **561.00** |

| | | | |
|---|---|---|---|
| **GPA:** 3.69 | **Credits Attempted:** 191.00 | **Credits Earned:** 191.00 | **Percentage Earned:** 100.00% |

*William K Rupert*

William K. Rupert, Registrar

*Monday, April 29, 2024*

# EASTERN GATEWAY COMMUNITY COLLEGE
4000 Sunset Blvd, Steubenville, OH, 43952

## GENERAL INFORMATION

Eastern Gateway Community College is a public, two-year community college offering several associate degrees. These are Associate of Arts, Associate of Science, Associate of Applied Business, Associate of Applied Science, Associate of Technical Study and Associate of Individualized Study. The College also offers several one-year certificates. Former Names: Jefferson County Technical Institute, Jefferson Technical College, Jefferson Community College.

## ACCREDITATION AND AFFILIATION

Eastern Gateway Community College is accredited by the Higher Learning Commission (hlcommission.org), a regional accreditation agency recognized by the U.S. Department of Education.

The College is a member of the American Association of Collegiate Registrars and Admissions Officers and has been a member of the American Association of Community and Junior Colleges since November 1971. Membership is also held in the Ohio Technical and Community College Association and the Ohio Association of Two-Year Colleges

The College is a full member in the Ohio College Association, which is the association of private and state-assisted institutions of higher learning in the state of Ohio.

## TRANSFER MODULE

The Ohio Board of Regents Transfer and Articulation Policy established the Transfer Module (TM), which is a specific subset or the entire set of a college or university s general education requirements.

## FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT OF 1974

This information has been forwarded to you at the request of the student with the understanding that it will not be released to other parties. The Family Educational Rights and Privacy Act of 1974 prohibits release of this information without the students written consent. Please return this material to us if you are unable to comply with this condition to release.
No official transcript is issued until the student has cleared all financial obligations with the Business Office

## KEY TO GRADES

| Grade | Quality Points Per Semester Hour |
|---|---|
| A - Superior Quality | 4.00 |
| B - High Quality | 3.00 |
| C - Average | 2.00 |
| D - Below Average | 1.00 |
| F - Failing | 0.00 |
| I - Incomplete | 0.00 |
| N - Non-Pass | 0.00 |
| P - Pass or transfer grade of C or better | 0.00 |
| R - Repeat | 0.00 |
| U - Audit | 0.00 |
| V - Transfer grade of D | 0.00 |
| W - Withdrawal | 0.00 |
| X - COVID-19 Withdrawal | 0.00 |
| Z - Forgiveness | 0.00 |

## TRANSFER GRADES

| Grade | Quality Points Per Semester Hour |
|---|---|
| AP - Advanced Placement | 0.00 |
| AS - Advanced Standing | 0.00 |
| CB - Competency Based | 0.00 |
| CL - CLEP | 0.00 |
| CT - Career Technical | 0.00 |
| EX - Credit by Exam | 0.00 |
| MC - Other Military Credit | 0.00 |
| MT - Military Transfer | 0.00 |
| OM - One Year Option Bui | 0.00 |
| ON - One Year Option Bus | 0.00 |
| OO - One Year Option Hea | 0.00 |
| OP - One Year Option Inf | 0.00 |
| OQ - One Year Option- Ser | 0.00 |
| OT - Other Credit | 0.00 |
| PO - PLA Other | 0.00 |
| PP - PLA Portfolio | 0.00 |
| SL - Standard Level Inter | 0.00 |
| TC - Transfer Credit | 0.00 |
| TG - Transfer Assurance Guide | 0.00 |
| TM - Ohio Transfer Module | 0.00 |

## REPEATED COURSES

A student may repeat a course in which a passing or failing grade has been received. In any case, the last grade earned will becounted in computing the grade point average at Eastern Gateway Community College. The student must receive permission of the department dean to repeat a course more than once.

Page: 1  **Transcript for:** Nicole L Law tone-Bow les  Date Issued: Mar 4, 2024

# Empire State University
## Transcript - Official



**Record of:**
Nicole L Law tone-Bow les
56 Center St
Highland Falls, NY 10928-1800

SSN: ✕✕✕✕✕
Student ID: ✕✕✕✕✕
Birth Date:  04-December

---

Course Level:  Undergraduate

**Degrees Aw arded**
Bach of Prof Studies
Date Aw arded: June 1, 2021
Major: Interdiscip./Multidiscip. Stds
Concentration: Criminal Justice and Legal Studies

### Advanced Standing Hours Summary

| Earned Hours | GPA Hours | Points | GPA |
|---|---|---|---|
| 91.00 | 0.00 | 0.00 | 0.00 |

### Institution Credit

| Course Identifier | Course Title | Intro/Adv | Credit Hours | Grade | Points | Repeated |
|---|---|---|---|---|---|---|
| **Summer 2020** | | | | | | |
| Major:  Interdiscip./Multidiscip. Stds | | | | | | |
| CRJS  1005 | Intro to Criminal Justice | | 4.00 | A | 16.00 | |
| CRJS  3005 | Alternatives to Incarceration | | 4.00 | B | 12.00 | |
| Summer 2020 Totals: | | | | | | |
| Hours Earned: 8.00 | GPA Hours: 8.00 | Points: 28.00 | GPA: 3.50 | | | |
| **Fall 2020** | | | | | | |
| Major:  Interdiscip./Multidiscip. Stds | | | | | | |
| ARTS  4010 | Art History: Study of Cultures | | 4.00 | A | 16.00 | |
| CRJS  3009 | Criminal Law  & Procedure | | 4.00 | A | 16.00 | |
| EDPL  3010 | Educational Planning: Adv II | | 4.00 | A | 16.00 | |
| PSYC  3055 | Cultural Psychology | | 4.00 | B- | 10.68 | |
| Fall 2020 Totals: | | | | | | |
| Hours Earned: 16.00 | GPA Hours: 16.00 | Points: 58.68 | GPA: 3.67 | | | |
| **Spring 2021** | | | | | | |
| Major:  Interdiscip./Multidiscip. Stds | | | | | | |
| CRJS  3015 | Courts & Admin of Justice | | 4.00 | A- | 14.68 | |
| CRJS  3020 | Crime & Intellig Analysis | | 4.00 | C+ | 9.32 | |
| CRJS  3045 | Forensic Science | | 4.00 | A | 16.00 | |
| CRJS  3036 | Princ Fraud Exam & Fin Forens | | 4.00 | A | 16.00 | |
| CRJS  4998 | Indv Studies in Crim Justice | | 5.00 | A | 20.00 | |
| CRJS  4998 | Indv Studies Crim Justice II | | 4.00 | A | 16.00 | |
| Spring 2021 Totals: | | | | | | |
| Hours Earned: 25.00 | GPA Hours: 25.00 | Points: 92.00 | GPA: 3.68 | | | |

### Undergraduate Transcript Totals

| | Earned Hours | GPA Hours | Points | GPA |
|---|---|---|---|---|
| Total Institution | 49.00 | 49.00 | 178.68 | 3.65 |
| Total Advanced Standing | 91.00 | 0.00 | 0.00 | 0.00 |
| Overall | 140.00 | 49.00 | 178.68 | 3.65 |

**Issued To:**
PURDUE GLOBAL
2550 NORTHWESTERN AVE
STE. 1100
WEST LAFAYETTE, IN 47906-1332

This transcript processed and delivered by Parchment



REVIEWED
By KLiriano at 10:32 am, Mar 11, 2024

 **EMPIRE STATE UNIVERSITY**

# Transcript

## Accreditation

Empire State University is accredited by the Middle States Commission on Higher Education, (3624 Market St., Philadelphia, PA 19104-2680), and its degrees are registered by the State Education Department of New York. SUNY Empire State College changed its name to Empire State University on March 22, 2023.

## Contents of Transcript

1. Transcript Summary
2. Degree Program, if ordered: An approved plan of study for undergraduate students in individualized degree programs only.

## Credit Hour Explanation

Effective May 1, 1978, the basic unit of measurement is the credit, which is equivalent to the standard semester hour. Prior to May 1, 1978, the unit of credit was the credit month. One credit month was the equivalent of four semester hours. From January 2, 1974, through April 30, 1978, 32 credit months were required for bachelor's degrees and 16 credit months were required for associate degrees. Before January 2, 1974, 36 credit months were required for bachelor's degrees and 18 credit months were required for associate degrees.

### Graduate Legend

| Grade | Description | Points |
|---|---|---|
| A+[1] | Excellent | 4.33 |
| A | Excellent | 4.00 |
| A- | Excellent | 3.67 |
| B+ | Good | 3.33 |
| B | Good | 3.00 |
| B- | Minimally Acceptable | 2.67 |
| C+ | Minimally Acceptable | 2.33 |
| C | Minimally Acceptable | 2.00 |
| F | Unacceptable | 0.00 |
| NC[2,3] | No Credit | 0.00 |

| Outcome (not included in the GPA calculation) | Description |
|---|---|
| FC[2,3] | Full Credit (B or better) |
| MP | Marginal Pass (Grades of B-, C+ and C before July 1, 2007 |
| IN | Incomplete |
| IP | In Progress |
| WD | Withdrawal |
| ZW | Administrative Withdrawal |
| AC | Assessed Credit |
| TR | Transfer Credit |
| P | Pass (B or better) |
| NP | No Pass (B- or lower) |
| EV | Evaluated Credit |
| *** | Grade Amnesty |

| Additional Flags | |
|---|---|
| E[2] | Excluded – repeated study |

### Undergraduate Legend

| Grade | Points | Description | Used in GPA |
|---|---|---|---|
| FC[1] | None | Full Credit | No |
| A+[2] | 4.33 | Excellent | Yes |
| A | 4.00 | Excellent | Yes |
| A- | 3.67 | Excellent | Yes |
| B+ | 3.33 | Good | Yes |
| B | 3.00 | Good | Yes |
| B- | 2.67 | Good | Yes |
| C+ | 2.33 | Adequate | Yes |
| C | 2.00 | Adequate | Yes |
| C- | 1.67 | Adequate | Yes |
| D+ | 1.33 | Minimally Acceptable | Yes |
| D | 1.00 | Minimally Acceptable | Yes |
| D- | 0.67 | Minimally Acceptable | Yes |

**Effective Fall 1 2015**

| Grade | Points | Description | Used in GPA |
|---|---|---|---|
| F | 0.00 | Unacceptable | Yes |
| P | None | Pass (C- or better) | No |
| NP | None | No Pass (less than C-) | No |
| IN | None | Incomplete | No |
| WD | None | Withdrawn | No |
| ZW | None | Administrative Withdrawal | No |
| IP | None | In Progress | No |

### Pre-Fall 2018

| Level of Study/Course (follows title) | |
|---|---|
| PRE | Pre-College (developmental studies/courses) |
| INTRO | Introductory (freshman and sophomore level studies/courses) |
| ADV | Advanced (junior and senior level studies/courses) |
| GR | Graduate |

| Additional Flags | |
|---|---|
| E[3] | Excluded – repeated study |

[1] Full Credit (C- or better), used prior to Fall 1 2015.
[2] Discontinued after July 1, 2004.
[3] Not included in the GPA calculation.

[1] Discontinued after Fall 2005.
[2] Not included in the GPA calculation.
[3] Discontinued after Summer 2015.
The minimum level of satisfactory performance is 3.00.

This Academic Transcript from Empire State University located in Saratoga Springs, NY is being provided to you by Parchment, Inc. Under provisions of, and subject to, the Family Educational Rights and Privacy Act of 1974, Parchment, Inc is acting on behalf of Empire State University in facilitating the delivery of academic transcripts from Empire State University to other colleges, universities and third parties.

This secure transcript has been delivered electronically by Parchment, Inc in a Portable Document Format (PDF) file. Please be aware that this layout may be slightly different in look than Empire State University's printed/mailed copy, however it will contain the identical academic information. Depending on the school and your capabilities, we also can deliver this file as an XML document or an EDI document. Any questions regarding the validity of the information you are receiving should be directed to: Office of the Registrar, Empire State University, 111 West Ave, Saratoga Springs, NY 12866, Tel: (518) 587-2100.

# LIBERTY
## UNIVERSITY

REGISTRAR

**Record of:** Nicole Laura Alexis Lawtone-Bowles
56 Center St
Highland Falls, NY 10928-1800

**Date Issued:** 14-NOV-2023
**Student ID:** ☒☒☒☒
**Social Security Number:**
**Level:** Doctorate
**Current Major:** Health Sciences

**Page:** 1

---

## TRANSCRIPT OF ACADEMIC RECORD

Course Level: Doctorate

Current Program
Doctor of Philosophy
          Major : Health Sciences-General

| SUBJ | NO. | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|--------------|------|-----|-----|---|
| | | **INSTITUTION CREDIT:** | | | | |
| | | **Summer 2021** | | | | |
| JURI | 515 | Legal Writing & Analysis | 3.00 | B+ | 9.99 | |
| JURI | 610 | Jurisprudence/Legal History | 3.00 | B | 9.00 | |
| | | Ehrs: 6.00 GPA-Hrs: 6.00 QPts: 18.99 GPA: 3.16 | | | | |
| | | Good Standing | | | | |
| | | **Fall 2021** | | | | |
| JURI | 520 | Constitutional Law | 3.00 | A- | 11.01 | |
| JURI | 530 | Contracts Law | 3.00 | A | 12.00 | I |
| JURI | 580 | Ethics & Professional Responsi | 3.00 | B+ | 9.99 | |
| | | Ehrs: 9.00 GPA-Hrs: 9.00 QPts: 33.00 GPA: 3.66 | | | | |
| | | Good Standing | | | | |
| | | **Spring 2022** | | | | |
| HSCI | 705 | Ethical Issues Health Sciences | 3.00 | A | 12.00 | |
| HSCI | 710 | Healthcare Delivery Service | 3.00 | A | 12.00 | |
| HSCI | 715 | Cultural Comp Health Sciences | 3.00 | B | 9.00 | |
| HSCI | 720 | Princ & Theor Teach Health Pro | 3.00 | B+ | 9.99 | |
| HSCI | 725 | Leadership Prof Practice | 3.00 | C- | 5.01 | A |
| HSCI | 730 | Risk Manage Health Sciences | 3.00 | F | 0.00 | E |
| HSCI | 735 | Evidence Based Prac Health Sci | 3.00 | B | 9.00 | |
| HSCI | 810 | Review & Crit Health Sci Lit | 3.00 | B+ | 9.99 | |
| | | Ehrs: 18.00 GPA-Hrs: 21.00 QPts: 66.99 GPA: 3.19 | | | | |
| | | Good Standing | | | | |
| | | **Summer 2022** | | | | |
| HSCI | 730 | Risk Manage Health Sciences | 3.00 | A | 12.00 | I |
| HSCI | 815 | Qual Res Meth & Stat Health Sc | 3.00 | C+ | 6.99 | A |
| HSCI | 820 | Quan Res Meth & Stat Health Sc | 3.00 | C | 6.00 | A |

******************** CONTINUED ON NEXT COLUMN ********************

| SUBJ | NO. | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|--------------|------|-----|-----|---|
| | | Institution Information continued: | | | | |
| | | Ehrs: 3.00 GPA-Hrs: 9.00 QPts: 24.99 GPA: 2.77 | | | | |
| | | Good Standing | | | | |
| | | **Fall 2022** | | | | |
| HSCI | 725 | Leadership Prof Practice | 3.00 | W | 0.00 | |
| HSCI | 815 | Qual Res Meth & Stat Health Sc | 3.00 | B+ | 9.99 | I |
| HSCI | 820 | Quan Res Meth & Stat Health Sc | 3.00 | A | 12.00 | I |
| | | Ehrs: 6.00 GPA-Hrs: 6.00 QPts: 21.99 GPA: 3.66 | | | | |
| | | Good Standing | | | | |
| | | **Spring 2023** | | | | |
| HSCI | 725 | Leadership Prof Practice | 3.00 | B+ | 9.99 | I |
| | | Ehrs: 3.00 GPA-Hrs: 3.00 QPts: 9.99 GPA: 3.33 | | | | |
| | | Good Standing | | | | |
| | | **Summer 2023** | | | | |
| HSCI | 987 | Dissertation I | 5.00 | NP | 0.00 | |
| | | Ehrs: 0.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | |

********************* TRANSCRIPT TOTALS *********************

| | Earned Hrs | GPA Hrs | Points | GPA |
|---|---|---|---|---|
| TOTAL INSTITUTION | 45.00 | 54.00 | 175.95 | 3.25 |
| TOTAL TRANSFER | 0.00 | 0.00 | 0.00 | 0.00 |
| OVERALL | 45.00 | 54.00 | 175.95 | 3.25 |

********************* END OF TRANSCRIPT *********************

In accordance with The Family Educational Rights and Privacy Act of 1974 (FERPA) you are hereby notified that this information is provided upon the condition that you, your agents or employees, will not permit any other party to have access to such information, in personally identifiable form, without first obtaining written consent of the student.

This official academic transcript has been delivered to you by Liberty University, 1971 University Blvd., Lynchburg, VA 24515, 1-434-592-5100. Liberty University is accredited by the Southern Association of Colleges and Schools (SACS). This official academic transcript was requested, created, and released to the recipient following all applicable state and federal laws, including the Family Educational Rights and Privacy Act of 1974. This official academic transcript may only be requested by the student named therein.

Jason Byrd
University Registrar

Click here for the Transcript Legend.

# LIBERTY
## UNIVERSITY

REGISTRAR

**Record of:** Nicole Laura Alexis Lawtone-Bowles
56 Center St
Highland Falls, NY 10928-1800

**Page:** 1

**Date Issued:** 14-NOV-2023
**Student ID:** XXXXX
**Social Security Number:**
**Level:** Graduate
**Current Major:** Health Sciences

## TRANSCRIPT OF ACADEMIC RECORD

Course Level: Graduate

Current Program
Juris Master
        Major : JM: General

Degree Awarded Juris Master 17-DEC-2021
Primary Degree
        Major : JM: General

| SUBJ | NO. | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|--------------|------|-----|-----|---|

INSTITUTION CREDIT:

Summer 2021
| JURI | 510 | Intro Legal Systems & Research | 3.00 | B | 9.00 | |
| JURI | 515 | Legal Writing & Analysis | 3.00 | B+ | 9.99 | |
| JURI | 600 | Foundations of Law | 3.00 | B | 9.00 | |
| JURI | 610 | Jurisprudence/Legal History | 3.00 | B | 9.00 | |
| JURI | 620 | Law & Economics | 3.00 | C- | 5.01 | |

Ehrs: 15.00 GPA-Hrs: 15.00 QPts: 42.00 GPA: 2.80
Good Standing

Fall 2021
Degree Awarded Juris Master
Degree Awarded GPA 3.00
| JURI | 520 | Constitutional Law | 3.00 | A- | 11.01 | |
| JURI | 530 | Contracts Law | 3.00 | C | 0.00 | E |
| JURI | 530 | Contracts Law | 3.00 | A | 12.00 | I |
| JURI | 580 | Ethics & Professional Responsi | 3.00 | B+ | 9.99 | |
| JURI | 625 | Administrative Law | 3.00 | B | 9.00 | |
| JURI | 645 | Intellectual Property Law | 3.00 | C | 6.00 | |

Ehrs: 15.00 GPA-Hrs: 15.00 QPts: 48.00 GPA: 3.20
Good Standing

******************** CONTINUED ON NEXT COLUMN ********************

```
********************** TRANSCRIPT TOTALS **********************
                      Earned Hrs  GPA Hrs   Points    GPA
TOTAL INSTITUTION       30.00     30.00     90.00     3.00

TOTAL TRANSFER           0.00      0.00      0.00     0.00

OVERALL                 30.00     30.00     90.00     3.00
********************** END OF TRANSCRIPT **********************
```

In accordance with The Family Educational Rights and Privacy Act of 1974 (FERPA) you are hereby notified that this information is provided upon the condition that you, your agents or employees, will not permit any other party to have access to such information, in personally identifiable form, without first obtaining written consent of the student.

This official academic transcript has been delivered to you by Liberty University, 1971 University Blvd., Lynchburg, VA 24515, 1-434-592-5100. Liberty University is accredited by the Southern Association of Colleges and Schools (SACS). This official academic transcript was requested, created, and released to the recipient following all applicable state and federal laws, including the Family Educational Rights and Privacy Act of 1974. This official academic transcript may only be requested by the student named therein.

Jason Byrd
University Registrar

Click here for the Transcript Legend.

# LIBERTY
## U N I V E R S I T Y

REGISTRAR

**Record of:** Nicole Laura Alexis Lawtone-Bowles
56 Center St
Highland Falls, NY 10928-1800

**Page:** 1

**Date Issued:** 14-NOV-2023
**Student ID:** ✕✕✕✕
**Social Security Number:**
**Level:** Undergraduate
**Current Major:** Health Sciences

## TRANSCRIPT OF ACADEMIC RECORD

Course Level: Undergraduate

| SUBJ NO. | COURSE TITLE | CRED | GRD | PTS R |
|---|---|---|---|---|
| **TRANSFER CREDIT ACCEPTED BY THE INSTITUTION:** | | | | |
| 202030 | SUNY Empire State College | | | |
| CJUS 200 | Intro to Criminal Justice | 4.00 | P | |
| CJUS 3XX | Criminal Just Elect-Upper Lev | 4.00 | P | |
| Ehrs: 8.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | |
| 202040 | SUNY Empire State College | | | |
| ARTS 4XX | Arts Elective-Upper Level | 4.00 | P | |
| CJUS 400 | Criminal Law | 4.00 | P | |
| EDUC 3XX | Education Elective-Upper Level | 4.00 | P | |
| PSYC 3XX | Psychology Elective-Upper Lev | 4.00 | P | |
| Ehrs: 16.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | |
| 202120 | SUNY Empire State College | | | |
| CJUS 300 | Admin of Justice Organizations | 4.00 | P | |
| CJUS 360 | Introduction to Forensics | 4.00 | P | |
| CJUS 3XX | Criminal Just Elect-Upper Lev | 4.00 | P | |
| CJUS 3XX | Criminal Just Elect-Upper Lev | 4.00 | P | |
| CJUS 4XX | Criminal Just Elect-Upper Lev | 5.00 | P | |
| CJUS 4XX | Criminal Just Elect-Upper Lev | 4.00 | P | |
| Ehrs: 25.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | |
| 201920 | Eastern Gateway Community Coll | | | |
| PLST 200 | Intro to Paralegal Studies | 3.00 | P | |
| Ehrs: 3.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | |
| 201930 | Eastern Gateway Community Coll | | | |
| INFT 110 | Computer Concepts & Applicatio | 3.00 | P | |
| PLST 1XX | Paralegal Stu Elect-Lower Lev | 3.00 | P | |
| PLST 201 | Legal Research | 3.00 | P | |
| PLST 222 | Real Estate Trans & Property | 3.00 | P | |

****************** CONTINUED ON NEXT COLUMN *******************

| SUBJ NO. | COURSE TITLE | CRED | GRD | PTS R |
|---|---|---|---|---|
| **Transfer Information continued:** | | | | |
| Ehrs: 12.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | |
| 201940 | Eastern Gateway Community Coll | | | |
| ASCS 1XX | Acad Success Elect-Lower Level | 1.00 | P | |
| MATH 201 | Intro. to Probability & Statis | 3.00 | P | |
| PLST 1XX | Paralegal Stu Elect-Lower Lev | 3.00 | P | |
| PLST 225 | Tort Law | 3.00 | P | |
| PLST 226 | Contracts | 3.00 | P | |
| PLST 230 | Criminal Practice & Procedure | 3.00 | P | |
| PLST 235 | Wills, Trusts, and Estates | 3.00 | P | |
| PLST 340 | Family Law | 3.00 | P | |
| Ehrs: 22.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | |
| 202020 | Eastern Gateway Community Coll | | | |
| ACCT 2XX | Accounting Elective-Lower Lev | 4.00 | P | |
| BUSI 2XX | Business Elective-Lower Level | 3.00 | P | |
| BUSI 310 | Principles of Management | 3.00 | P | |
| ENGL 102 | Composition and Literature | 3.00 | P | |
| ENGL 103 | Technical Comm for Professions | 3.00 | P | |
| GOVT 220 | American Government | 3.00 | P | |
| PLST 2XX | Paralegal Stu Elect-Lower Lev | 3.00 | P | |
| PLST 2XX | Paralegal Stu Elect-Lower Lev | 2.00 | P | |
| SOCI 201 | Social Problems | 3.00 | P | |
| Ehrs: 27.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | |
| 202030 | Eastern Gateway Community Coll | | | |
| ELEC 1XX | General Elective-Lower Level | 1.00 | P | |
| Ehrs: 1.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | |
| 202040 | Eastern Gateway Community Coll | | | |
| ARTS 105 | Art Appreciation | 3.00 | P | |
| BIOL 213 | Human Anatomy & Physiology I | 3.00 | P | |
| BIOL 214 | Human Anatomy & Phys I Lab | 1.00 | P | |
| BIOL 215 | Human Anatomy & Physiology II | 3.00 | P | |
| BIOL 216 | Human Anatomy & Phys II Lab | 1.00 | P | |

In accordance with The Family Educational Rights and Privacy Act of 1974 (FERPA) you are hereby notified that this information is provided upon the condition that you, your agents or employees, will not permit any other party to have access to such information, in personally identifiable form, without first obtaining written consent of the student.

Click here for the Transcript Legend.

This official academic transcript has been delivered to you by Liberty University, 1971 University Blvd., Lynchburg, VA 24515, 1-434-592-5100. Liberty University is accredited by the Southern Association of Colleges and Schools (SACS). This official academic transcript was requested, created, and released to the recipient following all applicable state and federal laws, including the Family Educational Rights and Privacy Act of 1974. This official academic transcript may only be requested by the student named therein.

Jason Byrd
University Registrar

# LIBERTY
## UNIVERSITY
### REGISTRAR

**Record of:** Nicole Laura Alexis Lawtone-Bowles

**Page:** 2

**Date Issued:** 14-NOV-2023
**Student ID:** ✖✖✖✖
**Social Security Number:**
**Level:** Undergraduate
**Current Major:** Health Sciences

## TRANSCRIPT OF ACADEMIC RECORD

| SUBJ | NO. | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|--------------|------|-----|-----|---|
| Transfer Information continued: | | | | | | |
| ENGL | 1XX | English Elective-Lower Level | 3.00 | P | | |
| ENGL | 2XX | English Elective-Lower Level | 3.00 | P | | |
| SCOM | 325 | Interpersonal Communication | 3.00 | P | | |
| SOCI | 200 | Introduction to Sociology | 3.00 | P | | |
| SPAN | 101 | Elementary Spanish I | 4.00 | P | | |
| Ehrs: 27.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | | | |
| | | | | | | |
| 202120 | | Eastern Gateway Community Coll | | | | |
| | | | | | | |
| ECON | 213 | Principles of Microeconomics | 3.00 | P | | |
| ECON | 214 | Principles of Macroeconomics | 3.00 | P | | |
| ETHC | 101 | Introduction to Ethics | 3.00 | P | | |
| PHIL | 201 | Philosophy & Contemporary Idea | 3.00 | P | | |
| Ehrs: 12.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | | | |
| | | | | | | |
| 202220 | | Eastern Gateway Community Coll | | | | |
| | | | | | | |
| ELEC | 1XX | General Elective-Lower Level | 3.00 | P | | |
| ELEC | 1XX | General Elective-Lower Level | 3.00 | P | | |
| ELEC | 1XX | General Elective-Lower Level | 3.00 | P | | |
| ELEC | 1XX | General Elective-Lower Level | 3.00 | P | | |
| Ehrs: 12.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | | | |
| | | | | | | |
| 199240 | | (CUNY) Borough of Manhattan Co | | | | |
| | | | | | | |
| BUSI | 101 | Introduction to Business | 3.00 | P | | |
| ENGL | 101 | Composition & Rhetoric | 3.00 | P | | |
| MUSC | 112 | Group Piano II | 1.00 | P | | |
| PHED | 1XX | Physical Educ Elective-Lower L | 1.00 | P | | |
| Ehrs: 8.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | | | |
| | | | | | | |
| 199440 | | (CUNY) Borough of Manhattan Co | | | | |
| | | | | | | |
| ASCS | 1XX | Acad Success Elect-Lower Level | 1.00 | P | | |
| COMS | 101 | Speech Communication | 3.00 | P | | |
| HLTH | 216 | Personal Health | 2.00 | P | | |
| PSYC | 101 | General Psychology | 3.00 | P | | |
| SOWK | 101 | Introduction to Social Work | 3.00 | P | | |

******************* CONTINUED ON NEXT COLUMN *******************

| SUBJ | NO. | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|--------------|------|-----|-----|---|
| Transfer Information continued: | | | | | | |
| Ehrs: 12.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | | | |
| | | | | | | |
| 202340 | | PLA Credit | | | | |
| | | | | | | |
| FNLT | 101 | Financial Literacy | 1.00 | P | | |
| Ehrs: 1.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00 | | | | | | |

INSTITUTION CREDIT:

*********************** TRANSCRIPT TOTALS ***********************

| | Earned Hrs | GPA Hrs | Points | GPA |
|--|------------|---------|--------|-----|
| TOTAL INSTITUTION | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL TRANSFER | 186.00 | 0.00 | 0.00 | 0.00 |
| OVERALL | 186.00 | 0.00 | 0.00 | 0.00 |

********************* END OF TRANSCRIPT *********************

In accordance with The Family Educational Rights and Privacy Act of 1974 (FERPA) you are hereby notified that this information is provided upon the condition that you, your agents or employees, will not permit any other party to have access to such information, in personally identifiable form, without first obtaining written consent of the student.

This official academic transcript has been delivered to you by Liberty University, 1971 University Blvd., Lynchburg, VA 24515, 1-434-592-5100. Liberty University is accredited by the Southern Association of Colleges and Schools (SACS). This official academic transcript was requested, created, and released to the recipient following all applicable state and federal laws, including the Family Educational Rights and Privacy Act of 1974. This official academic transcript may only be requested by the student named therein.

**Jason Byrd**
University Registrar

Click here for the Transcript Legend.

Student Academic Record                                    Date 05/15/2024

Lawtone-Bowles, Nicole L
56 Center St
Highland Falls, NY 10928-1800

                                  Page 1 of 1


```
Course    Description            Hrs Gd Rp Pts|Course    Description         Hrs Gd Rp Pts
--------------------------------------------|
              FALL 2023                     |
GRAD888 DHA INTRO TO DOCTORAL ST 1.0 P       |
MATH807 INTRODUCTION TO STATISTI 2.0 A    8.0|
ENG 800 DOCTORAL WRITING & RESEA 3.0 A   12.0|
MATH810 APPLIED STATISTICS       3.0 A   12.0|

TRI: HE=  9.0 HA=  8.0 PT=  32.0 GPA= 4.00
CUM: HE=  9.0 HA=  8.0 PT=  32.0 GPA= 4.00


--------------------------------------------
              SPRING 2024
HCM 830 HEALTH ECON RESOURCES &  4.0 A   16.0
MTHD815 MEASUREMENT & SCALE DEVE 2.0 A    8.0
HCM 810 ORG, COMMUNITY & GLOBAL  4.0 A   16.0
HCM 820 HLTHCARE POLICY REGS & R 4.0 A   16.0
MTHD824 ADVANCED MIXED METHODS   3.0 B+   9.9

TRI: HE= 17.0 HA= 17.0 PT=  65.9 GPA= 3.88
CUM: HE= 26.0 HA= 25.0 PT=  97.9 GPA= 3.92

--------------------------------------------
             TRANSFER CREDIT
      LIBERTY UNIVERSITY            27.00

---------NO ENTRIES BELOW THIS LINE----------
```

## KEY TO TRANSCRIPT

### RELEASE OF INFORMATION
This transcript is provided for your exclusive use only and may not be released to any third party without the written consent of the student. These instructions are in accordance with the Family Educational Rights and Privacy Act of 1974, as amended.

### TRANSCRIPT AUTHENTICITY
- Coursework shown on transcript reflects all Franklin University courses attempted.
- Transcripts for most students are laser printed in portrait format from an electronic database records system. The date of issue is printed on the upper right corner of a laser printed transcript.
- Transcripts for some students are photocopied in portrait format from a hard copy academic record. The date of issue is stamped in blank ink on the lower right corner of a photocopied transcript.
- A transcript can be identified as official when it bears the facsimile signature of the University Registrar; the transcript paper is blue in color with "Franklin University" appearing across the entire face of the document; and the University seal is printed in the lower right corner with the words "Franklin University, est. 1902" along the outer edge.
- If the transcript is issued to the student, the message "Student Copy" is stamped in black ink on the lower right corner.

### TO TEST FOR AUTHENTICITY:
The face of this document has a blue background, and the name of the institution appears in small print. Apply fresh liquid bleach to the back of this document. If authentic, the paper will turn brown. When photocopied, the word COPY appears prominently across the face of the document. ALTERATION OR FORGERY OF THIS DOCUMENT MAY BE A CRIMINAL OFFENSE.

### FRANKLIN ACCREDITATION
Franklin University is accredited by The Higher Learning Commission of the North Central Association of Colleges and Schools (312.263.1456) as a degree-granting institution at the Associate, Baccalaureate, and Master levels.

### URBANA ACCREDITATION
Urbana University is a Branch Campus of Franklin University, which is accredited by the Higher Learning Commission. Urbana University was accredited as a separate institution by the Higher Learning Commission from 04/09/1975 through 07/31/2017. The University voluntarily resigned affiliation with HLC, effective August 1, 2017, and became a branch campus of Franklin University.

### CALENDAR
Franklin University and Urbana University operate on a trimester calendar. All credit hours are equivalent to semester hours.

### SYSTEM CONVERSION STATEMENT
As a result of a system conversion in Summer '96 Trimester, DEPT code and CATALOG numbers were changed for some courses. In these cases, the original DEPT code and CATALOG numbers are noted in parentheses within course titles.

---

## UNDERGRADUATE

### UNIT OF CREDIT
One unit of credit is equivalent to one semester hour.

### OFFICIAL GRADING SYSTEM

| Description | Grade | Pts. | Credits Awarded |
|---|---|---|---|
| Excellent | A | 4.00 | yes |
| Good | B | 3.00 | yes |
| Satisfactory | C | 2.00 | yes |
| Poor | D | 1.00 | yes |
| Failure | E | 0.00 | no |
| "A" Course Repeated | AR | 4.00 | no |
| "B" Course Repeated | BR | 3.00 | no |
| "C" Course Repeated | CR | 2.00 | no |
| "D" Course Repeated | DR | 0.00 | no |
| "P" Course Repeated | PR | 0.00 | no |
| Failed Course Repeated | ER | 0.00 | no |
| Audit | AU | 0.00 | no |
| Credit by Examination | EM | 0.00 | yes |
| Incomplete | I | 0.00 | no |
| Incomplete changed to Failing Grade | IE | 0.00 | no |
| Administrative Withdrawal (failure) | Z | 0.00 | no |
| Administrative Withdrawal (for courses taken P/NC) | NZ | 0.00 | no |
| Transfer Credit | K | 0.00 | yes |
| No Credit | NC | 0.00 | no |
| Pass | P | 0.00 | yes |
| Withdrawn/Passing | WP | 0.00 | no |
| Withdrawn/Failing | WE | 0.00 | no |
| Withdrawn | W | 0.00 | no |
| Experiential Learning Credit | PC | 0.00 | yes |
| Credit not granted after the Forgiveness Policy | DK,EK | 0.00 | no |
| Credit granted after the Forgiveness Policy | AK,BK CK,PK | 0.00 | yes |

### PROBATION/SUSPENSION/READMISSION/DISMISSAL
Undergraduate students whose cumulative GPA is below 2.0 are placed on Academic Probation as a warning status. Academic Suspension is the cancellation of enrollment eligibility for one trimester. Readmission can be sought by a student after Academic Suspension. Academic Dismissal is cancellation of enrollment eligibility at Franklin University.

### FORGIVENESS POLICY
This policy gives students a one-time opportunity to eliminate their "old" GPA's. Undergraduate students are granted credit only for courses in which a grade of "C" or better was earned. The GPA is then based only on courses completed after implementation of the policy.

### RETAKE POLICY
Undergraduate students who have earned grades of "D" or "E" in a course may retake the identical course and have the grade earned (and credit, if passed) during the second attempt automatically replace the original grade. Upon completion of the repeated course, the previously earned grade will be converted to "DR" or "ER" and cumulative averages will be recalculated. Neither "DR" nor "ER" grades will be counted in the GPA.

### PROFICIENCY EXAMINATIONS
Franklin University awards academic credit for the following examinations:
- College Level Examination Program (CLEP)
- Franklin University Proficiency Examination (FUPE)
- Urbana University Proficiency Examination (FUPE)
- Portfolio/Credit for Prior Learning (PCPL)
- ACT Proficiency Examination Program (ACT-PEP)

---

## GRADUATE

### UNIT OF CREDIT
One unit of credit is equivalent to one semester hour.

### OFFICIAL GRADING SYSTEM

| Description | Grade | Pts. | Credits Awarded |
|---|---|---|---|
| Excellent | A | 4.00 | yes |
| Excellent | A- | 3.70 | yes |
| Good | B+ | 3.30 | yes |
| Good | B | 3.00 | yes |
| Good | B- | 2.70 | yes |
| Satisfactory | C | 2.00 | yes |
| Failure | F | 0.00 | no |
| Withdrawn | W | 0.00 | no |
| Incomplete | I | 0.00 | no |
| Incomplete changed to Failing Grade | IF | 0.00 | no |
| "C" Course Repeated | CR | 0.00 | no |
| "F" Course Repeated | FR | 0.00 | no |
| Administrative Withdrawal (failure) | Z | 0.00 | no |

### PROBATION/DISMISSAL
Graduate students whose cumulative GPA is below 3.0 are placed on Academic Probation for one academic trimester. Academic Dismissal is cancellation of enrollment eligibility at Franklin University.

### RETAKE POLICY
Graduate students who have earned grades of "C" or "F" in a course may retake the identical course and have the grade earned (and credit, if passed) during the second attempt automatically replace the original grade. Upon completion of the repeated course, the previously earned grade will be converted to "CR" or "FR" and cumulative averages will be recalculated. Neither "CR" nor "FR" grades will be counted in the GPA.

---

### DEPARTMENTAL ABBREVIATIONS/DESCRIPTIONS

| Code | Description | Code | Description |
|---|---|---|---|
| ACCT | Accounting | ISA | Info Systems Auditing |
| ADT | Adult Degree Program | ISBA | Business Analysis |
| AGR | Agricultural | ISPM | Info Sys Project Mgmt |
| AMGT | Applied Management | ITEC | Information Technology |
| ANTH | Anthropology | LANG | Foreign Language |
| APCM | Applied Communications | LOGI | Logistics Management |
| ART | Art | MATH | Mathematics |
| AS/AIRS | Astronomy | MBA | MBA Program |
| AST | Aerospace Studies | MCM | Marketing & Communication |
| BA/BSAD | Business Administration | MECH/MET | Engineering Technology - Mechanical |
| BIO | Business Forensics | | |
| BSFR | Biology | METR | Meterology |
| CHEM | Chemistry | MHC | Master Healthcare |
| COMM | Communication | MILS or MS | Military Science |
| CS/COMP | Computer Science | MIS or MI | Management Information Sciences |
| DATA | Data | MIS or MI | Management Information Systems |
| DCOM | Digital Communication | MG or MGMT | Management |
| DRAW | Engineering Technology-Drawing | MGSC | Management Science |
| DVED | Developmental Education | MK or MKTG | Marketing |
| EAC | Employee Assistance | MUS | Music |
| ECON | Economics | NSG | Nursing Graduate |
| EDG | Education Graduate | NURS | Nursing |
| EDP | EDP - Education Post Bacc | OLM | Organizational Leadership |
| EDUC | Education | ORGC | Organizational Communications |
| EET/ELEC | Engineering Technology-Electronic | OSCM | Operations & Supply Chain Management |
| EMKT | eMarketing | | |
| ENG | English | PBRL | Public Relations |
| ESL | English as a Second Language | PCPL | Portfolio/Prior Learning |
| EXS | Exercise Science | PED | Physical Education |
| FIA | Fine Arts | PF | Professional Foundations |
| FLA | Foreign Language | PHIL | Philosophy |
| FN/FINA | Finance | PHYS | Physics |
| GEL | Geology | PM or PCMT | Process Management |
| GEO | Geography | PMAJ | Personalized Major |
| GRAD | Graduate | POSC | Political Science |
| GRPH | Graphics | PSMT | Public Safety Management |
| HCM | Healthcare Management | PSYC | Psychology |
| HEA | Health | PUAD | Public Administration |
| HISM | Healthcare Information Systems Management | PUBH | Public Health |
| | | REES | Real Estate |
| HIST | History | REL | Religion |
| HON | Honors | RMI | Risk Mgmt & Insurance |
| HOSP | Hospitality Management | SCIE | Science |
| HR/HRM | Human Resources Management | SED | Intervention Specialist |
| HS/HSA | Health Services Administration | SOCL | Sociology |
| HSM | Human Services Management | SOSC | Social Sciences |
| HUMN | Humanities | SPA | Spanish |
| IBUS | International Business | SPCH | Speech Communication |
| ICS | Intercultural Studies | SPM | Sport Management |
| IDL | Instruct. Design Leader | TA or TCAD | Technical Administration |
| IDPT | Instruct Des Learn Tech | TGMT | Technical Management |
| INFA | Information Analytics | THE | Theatre |
| INFO | Computer & Information Sciences | UNI | University Seminar |
| INSD | Individualized Studies | WEBD | Web Development |

### DEAN'S FIAT COURSES
Courses with a catalog number of "999" are Dean's Fiat courses and are offered as a field test.

### SUMMARY LINE ABBREVIATIONS

| CUM | Cumulative |
|---|---|
| TRI | Trimester |
| HA | Hours Attempted |
| HE | Hours Earned |
| PT | Points |
| GPA | Grade Point Average |



This Academic Transcript from Franklin University located in Columbus, OH is being provided to you by Credentials Solutions, LLC. Under provisions of, and subject to, the Family Educational Rights and Privacy Act of 1974, Credentials Solutions, LLC is acting on behalf of Franklin University in facilitating the delivery of academic transcripts from Franklin University to other colleges, universities and third parties using the Credentials' TranscriptsNetwork™.

This secure transcript has been delivered electronically by Credentials Solutions, LLC in a Portable Document Format (PDF) file. Please be aware that this layout may be slightly different in look than Franklin University's printed/mailed copy, however it will contain the identical academic information. Depending on the school and your capabilities, we also can deliver this file as an XML document or an EDI document. Any questions regarding the validity of the information you are receiving should be directed to: Registrar's Office, Franklin University, 201 S. Grant Ave, Columbus, OH, 43215-5399, Tel: (614) 341-6242.



March 4th, 2026

Dear Nicole Lawtone-Bowles,

I received your appeal of the decision by the Academic Appeals Committee about a grade received in CL760-01: Community Property.

In my review of your appeal, I examined the assignment requirements, syllabus, and all other associated documents, as well as any additional materials submitted to the Appeals Committee.

After careful consideration of all the information provided, I am upholding the decision to deny your appeal. While I understand this was not the outcome you sought, I found no compelling evidence to contradict the Appeals Committee.

Sincerely,

**Carolyn Nordstrom, Ph.D.**
Pronouns: she, her, hers
Provost

**PURDUE GLOBAL**

Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

## Re: Academic Dishonesty - 3rd Breach: Nicole Lawtone-Bowles
19 messages

Martin Pritikin <martin.pritikin@purdueglobal.edu>
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Nicole,

What is the purpose of informing us that the video you are sending has not gone viral at this time?

On Wed, Mar 11, 2026 at 12:24 PM Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:

Dr. Carolyn Nordstrom, Provost, Purdue Global
Dean Martin Pritikin, Purdue Global Law School
Dean Shaun Jamison, Chair and Associate Dean of Academic Affairs

I am writing to inform you that the video I am sending has not gone viral at this time. I am requesting that you take the time to listen to and watch the video carefully. The video was created
The script contained in the video was written entirely by me. The actor appearing in the video was hired to perform the script I wrote.

🎬 Disability Or Cheating_ - VEED Export....

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

On Wed, Mar 11, 2026 at 12:12 Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:

Subject: Academic Integrity Appeal – Documentation of Approved Assistive

Dear Office of the Provost, Dr. Nordstrom, Professor Pritikin, Associate Dea
Professor Diab,

I am writing to follow up on my Academic Integrity Appeal regarding the brea
the March 10, 2026 notice. As explained in my appeal, the written assignme
CL685-01 Criminal Procedure, CL760-01 Community Property, and CL850-
were produced using speech-to-text assistive technology that has been forn
through Student Accessibility Services as a disability accommodation. Beca
medical conditions limit my ability to type for extended periods, dictation sof
method I use to complete written coursework. This technology converts spo
written text, which naturally produces writing more quickly than traditional ke
can create structural differences in the text compared with manually typed w
characteristics appear to have been interpreted as signs of artificial intellige
they are the direct result of approved assistive technology required for my d

My assignments were dictated by me and reflect my own legal reasoning, re
The pace at which the text appears is a function of speech-to-text transcript
of unauthorized tools. Students who complete assignments through typing p

different rate and in a different pattern than those who dictate their work ver
differences arise from the mechanics of assistive technology and not from a
Because this accommodation was formally approved to allow me equal acc
writing process used in my assignments should be understood within the co
accommodation.

I have already submitted my Academic Integrity Appeal addressing the brea
my use of approved assistive technology. To further clarify how my work is p
attached a video demonstrating the use of the speech-to-text dictation softw
complete my assignments. The purpose of this video is to show how spoker
converted directly into written text and how that process can produce writing
structural differences from traditional typing. The demonstration reflects the
when completing my coursework.

I respectfully ask that the allegations be reconsidered in light of the docume
approved disability accommodations and the functioning of the assistive tec
my coursework. My intent has always been to complete my legal education
using the accommodations approved for my documented disabilities. I appr
the appeal materials and the additional information provided. Please let me
documentation or clarification is required.

Sincerely,
Nicole Lawtone-Bowles

📄 Academic Appeal Screen Recording 2026-03-11 at
10.57.29 AM.mov

On Tue, Mar 10, 2026 at 7:16 PM Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:

Good Evening,
I forgot to add the following links. Click the links
https://www.ncbex.org/exams/mpre/about-mpre

The Multistate Professional Responsibility Examination (MPRE) is a two-h
multiple-choice examination that is administered three times per year. Dev
MPRE is required for admission to the bars of all but two US jurisdictions
Puerto Rico). (Note that Connecticut and New Jersey accept successful c
school course on professional responsibility in lieu of a passing score on t

Rule 8.4 Misconduct Podcasting of Model Rule 8.4g


https://share.icloud.com/photos/075XrAKPqUxv7OCl5Q1EnTDegAssistive

frequently misunderstood as only high-tech, expensive, or a form of "cheat
rather than a crucial tool for equity. In reality, AT includes simple, low-cost i

magnifying glasses, or built-in accessibility features on phones. It is design

independence, not act as a crutch.

On Tue, Mar 10, 2026 at 6:05 PM Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:

> 📄 OCR Permission to Give My Name to Purdue an...

Good Afternoon,

I received your letter stating that Purdue Global has recorded a third Acad
breach under the Student Code of Conduct for assignments in CL685-01
CL760-01 Community Property, and CL850-01 Education Law. I dispute th
maintain that the work submitted in these courses was produced by me us
assistive technology required because of my documented disabilities. My
through Student Accessibility Services authorize the use of speech-to-text
complete written coursework because my medical conditions limit my abili
periods of time.

The assignments identified in your notice were dictated by me using spee
that converts my spoken words into written text. The ideas, legal analysis,
those submissions were created by me and reflect my own academic worl
structure of the writing reflect the nature of dictation technology, which pro
rather than through traditional keyboard typing. Differences in writing patte
assistive technology should not be interpreted as evidence of generative a
academic misconduct.

I was also previously told not to speak to the instructor regarding these ma
Jamison, JD, PhD, Associate Dean of Academics and Chair of Academic
Global Law School, formerly Concord Law School. Because of that instruc
direction given by the Associate Dean and did not communicate directly w
about the accusations.

I have filed complaints for failure to accommodate and harassment regard
Student Accessibility Services accommodations for assistive technology, v
ignored by the professors listed above, including Professor Brian A. Victor
Diab, and Professor Victoria Vidt. These individuals are not only professor
attorneys, and their actions raise concerns regarding both civil rights viola
misconduct. I have filed several civil rights complaints and professional mi
and I have also reached out to supervising attorneys regarding these matt
against the school.

USDC IN/ND case 4:26-cv-00028-PPS-AZ     document 3-1     filed 04/09/26     page 26 of 136

The full name of the institution is Purdue University Global Law School, fo
School. I have been told by individuals referenced above that I am not cre
statements attributed to Professor Brian Victor indicating that I lack the int
write the way I do despite my prior degrees and education before coming
Global Law School.

I have provided documentation including Dragon Documentation, Word dc
and PG411 Turnitin reports to demonstrate the authorship of my work. I al
Turnitin be activated in the Education Law course so that all of my submis
through the system. My written submissions include Bluebook 22nd editio
hyperlinks to the sources used to answer each question because hyperlin
legal writing and New York State court filings.

On March 6, 2026, I underwent surgery and I am currently out of work foll
advice not to make major decisions while I am on medication. I notified the
condition today, yet I continue to receive communications regarding these
the school's knowledge of my disability and recent surgery.

As of today, I have exactly 169 days remaining before my expected gradu
I am studying for my MPRE test schedule on March 24, 2026. I did not en
have been accused of. My appeals have not been decided in my favor des
documentation I have provided and despite my approved disability accom

Any negative action taken against me for using approved assistive techno
documented and immediately filed with the United States Department of J
States Department of Education. Any action taken to terminate my educat
under investigation will be viewed as retaliation.

I once again respectfully request that all academic misconduct findings ag
because I have Student Accessibility Services approval for assistive techr
submitted in my courses was produced by me using that approved accom

Nicole Lawtone-Bowles

On Tue, Mar 10, 2026 at 4:27 PM PG Provost <provost@purdueglobal.edu> wrote:

Dear Nicole Lawtone-Bowles,

This letter confirms your third Academic Dishonesty breach of the Student Code of Conduct. The following information summarizes your breaches:

**First Breach**
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 3-1    filed 04/09/26    page 27 of 136

**Second Breach**
Term: 2601L
Class: CL760-01: Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion
Instructor Name: Brian Victor

**Third Breach**
Term: 2601L
Class: CL850-01: Education Law
Assignment: Modules 1 and 8
Instructor Name: Sarah Diab

All reports of academic dishonesty are recorded in Purdue Global's database and remain there permanently. All breaches you accumulate while completing a program will be carrie

If you disagree with these findings and wish to appeal this breach, you must complete the following steps:

1. If you have not done so already, discuss the breach with your instructor, providing a thorough explanation and evidence of why you believe the suspicion of academic dishor
2. If the dispute is still unresolved and you wish to pursue an appeal of the report of academic dishonesty, you must submit an Academic Appeal Form to the Office of the Prove portal under quicklinks or by following this link.
3. The appeal form should include an explanation and evidence to support your position.

Please note all appeals must take place in writing within 10 days of receiving this letter. Submissions made more than 10 days after notification of the breach will not be accepted.

The Code of Student Conduct Policy is accessible via the Purdue University Global catalog.

Regards,

Office of the Provost

Cc:

Carolyn Nordstrom, Provost, Purdue Global
Martin Pritikin, Purdue Global Law School
Shaun Jamison, Chair and Associate Dean of Academic Affairs, Purdue Global Law School
Sarah Diab, Instructor, Purdue Global Law School

www.PurdueGlobal.edu



The information contained in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)

Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>      Wed, Mar 11, 2026 at 10:52 PM
To: Martin Pritikin <martin.pritikin@purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Dean Pritikin,

I want you to know that I respect you. I don't want to harm the school because I love the school. I love the people in it, but after what I've been through three times, I've been called a liar. I've been told that my intellect is not up to par, and my accommodations have been denied.

Do you think I want to be disabled? Do you think I want to have this stuff happen to me? I had a good life before I became disabled. I'm angry because I have 167 days left to graduate law school, and I'm about to be kicked out because of discrimination and a failure to accommodate.

The reason why I made the video is to show you that I could create a transcript and have it put into assistive technologyand have it read what I say. It's a system of assistive technology because of my disability.

I can't type fast. Sometimes I have trouble talking. I can't walk, but I'm being harassed for doing something that I love, which is studying the law. I'm angry, and I'm pissed.

See attached complaint to the Cal Bar accepted


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**2 attachments**



IMG_3565.jpeg
69K



IMG_3568.jpeg
192K

---

**Martin Pritikin** <martin.pritikin@purdueglobal.edu>      Wed, Mar 11, 2026 at 10:54 PM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Thank you for your response Nicole. But I still don't understand why you stated that the video has not yet gone viral.
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                                    Wed, Mar 11, 2026 at 11:01 PM
To: Martin Pritikin <martin.pritikin@purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Dean Pritikin,

In 2026, going viral has evolved from simply "getting views" to sparking engagement, conversation, and deep community connection across both social media and news platforms.


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                                    Wed, Mar 11, 2026 at 11:03 PM
To: Martin Pritikin <martin.pritikin@purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Click the link below

https://www.linkedin.com/posts/activity-7436652213462171648-8dAx?utm_source=share&utm_medium=member_ios&rcm=ACoAAAO1RTkBo9Dc26Cy7qtrDsKbvTfS0n0zGCc


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Martin Pritikin** <martin.pritikin@purdueglobal.edu>                                    Wed, Mar 11, 2026 at 11:05 PM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Nicole,

Can you please answer my question? My question was not why did you create the video. And my question was not what does it mean for something to go viral. My question was what was your purpose in informing us that the video has not yet gone viral. Can you please just answer my question?

Thank you,
Dean Pritikin
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                                    Wed, Mar 11, 2026 at 11:08 PM
To: Martin Pritikin <martin.pritikin@purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Dean Pritikin,

My purpose in informing you that the video has not yet gone viral was to make clear that I am giving the school an opportunity to address the situation before it spreads widely across social media or news platforms. I wanted you to understand that the matter is still within your control and that I am informing you directly before the situation gains broader public attention.

Nicole


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc

Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Martin Pritikin** <martin.pritikin@purdueglobal.edu>                                   Wed, Mar 11, 2026 at 11:09 PM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

So if the school dismisses the charge against you you will take the LinkedIn post down?
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                     Wed, Mar 11, 2026 at 11:21 PM
To: Martin Pritikin <martin.pritikin@purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Dean Pritikin,

I paid my money for an education to get my law degree. I worked very hard to get to this point where I'm graduating August 2025, and now it's in jeopardy because the school failed to accommodate me even though I have approval for assistive technology. I have proven that I've written my own work. I've been told I am not credible. I'm 54 years old. I am nobody's child.

I'm asking for my accommodations to be recognized so I can get my degree. The school needs to dismiss all the charges against me after taking my money. I am scheduled to graduate, and that dream is now in the garbage because of Shaun Jamison. What breaks my heart is that I love the school. The school gave me back my peace of mind.

I enjoy talking about the law. I told the other students who reached out to me, and now you're going to take that away from me because you don't understand assistive technology. Every time I try to explain it, I'm told I'm not credible. I'm talking to you now using assistive technology. I am on a lot of medication because I had surgery on March 6 so I could try to walk without a rollator.

I am 54 years old using a rollator. I have a caregiver who helps me get dressed. School saved my life. It got me my new job at an agency where I've been working since 2013, when I was a motor vehicle operator until I got crushed between cars while at work.

Shaun Jamison has affected my mental health and my life with his decisions, and at this point he's taking my career away from me. My goal is to hold him accountable for his actions. That is why I filed a complaint and professional misconduct charges against everyone who said that I am not credible. Everyone who filed a complaint against me has committed professional misconduct because they violated the ABA rules of professional conduct.

That's why I sent you that video and that podcast so you can listen to it. It explains the rule they violated. I don't want to harm the school, and I'm not going to do that. I don't even want to see you go to ed.gov because if ed. gov finds you guilty of a failure to accommodate, they can pull your funding and shut the school down. Look at Eastern Gateway Community College. ED.gov shut them down. I want my work for community property and education law to be graded on his merits. I want to go into the next semester, finishing the rest of my program so I can graduate.

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Martin Pritikin** <martin.pritikin@purdueglobal.edu>                                   Wed, Mar 11, 2026 at 11:24 PM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Nicole,

Sorry, but again, if you could please just answer my question, I don't want to burden you with providing a lengthy response. If the school dismisses the charges will you take down the video?

Thanks,
Dean Pritikin
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                     Wed, Mar 11, 2026 at 11:42 PM
To: Martin Pritikin <martin.pritikin@purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Dean Pritikin,

You know I respect you, so only for you I will take it down, not for anyone else. Only you. If you ask me, I will take it down, but I want to be put back in Community Property this semester so I can finish what I started and remove the F from my record. I want to take my final.

I want my work to be graded on my merits for Education Law and Community Property. I shouldn't have to take Community Property next semester after I already finished all the work.

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 3-1    filed 04/09/26    page 31 of 136

I want to be put back in Community Property, and I want my work to be graded on its merits. Professor Victor said I didn't have the intellect. That's the most insulting thing he put on paper, and my attorneys looked at it and are not happy.

I have to go through this process, but if you put me back in my Community Property class, have Education Law grade my work on the rubrics I completed, and dismiss these charges, then for you I will take it down.

Only for you, because I told you I respect you. You helped me get my scholarship. Shaun Jamison needs to be replaced anyway with Angela Dixon. She was my paralegal teacher, and she's the reason why I'm here now.


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Martin Pritikin** <martin.pritikin@purdueglobal.edu>                                    Wed, Mar 11, 2026 at 11:59 PM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Nicole,

I appreciate your respect. To be clear, I am not representing that I have the authority to have the charges dismissed. I am simply asking are you offering to take down the video if the charges are dismissed. It is a simple yes or no question.
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                                    Thu, Mar 12, 2026 at 12:01 AM
To: Martin Pritikin <martin.pritikin@purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Yes

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                                    Fri, Mar 13, 2026 at 6:18 AM
To: Martin Pritikin <martin.pritikin@purdueglobal.edu>
Cc: PG Provost <provost@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>
Bcc: "Dr. Nicole Lawtone-Bowles" <nicolelawtone@aol.com>

Dean Pritikin,

Last night, Sarah Diab canceled the seminar and moved it to Sunday at 7 PM. On top of that, everyone in the class who has contacted me or asked me if I have received any grades has not received any grades yet. She has not even graded the seminars that I went to. I went to seminars in person and also wrote for those seminars because I like to keep track of what I learned in the seminars. For me to be brought up on any type of academic conduct when the professor is never present is troubling. Everybody is talking about the fact that Google Calendar has no dates to even talk to her, and Shaun Jamison told me not to speak to her. This is one of the worst semesters of my life here at Purdue Global Law School. The mediocre Education Law class has been horrible. The only good thing about the class was the book written by Scott Johnson. You want to hold me to a threshold, but she is not held to a threshold as an instructor. I just wanted to let you know that. See attached.

So Student Accessibility says dictation software can be used by any student, so by me using dictation software it is not a violation of Purdue Global. See attached


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

[Quoted text hidden]

---

3 attachments

📄 No Grades as of March 12 2026 - CL850 Education Law - Purdue University Global.pdf
164K

📄 No Grades as of March 12 2026 Assignments - CL850 Education Law - Purdue University Global.pdf
134K

📄 Student Accessibility Service On Dictation Software .pdf
66K

---

**Shaun Jamison** <sjamison@purdueglobal.edu>                                        Fri, Mar 13, 2026 at 8:21 AM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: Martin Pritikin <martin.pritikin@purdueglobal.edu>, PG Provost <provost@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Nicole, thank you for your message.
1. Professors sometimes have conflicts or emergencies and need to reschedule. Professors often reschedule to the weekend so as to not conflict with other course's seminars.
2. I am working to get the grading updated.
3. I don't know about the Google calendar, but the professor met or attempted to meet with everyone in the class as least once. Many of the questions students have can be addressed via email. If they cannot be addressed via email, students might request a meeting.
4. I did not tell you not to speak to her at all. What I said was "Because the professor was the subject of disrespectful remarks, accusations, and threats on your part, I am reaching out to you in order to complete the investigation. You may reply directly to me; do not contact the professor about this matter further."
5. In my notice of report, I stated (among other things) "The appropriateness of speech to text technology for the assessments in this course is uncontested by the academic department." So I don't see the confusion.
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                 Fri, Mar 13, 2026 at 9:17 AM
To: Shaun Jamison <sjamison@purdueglobal.edu>
Cc: Martin Pritikin <martin.pritikin@purdueglobal.edu>, PG Provost <provost@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Shaun Jamison,

First of all, nothing I said was disrespectful. What I said was the truth. You and Sarah Diab accused me of using AI, which I do not use, and you insult my intellect and the completion of my Juris Doctor program three times with your decisions. So I filed complaints with the bar and Ed.gov, so I did not threaten anything. I told the truth, and I am still being accused of academic misconduct, even though I have approval to use assistive technology. I am being penalized for being disabled. Your accusations are just that—accusations and assumptions. They are not facts.

In my notice of report, you stated, among other things, that "The appropriateness of speech-to-text technology for the assessments in this course is uncontested by the academic department." Therefore, I do not see the confusion.

You also said Module One was resolved, and then you wrote me up for it, so you lied about that. On top of that, the thing about Module Eight is an assumption, and you know what they say about people who make assumptions. Stop disrespecting me. I use speech-to-text technology. I do not do anything else. Because you went to school with paper and pencils does not mean that I have to do that too, because I can't. You have failed to accommodate me three times, and I am asking for your dismissal from Purdue.


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Shaun Jamison** <sjamison@purdueglobal.edu>                                        Fri, Mar 13, 2026 at 9:52 AM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: Martin Pritikin <martin.pritikin@purdueglobal.edu>, PG Provost <provost@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Nicole, I was trying to be helpful with my response. It seemed you had concerns I could address, so I did. I see one in your latest email I can help with:

As to Module One, what I said was "I saw your turnitin report. Please consider the matter closed as to the Turnitin similarity report for ordinary plagiarism on Module One."
This is because it became clear that you were the one who uploaded the original assignment that was tripping the 98% similarity report. So to be clear, you are NOT accused of copying another student's work verbatim.

[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                 Fri, Mar 13, 2026 at 10:25 AM
To: Shaun Jamison <sjamison@purdueglobal.edu>
Cc: Martin Pritikin <martin.pritikin@purdueglobal.edu>, PG Provost <provost@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>
Bcc: "Dr. Nicole Lawtone-Bowles" <nicolelawtone@aol.com>

Shaun Jamison,

Here is why I am calling for your dismissal. Due to your failure to accommodate me for assistive technology, I am in danger of not graduating on August 25, 2026. I am also in danger of not taking the bar in Connecticut in February 2027 because you accuse me of academic misconduct when the issue is that you failed to accommodate me. Based on your assumptions, accusations, and decisions, the first time I could not even get a virtual meeting. The second time I had a virtual meeting, and it was a waste of my time because I was still considered not credible, so I was considered guilty of using Dragon Legal, which is assistive technology. Your decisions have damaged my life, my reputation, and my moral character. I am calling for your dismissal.


First Breach

Term: 2505L

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 33 of 136

Class: CL685-01: Criminal Procedure

Assignment: Modules 6 and 10 Essay

Instructor Name: Victoria Vidt

I received zeros and still got a B- in the class.


Second Breach

Term: 2601L

Class: CL760-01: Community Property

Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion

Instructor Name: Brian Victor

Which resulted in an F and being locked out of the class and forced to repeat it the next semester even though I already completed all the work.


Third Breach

Term: 2601L

Class: CL850-01: Education Law

Assignment: Modules 1 and 8

Instructor Name: Sarah Diab

If I am found guilty of this, I could be expelled from school with 165 days left to graduation day.

All reports of academic dishonesty are recorded in Purdue Global's database and remain there permanently, so I cannot even come back to do my Doctorate in Health Sciences Degree.

You are single-handedly ruining my life in real time. I want you to be fired for failure to accommodate.


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Martin Pritikin** <martin.pritikin@purdueglobal.edu>             Fri, Mar 13, 2026 at 11:25 AM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: Shaun Jamison <sjamison@purdueglobal.edu>, PG Provost <provost@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Nicole,

My inbox has been inundated with dozens of lengthy emails from you over a period of weeks, even though I have already explained to you—twice—that it would be inappropriate for me to intervene directly into your academic integrity appeals.

I understand that you feel compelled to respond to every message you receive as soon as you receive it. However, I am going to make this _one attempt_ to get through to you where others have apparently been unable to do so, and then I must ask that you NOT respond to me. There is no reason to, as I am not the one that you need to persuade.

I have read your assertions—dozens if not hundreds of times—that you use talk-to-text technology, and that this is a permitted accommodation. I have also seen it explained to you—multiple times—that _that is not the issue._ And yet you keep raising that point repeatedly.

The issue that has been raised—and that, to my understanding, you have never once adequately addressed—is that **_even with the use of talk-to text technology,_** it is not credible that you would produce work at the speed and quality that you have. You seem to be unwilling or unable to grasp that distinction.

My understanding is that you have written essays designed to take an hour to respond to in a matter of minutes, featuring linear analysis and virtually no grammatical errors. Regardless of race, gender, or disability status, it is doubtful that _any_ student using permitted talk-to-text technology could do that without the assistance of prohibited AI.

To illustrate (and I don't know all the details of your essays, so I will use a hypothetical): Suppose a student writes a 1,000-word essay response in 10 minutes. We recommend students take the first ten minutes of an hour-long essay quiz just to read and outline their answer. But at a minimum, simply reading the page-long problem itself would take several minutes. Theoretically, a student could start dictating their answer right away after reading the prompt, without first thinking about or planning what they would say. But the less time someone spends planning what they will say, the less likely it is that they will be able to dictate sentences and paragraphs on the first try that are analytically sound and grammatically near perfect, especially without significant pauses or backtracking. (I have met one person in my life who could speak off the cuff in perfect outline form, with neat paragraphs with topic sentences, etc., without pauses, filler words, or backtracking. That is the eminent constitutional law scholar Erwin Chemerinsky. With all due respect, you are not on Professor Chemerinsky's level, and neither am I.) A dictation speed of 150 words per minute, even if someone is clear on what they are going to say, is impressive. But even at that speed, a student would be hard-pressed to read the problem and dictate 1,000 words in 10 minutes, let alone produce polished work as a result.

So while it is not literally impossible that a student could generate a 1,000 word essay in 10 minutes, is raises questions—particularly because there is the plausible alternate possibility that the student used prohibited AI. As you are no doubt aware, someone can feed an essay prompt into a generative AI platform and ask it to generate a response (including a desired length, tone, etc.), and the AI will generate a grammatically flawless response in less than a minute. So when a professor sees a lengthy and flawless student response generated in a matter of minutes, it raises a strong possibility of cheating.

In a typical case, where a student has our Respondus remote proctoring feature enabled on their computer for a timed assessment, the professor could simply review the video recording of the student taking the assessment. If the recording showed that the student was reading silently for several minutes, and then showed the student verbally dictating words that matched up with the written submission, in an amount of time that tracked the time it took to complete the submission, that would conclusively resolve the issue and would lead to the conclusion that the student had not cheated.

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 3-1    filed 04/09/26    page 34 of 136

My understanding is that in your case, Respondus remote proctoring has been disabled, apparently because it conflicts with your accommodation. As such, there is no video available to verify how you generated your essay responses.

I also understand that you have been asked—repeatedly—to demonstrate that you could generate responses to law school questions at a speed and quality that matches your submissions, and you have been unable to do so. I also understand that you have been unable to produce any drafts, saved documents with metadata, or other corroborating evidence that would support your assertion that you generated your answers using tak-to-text software without the assistance of prohibited generative AI.

Instead of demonstrating your ability to generate high-quality responses in a matter of minutes, you have attached (at least in emails I have been copied on) documents or other exhibits that dance around the issue but don't actually address the core question that has been put to you again and again. For example, you generated a 49-minute video—that contained no audio—that showed, among other things, a few sentences at a time relating to one of your various written grievances being generated, ostensibly with talk-to-text software. That is not evidence that you can create a high-quality hour-long law school essay response in a matter of minutes. The fact that you would repeatedly provide irrelevant or unpersuasive evidence suggests that you do not have more compelling evidence to provide, and/or that you do not understand the issues—which does not bode well for your claim that you generated the high-quality written work yourself and did so quickly.

Indeed, I would note that in your correspondence with me, you often have great difficulty responding to straightforward questions with answers that are succinct and on-point. Your messages tend to ramble and be repetitive, and are far from grammatically flawless. Good legal writing requires understanding what is—or is not—at issue, addressing that issue in a clear and linear fashion. If the way you have communicated with me is the way you have been communicating with your professors or the academic appeals committee, I am not surprised that they have not been persuaded as to the authenticity of your coursework.

If you generated the work on your own, you should be able to reproduce that process live in the presence of factfinders. *That* would be persuasive. If you have been unable or unwilling to do so, that is not an indication that your factfinders are somehow racist or biased or violating their professional duties. It is an indication that you have not provided them with persuasive evidence. You may not be willing to believe this, but no one is out to get you. They're looking for relevant facts, and you haven't given them any.

Relatedly, my understanding is that you completed 19 credits of work—more than 800 hours of total study—in a period of between two and three weeks, while also working a full-time job. Again, this is a matter of plausibility, not probability. Even if you completed the work in half the time it takes an ordinary student, there are simply not enough hours in the day to do all that. This further undercuts your credibility and your assertion that you did all the work yourself.

Granted, no one was personally there when you created your work, so no one know for sure exactly how you did it. But as explained above, there is good reason to think that you did not do the work yourself, and you have failed and refused repeatedly to provide persuasive evidence to the contrary. Going forward, I would encourage you to take responsibility for the fact that numerous reasonable people have all come to the same conclusion—that it seems more likely than not that you used unauthorized generative AI for the substance of your work. I also strongly encourage you to stop accusing everyone who disagrees with you of bias or being derelict in their duties, and instead focus on providing persuasive evidence rather than distractions. If you can actually provide such persuasive evidence, I am confident it will carry the day. If you cannot, then the consequences of that will be what they will be.

I am not naive enough to think that this one email will somehow get through to you. In fact, given your scorched-earth tactics to date, I would not be surprised if you filed a specious state bar complaint against me or otherwise tried to ruin my career or destroy the school because I have had the nerve to tell you that I disagree with you. But whatever you do, please, please, please, do not fill my inbox with any more screeds. You have already consumed countless hours of time of numerous faculty and administrators. I must insist that you not waste my time any further.

All the best,
Dean Pritikin

[Quoted text hidden]

 Gmail                                         **Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>**

---

## Academic Dishonesty Appeal Outcome - 3rd Breach
7 messages

---

**PG Provost** <provost@purdueglobal.edu>                                          Wed, Apr 1 at 16:48
To: <nicolelawtone@aol.com>, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: <Sarah.Diab@purdueglobal.edu>, Shaun Jamison <SJamison@purdueglobal.edu>

Dear Ms. Lawtone-Bowles,

Thank you for your patience while waiting for the outcome of your CL850-01: Education Law Academic Dishonesty Appeal.

Re the academic dishonesty breach of the Student Code of Conduct:

Supporting documentation from you, the instructor, and the Law School were reviewed by the Academic Appeals Committee as part of the March 25th, 2026 hearing process to determine if there was evidence of academic dishonesty.

The Committee found:

Based on the written submissions and the oral arguments presented at the virtual hearing, the Dean's representative has established, by a preponderance of the evidence, that the student committed academic misconduct in connection with both the Module 1 and Module 8 assignments. That same evidence would, in the alternative, even satisfy a clear-and-convincing standard.

With respect to the Module 1 assignment:

- Both the length of the submission (31 pages) and the level of polished prose are difficult to reconcile with the student's claim that the work was completed during the term without AI assistance. Alternatively, if the assignment was started prior to the beginning of the term, this would also raise concerns of misconduct, as the student affirmed—via the end-of-module acknowledgment—that the work was completed during the assigned period.
- The citations in the Module 1 assignment reinforce the view that the student used generative AI. The student cited T.K. v. New York City Department of Education, 779 F.3d 144 (2d Cir. 2015), but no such case appears at that citation. That reporter citation instead corresponds to Newton v. City of New York, 779 F.3d 140 (2d Cir. 2015), an unrelated case. Likewise, although N.Y. Educ. Law § 3204(1) does exist as a statute, it does not concern, as the student asserted on page 9, "minimum instructional requirements." Rather, it addresses the place of instruction. These inaccuracies are notable in light of the student's stated advanced legal training (including a master's degree in law) and her representation during oral argument that she was trained to carefully proofread citations. Under such circumstances, these errors are less consistent with ordinary inadvertence and more consistent with citation fabrication or AI-generated hallucination, both of which undermine the credibility of the submission.

With respect to the Module 8 assignment:

- As the student conceded during oral argument, the years given for the case citations in her assignment were almost all incorrect, with Appeal of Aversa as the apparent exception.
- Second, with the same exception, the cited cases bore little or no relation to the propositions for which they were offered. For example, Appeal of R.D. concerned residency; Appeal of B.M. concerned grading; and Appeal of A.M. concerned a school district's failure to adopt a budget. The decision the student identified as Appeal of P.B. was, in fact, Appeal of S.U. In addition, one of the cited authorities, "Decision 17,297," actually stated that "hearsay alone may constitute competent and substantial evidence," which directly contradicts the proposition asserted on page 5 of the student's paper that hearsay "may not, standing alone, constitute substantial evidence."
- Third, the student's explanations for these discrepancies were inconsistent. When asked where she had obtained the cases, the student stated that she found them on the New York website for administrative decisions. At the same time,

despite citing to that reporter, she appears not to have had access to the Education Department Reporter, a specialized reporter not available through the school's Westlaw subscription. When asked to explain the mismatch between the cited authorities and the legal propositions attributed to them, the student asserted that she believed the assignment required her to generate fictional cases. That explanation, however, is difficult to reconcile with her March 24, 2026, email to the Committee, in which she stated that she was providing PDFs of the cases so that the Committee could "cross-check" them against the propositions in her paper and verify that "the cases are real." Moreover, with respect to the citations to the Education Department Reporter, the student appeared to acknowledge at oral argument that she had fabricated those citations, which would explain why she could not provide the Committee with the corresponding decisions from that reporter rather than from the public website.

Taken together, these errors and shifting explanations led the Committee to conclude that the Module 8 assignment did not reflect genuine legal research and writing but was rather the product of AI hallucinations. If, however, the Committee was incorrect in that conclusion, and the student created all the work without using generative AI, the gross mismatch between the authorities cited and the propositions claimed would constitute academic misconduct.

The Committee, therefore, determined that this constitutes a violation of the Student Code of Conduct. This is your third Academic Dishonesty breach. It will be recorded in the Purdue Global database and remain permanently, per the catalog. This breach will result in dismissal from the university. Prior to any dismissal action, you have a final option to appeal within 10 days of receiving this notification. This appeal should present evidence that the just-completed hearing did not consider.

If dismissed, any future application to return to the university must be reviewed and approved by the Dean of the School, who has the final decision.

If you decide to appeal the outcome of the hearing, you may send the new evidence to the Office of the Provost within 10 days of receiving the Committee's decision. The Office of the Provost will review the Committee's appeal decision process, the information submitted as part of the hearing, and any new material presented to make a final ruling.

Please email provost@purdueglobal.edu with any questions.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu



---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>    Wed, Apr 1 at 17:06
To: PG Provost <provost@purdueglobal.edu>
Cc: <nicolelawtone@aol.com>, <Sarah.Diab@purdueglobal.edu>, Shaun Jamison <sjamison@purdueglobal.edu>

# I respectfully submit this final appeal regarding the decision to dismiss me from Purdue Global University following the Academic Appeals Committee's findings .

I take this matter very seriously and understand the Committee's concerns regarding my assignments. I sincerely regret the errors and inconsistencies in my work, particularly with respect to the citations and legal authorities referenced. I acknowledge that these issues raised significant concerns about the integrity of my submissions.

I am asking for an opportunity to complete my program under strict academic probation rather than dismissal. I am currently scheduled to graduate, and completing my degree would have a significant impact on my professional and personal future.

I want to emphasize that it was never my intention to misrepresent my work or violate academic standards. The mistakes in my assignments reflect poor judgment and inadequate verification of sources, and I take full responsibility for that. I am committed to adhering to all academic integrity policies moving forward.

If granted the opportunity to remain enrolled, I

am fully willing to accept any conditions the University deems appropriate, including academic probation, monitoring, or additional oversight of my work.

I respectfully ask that you consider my request for leniency and allow me the opportunity to finish my degree.

Thank you for your time and consideration.

Sincerely,
Nicole Lawtone-Bowles

[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>          Wed, Apr 1 at 21:45
To: PG Provost <provost@purdueglobal.edu>
Cc: <nicolelawtone@aol.com>, <Sarah.Diab@purdueglobal.edu>, Shaun Jamison <SJamison@purdueglobal.edu>

To whom it may concern, This is a real case. Click the links in red: T.K. v. New York City Department of Education, 779 F.3d 144 (2d Cir. 2015). My citation is wrong. see attached links T.K. v. New York City Department of Education United States District Court for the Eastern District of New York 779 F. Supp. 2d 289 (2011) This statue does exist see N.Y. Educ. Law § 3204(1).

Also, see attached directions for each assignment listed. I still have to read cases to create a hypothetical See M8 instructions in red "

"Assume that you are a hearing officer for a state education agency in your state. The local school board voted to expel the student in Problem 2. The student appealed to the state agency
asking that the decision be overturned, and the student be permitted to return to school.
You were assigned to decide the case."

[Quoted text hidden]
CL850_M1_AssignmentDetails.pdf, CL850_M8_AssignmentDetails.pdf

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu> . Wed, Apr 1 at 22:06
To: PG Provost <provost@purdueglobal.edu>
Cc: <nicolelawtone@aol.com>, <Sarah.Diab@purdueglobal.edu>, Shaun Jamison <SJamison@purdueglobal.edu>

To whom it may concern,
See the case and statute in the Module 1 assignment, which is real. Westlaw could not find the case. The case is real, see attached.
[Quoted text hidden]
t.k._v._nyc_dept_of_educ._2d_cir._01-20-16.pdf, NYS Open Legislation _ NYSenate.gov.pdf,
tknycdoebrief.pdf

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu> Thu, Apr 2 at 00:36

To: PG Provost <provost@purdueglobal.edu>
Cc: <nicolelawtone@aol.com>, <Sarah.Diab@purdueglobal.edu>, Shaun Jamison <SJamison@purdueglobal.edu>

To Whom It May Concern,
Westlaw is no good. LexisNexis found the T.K. v. New York City Department of Education case with no problem. See attached. Also, according to the TurnItIn Module 1 Assignment, the teachers' TurnItIn view showed that no AI was used. So it did not pick up my Assistive Technology.

[Quoted text hidden]
Westlaw TK v New York City Department of Education.docx, Lexis Nexis TK v New York City Department of Education.pdf, Appeal of Shaun G Jamison.pdf

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                    Thu, Apr 2 at 04:35
To: PG Provost <provost@purdueglobal.edu>
Cc: <nicolelawtone@aol.com>, <Sarah.Diab@purdueglobal.edu>, Shaun Jamison <SJamison@purdueglobal.edu>

Good morning,
Just filled out .
[Quoted text hidden]
lawstudentinternappearanceform 2024.pdf

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                    Thu, Apr 2 at 07:53
To: <jenningslaw@gmail.com>

[Quoted text hidden]
lawstudentinternappearanceform 2024.pdf

Nicole Lawtone-Bowles
56 Center Street
Highland Falls, New York
(347) 538-5386| (845)839-0220
NicoleLawtone@aol.com

PURDUE GLOBAL LAW SCHOOL (FORMERLY CONCORD LAW SCHOOL)
2029 CENTURY PARK EAST, SUITE 400, LOS ANGELES, CA 90067

NICOLE LAWTONE-BOWLES,

Plaintiff,

vs.

PURDUE GLOBAL LAW SCHOOL,
FORMERLY CONCORD LAW
SCHOOL,

Defendant

Case No.: ⬛⬛⬛

ACADEMIC INTEGRITY APPEAL

Academic Integrity Appeal

Dear Carolyn Nordstrom, Martin Pritikin, Shaun Jamison, Sarah Diab, and the Office of the Provost,

I am responding to the notice dated March 10, 2026, confirming a third Academic Dishonesty breach under the Purdue Global Student Code of Conduct. I dispute each of the alleged breaches listed in the notice and request that the accusations be formally reviewed in light of my documented disability accommodations approved through Student Accessibility Services. I am a disabled student enrolled in the Juris Doctor program at Purdue Global Law School, formerly Concord Law School, and I have approved accommodations that include the use of speech-to-text assistive technology to complete written assignments

ACADEMIC INTEGRITY APPEAL - 1

because my medical conditions limit my ability to type for extended periods of time. My assignments are produced through dictation software that converts spoken language directly into written text, which naturally produces writing more quickly than traditional keyboard typing. The characteristics of dictated writing can also appear structurally different from typing because spoken language is converted into text in real time.

With respect to the First Breach listed for Term 2505L in CL685-01 Criminal Procedure, Modules 6 and 10 Essay assignments taught by Professor Victoria Vidt, the work in question was produced through speech-to-text dictation technology that had already been approved by Student Accessibility Services as a disability accommodation. The speed at which the written text appeared was the result of dictated speech being converted into written language rather than typing. My use of this technology was necessary because my disabilities affect my ability to type for prolonged periods of time. The assignments were completed by me and reflect my own legal analysis and coursework. Any appearance that the writing was produced unusually quickly is directly attributable to the assistive technology used for disability accommodation.

With respect to the Second Breach listed for Term 2601L in CL760-01 Community Property, including Modules 4, 10, and 11 Essay Quiz and Module 11 Discussion taught by Professor Brian Victor, the assignments were again produced

ACADEMIC INTEGRITY APPEAL - 2

through approved speech-to-text assistive technology. Because I dictate my work rather than type it, the pace at which text appears can differ significantly from traditional keyboard entry. The content of the work reflects my own understanding of the course materials and legal doctrines being studied. My use of dictation software was not hidden and was necessary due to documented medical conditions that affect my physical ability to type. The differences observed in the structure or speed of the writing are consistent with speech-to-text technology and not evidence of academic misconduct.

With respect to the Third Breach listed for Term 2601L in CL850-01 Education Law, Modules 1 and 8 taught by Professor Sarah Diab, the assignments were also completed using the same approved speech-to-text technology. The writing was dictated by me as part of my normal academic workflow established through Student Accessibility Services accommodations. Speech-to-text dictation produces written work that may appear faster or stylistically different because spoken language is transcribed directly into text. The work represents my own analysis of the course materials and was completed by me. Any perceived irregularities in speed or structure arise from the assistive technology required by my disability rather than from the use of artificial intelligence or any other unauthorized tool.

ACADEMIC INTEGRITY APPEAL - 3

I respectfully request that these breaches be reevaluated in light of my approved disability accommodations and the documented use of assistive technology necessary for me to complete my coursework. The accusations appear to have been based on assumptions regarding writing speed and structure without consideration of how speech-to-text technology functions. My use of this technology has been formally approved and is required because of documented medical conditions that affect my ability to type for extended periods. I have consistently completed my coursework using my own analysis and dictated writing. I therefore request that the alleged breaches be removed from my academic record following review of the circumstances and my approved accommodations.

Dated this day, 10th of March 2026.

/s/Nicole Lawtone-Bowles
56 Center Street
Highland Falls, New York
(347) 538-5386| (845)839-0220
NicoleLawtone@aol.com

ACADEMIC INTEGRITY APPEAL - 4

Nicole Lawtone-Bowles
56 Center Street
Highland Falls, New York
(347) 538-5386| (845)839-0220
NicoleLawtone@aol.com

PURDUE GLOBAL LAW SCHOOL (FORMERLY CONCORD LAW SCHOOL)
2029 CENTURY PARK EAST, SUITE 400, LOS ANGELES, CA 90067

| | |
|---|---|
| NICOLE LAWTONE-BOWLES, | Case No.: ▨▨▨ |
| Plaintiff, | |
| vs. | ACADEMIC INTEGRITY APPEAL |
| PURDUE GLOBAL LAW SCHOOL, FORMERLY CONCORD LAW SCHOOL, | |
| Defendant | |

Academic Integrity Appeal

Dear Office of the Provost,

I submit this Academic Integrity Appeal in response to the notice dated March 10, 2026, stating that I have received a third Academic Dishonesty breach under the Purdue Global Student Code of Conduct. I respectfully dispute the findings associated with each alleged breach. My written assignments were produced using speech-to-text assistive technology that has been formally approved by Student Accessibility Services as a disability accommodation. Because of documented medical conditions that limit my ability to type for extended periods of time, dictation software is the primary method through which I complete written coursework. The characteristics and speed of dictated writing

ACADEMIC INTEGRITY APPEAL - 6

differ from traditional keyboard typing and may have been misinterpreted as evidence of artificial intelligence use.

I am a disabled student enrolled in the Juris Doctor program at Purdue Global Law School, formerly Concord Law School. Student Accessibility Services approved my use of speech-to-text software so that I can complete written assignments without aggravating my medical conditions. This software converts spoken words directly into written text, allowing assignments to appear on the screen much faster than if they were typed manually. The speed and structure of dictated text can therefore appear different from traditional typing patterns. However, the work submitted in my courses reflects my own legal analysis and academic work.

The first breach referenced in the notice concerns Term 2505L, CL685-01 Criminal Procedure, Modules 6 and 10 Essay assignments taught by Professor Victoria Vidt. Those assignments were completed using my approved speech-to-text accommodation. I dictated my legal analysis verbally, and the software converted my speech into written text. Because speech can be transcribed quickly, the resulting document may appear to have been written faster than typical typed work. The content of the assignments reflects my own understanding of the course materials and was not generated by artificial intelligence.

ACADEMIC INTEGRITY APPEAL - 7

The second breach referenced in the notice concerns Term 2601L, CL760-01 Community Property, including Modules 4, 10, and 11 Essay Quiz and the Module 11 Discussion taught by Professor Brian Victor. These assignments were also produced through the same approved speech-to-text technology required by my disability accommodation. The dictation process allows ideas to be expressed verbally and converted into text in real time. As a result, the pace at which the written work appears may be faster than keyboard typing. The substance of the assignments reflects my own legal reasoning and coursework.

The third breach referenced in the notice concerns Term 2601L, CL850-01 Education Law, Modules 1 and 8 taught by Professor Sarah Diab. These assignments were likewise completed using the same approved assistive technology. My writing process involves dictating my analysis verbally due to physical limitations affecting my ability to type. Speech-to-text transcription can produce writing that appears stylistically different because spoken language is translated directly into written form. The work submitted in the course was dictated by me and reflects my own academic work.

The allegations appear to be based on assumptions regarding the speed or characteristics of the written text rather than on evidence of unauthorized tools. Because my assignments were produced through assistive technology required by my disability accommodation, the writing process differs from traditional typing

ACADEMIC INTEGRITY APPEAL - 8

methods. These differences are directly related to the functionality of speech-to-text software. My use of this technology has been approved by Student Accessibility Services. The writing submitted in my courses represents my own work and analysis.

For these reasons, I respectfully request that the Academic Dishonesty breaches be reviewed and reconsidered in light of my approved disability accommodations and the assistive technology required to complete my coursework. I request that the allegations be removed from my academic record following a review of the circumstances and the documentation supporting my accommodations. I remain committed to academic integrity and to completing my legal education in accordance with university policies and approved accommodations. I appreciate your time and consideration of this appeal. I am prepared to provide any documentation necessary to support this request.

/s/Nicole Lawtone-Bowles
56 Center Street
Highland Falls, New York
(347) 538-5386| (845)839-0220
NicoleLawtone@aol.com

ACADEMIC INTEGRITY APPEAL - 9



March 4th, 2026

Dear Nicole Lawtone-Bowles,

I received your appeal of the decision by the Academic Appeals Committee about a grade received in CL760-01: Community Property.

In my review of your appeal, I examined the assignment requirements, syllabus, and all other associated documents, as well as any additional materials submitted to the Appeals Committee.

After careful consideration of all the information provided, I am upholding the decision to deny your appeal. While I understand this was not the outcome you sought, I found no compelling evidence to contradict the Appeals Committee.

Sincerely,

**Carolyn Nordstrom, Ph.D.**
Pronouns: she, her, hers
Provost

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

# Avoiding the Discriminatory Use of Artificial Intelligence

The U.S. Department of Education's (Department's) Office for Civil Rights (OCR) provides this resource to assist school communities with ensuring that artificial intelligence (AI) is used in a nondiscriminatory manner in the nation's elementary and secondary schools and institutions of higher education consistent with federal civil rights laws.[i] Within this resource, AI means a machine-based system that can, for a given set of human-defined objectives, make predictions, recommendations, or decisions influencing real or virtual environments.[ii] AI technologies have the potential to enhance opportunities and increase educational equity for all students. At the same time, the growing use of AI in schools, including for instructional and school safety purposes, and AI's ability to operate on a mass scale can create or contribute to discrimination.

*The Department's Office of Educational Technology (OET) has released several resources which provide helpful information about the use of artificial intelligence in education settings that are available on OET's website.*

OCR enforces several federal civil rights laws that prohibit discrimination in programs or activities that receive federal financial assistance from the Department, including Title VI of the Civil Rights Act of 1964 (Title VI), which prohibits discrimination on the basis of race, color, or national origin; Title IX of the Education Amendments of 1972 (Title IX), which prohibits discrimination on the basis of sex; and Section 504 of the Rehabilitation Act of 1973 (Section 504), which prohibits discrimination on the basis of disability.[iii] OCR shares in the enforcement of Title II of the Americans with Disabilities Act of 1990 (Title II) with the U.S. Department of Justice. Title II prohibits discrimination on the basis of disability by state and local governments, regardless of whether or not those entities receive federal financial assistance.[iv] Each of the statutes OCR enforces and their implementing regulations also prohibits retaliation.[v]

The nondiscrimination provisions of these federal civil rights laws apply to discrimination resulting from the use of AI. This resource provides information regarding federal civil rights laws in OCR's jurisdiction and includes examples of types of incidents that could, depending on the facts and circumstances, present OCR with sufficient reason to open an investigation. Many of the examples included in this resource highlight conduct of schools and colleges that could also constitute discrimination without the use of AI technologies, but which may be compounded by its use. These examples are illustrative, non-exhaustive, and do not dictate the outcome of any particular matter OCR may investigate; rather, in each case, OCR engages in an individualized analysis of the particular facts at issue. OCR will open a case for investigation if the allegation(s) could state a violation of one of the laws or regulations that OCR enforces; this is an initial determination prior to investigation and not a finding or conclusion regarding

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

the allegations. If OCR opens an investigation, any determination about whether discrimination has occurred or is occurring would depend on particular facts and circumstances.

The contents of this guidance do not have the force and effect of law and do not bind the public or create new legal standards. This document is designed to provide clarity to the public regarding existing legal requirements under the civil rights laws that OCR enforces.

---

*Anyone who believes that they or someone else has been discriminated against by a school or other recipient based on race, color, national origin, sex, disability, or age can file a complaint of discrimination with OCR using OCR's Electronic Complaint Assessment System.*

---

## Race, Color, or National Origin Discrimination:

Title VI states "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[vi]

**Examples 1 through 7 below include the kinds of incidents that could, depending upon facts and circumstances, constitute race, color, or national origin discrimination under Title VI.**

Title VI's protection extends to students with a shared ancestry or ethnic characteristics, including students from different countries or regions in the world. Title VI's protection also extends to students who are English Learners (ELs) and parents and guardians who have limited English proficiency (LEP). Specifically, Title VI requires elementary and secondary schools to provide appropriate language assistance services to students who are ELs that enable them to become proficient in English and participate equally and meaningfully in the standard instructional program within a reasonable period of time.[vii] Additionally, appropriate language assistance services must be educationally sound in theory and effective in practice.[viii]

OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Examples 1 and 2 below, which involve students who are ELs:

Example 1: A high school English teacher assigns the class a book report. After the students turn in their reports, the teacher grades them but decides to also run the reports through a free online service that inaccurately claims it can spot use of generative AI and prevent cheating and plagiarism. Unbeknownst to the teacher, the service has a low error rate for evaluating essays written by native English speakers for use of generative AI but has a high error rate when evaluating essays written by non-native English speakers. The detector flags as AI-generated the essays written by the class's only two students who are ELs, though they did not use AI or plagiarize. As a result, the teacher gives them both a failing grade and writes them up for academic dishonesty. A parent of one of the students appeals the student's grade and academic dishonesty charge. The principal tells the parent that she believes the AI-detection checker over the student's objections and that the school will continue to use the checker to ensure all papers are free from plagiarism. *OCR would likely have reason to open an investigation based on*

*November 2024 (Revised January 2025)*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

*this complaint.* Based on the facts, as alleged, the students who are ELs may not be able to participate equally and meaningfully in the standard instructional program of the school.

Example 2: An elementary school's supplemental English language development program for students who are ELs relies almost exclusively on a computer-based program that markets itself as a personalized learning program. This program will supplement instruction for students who are ELs in listening, speaking, reading, and writing. Twice a week, students who are ELs use this computer program for thirty minutes while non-EL students receive direct literacy intervention instruction from a classroom teacher. While the teachers are trained to assist if a student who is an EL has technical difficulty (e.g., login issues), they are not trained in providing English language development instruction and are unprepared to do so. A teacher files a complaint with OCR alleging that none of the students who are ELs are improving in their English language skills after two years in the EL program. *OCR would likely have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the students who are ELs may not be able to participate equally and meaningfully in the standard instructional program of the school.

---

For more information regarding students who are ELs, please see:

- English Learner Students and Limited English Proficient Parents Dear Colleague Letter
- Ensuring English Learner Students Can Participate Meaningfully and Equally in Educational Programs Fact Sheet
- Equal Educational Opportunities for English Learners Website

---

Title VI requires that elementary and secondary schools ensure meaningful communication with parents and guardians who have LEP in a language they can understand. Elementary and secondary schools may take steps to provide effective language assistance to parents and guardians who have LEP by providing accurate written translations or oral interpretation.[ix]

OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Example 3 below, which involves parents who have LEP:

Example 3: Teachers at a middle school often rely on non-contracted, online third-party applications and websites to translate and interpret for parents who have LEP. Some of these applications leverage AI to translate or interpret. A parent complains to the school's principal that they have been unable to communicate with their child's teacher regarding the child's academic and behavioral progress in class due to incoherent translations. The school does not investigate or attempt to resolve the parent's concern. *OCR would likely have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the school may not be ensuring meaningful communication with parents who have LEP in a language the parents can understand.

*November 2024 (Revised January 2025)*

> For more information regarding parents and guardians who have LEP, please see:
>
> - English Learner Students and Limited English Proficient Parents Dear Colleague Letter
> - Information for Limited English Proficient Parents and Guardians and for Schools and School Districts that Communicate with Them Fact Sheet
> - Equal Educational Opportunities for English Learners Website

Harassment creates a hostile environment under Title VI if school staff, a student, or another person engages in unwelcome conduct based on race, color, or national origin that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity. OCR could find a Title VI violation if: (1) a hostile environment based on race, color, or national origin existed; (2) the school had actual or constructive notice (in other words, the school knew or should have known) of the hostile environment; and (3) the school failed to take prompt and effective steps reasonably calculated to (i) end the harassment, (ii) eliminate any hostile environment and its effects, and (iii) prevent the harassment from recurring.[x]

OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Example 4 below, which involves harassment under Title VI:

> Example 4: A school district purchases facial recognition technology from a third-party vendor that markets its product as essential for school safety. The school district is unaware that the facial recognition technology it purchased has difficulty accurately recognizing the faces of students of color and consistently misidentifies Black individuals. A school in the district compiles a persons of interest list that includes individuals arrested for drug usage in the area and individuals who have been issued trespass warnings, including previously expelled students. If the facial recognition system detects that a person of interest is on campus, it sends an alert to specified school personnel. The system mistakenly flags several Black students multiple times throughout the school year, causing each student to be stopped and questioned by the school's resource officer and administrators. The students complain to the principal that they are being falsely flagged and questioned. The students flagged are also pulled out of class on multiple occasions to verify that they are not on the persons of interest list. The school does not take any actions in response to the students' complaints or to resolve the students' missed class time. Other students begin calling Black students "criminals" based on their continued interactions with the resource officer. *OCR would likely have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the students may have experienced a hostile environment due to the multiple false flags, being pulled out of class and questioned, and the allegations regarding peer harassment.

> For more information, please see:
>
> - Harassment Website
> - Harassment based on Race, Color, or National Origin on School Campuses Fact Sheet
> - Race and School Programming Dear Colleague Letter

*November 2024 (Revised January 2025)*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

Under Title VI, discrimination can occur when a school implements or enforces a policy or practice in a manner that treats students differently based on race, color, or national origin. OCR frequently uses the following three step test to determine whether a school treated students differently based on race, color, or national origin in violation of Title VI:

1. Did the school treat a student or group of students of a particular race, color, or national origin differently from a similarly situated student or group of students of another race, color, or national origin? If no, then OCR would not find sufficient evidence to determine that the school has engaged in different treatment under this framework. If yes, then move to step two:

2. Can the school articulate a legitimate, nondiscriminatory reason for the different treatment? If no, OCR could find that the school has discriminated on the basis of race, color, or national origin. If yes, then move to step three:

3. Is the articulated reason for the different treatment a pretext for discrimination (i.e., not the true reason for the school's actions)? If yes, OCR could find that the school has engaged in discrimination based on race, color, or national origin.

OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Examples 5 and 6 below, which involve discrimination in student discipline:

Example 5: A school implements new risk assessment, AI-enabled software to determine appropriate discipline measures for students. The software gives students a risk score that estimates the likelihood of them committing a future severe infraction based on historic school discipline data. Significant disparities by race have persisted in the school's application of student discipline, and Black students are disciplined more frequently and more harshly than other similarly situated students of another race. As a result, the historic school discipline data that the software relies on reflects the school's discriminatory disciplinary practices. Whenever a student receives a disciplinary referral, the school uses the software to calculate the student's chance of reoffending and heavily relies on the risk score in determining the severity of punishment (for example, higher scores lead to more significant discipline). The AI software does not directly use the student's race as an input in calculating the risk score. Parents complain to the school after they notice that the software tends to give high scores to Black students and low scores to White students. The principal tells the parents they should trust the software because it does not have access to information about the student's race, so it is less biased to let a machine generate the risk score for discipline decisions than to let a school official do it. *OCR would likely have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the school may be treating Black students differently than similarly situated students of another race.

Example 6: A high school purchases AI-enabled software that uses predictive analytics to identify students with a higher likelihood of dropping out of school in order to monitor their progress. The software uses a number of inputs to make its determination including whether the student has a two-parent household, whether the student has a low attendance record, whether the student has a disciplinary record, and if the student is a member of a racial or ethnic minority group. As a result, the software flags a large portion of the school's Black and Hispanic/Latino student population. The software places red flags next to the identified students' names on classroom rosters. In preparation for college visitation week, the school's

*November 2024 (Revised January 2025)*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

assistant principal uses the outputs from the program to exclude red-flagged students based on his belief that they are unlikely to attend college and that it would be a waste of time. A Latino parent files a complaint against the school after their child is automatically excluded from college visitation events. *OCR would likely have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the school may be treating Black and Hispanic/Latino students differently than similarly situated students of other races.

> For more information, please see:
>
> - Discriminatory Discipline Website
> - Confronting Racial Discrimination in Student Discipline Resource

## Sex Discrimination:

OCR also enforces Title IX of the Education Amendments of 1972 (Title IX), which prohibits discrimination on the basis of sex in federal funding recipients' education programs and activities. The Department's Title IX regulations were amended in 2020 (2020 Notice of Final Rule; 2020 Title IX regulations) and again in 2024 (2024 Notice of Final Rule; 2024 Title IX regulations).[xi] On January 9, 2025, a federal district court issued a decision vacating the 2024 Final Rule. Consistent with the court's order, the 2024 Title IX regulations are not effective in any jurisdiction.

> For more information, please see:
>
> - Sex Discrimination: Overview
> - Resources for LGBTQI+ Students
> - Frequently Asked Questions About Sex Discrimination

**Examples 7 through 12 include the kinds of incidents that could, depending on facts and circumstances, constitute sex discrimination under Title IX.**

Under the 2024 Title IX regulations, sex-based harassment creates a hostile environment if school staff, a student, or another person engages in unwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity.[xii]

Under the 2020 Title IX regulations, sexual harassment creates a hostile environment if school staff, a student, or another person engages in unwelcome sex-based conduct that is so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity.

OCR would likely have reason to open an investigation of the allegations described in Examples 7 and 8 under the 2020 Title IX regulations or 2024 Title IX regulations.

OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Examples 7 and 8 below, which involve harassment under Title IX:

*November 2024 (Revised January 2025)*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

Example 7: A student uses a generative AI application to send repeated and continuous sexually explicit messages to a classmate's school email. That classmate's parents report the issue to administrators, asking the school to take actions to stop the messages. The principal states that because she does not have access to the tool the student is using to spam their classmate's email, she cannot investigate further or prevent the messages from being sent. *OCR would have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the student receiving the sexually explicit messages may have experienced prohibited harassment about which the school knew and failed to appropriately respond.

Example 8: A high school student discovers that a public anonymous social media account is posting images of a female student and other classmates that depict photographs of the students' faces with AI-created nude bodies (sometimes referred to as "deepfake nudes") and include sexually explicit comments and tags. Each new post by the account becomes a popular topic of discussion amongst students at the school. Another student brags to friends at the school about creating the account and then is reported to administrators. A third student reports the social media account to her parents who in turn file a complaint with the school. The school tells the parents that they are aware of the account due to multiple reports and have reported it to the police but that they cannot do anything further to ameliorate the situation until the police complete their investigation. *OCR would have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the students may have experienced prohibited harassment about which the school knew and failed to appropriately respond.

In addition to allegations of sex-based harassment that creates a hostile environment, under Title IX, OCR can investigate allegations that a school is implementing or enforcing a policy or practice in a manner that treats students differently based on sex. When determining whether a school treated students differently based on sex in violation of Title IX, OCR frequently uses a three-step test similar to the one described above in Examples 5 and 6.

<u>OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Examples 9 through 11 below, which involve a school implementing or enforcing a policy or practice in a manner that treats students differently based on sex:</u>

Example 9: A school uses AI software to make students' academic schedules. The software relies on historic data and students' demographics to determine course enrollments. Historically, male students were twice as likely to take computer science as compared to female students. The software creates schedules that place only one female student in the school's computer science class, which has thirty-five students. Other female students who want to take the computer science class ask the principal to re-do their schedules so they can take the course, but the principal declines, saying that it would be too time consuming to re-do their schedules. *OCR would have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the female students may have been treated differently than male students, who are otherwise similarly situated.

Example 10: A public college utilizes an AI-enabled software that uses predictive analytics to identify students who will be most successful in its engineering program, and then assigns each applicant a score. The score is weighted heavily in deciding whether to admit students to the

*November 2024 (Revised January 2025)*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

program, with lower weights being given to a student essay and answers provided on an application, which, among other things, includes the students' demographic information. The software uses data from past engineering applicants' acceptances and their demographics as an input for its analysis. Nearly 90% of past students are men. Though approximately equal numbers of male and female students apply, approximately 80% of students admitted to the program are male students. Several female applicants complain to administrators. The college dean tells them that he has full faith in the software and believes it is more than fair that 20% of the students admitted are female, since that is twice the percentage of female engineers in the state. *OCR would have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the female students may have been treated differently than similarly situated male students.

Example 11: A school uses facial recognition technology to check students into the school. The technology repeatedly flags students as a security risk if they do not conform to the technology's assumptions as to what girls and boys should look like, based on the sex specified in their school records. Students who are falsely flagged must wait for a school administrator to override the software, resulting in embarrassment and missed class time. The principal is aware of the problem but decides to keep using the technology due to perceived security benefits. *OCR would have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the students may have been treated worse than similarly situated students.

Under Title IX, a recipient that operates or sponsors interscholastic athletics must provide equal athletic opportunity, regardless of sex.[xiii]

OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Example 12 below, which potentially involves an unequal provision of athletic opportunities:

Example 12: A high school begins utilizing an AI tool to assist with the scheduling for athletic practices and games. The AI tool uses historical data from previous school year schedules to generate proposed schedules for boys' and girls' teams. A female basketball player complains to the school's athletic director that the girls' basketball team always plays on Tuesday or Wednesday night while the boys' basketball team consistently plays on Friday nights and Saturdays and therefore does not need to prepare for class the days after their games. The student also shares that the boys' basketball team receives all of the earlier practice times, and the girls' basketball team ends up practicing at 8:00 PM on weeknights. Although the athletic director retains oversight for scheduling, she tells the student that the AI tool is responsible for scheduling this year and that she does not know how to change it. She does not respond further to the student's complaint. *OCR would have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the school may not be providing equal athletic opportunity to members of the girls' basketball team.

## Disability Discrimination

Section 504 of the Rehabilitation Act of 1973 (Section 504) states that no otherwise qualified individual with a disability shall, solely by reason of their disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.[xiv]

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

> For more information, please see:
>
> - Disability Discrimination Issues Website
> - Students with Disabilities Preparing for Postsecondary Education Resource
> - Frequently Asked Questions on Effective Communication for Students with Hearing, Vision, or Speech Disabilities in Public Elementary and Secondary Schools

**Examples 13 through 18 include the kinds of incidents that could, depending upon facts and circumstances, constitute disability discrimination under Section 504.**

Section 504 requires colleges, universities, and other postsecondary institutions to provide equal opportunities to people with disabilities in all their operations, including equal opportunities to participate in and benefit from online programs and activities. Under Section 504, these recipients of Federal financial assistance must provide such academic adjustments, which can include reasonable modifications or auxiliary aids and services, as may be necessary to ensure that they do not discriminate on the basis of disability.

OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Example 13 below, which involves academic adjustments for a postsecondary student:

> Example 13: An AI test proctoring software uses facial recognition technology and eye movement tracking to monitor students for behavior that indicates they might be cheating during exams. A student with a disability receives a failing grade for an exam after the software flags her behavior as suspicious and her professor accuses her of cheating. The student appeals the grade because her vision impairment causes eye movements that the software falsely flagged as suspicious. The student also requests that she receive an academic adjustment so that she does not have to take tests using this particular proctoring software. The university threatens to expel the student if she is flagged for the same behavior again and does not respond to the student's request. *OCR would have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the student may not have been provided with necessary academic adjustments.

OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Example 14 below, which involves academic adjustments in the form of auxiliary aids and services for a postsecondary student:

> Example 14: A deaf student enrolls in a university's engineering program. The university provides the student with an AI-aided closed circuit captioning transcription application for class lectures. The student repeatedly informs the university with specific detail that the AI service provided to transcribe the lectures does not accurately capture the advanced engineering terminology essential to her education program. The university does not provide the student alternative auxiliary aids and services to access the class lectures. *OCR would have reason to open an investigation based on this complaint.* Based on the facts, as alleged, the student may not have been provided with necessary academic adjustments.

9 | Page

*November 2024 (Revised January 2025)*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

> For more information, please see:
>
> - Disability Discrimination Issues Website
> - Parent and Educator Resource Guide to Section 504 in Public Elementary and Secondary Schools
> - Protecting Students With Disabilities FAQ

Section 504 requires public elementary and secondary schools to provide students with disabilities with a free appropriate public education (FAPE). Under Section 504, FAPE is the provision of regular or special education and related aids and services that: (1) are designed to meet the individual educational needs of students with disabilities as adequately as the needs of students without disabilities are met; and (2) are based on adherence to procedures governing educational setting, evaluation and placement, and procedural safeguards.[xv] Parents and guardians have the right to challenge FAPE decisions using Section 504's procedural safeguards.[xvi]

OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Examples 15 and 16 below, which involve the provision of FAPE to elementary and secondary students:

> Example 15: A school staff member utilizes an AI-driven adaptive assessment to determine admission to the school's gifted program. The assessment's questions get more difficult if a student answers quickly and correctly, and students' scores on the tests are determined, in part, by how quickly students answer difficult questions. During the assessment, a student with attention-deficit/hyperactivity disorder (ADHD) is distracted and takes longer to answer questions, causing the assessment to produce easier questions, and thus reflects his disability rather than his actual aptitude or achievement. Although the student has an Individualized Education Program (IEP) with test taking accommodations including increased time, the teacher does not believe the IEP applies to the gifted admissions assessment. The student is deemed ineligible for the gifted program. The student's parent files a complaint alleging that the student's final score is lower than it would have been if the teacher had not used the AI-driven adaptive assessment and if the student had been provided with his test taking accommodations. *OCR would have reason to open this complaint for investigation.* Based on the facts, as alleged, the student may have experienced disability discrimination in the admissions process and/or not have been provided with FAPE.
>
> Example 16: A school district allows schools in the district to use a generative AI tool to write Section 504 Plans for students with disabilities. The school district does not have any policies regarding how to use the tool or how to ensure that the group of knowledgeable people responsible for evaluating a student review what the AI produces to determine whether it meets the individual needs of each student. One school begins using the tool to create Section 504 Plans for all students with diabetes. School staff do not review or modify the generated Section 504 Plans and begin implementing them, and they inform parents that they believe AI tools make more effective choices than people. A local group of parents of students with diabetes at that school files a complaint with the school district stating that their students' Section 504 Plans' provisions look almost identical and, in some cases, do not match the specific needs of their children. The school district states that they defer to the school's decision on how to utilize AI tools and does not investigate further. *OCR would have reason to open this complaint for*

*November 2024 (Revised January 2025)*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

USDC IN/ND case 4:25-cv-00028-PPS-AZ document 3-1 filed 04/05/25 page 60 of 136

*investigation.* Based on the facts, as alleged, students may not have been provided with FAPE because their 504 plans may not have been designed to meet their individual educational needs.

---

For more information, please see:

- Supporting Students with Disabilities and Avoiding the Discriminatory Use of Student Discipline under Section 504 of the Rehabilitation Act of 1973 Dear Colleague Letter
- Supporting Students with Disabilities and Avoiding the Discriminatory Use of Student Discipline Under Section 504 of the Rehabilitation Act of 1973 Fact Sheet
- Parent and Educator Resource Guide to Section 504 in Public Elementary and Secondary Schools

---

Section 504 requires schools to provide the services, supports, interventions, strategies, and modifications to school or district policies for students with disabilities to address any disability-based behavior, including behavior that could lead to discipline, and failure to do so may constitute a denial of FAPE. OCR's continued enforcement experience reflects that many students with disabilities also face discipline because they are not receiving those supports, services, interventions, strategies, and modifications to school or district policies that they need to manage their disability-based behavior. In addition to that discrimination, many students with disabilities are also subjected to discrimination based on their disability when being disciplined, such as when students with disabilities are unnecessarily disciplined more severely than students without disabilities for the same or similar behavior. When schools do discipline students with disabilities, they must do so in a nondiscriminatory manner.

OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Example 17 below, which involves discipline-related issues for a student with a disability:

> Example 17: A middle school uses content moderation software to alert the school if any language that violates the student code of conduct is used on school-issued devices. A student with obsessive-compulsive disorder has a compulsion to say certain swear words if certain inciting incidents occur, and using some of the words would otherwise violate the student code of conduct. The student's Section 504 Plan addresses the techniques the student and staff are using to work on this compulsion as well as what happens when the student uses the identified words. The student uses his school-issued device to chat with a peer and uses some of the words identified in his Section 504 Plan that would otherwise violate the student code of conduct. The content moderation software flags this language and alerts school officials that problematic language has been detected on his school-issued device. Based only on the flag from the content moderation software, the principal immediately punishes the student without consulting or following the procedures in the 504 Plan. The parent of the student files a complaint against the school stating that the school's disciplinary response denied the student FAPE. *OCR would have reason to open this complaint for investigation.* Based on the facts, as alleged, the school did not follow the student's 504 Plan and, and as a result, the student may not have been provided with FAPE.

Harassment creates a hostile environment under Section 504 if school staff, a student, or another person engages in unwelcome conduct based on disability that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or

*November 2024 (Revised January 2025)*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

denies a person's ability to participate in or benefit from the recipient's education program or activity. OCR could find a Section 504 violation in its enforcement work if: (1) a hostile environment based on disability existed; (2) the school had actual or constructive notice (in other words, the school knew or should have known) of the hostile environment; and (3) the school failed to take prompt and effective steps reasonably calculated to (i) end the harassment; (ii) eliminate any hostile environment and its effects; and (iii) prevent the harassment from recurring.

OCR would likely have reason to open an investigation if a person filed a complaint based on the facts included in Example 18 below, which involves harassment under Section 504:

> Example 18: An elementary school teacher uses an AI enabled application, which monitors noise and provides feedback to assist her in managing classroom noise. The application uses the class computer's built-in microphone to detect when students' voices are raised, and it displays a color meter ranging from green (quiet classroom) to red (loud classroom). The application tracks patterns for class noise and predicts the times of day that the teacher is likely to have more difficulty managing classroom noise. During the times of day that the application predicts will be the loudest, the teacher keeps the color meter projected for all the students to see and offers a pizza party if they only have a few instances where the meter reaches red. A student who is hard of hearing reports that they are being bullied by a few classmates because they believe the student's speaking voice consistently causes the meter to be red and the class does not receive a pizza party as a result. The school does not respond to the student's report, and the teacher tells the student that they need to learn to speak more quietly. *OCR would have reason to open this complaint for investigation.* Based on the facts, as alleged, the student may have experienced prohibited harassment about which the school knew and failed to appropriately respond.

## Multiple Bases Discrimination:
**Examples 19 through 21 include the kinds of incidents that could, depending upon facts and circumstances, constitute discrimination pertaining to <u>multiple bases</u> discussed above in this resource.**

> Example 19: A school district purchases an AI-driven application to streamline the universal screening process for speech and language disorders. The school district decides to only utilize the AI-driven application and not employ or seek opinions from Speech Language Pathologists, or other appropriate professionals. The application falsely flags students who are ELs as students with a speech disorder. The district refuses to evaluate students for speech and language disabilities, if a student was not identified through the universal screening, unless the student's parent obtains and submits a private diagnosis. The application also misses several students who have speech and language disorders. Although parents complain to the school about the inaccuracy of the AI-driven determinations, the school does not change its process. *OCR would have reason to open this complaint for investigation.* Based on the facts, as alleged, students who are ELs may not be able to equally and meaningfully participate in the standard instructional program. OCR would also investigate whether the school district's use of the AI-driven application is erroneously impacting its obligations to identify and locate qualified students with disabilities, to evaluate them, and provide FAPE.

*November 2024 (Revised January 2025)*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

Example 20: A school district starts using an internal software program to generate student Individualized Education Programs (IEPs). The software is trained on past IEPs to recommend appropriate placements for current students. The software inputs include all available demographic information about students, including race. Historically, more Black students with disabilities in the district had IEPs that included more hours of special education instruction in a separate setting and educational placements that were more restrictive than other students. Most of the IEPs for Black students that are generated by the software recommend more special education services in separate settings and would result in placements in restrictive educational environments, but the IEPs that the software generates for white students with similar disability-related needs recommends more integrated instruction and would result placements in less restrictive educational environments. A special education teacher complains to the principal that the software is drafting inappropriate IEPs for many of the Black students with disabilities, but the principal says the software is just doing its job and they do not have the resources to review every IEP to ensure that it is appropriate for each student. *OCR would have reason to open this complaint for investigation.* Based on the facts, as alleged, the school may be treating Black students differently than similarly situated white students, and students with disabilities may not be receiving FAPE.

Example 21: A high school purchases AI software that electronically tracks how often students sign out for hall passes to estimate students' mental well-being. The software flags students who sign out an electronic hall pass more than three times a day as a factor related to mental well-being. If the algorithm determines that a student has a low mental well-being score, the student is pulled out of class to have mandatory meetings with the school counselor. During the school's first week using the software, the algorithm gives low mental well-being scores to students who are menstruating, pregnant students, and students with gastrological disabilities, since those students needed to use the bathroom more than their peers. The students tell the principal that they would like to return to their classes and that they do not believe meetings with the counselor are needed or helpful, but the principal indicates that whether the meetings are needed or not, he cannot ignore a potential issue with a student's mental well-being flagged by the software. As a result, the students miss substantial learning time because of the mandatory meetings with the school counselor. *OCR would have reason to open this complaint for investigation.* Based on the facts, as alleged, the school may be treating students who are menstruating or pregnant differently than students who are not menstruating or pregnant. The school may also be failing to implement provisions or discouraging students from taking advantage of necessary provisions, such as unlimited bathroom breaks, in the Section 504 Plan of a student with a gastrological disability.

*November 2024 (Revised January 2025)*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

> For more information regarding students who are ELs, pregnancy and related conditions, and protections for students with GER or GERD:
>
> - English Learner Students and Limited English Proficient Parents Dear Colleague Letter
> - Ensuring English Learner Students Can Participate Meaningfully and Equally in Educational Programs Fact Sheet
> - Equal Access to Elementary and Secondary Education for Students Who Are English Learners with Disabilities Fact Sheet
> - Equal Educational Opportunities for English Learners Website
> - Discrimination Based on Pregnancy and Related Conditions
> - Section 504 Protections for Students with GER or GERD

Schools' use of AI and AI-driven technologies may also raise concerns pertaining to the Family Educational Rights and Privacy Act (FERPA), a statute not enforced by OCR. For more information on FERPA, please see the Department's FERPA website.

Anyone who believes that they or someone else has been discriminated against by a school or other recipient based on race, color, national origin, sex, disability, or age can file a complaint of discrimination with OCR using OCR's Electronic Complaint Assessment System. Complaint forms and other resources, available in languages other than English, are available on OCR's Resources Available in Other Languages website.

All of the federal civil rights laws enforced by OCR prohibit retaliation. In general, retaliation occurs when a school intimidates, threatens, coerces, or discriminates against an individual for one of two reasons: (1) Because the individual has made a complaint or testified, assisted, or participated in any manner in an OCR investigation or proceeding, or (2) For the purpose of interfering with any right or privilege under federal civil rights law enforced by OCR.

> For more information on the prohibitions against retaliation under federal civil rights laws, see OCR's website on Retaliation.

To request technical assistance—including webinars, trainings, or presentations at conferences or other local events—concerning the legal obligations for schools and colleges under federal civil rights laws, you can contact OCR at 800-421-3481 (TDD: 800-877-8339), at OCR@ed.gov, or through the contact information for OCR's regional offices available on the OCR Addresses Webpage. School boards and other related governmental agencies may also contact the regional Equity Assistance Centers, which are funded by the Department and provide technical assistance and training, in the nondiscrimination assistance areas of race, sex, national origin, and religion to promote equitable education opportunities.[xvii]

To request language access services or resources, which may include oral technical assistance or written translation of Department information, free of charge, contact OCR@ed.gov. If you need more information about interpretation or translation services, call 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-437-0833). To request documents in alternate formats such as Braille or large print, contact the Department at 202-260-0852 or om_eeos@ed.gov.

*November 2024 (Revised January 2025)*

This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

[i] Within this resource, "school(s)" or "college(s)" is used generally to refer to elementary, secondary, and postsecondary educational institutions that are recipients of federal financial assistance from the Department.

[ii] Artificial intelligence systems use machine- and human-based inputs to perceive real and virtual environments; abstract such perceptions into models through analysis in an automated manner; and use model inference to formulate options for information or action. *See* E.O. 14110, Safe, Secure, and Trustworthy Development and Use of Artificial Intelligence, 88 Fed. Reg. 75191-75226 (October 30, 2023); 15 U.S.C. 9401(3).

[iii] 42 U.S.C. § 2000d, *et seq.;* 20 U.S.C. § 1681 *et seq.;* 29 U.S.C. § 794. OCR also enforces the Age Discrimination Act of 1975, 42 U.S.C. § 6101 *et seq.*, and the Boy Scouts of America Equal Access Act, 20 U.S.C. § 7905. This letter does not specifically address those statutes.

[iv] Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131-12134, and DOJ's implementing regulation for Title II, 28 C.F.R. pt. 35, prohibit disability discrimination by State and local governments, regardless of whether they receive Federal funds. 42 U.S.C. § 12131 *et seq.* OCR and the U.S. Department of Justice share in the enforcement of Title II in public elementary and secondary education systems and institutions, public institutions of higher education, vocational education (other than schools of medicine, dentistry, nursing, and other health-related schools), and public libraries. 28 C.F.R. §§ 35.172– 35.174, 35.190(b)(2). When discussing uses of AI that could discriminate against people with disabilities, this document focuses on Section 504. However, entities covered by both Section 504 and the ADA should consider their disability nondiscrimination obligations under both laws. Section 504 and Title II are generally interpreted consistently, though DOJ's Title II regulation sometimes includes more specificity. For more information about Title II of the ADA, see DOJ's ADA.gov website.

[v] *See* 34 C.F.R. § 100.7(e) (Title VI); 34 C.F.R. § 106.71 (Title IX) (incorporating 34 C.F.R. §100.7(e) by reference); 34 C.F.R. § 104.61 (Section 504) (incorporating 34 C.F.R. §100.7(e) by reference); and 34 C.F.R. §108.9 (Boy Scouts Act) (incorporating 34 C.F.R. §100.7(e) by reference). Title II and the Age Act have similar regulatory language. See 28 C.F.R. § 35.134 (Title II); and 34 C.F.R. § 110.34 (Age Act).

[vi] 42 U.S.C. § 2000d *et seq.*

[vii] *See Lau v. Nichols*, 414 U.S. 563 (1974); *Castañeda v. Pickard*, 648 F.2d 989 (5th Cir. 1981); 42 U.S.C. § 2000d to d-7 (prohibiting race, color, and national origin discrimination in any program or activity receiving federal financial assistance); U.S. Dep't of Educ., U.S. Dep't of Just., *Ensuring English Learner Students Can Participate Meaningfully and Equally in Educational Programs,* https://www2.ed.gov/about/offices/list/ocr/docs/dcl-factsheet-el-students-201501.pdf.

[viii] *Id.*

[ix] *Id.*

[x] *See* Racial Incidents and Harassment against Students at Educational Institutions: Investigative Guidance, 59 Fed. Reg. 11,448, 11,449 (Mar. 10, 1994); OCR's Guidance on Schools' Obligations to Protect Students from Student-on-Student Harassment on Basis of Sex; Race, Color and National Origin; and Disability at 2, 4, 6 (Oct. 2010); OCR's Dear Colleague Letter on Race and School Programming (Aug. 2023); OCR's Dear Colleague Letter on Protecting Students from Discrimination, such as Harassment Based on Race, Color, or National Origin, including Shared Ancestry or Ethnic Characteristics (May 2024); OCR's Fact Sheet on Harassment based on Race, Color, or National Origin on School Campuses (July 2024).

[xi] The Department amended its Title IX regulations effective August 1, 2024. 89 Fed. Red. 33474 (Apr. 29, 2024. On January 9, 2025, a federal district court issued a decision vacating the 2024 Final Rule. Consistent with the court's order, the 2024 Title IX regulations are not effective in any jurisdiction.

[xii] *See* 34 C.F.R. 106.2; *See also* 89 Fed. Reg. 33,474, 33,515 (April 29, 2024).

[xiii] 34 C.F.R. § 106.41(c).

[xiv] 29 U.S.C. § 794.

*November 2024 (Revised January 2025)*

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 65 of 136

---

[xv] *See* 34 C.F.R. § 104.33. Under the Section 504 regulations, one way to meet Section 504 requirements for a free appropriate public education is to implement an individualized education program pursuant to the Individuals with Disabilities Education Act (IDEA). *See* 34 C.F.R. § 104.33(b)(2). OCR does not enforce IDEA, but rather enforces the Section 504 and Title II rights of IDEA students with disabilities. For more information on IDEA, please visit <u>Individuals with Disabilities Education Act (IDEA)</u>.

[xvi] *See* 34 C.F.R. § 104.36.

[xvii] *See* 34 C.F.R. part 270; <u>https://oese.ed.gov/offices/office-of-formula-grants/program-and-grantee-support-services/trainingand-advisory-services-equity-assistance-centers/</u>.

*November 2024 (Revised January 2025)*

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 66 of 136


**PURDUE GLOBAL.**

Student Accessibility Services <sas@purdueglobal.edu>

# Updated: 4/2/2024: Purdue Global Law School Accommodation Approval
1 message

**Student Accessibility Services** <sas@purdueglobal.edu>                    Tue, Apr 2, 2024 at 10:33 AM
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Greetings Nicole Lawtone-Bowles,

Your request for accommodation and supporting documentation has been received by Student Accessibility Services (SAS) at Purdue Global Law School. After careful review, SAS is pleased to report that you have satisfied its eligibility and verification requirements to receive the below reasonable accommodation(s).

**Additional Time on Entrance Exam(s)**: Double Time (2.0x)

**5 days from the original module due date to submit assignments without penalty.** (Course policies may allow more than five days past the module due date; this accommodation will not prevent students from taking advantage of more generous policies).

- This applies to written assignments.
- This applies to discussion board posts and group assignments. If an extended deadline for group work would fundamentally alter the curriculum, the instructor should contact SAS to discuss alternatives.
- This does not apply to synchronous seminar participation.

**Additional Time on Timed Assessments:** Double Time (2.0x)

**One Final Exam / Day**: In the instance that the double time applied to an exam will bleed into the next scheduled exam, the student is permitted to take the subsequent exam on a separate day. The student's responsible for contacting SAS two weeks before the final exams to arrange an alternate schedule if warranted.

**PDF/WORD formatted textbooks with receipts.** Should a textbook not be available for you to purchase in electronic format, you would purchase the book in the physical format and send SAS a copy of the receipt along with the attached electronic textbook request form. It is the student's responsibility to request alternate formatted textbooks each term through SAS through the attached form and provide proof of purchase/receipt of the original book for publisher permission purposes (please reference the attached Electronic Textbook Request form). Please note: Student Accessibility Services (SAS) makes every effort to obtain the requested format; however, we cannot guarantee all books will be available. The student's responsible for informing Student Accessibility Services of any change to their course schedule. Course changes will likely result in textbook changes and may result in an additional and sometimes significant delay in fulfillment.

**Assistive Technology:** Read&Write Screen Reader (Purdue Global does not support third-party software, and therefore, it is the student's responsibility to seek technical assistance directly from the manufacturer if needed.) You will receive an email from SAS within 24 business hours. This email will contain a download link for the Read&Write. The Read&Write screenreader license is for one year beginning today (3/13/2024). Should you require an extension to your one-year license and are active in classes at PG, please contact SAS, and we will extend the license.

**Turn off Respondus:** Purdue Global Law School Dean's office will turn off Respondus.

A letter outlining your approved accommodations will be drafted and issued through e-mail to each of your instructor(s) upon approval (if the term is currently in session) within two business days, and during the first week of every new term.  Please note that you will be included in your Letter of Accommodation should you desire a copy for your personal records.

Accommodations are not retroactive and will remain in effect until you are no longer an active student at Purdue Global Law School. Upon graduation, withdrawal, and/or dismissal from the University, the student must inform SAS of their re-enrollment if accommodation reinstatement is desired.

Should you have any questions regarding your approved accommodations, please contact SAS directly at sas@purdueglobal.edu.

Respectfully,

**Student Accessibility Services (SAS)**

T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
https://www.purdueglobal.edu/academic-support/student-accessibility-services/



**PURDUE GLOBAL**™

The information contained in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

📄 **SAS Electronic Textbook Request Form.docx**
35K

1/8/26, 10:18 AM  Purdue University Global Mail - 2601L: Accommodation Notification from Student Accessibility Services (SAS)

USDC IN/ND case 4:26-cv-00028-PPS-AZ  document 3-1  filed 04/09/26  page 68 of 136

 **PURDUE GLOBAL**

Student Accessibility Services <sas@purdueglobal.edu>

## 2601L: Accommodation Notification from Student Accessibility Services (SAS)
1 message

**Student Accessibility Services** <sas@purdueglobal.edu>                    Thu, Jan 8, 2026 at 10:18 AM
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, Scott Johnson <Scott.Johnson@purdueglobal.edu>, Sanket Shah <Sanket.Shah@purdueglobal.edu>, Kerii Landry-Thomas <Kerii.Thomas@purdueglobal.edu>, Brian Victor <Brian.Victor@purdueglobal.edu>, Quentin Huff <Quentin.Huff@purdueglobal.edu>, Beau Baez <Humberto.Baez@purdueglobal.edu>, Sarah.Diab@purdueglobal.edu

**Purdue Global Law School**
**Student Accommodation Notification**

* Confidential Information*

PLEASE READ CAREFULLY

**Student:** Nicole Lawtone-Bowles
**Term:** 2601L Spring 2026 Law Term
**Course(s):**
CL651-01 Constitutional Law II
CL701-01 Corporations and Business Organizations II
CL735-01 Professional Responsibility
CL760-01 Community Property
CL780-01 Capstone I
CL805-01 Federal Taxation
CL850-01 Education Law

**Dear Instructor(s),**

- This information is confidential and should not be shared with others except to meet the student's needs.
- Accommodation(s) are in effect from today until the end of the term, regardless of when you receive this notification.
- Accommodations are not retroactive.
- Students are not expected to notify their instructors when they use their accommodations, as the approved accommodations will automatically be honored.

SAS has approved the above-referenced student to receive the academic accommodations listed below.

**Additional grace period before final exams**
- In courses with a final exam, students typically must turn in all professor-graded assignments no later than seven (7) days before the final exam to receive any credit for the assignment. As an approved accommodation, you will only need to turn in professor-graded assignments within two (2) days of the final exam to receive credit (i.e., you have an additional five (5) days). Note that this end-of-term policy supersedes any grace periods or partial-credit policies that might otherwise apply for interim assignments.
- Other than what is stated above, the standard grace periods at Purdue Global Law School for professor-graded assignments are more generous than any accommodation periods, so no additional days to complete assignments are provided to accommodated students. (For example, if a non-accommodated student can turn in an assignment up to fourteen (14) days after the due date without a grade penalty, accommodated students would also have fourteen (14) days, *not* an additional five (5) days beyond the fourteen days, to avoid a grade penalty.)

**Additional Time on Timed Assessments**
- Double Time (2.0x)

**One Final Exam / Day**

USDC IN/ND case 4.26-cv-00028-PPS-AZ    document 3-1    filed 04/09/26    page 69 of 136

- If double time applied to an exam will bleed into the next scheduled exam, the student is permitted to take the subsequent exam on a separate day. *It is the student's responsibility to contact the SAS two weeks before the final exams to arrange for an alternate schedule if warranted.*

**Turn off Respondus**

- Purdue Global Law School Dean's office will turn off Respondus.

Instructors and students are requested to contact Student Accessibility Services (SAS) directly with any questions or concerns regarding the aforementioned accommodation(s) and information.

Respectfully,

**Student Accessibility Services (SAS)**

T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
https://www.purdueglobal.edu/academic-support/student-accessibility-services/



The information in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.



Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

---

## Student Accessibility Services (SAS) Re: New Accommodation Application

6 messages

---

**Student Accessibility Services** <sas@purdueglobal.edu>                     Fri, Feb 13, 2026 at 12:57 AM
To: nicolelawtonebow@student.purdueglobal.edu

Greetings,

There will be a delay in our response time. A member of the SAS department will respond to your email as soon as possible. Thank you for your patience.

Please note: The SAS Office does not handle classroom/instructor concerns unrelated to your accommodations, course registration, withdrawal/LOA requests or financial aid inquiries. Please contact your instructor, advisor, or student finance office directly.

To contact your student advisor, please call 866-522-7747.

To contact Student Finance, please call 866-458-2008, or email FAStudentSupport@support.purdueglobal.edu.

To contact the Office of the Registrar, please send your email to Registrar@purdueglobal.edu.

If these offices have been unable to assist you, please contact Student Relations at studentrelations@purdueglobal.edu.

Thank you,

--

**Student Accessibility Services (SAS)**

T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
https://www.purdueglobal.edu/academic-support/student-accessibility-services,



The information in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>          Tue, Feb 24, 2026 at 12:02 PM
To: Student Accessibility Services <sas@purdueglobal.edu>, Toni Pesce <tpesce@purdueglobal.edu>, Monica Johnson-Nino <monino@support.purdueglobal.edu>, "jfishman@purdueglobal.edu" <jfishman@purdueglobal.edu>, PG Provost <provost@purdueglobal.edu>

Good Afternoon Toni,
I am having surgery so I will be down for two weeks. All of my schoolwork is up to date. See attached

Purdue University Global Mail - Student Accessibility Services (SAS) Re: New Accommodation Application

## MID-HUDSON CHIROPRACTIC CENTER

### DR. ROBERT J. DESANTIS

DIPLOMATE OF THE AMERICAN ACADEMY OF PAIN MANAGEMENT
CERTIFIED STRENGTH AND CONDITIONING SPECIALIST
53 WILLOW LANE
P.O. BOX 4330
NEW WINDSOR, NEW YORK 12553

February 24, 2026

To Whom It May Concern:

Nicole Lawtone-Bowles was treated at our office today. I am placing her on temporary total disability for two weeks, February 23, 2026 to March 8, 2026.

Respectfully,

Robert J. DeSantis, DC, DAAPM, CSCS

RJD/sed

PHONE: 845/561-8505    FAX: 845/561-8529    E-MAIL: MID.HUDSON.CHIROPRACTIC1@GMAIL.COM

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program

3/11/26, 10:31 AM
Purdue University Global Mail - Student Accessibility Services (SAS) Re: New Accommodation Application

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 72 of 136

Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Jennifer Fishman** <jfishman@purdueglobal.edu>                Tue, Feb 24, 2026 at 2:54 PM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: Student Accessibility Services <sas@purdueglobal.edu>, Toni Pesce <tpesce@purdueglobal.edu>, Monica Johnson-Nino <monino@support.purdueglobal.edu>, PG Provost <provost@purdueglobal.edu>

Hello Nicole-
Thank you for keeping us posted, but this is something that you will need to bring up with each of your individual professors. As per the attendance information from the catalog, the expectation is that you will be active in your courses each week. This is not something that Student Accessibility Services can assist with.

We wish you a speedy recovery.

Thank you-
Jen Fishman

**Jennifer Fishman**

Senior Student Operations Manager

Purdue Global Law School

2029 Century Park East, Suite 400

Los Angeles, CA 90067

www.PurdueGlobalLawSchool.edu



*Purdue University Global holds itself accountable to foster a culture that promotes inclusion and belonging, offering an environment that is fair, accessible, and engaging for all.*

Logo from the Princeton Review. ©2025 TPR Education. All rights reserved. Used under license.

[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                Tue, Feb 24, 2026 at 2:56 PM
To: Jennifer Fishman <jfishman@purdueglobal.edu>
Cc: Student Accessibility Services <sas@purdueglobal.edu>, Toni Pesce <tpesce@purdueglobal.edu>, Monica Johnson-Nino <monino@support.purdueglobal.edu>, PG Provost <provost@purdueglobal.edu>

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 73 of 136

Thank you for the information

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>          Thu, Mar 5, 2026 at 8:53 PM
To: Student Accessibility Services <sas@purdueglobal.edu>, Toni Pesce <tpesce@purdueglobal.edu>

## Good evening Toni

📄  OCR Permission to Give My Name to Purdue and

Proof of Disability Failure To Accommodate For Assis...
Here is all of my medical documentation supporting my disability and request for reasonable accommodations.

[Quoted text hidden]
--
[Quoted text hidden]

---

**Student Accessibility Services** <sas@purdueglobal.edu>                          Fri, Mar 6, 2026 at 11:44 AM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, nicolelawtone@aol.com

Hi, Nicole,

This information has been saved to your SAS student file.

Regarding a request for reasonable accommodations, you are currently approved and receiving accommodations through SAS.

Thank you,

**Toni Pesce, MBA**
**Manager, Student Accessibility Services (SAS)**
T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
www.PurdueGlobal.edu

The information contained in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.
[Quoted text hidden]

**PURDUE GLOBAL.**

Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

# Out of Office Re: CL760 Community Property:

5 messages

**Toni Pesce** <tpesce@purdueglobal.edu>                                    Fri, Jan 16, 2026 at 5:40 AM
To: nicolelawtonebow@student.purdueglobal.edu

Hi,
I am currently out of the office and will return Tuesday, January 20, 2026.
PG offices will be closed on Monday, January 15th, in observance of Martin Luther King Jr. Day.

--
**Toni Pesce, MBA**
**Manager, Student Accessibility Services (SAS)**
T: 317-208-1686
F: 866-422-4773
E: tpesce@purdueglobal.edu
www.PurdueGlobal.edu

The information contained in this e-mail and any attachments is confidential and intended only for the use of the individual
or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any
dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication
in error, please immediately notify us by e-mail and delete the original message.

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>        Thu, Jan 29, 2026 at 4:29 PM
To: Toni Pesce <tpesce@purdueglobal.edu>

Good afternoon Toni,
Please see attached SAS form signed by the doctors office.



**PURDUE GLOBAL**

DOB: 12/04/1971

## Section II: To Be Completed By a Qualified Medical Professional

The policy of Purdue University Global (Purdue Global) to comply with the Americans with Disabilities Act (ADA) includes the provision of appropriate accommodations under the ADA. To enable Purdue Global to evaluate and process our student's request, please complete these forms in their entirety and submit to Student Accessibility Services, as all medical verification of disabilities must be received in writing.

Forms can be submitted by fax (866-422-4773), by email as an attachment (SAS@PurdueGlobal.edu), or by standard mail:

    Purdue University Global
    ATTN: Student Accessibility Services
    2550 Northwestern Avenue, Suite 1100
    West Lafayette, IN 47906

Incomplete forms will delay the accommodation process.

It is highly recommended the qualified medical professional have an open conversation with the student/patient regarding their request for accommodation(s) prior to completion of this form.

### Student Information (Please Print)

STUDENT/PATIENT NAME: _Nicole Lawtone-Bowles_

STUDENT/PATIENT DIAGNOSED DISABILITY OR IMPAIRMENT* _Obsessive-Compulsive Disorder (OCD)_

*Diagnosed learning disabilities must be confirmed through comprehensive evaluation results. Section II will not be accepted.

Does the above listed disability/impairment impact a major life function, as defined by the Americans with Disabilities Act (ADA), subsequently impacting online learning? Please explain.

Yes. Obsessive-Compulsive Disorder (OCD) substantially limits major life functions recognized under the Americans with Disabilities Act, including concentrating, thinking, learning, and managing time. Because OCD causes intrusive thoughts and distress around unfinished tasks, Nicole is compelled to complete assignments as early as possible to relieve anxiety and prevent symptom escalation.

Please verify the accommodation(s) requested by the student/patient is/are necessary for them to attend and participate in Purdue Global online programs by listing the specific accommodations below:

The student's disability substantially impacts major life functions, including concentrating, thinking, learning, and managing time, particularly in an online learning environment that requires independent pacing and delayed deadlines. Allowing the student to work ahead reduces disability-related distress and prevents symptom escalation

Date you last treated/evaluated the student/patient: _August 16, 2025_

By signing this form, you certify all of the information listed is true and correct to the best of your knowledge and belief.

Qualified Medical Professional verifying diagnosed disability:

Signature (Physical Signature Required): _Koreen E Thomas FNP_    Date: _01/28/2026_

Print Name: _Koreen E Thomas FNP_

Designation: _Family Nurse Practitioner_

Office Telephone Number: _845 446 4076_

Office Address: _127 Main Street_    City: _Highland Falls_    State: _NY_    Zip: _10928_

Office Stamp If Available:

Koreen E. Thomas, FNP
DEA: MT0399672
LIC: F332345

*ADA Accommodation Request 10/2023*

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026

Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>     Tue, Mar 3, 2026 at 12:42 PM
To: Toni Pesce <tpesce@purdueglobal.edu>

Good Afternoon Toni,
Can you please call me

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

On Fri, Jan 16, 2026 at 05:40 Toni Pesce <tpesce@purdueglobal.edu> wrote:
[Quoted text hidden]

---

**Student Accessibility Services** <sas@purdueglobal.edu>     Tue, Mar 3, 2026 at 3:11 PM
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Hi, Nicole,

I have limited availability at the moment. Please email me with any accommodation related questions you may have.

Thank you,

**Toni Pesce, MBA**
**Manager, Student Accessibility Services (SAS)**
**Student Accessibility Services (SAS)**

T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
https://www.purdueglobal.edu/academic-support/student-accessibility-services/


PURDUE GLOBAL

The information in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

From: **Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>
Date: Tue, Mar 3, 2026 at 12:43 PM
Subject: Re: Out of Office Re: CL760 Community Property:
To: Toni Pesce <tpesce@purdueglobal.edu>

Good Afternoon Toni,
Can you please call me

Nicole Lawtone-Bowles

Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

On Fri, Jan 16, 2026 at 05:40 Toni Pesce <tpesce@purdueglobal.edu> wrote:
> Hi,
> I am currently out of the office and will return Tuesday, January 20, 2026.
> PG offices will be closed on Monday, January 15th, in observance of Martin Luther King Jr. Day.
>
> [Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>

Tue, Mar 3, 2026 at 3:22 PM

To: Student Accessibility Services <sas@purdueglobal.edu>
Cc: nicolelawtone@aol.com

Toni,
Please see attached fax from my doctors office
I believe it would be helpful to formally notify the Professors in writing that I use Assistive Technology (AT) during discussions and examinations. The current platform disables several core browser functions that are necessary for me to effectively utilize my accommodations. SAS said that approval is not required for dictation software.

To successfully complete the discussions and exams, the following functionality issues must be addressed:

Right-click functionality is currently disabled, which prevents access to context menus. These menus are necessary for copying, pasting, and performing essential editing tasks during the exam.

The inability to use "Select All" within the browser significantly limits efficiency when reviewing and editing large blocks of text. This feature is necessary for proper answer review and revision.

Restrictions on copy and paste directly interfere with my ability to organize and manage written responses in a structured manner, which is critical under timed conditions.

The lack of speech-to-text compatibility restricts my use of dictation software. Speech-to-text capability is an essential component of my Assistive Technology and directly impacts both productivity and accuracy.

Please advise how these functionality barriers will be addressed so that my approved accommodations can be fully implemented during the discussions and examinations.

Thank you,
Nicole


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

[Quoted text hidden]

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 78 of 136

**DrHinke to Purdue SAS.pdf**
2720K

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 3-1    filed 04/09/26    page 79 of 136

**PURDUE**
**GLOBAL.**

Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

---

## Accommodation Request

5 messages

---

**Student Accessibility Services** <sas@purdueglobal.edu>
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Hi, Nicole,

The SAS office recently received your message submitted through the accommodation request self-referral in your student portal regarding your request to use your personal Dragon Legal di

| | |
|---|---|
| **Subject** | Request accommodations |
| **Description** | I am writing to formally request accommodation for the use of Nuance® Dragon® Legal as part of my approved assistive technology. Dragon L designed for legal writing and drafting. Because of my documented disability, speech-to-text software is necessary for me to effectively compl. While I understand that the university may have general policies regarding third-party software, my approved accommodations include assistir written work accurately and efficiently. Without it, my ability to complete assignments is substantially limited. Please confirm that I may use Nuance® Dragon® Legal for all written coursework consistent with my approved accommodations. If additional |
| **Created By** | Integration API User, 2/27/2026 2:57 PM |
| **Portal Submitted By** | Student [Nicole Lawtone-Bowles] |

Please note that SAS approval is not required for this request. All students are permitted to use a personal dictation program in their classes.

Thank you,

Toni Pesce, MBA
Manager, Student Accessibility Services (SAS)
T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
www.PurdueGlobal.edu

The information contained in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the inten distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                    Mon, Mar 2, 2026 at 12:16 PM
To: Student Accessibility Services <sas@purdueglobal.edu>
Cc: nicolelawtone@aol.com

Good Afternoon Toni,

You and I both know, but it's these instructors playing AI police don't understand what dictation software is. 🔫

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                    Mon, Mar 2, 2026 at 12:27 PM
To: PG Provost <provost@purdueglobal.edu>, CLS AssociateDean <pglawassociatedean@purdueglobal.edu>, Monica Johnson-Nino <monino@support.purdueglobal.edu>, studentrelations@purdueglobal.edu, "jfishman@purdueglobal.edu" <jfishman@purdueglobal.edu>, ocr@purdue.edu

Good Afternoon,
Please read attached from sas office.

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                    Tue, Mar 3, 2026 at 12:57 PM
To: PG Provost <provost@purdueglobal.edu>, CLS AssociateDean <pglawassociatedean@purdueglobal.edu>, Monica Johnson-Nino <monino@support.purdueglobal.edu>, studentrelations@purdueglobal.edu, "jfishman@purdueglobal.edu" <jfishman@purdueglobal.edu>, ocr@purdue.edu

Toni,

I believe it would be helpful to formally notify the Professors in writing that I use Assistive Technology (AT) during discussions and examinations. The current platform disables several core browser functions that are necessary for me to effectively utilize my accommodations.
To successfully complete the discussions and exams, the following functionality issues must be addressed:

Right-click functionality is currently disabled, which prevents access to context menus. These menus are necessary for copying, pasting, and performing essential editing tasks during the exam.

The inability to use "Select All" within the browser significantly limits efficiency when reviewing and editing large blocks of text. This feature is necessary for proper answer review and revision.

Restrictions on copy and paste directly interfere with my ability to organize and manage written responses in a structured manner, which is critical under timed conditions.

The lack of speech-to-text compatibility restricts my use of dictation software. Speech-to-text capability is an essential component of my Assistive Technology and directly impacts both productivity and accuracy.

Please advise how these functionality barriers will be addressed so that my approved accommodations can be fully implemented during the discussions and examinations.

Thank you,
Nicole
[Quoted text hidden]

—
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                    Tue, Mar 3, 2026 at 2:05 PM
To: PG Provost <provost@purdueglobal.edu>, CLS AssociateDean <pglawassociatedean@purdueglobal.edu>, Monica Johnson-Nino <monino@support.purdueglobal.edu>, studentrelations@purdueglobal.edu, "jfishman@purdueglobal.edu" <jfishman@purdueglobal.edu>, ocr@purdue.edu

Toni,

My doctor tried to fax this to the SAS office, but it kept failing. Please see the attached document. Assigning me an F in the course due to this issue would constitute a failure to accommodate and may result in Intentional Infliction of Emotional Distress (IIED), as well as the loss of my tuition and scholarship for CL760-01: Community Property with Professor Brian Victor, and prevent me from graduating on August 25, 2026.

[Quoted text hidden]

---

📄 DrHinke to Purdue SAS.pdf
2720K

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 3-1    filed 04/09/26    page 81 of 136



Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

---

# Re: New Accommodation Application

4 messages

---

**Student Accessibility Services** <sas@purdueglobal.edu>                Tue, Jan 27, 2026 at 4:01 PM
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Hi, Nicole,

We received your updated accommodation request.

As previously stated by the SAS department and the Purdue Global Law School dean's office, we are unable to provide an accommodation that would allow you to work ahead. The PG dean's office also stated in several past emails that you should refrain from working ahead in your courses.

Please review and follow the instructions provided in the emails you received earlier today for appealing the academic integrity charge, should you wish to do so.

Thank you,

**Toni Pesce, MBA**
**Manager, Student Accessibility Services (SAS)**
**Student Accessibility Services (SAS)**

T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
https://www.purdueglobal.edu/academic-support/student-accessibility-services/



The information in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

From: **Smartsheet Automation** <automation@app.smartsheet.com>
Date: Sun, Jan 25, 2026 at 3:03 PM
Subject: New Accommodation Application
To: sas <sas@purdueglobal.edu>

## New Accommodation Application

Nikkie Lawtone-Bowles submitted their application on 01/25/26, 3:02 PM

📄 **Accommodation Application**

**Details**

**1** row added , **1** row changed

**1** attachment added

---

**1** row added or updated (shown in yellow)

Row 1897

| | |
|---|---|
| **GDrive Folder** | https://drive.google.com/drive/folders/101W1FmTnlWUCS2Bv1UCpLTeVDa289iX9 |
| **GDrive Folder Name** | Nicole Lawtone-Bowles_Accommodation Application |
| **Section II** | |
| **Application ID** | 02588-SASApp |
| **firstName lastName** | Nikkie Lawtone-Bowles |
| **LegalFirstName** | Nicole |
| **ChosenFirstName** | Nikkie |
| **LastName** | Lawtone-Bowles |
| **Legal First Last Name** | Nicole Lawtone-Bowles |
| **Section I: PDF Name** | Nicole_Lawtone-Bowles_Section_I |
| **Student ID Number** | |
| **Street Address** | 56 Center Street |
| **City** | Highland Falls |
| **State** | NY |

| | |
|---|---|
| **ZIP Code** | 10928 |
| **Phone** | +1 (347) 538-5386 |
| **Alternate Phone** | +1 (347) 538-5386 |
| **Personal Email Address** | NicoleLawtone@aol.com |
| **Student Email Address** | nicolelawtonebow@student.purdueglobal.edu |
| **Current Program** | Purdue Global Law School (formerly Concord Law School) Juris Doctor |
| **Purdue Global Law School** | Yes |
| **Diagnosed Disability or Impairment** | Obsessive-Compulsive Disorder (OCD) is a chronic mental health condition characterized by intrusive, recurrent thoughts and compulsive behaviors that substantially limit primary life functions, including concentrating, thinking, learning, managing time, and completing tasks. |
| **Accommodation(s) you are requesting** | Permission to work ahead and complete coursework and assignments in advance of standard deadlines, along with continued approval for the use of text-to-speech and speech-to-text assistive technology. I also request not to be harassed by instructors who do not understand my disability. Being accused of academic misconduct because I am wired differently or deemed not credible causes me significant emotional distress. I need my degree to help people like me. I am disabled and homeless, and I am asking for support. |
| **How will this assist in the online learning?** | Because OCD causes significant distress related to unfinished work and an uncontrollable need to complete tasks early, the ability to work ahead reduces anxiety and prevents symptom escalation. Online learning relies heavily on independent pacing and delayed deadlines, which intensifies OCD symptoms and impairs academic functioning. Allowing work to be completed early enables sustained concentration, consistent task completion, and effective learning without disability-related distress. This accommodation allows equal access to coursework while maintaining academic standards. |

| | |
|---|---|
| **Provided with a previous similar post-sec accoms?** | Yes |
| **Where previous post-sec accoms?** | Eastern Gateway Community College 101 E Federal St, Youngstown, OH 44503 |
| **Certify the information is true** | I certify that all the information on this form is true and correct to the best of my knowledge and belief. |
| **Date Application Submitted** | 01/25/26, 12:02 PM |
| **Google File Created** | Yes |
| **Date Google Folder Created** | 01/25/26 |

Changes made by web-form@smartsheet.com, automation@smartsheet.com, harold.ballard@purdueglobal.edu

---

 **1 attachment added**

📄 Nicole_Lawtone-Bowles_Section_I.pdf (228k) added by automation@smartsheet.com on Row 1,897

---

You are receiving this email because you are subscribed to a workflow "Notify SAS Inbox of new application" (ID# 1930700745140100) on sheet

Accommodation Application

Exclude your changes from all notifications | Unsubscribe

Powered by Smartsheet Inc. | Privacy Policy | Report Abuse/Spam

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>    Tue, Jan 27, 2026 at 4:14 PM
To: Student Accessibility Services <sas@purdueglobal.edu>
Cc: nicolelawtone@aol.com

Toni,
I already did

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her

Adrains Place Inc.
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                          Tue, Jan 27, 2026 at 5:23 PM

To: Student Accessibility Services <sas@purdueglobal.edu>
Cc: nicolelawtone@aol.com

Toni,

No one understands my accommodations, in addition to my OCD and PTSD. Due to my disability, I must speak into my computer because I am unable to type quickly. I have been diagnosed with lumbar degenerative disc disease, cervical degenerative disc disease at C4–C5, and I have bilateral knee replacements)

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                          Fri, Feb 13, 2026 at 12:56 AM
To: Student Accessibility Services <sas@purdueglobal.edu>
Cc: nicolelawtone@aol.com

Good Morning Toni,
I am attaching my IEP for your review.

[Quoted text hidden]
--
[Quoted text hidden]

---

**2 attachments**

📄 **Nicole IPE 2025.pdf**
   127K

📄 **Nicole IPE 2021.pdf**
   6411K

 
Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

**Out on Medical Leave Re: Purdue University Global - Student Accessibility Services (SAS) Registration Information**

Student Accessibility Services <sas@purdueglobal.edu>
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, <nicolelawtone@aol.com>

Thu, Mar 12 at 09:30

Nicole,

With regard to your email below stating you will be on medical leave, please reach out to your Student Advisor for guidance, as the SAS department does not handle medical leaves.

The SAS department received the message you sent through your student portal (self-referral) requesting reinstatement of your accommodations, specifically the use of dictation. Please note that you are currently approved and receiving accommodations; there is no need to reinstate your accommodations. Also, as previously mentioned, there is no need for the SAS department to provide an approved accommodation for dictation, as any student can use their personal dictation program in their classes without an accommodation.

| | |
|---|---|
| **Subject** | Reinstate accommodations |
| **Description** | I request the reinstatement and continued approval of my assistive technology accommodations, which are necessary for me to complete written coursework due to my documented disabilities. My medical conditions limit my ability to type for extended periods, and dictation technology allows me to produce written assignments by converting spoken words directly into text. This accommodation was previously approved through Student Accessibility Services and is essential for my ability to participate fully in the Juris Doctor program. The characteristics and speed of writing produced through assistive technology software are natural results of dictation technology and should not be misinterpreted as evidence of academic misconduct. I respectfully request confirmation that my approved accommodation remains in place so that I may continue completing my coursework using the assistive technology required for my disability. |
| **Created By** | Integration API User, 3/11/2026 3:55 PM |
| **Portal Submitted By** | Student [Nicole Lawtone-Bowles] |

Thank you,

**Toni Pesce, MBA**
**Manager, Student Accessibility Services (SAS)**
T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
www.PurdueGlobal.edu

The information contained in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

[Quoted text hidden]

Artificial Intelligence (AI)-generated writing is any text that is produced by AI systems, such as chatbots, text generators, or summarizers. AI-generated writing can be useful for many purposes, such as entertainment, education, or research. However, it can also be misused for deception, plagiarism, or manipulation. That's why it's important to be able to detect and evaluate AI-generated writing and to use it responsibly and ethically. Below you'll find information designed for this purpose.



Decoding AI-Generated Content: Recognizing Patterns and Pitfalls



- **To Err is Human:** Human text usually contains typos and is extremely variable, whereas AI-generated content vary rarely makes typos and often generates "perfect" sounding text.

- **Logic Check:** AI models sometimes make implausible or incorrect statements.

- **Survey Says:** Large language models are more likely to use predictable words like "the," "it," or "is" rather than more uncommon words.

- **Testing, Testing:** If ChatGPT is asked the same question (or is provided the same exact prompt) from multiple users, it will provide nearly the exact same response to each. This repetition of words, logic or reasoning can be indication of AI generated language.

- **Watch the Clock:** ChatGPT cannot detect events that have occurred recently. This can lead to factually inaccurate information.

- **Practice Makes Perfect:** Researchers from the University of Pennsylvania created a game to test how good humans are at spotting AI-written text—try the game and see how well you can identify computer generated language.

- **Battle of the Bots – AI vs. AI:** Software exists that analyzes the different features of a text, including how fluently something reads, how often certain words appear, and whether there are predictable patterns, to determine the likelihood that it is composed of AI-generated content.

---

**At this time, the Purdue System, including Purdue Global, does not recognize the validity of any AI detection tools.**

AI Detection tools remain inaccurate and unreliable. Faculty must not use AI detection applications alone to conclude that there has been plagiarism or a violation of academic integrity. These indicators are only tools to prompt faculty to further investigate how the student completed the assignment.

GPTZero

Turnitin's AI Detection Tool

Packback Labs: CheckGPT

Trace GPT

Smodin: AI Content Detector

Hive: AI-Generated Content Detection

Undetectable AI

Writer: AI Content Detector

Quillbot: AI Detector

Scribbr: AI Detector

Copyleaks

ZeroGPT

Using Turnitin's AI Writing Indicator

**Turnitin Videos & Podcasts**



# Turnitin's AI Writing Detection: An Introduction for Educators and Administrators

This video provides an overview of Turnitin's new AI writing detection for educators and administrators.



# Understanding False Positives Within Turnitin's AI Writing Detection Capabilities

This video explains how Turnitin's AI detection model deals with false positives and what constitutes a false positive.

Turnitin Blog Posts



# Understanding False Positives within Our AI Writing Detection Capabilities



# How to Prepare for and Discuss the Possibility of False Positives

A Closer Look at Turnitin's AI Detection Capabilities...

 10 of 16 ▾









Vhile overdose

ecrease, there is

**Caution: Percentage may not indicate academic misconduct. Review required.**

AI

0%

ers have gotte

)used drugs

own as Narcan.

High Resolution **On**

eport

# Accessing the Report

- Turnitin's (TII) AI detection tool/score is **NOT** visible to students.

- To access the tool simply open the regular TII Originality Report—the AI "score" will be displayed in a small, blue box labeled, **AI**.

- When instructors first access the new AI detection tool there are guidance resources provided that walk them through this new aspect of the TII Originality Report.

**Considerations**

- Turnitin (TII) launched its AI detection tool on April 4th, 2023.

- The detection tool is currently trained on ChatGPT and ChatGPT 3.5–it has not been fully trained on ChatGPT 4.

- Just like with other instance of plagiarism, the TII Originality Report should always be read carefully to determine whether a breach of academic integrity has occurred with the use of AI. Please do not use AI detection applications alone to conclude that there has been plagiarism or a violation of academic integrity. For instance, do not judge a submission by a percentage only. Finally, the current Student Code of Conduct should be followed for cases involving the use of AI.

- **Use as a learning moment.**

Turnitin's AI Writing Detection Capabilities - FAQs & Featured Links

© 2023 PG AI Task Force | Webmaster: William Ashley Johnson | Contact: wjohnson3@purdueglobal.edu





©2023 Purdue Global

 **PURDUE GLOBAL** Campus

( ACCOMMODATIONS )    ( DEGREE PLAN )    ( GRADES )    ( DOCUMENTS )

( APPEAL )

# Contact Us

## Office of Student Support

Student Advisor: Monica Johnson-Nino

T: 866-522-7747

F: 800-879-0889

**MoNino@support.purdueglobal.edu**

**Hours of Operation:**

Mon–Thu: 9:00 AM - 9:00 PM ET

Fri: 9:00 AM - 7:00 PM ET

**Helps you with:**

- Getting to know your online learning environment
- Selecting courses toward your degree
- Registering for your courses
- Understanding academic guidelines, policies, and your academic progress

- Communicating with other departments

## Dean's Office

**Email: pglawassociatedean@purdueglobal.edu**

## Support and Solutions

**T: 866-522-7747**

**Email: techsupport@support.purdueglobal.edu**

24 hours a day, 7 days a week (closed on University holidays)

**Helps you with:**

- Technical Support
- Login and course access issues
- Student email accounts
- Computer settings
- Required settings
- Online classroom tools
- Locating your textbooks

## Student Finance Office

**T: 800-439-4794** (Toll-Free)
**F: 866-211-3873** (Toll-Free)
**Email: PGLawFinancialAid@support.purdueglobal.edu**
**Hours of Operation:**

**Student Finance Office**
Monday-Thursday: 9:00 AM to 8:00 PM ET
Friday: 9:00 AM to 6:00 PM ET
Saturday and Sunday: Closed

## Office of the Registrar

**T: 866-522-7747** (Toll-Free)

**F: 800-588-4127** (Toll-Free)

**Email: Registrar@purdueglobal.edu**

**Hours of Operation:**

Monday–Friday 9:00 AM to 6:00 PM ET

**Helps you with:**

- Academic records
- Transfer credit evaluation
- Graduation auditing
- Transcripts
- Diplomas

## Affiliates

**Email: infopg@support.purdueglobal.edu**

## Office of Student Relations

**Email: studentrelations@purdueglobal.edu**

Copyright © 2026, Purdue University Global, Inc., a public, nonprofit institution. v3.03.0

# Creating a More Inclusive Legal Profession Requires Law Schools to Do More to Support Disabled Students

**Julie Orozco and Caroline Wick**

Jul 18, 2025    🕐 6 min read

## Summary

- Despite a federal mandate that disabled law students have equal access to legal education, the current landscape leaves them dedicating substantial time to negotiating for and obtaining accommodations.

- The process of requesting, negotiating, and implementing accommodations poses many challenges for these students.

- Providing accommodations does not help disabled students game a system but puts them on equal footing with their nondisabled peers.



sturti via Getty Images

Slightly more than 1 in 10 law students are disabled. Despite a federal mandate that disabled law students have equal access to legal education, the current landscape leaves them dedicating substantial time to negotiating for and obtaining accommodations. Providing disabled law students with inadequate support translates to fewer lawyers with disabilities, which deprives the profession of lawyers uniquely situated to empathize with and advocate for their clients. Disabled law students often engage in self-advocacy throughout their lives and arrive at law school with experience advocating within large bureaucratic systems. Lawyers with disabilities, having fought injustices in their own lives, can empathize with clients doing the same. Disabled lawyers are valuable members of the profession, and law schools must do more to support them.

There are two federal laws that require law schools to provide equal access to academically qualified disabled law students. To be clear, the laws do not require law schools to admit unqualified students. Section 504 of the Rehabilitation Act of 1973 applies to law schools that receive federal funds, which most do through the receipt of federal financial aid. The Americans with Disabilities Act (ADA) applies to both public and private law schools. Title II applies to the former; Title III to the latter. Both titles require law schools to communicate as effectively with disabled students as nondisabled students, providing auxiliary aids and services where

necessary. This means, for example, providing braille materials, captioning, and interpreters. Law schools must also make reasonable modifications to procedures, policies, and practices to ensure they do not discriminate against disabled students. Modifications include providing students with extra time to take exams, flexible course attendance, and class recordings. Law schools are not required to make modifications that would fundamentally alter the nature of the law school program or would be an undue burden. While both ADA titles refer to "modifications," in practice, the alterations students receive are referred to as "reasonable accommodations."

The obligation to provide equal access is clear; however, the process to obtain accommodations is not laid out in the law, and law schools' processes vary. Generally, students begin the process by disclosing their disability to a person or office within the law school, providing documentation from a professional regarding their disability. Frequently, the school may require the professional to explain the need for the requested accommodations. The school meets with the student to discuss their disability and the school's proposed accommodations. Sometimes, following this discussion, schools then also require the student to meet with each professor regarding their accommodations. Finally, some law schools require students to renew their accommodations requests each semester or year.

The process of requesting, negotiating, and implementing accommodations poses many challenges for these students. Based on experiences working with disabled students, Professor Katherine Macfarlane recounts that the reasonable accommodation process "can make accommodations feel more like punishment than remedy." At the outset of the process, students are required to disclose their disabilities, revealing, at times, deeply personal information. Depending on the school's documentation requirements, students may be required to provide years of medical documentation or pay for additional evaluations. For students who can afford the evaluations, acquiring them may require multiple hours' or weeks' worth of effort, including finding a provider, scheduling appointments, negotiating with insurance companies, and engaging in follow-up. Many law schools require students to attend meetings to discuss their accommodations without another individual present, depriving disabled students of support. Students then may need to negotiate for their accommodations. Once the accommodations are approved, students may face reticence from law professors in implementing them. Therefore, students may spend time throughout the semester advocating for approved

accommodations that a professor forgets about or may not be trained to implement. For example, a blind student who has an approved accommodation for accessible materials may have to advocate for the same when their course materials are inaccessible. In addition, accommodations are not retroactive—despite the potentially lengthy accommodations process.

Legal academics and professionals may be tempted to dismiss the above paragraph laying out the accommodations process's challenges. They may think that, of course, the obligation should be on the student to put in the time to obtain what they need. This line of thinking overlooks that law school is already a demanding academic endeavor, without the added burden of seeking and obtaining accommodations. Law school culture often encourages students to take on multiple demanding extracurriculars, leaving little time for the burdens of "disability admin" (a term coined by Macfarlane). Furthermore, depending on the nature of their disability, disabled students may be engaging in disability admin and advocacy in their private lives. They could be, for example, negotiating with health insurance companies, managing the health effects of their disability, and advocating for accommodations in their housing.

Legal academics and professionals may think that navigating this process prepares disabled students for future employment. However, this argument ignores the ways in which law school differs from professional settings. Law school is unique in that students may be required to apply for their accommodations multiple times—for their classes inside the law school, for jobs inside the law school (because the accommodations process is different for employees), for externships and jobs at organizations outside the law school, and for the Multistate Professional Responsibility Examination and bar exams. Furthermore, if there is a dispute about accommodations in the workplace, there is a clear process for appeal. Workers can file with external organizations, like the U.S. Equal Employment Opportunity Commission, where there is a clear avenue for resolution. Law students often must file an internal grievance that is resolved by university faculty and employees. Furthermore, the semester's limited timeframe disincentivizes raising issues with accommodations. Given that a class will end in a matter of weeks, if a professor ignores or refuses to implement their accommodations, disabled students sometimes avoid escalation, especially with the possibility of receiving a negative, career-impacting grade. Instead of challenging the denial, disabled students may make do without their accommodations and accept the loss of learning

opportunities and lower grades that result.

Students also face access challenges in law school outside the formal accommodations process. For students with visual impairments, hearing disabilities, and disabilities that impact their ability to use a mouse, law school websites, online learning platforms, and electronic textbooks may be inaccessible, requiring the student to devote more time to asking that these materials be made accessible. The U.S. Department of Education has monitored and resolved more than 1,000 complaints regarding the inaccessibility of higher education institutions' online programs, services, and websites.

Considering the above, what can law schools do? A lot. First, law schools can recognize that disability rights are civil rights. Providing equal access is not a kindness but a requirement. Providing accommodations does not help disabled students game a system but puts them on equal footing with their nondisabled peers. Law schools should examine their accommodations process and consider how to lessen students' burdens.

Law schools can require courses to undergo universal design, wherein they are designed for all types of learners. Professors can take multiple actions to make classes accessible, which obviates the need for some disabled students to obtain individual accommodations. For example, as a matter of class policy, professors can record all classes, distribute slides before class, and include captions on videos shown in class. These steps can help nondisabled students learn, too.

Law schools can also provide training for professors on accommodations and how to implement them. The training could include information on the history of disability rights and disability culture, which can help avoid careless blunders when interacting with disabled students. Law schools can also assess the accessibility of their website using the Web Content Accessibility Guidelines. Finally, law schools can consider engaging in an independent audit to assess course accessibility as well as physical and virtual spaces' accessibility.

Disabled students may feel especially vulnerable and beleaguered now as the Trump administration has taken actions targeting disabled people. President Trump falsely blamed a fatal plane crash in Washington, D.C., on Federal Aviation Administration employees with mental health and intellectual disabilities. On his first day in office, President Trump issued an executive order that, among other

things, terminated the federal government's accessibility programs, activities, and preferences. Attorneys—disabled and not—will be needed to continue the fight for civil rights. Law schools should welcome disabled students to the profession and treat them with respect and equality.

Published by the American Bar Association ©2026. Reproduced with permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.

**ABA** American Bar Association
https://www.americanbar.org/groups/crsj/resources/human-rights/2025-july/creating-inclusive-legal-profession-law-schools-disabled-students/

Not for Reliance for Certain Purposes. The Dear Colleague Letter on Harassment and Bullying (Oct. 26, 2010) expresses policy that is inconsistent in some respects with the Department's regulations implementing Title IX of the Education Amendments of 1972, as amended in 2020, as well as Executive Orders 13988 (on combating discrimination based on gender identity or sexual orientation) and 14021 (on sex discrimination in educational environments).

# U.S. Department of Education
## *Office for Civil Rights*



# Dear Colleague Letter Harassment and Bullying (October 26, 2010)
## Background, Summary, and Fast Facts

### What are the possible effects of student-on-student harassment and bullying?

- Lowered academic achievement and aspirations

- Increased anxiety

- Loss of self-esteem and confidence

- Depression and post-traumatic stress

- General deterioration in physical health

- Self-harm and suicidal thinking

- Feelings of alienation in the school environment, such as fear of other children

- Absenteeism from school

### What does the Dear Colleague letter (DCL) do?

- Clarifies the relationship between bullying and discriminatory harassment under the civil rights laws enforced by the Department of Education's (ED) Office for Civil Rights (OCR).

- Explains how student misconduct that falls under an anti-bullying policy also may trigger responsibilities under one or more of the anti-discrimination statutes enforced by OCR.

- Reminds schools that failure to recognize discriminatory harassment when addressing student misconduct may lead to inadequate or inappropriate responses that fail to remedy violations of students' civil rights. Colleges and universities have the same obligations under the anti-discrimination statutes as elementary and secondary schools.

- Discusses racial and national origin harassment, sexual harassment, gender-based harassment, and disability harassment and illustrates how a school should respond in each case.

[OCR-00057]

Not for Reliance for Certain Purposes. The Dear Colleague Letter on Harassment and Bullying (Oct. 26, 2010) expresses policy that is inconsistent in some respects with the Department's regulations implementing Title IX of the Education Amendments of 1972, as amended in 2020, as well as Executive Orders 13988 (on combating discrimination based on gender identity or sexual orientation) and 14021 (on sex discrimination in educational environments).

## Why is ED Issuing the DCL?

ED is issuing the DCL to clarify the relationship between bullying and discriminatory harassment, and to remind schools that by limiting their responses to a specific application of an anti-bullying or other disciplinary policy, they may fail to properly consider whether the student misconduct also results in discrimination in violation of students' federal civil rights.

## What are the anti-discrimination statutes that the Office for Civil Rights enforces?

- Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, or national origin.

- Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex.

- Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act of 1990, which prohibit discrimination on the basis of disability.[1]

## What are a school's obligations under these anti-discrimination statutes?

- Once a school knows or reasonably should know of possible student-on-student harassment, it must take immediate and appropriate action to investigate or otherwise determine what occurred.
- If harassment has occurred, a school must take prompt and effective steps reasonably calculated to end the harassment, eliminate any hostile environment, and prevent its recurrence. These duties are a school's responsibility even if the misconduct also is covered by an anti-bullying policy and regardless of whether the student makes a complaint, asks the school to take action, or identifies the harassment as a form of discrimination.

## How can I get help from OCR?

OCR offers technical assistance to help schools achieve voluntary compliance with the civil rights laws it enforces and works with schools to develop creative approaches to preventing and addressing discrimination. A school should contact the OCR enforcement office serving its jurisdiction for technical assistance. For contact information, please visit ED's website at http://wdcrobcolp01.ed.gov/CFAPPS/OCR/contactus.cfm.

A complaint of discrimination can be filed by anyone who believes that a school that receives Federal financial assistance has discriminated against someone on the basis of race, color, national origin, sex, disability, or age. The person or organization filing the complaint need not be a victim of the alleged discrimination, but may complain on behalf of another person or group. Information about how to file a complaint with OCR is at http://www2.ed.gov/about/offices/list/ocr/complaintintro.html or by contacting OCR's Customer Service Team at 1-800-421-3481.

---

[1] OCR also enforces the Age Discrimination Act of 1975 and the Boy Scouts of America Equal Access Act. The DCL does not address these statutes.

Nicole Lawtone-Bowles
56 Center Street
Highland Falls, New York
(347) 538-5386 | (845)839-0220
NicoleLawtone@aol.com

PURDUE GLOBAL LAW SCHOOL (FORMERLY CONCORD LAW SCHOOL)
2029 CENTURY PARK EAST, SUITE 400, LOS ANGELES, CA 90067

| | |
|---|---|
| NICOLE LAWTONE-BOWLES, | Case No.: ▨▨▨▨ |
| Plaintiff, | |
| vs.<br>PURDUE GLOBAL LAW SCHOOL, FORMERLY CONCORD LAW SCHOOL, | SUPPLEMENTAL STATEMENT IN ADVANCE OF ACADEMIC APPEAL HEARING |
| Defendant | |

SUPPLEMENTAL STATEMENT
IN
ADVANCE OF ACADEMIC APPEAL HEARING
COURSE: CL850 – EDUCATION LAW

To the Academic Appeals Committee:

I respectfully submit this supplemental statement in advance of my scheduled hearing. I do so with a clear understanding of the seriousness of these proceedings and with full respect for the role of the Committee in upholding the integrity of the institution. I want you to know that I have 159 days left to graduate on August 25, 2026, and change my entire life at 54 years old. I am fighting many battles while trying to complete my Juris Doctor degree. My health has taken a turn for the worse as I recover from surgery on March 6, 2026, while continuing in school and preparing for the MPRE exam on March 24, 2026, in person.

I want to begin by stating, without ambiguity, that I did not use generative artificial intelligence or any unauthorized assistance in the preparation of my coursework for CL850 the course is open book. The work submitted reflects my own analysis, developed through a process that relies heavily on assistive technology due to my documented disabilities, which was also approved by Student Accessibility Services (sent by tpesce@purdueglobal.edu). "All students are permitted to use a personal dictation program in their classes." I recognize that aspects of my workflow may appear unconventional when viewed through a traditional lens of written composition. However, unconventional does not mean it is improper.

My writing process involves dictating my thoughts using Assistive technology (AT) technology, followed by review and correction of transcription distortions. This method allows me to produce text more quickly than manual typing, but it also results in document properties and editing patterns that differ from typical drafting behavior. The assumptions drawn from document metadata, particularly regarding speed, do not account for the realities of Assistive technology (AT), dictation, off-screen drafting, or the cognitive preparation that precedes transcription. As such, I respectfully submit that conclusions based solely on perceived "impossibility" of output speed are not a reliable indicator of misconduct.

I am particularly concerned that the central inference in this matter rests on what is believed to be implausible, rather than what is demonstrably proven. I understand that the University is not relying on AI detection tools as dispositive evidence. However, the alternative reasoning, based on speed, perceived writing quality, and subjective expectations, raises significant questions about the evidentiary standard being applied. Academic integrity is best preserved when findings are grounded in verifiable facts, not assumptions about what a student "could" or "could not" have done.

With respect to the Turnitin similarity concern, it is my understanding that the reported 98% similarity may be attributable to my own prior submission of the same or substantially similar work earlier during preview week in the term to PG411 on January 4, 2026. In such instances, Turnitin can identify a student's previously submitted paper within its database and flag it as highly similar upon resubmission. If this is the case, the similarity score does not indicate copying from another student or external source, but rather a match to my own original work. I respectfully request access to the full similarity report, including the identified source of the match, so that this issue can be properly verified and clarified for the Committee.

I also wish to acknowledge that my communications during this process may, at times, have reflected the emotional strain I have been under. Facing the

possibility of losing my academic standing so close to completion of my degree has been deeply distressing on top of my health and homelessness my family and I are facing. That said, I remain fully committed to engaging in this process respectfully, constructively, and in good faith. This matter carries profound consequences for me; hence, it has taken both an emotional and a mental toll. I am within months of completing my legal education, after years of sustained effort under circumstances that have required significant personal discipline and adaptation. I am not asking for leniency; I am asking for a fair and evidence-based evaluation of my work; with full consideration of the role that assistive technology plays in how that work is produced.

If there are concerns about my authorship, I respectfully ask the Committee to carefully consider whether the conclusions reached thus far are supported by clear, objective evidence or whether they may instead reflect a misunderstanding of how assistive technology can shape the mechanics and appearance of written work. I remain fully willing to answer any questions the Committee may have regarding my process, and, if helpful, I am prepared to respond in real time to questions concerning the substance of my coursework to demonstrate my familiarity with and authorship of the material.

Thank you for your time, your attention, and your commitment to fairness in this process.

Respectfully submitted,

/s/Nicole Lawtone-Bowles

Dated this day, 19th of March 2026.

 Gmail

Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

**Out on Medical Leave Re: Purdue University Global - Student Accessibility Services (SAS) Registration Information**

Student Accessibility Services <sas@purdueglobal.edu>                                          Thu, Mar 12 at 09:30
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, <nicolelawtone@aol.com>

Nicole,

With regard to your email below stating you will be on medical leave, please reach out to your Student Advisor for guidance, as the SAS department does not handle medical leaves.

The SAS department received the message you sent through your student portal (self-referral) requesting reinstatement of your accommodations, specifically the use of dictation. Please note that you are currently approved and receiving accommodations; there is no need to reinstate your accommodations. (Also, as previously mentioned, there is no need for the SAS department to provide an approved accommodation for dictation, as any student can use their personal dictation program in their classes without an accommodation.)

| | |
|---|---|
| **Subject** | Reinstate accommodations |
| **Description** | I request the reinstatement and continued approval of my assistive technology accommodations, which are necessary for me to complete written coursework due to my documented disabilities. My medical conditions limit my ability to type for extended periods, and dictation technology allows me to produce written assignments by converting spoken words directly into text. This accommodation was previously approved through Student Accessibility Services and is essential for my ability to participate fully in the Juris Doctor program. The characteristics and speed of writing produced through assistive technology software are natural results of dictation technology and should not be misinterpreted as evidence of academic misconduct. I respectfully request confirmation that my approved accommodation remains in place so that I may continue completing my coursework using the assistive technology required for my disability. |
| **Created By** | Integration API User, 3/11/2026 3:55 PM |
| **Portal Submitted By** | Student [Nicole Lawtone-Bowles] |

Thank you,

**Toni Pesce, MBA**
**Manager, Student Accessibility Services (SAS)**
T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
www.PurdueGlobal.edu

The information contained in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

[Quoted text hidden]

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 113 of 136

# LET'S GET STARTED

## WELCOME

Welcome to CL850: Education Law. To support your academic progress, we have created "Start
success resource. Please take a few minutes to review the tips and resources in this area.

## HOW WILL I NAVIGATE THE ONLINE CLASSROOM?

Resources are available to introduce you to the elements of the classroom, including the Discussion I
Dropbox.

To access the Resources, go to "Help" on the Top Menu in the course, and select "Brightspace Help F

## WHAT WILL I LEARN?

In this course you will be provided with an overview of key topics in the field by examining the cons
regulations, and judicial decisions that have shaped public and private education. The course will h
sources of law affect schools and their students and staff. Topics include: foundational principles; so
school liability; instruction and curricular issues; privacy rights and right-to-know laws; student and !
Amendment, discipline, discrimination, and religion; search, seizure, and interrogation; special edu
edge topics such as electronic speech, discipline for off-campus behavior, cyberbullying, strip searc
uses a problem-based approach that allows you to apply what you learn by discussing and address
various problems, activities, and assessments. You will also go outside of the classroom materials 1
education law works in practice in your own state.

## HOW WILL I COMPLETE THIS COURSE?

Within each module you will complete exercises, quizzes, assignments, and learning activities. You w
abilities within the course through reading materials and in seminars and discussions.

## TIPS FOR COURSE SUCCESS

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 114 of 136

All courses require your time and effort to learn the course material and improve your knowledge ar successful in their courses follow these tips:

| | FIVE TIPS FOR COURSE SUCCESS |
|---|---|
| Plan Your Week | Knowing what is due and starting work early in tl give you more time to plan, draft, revise and edit |
| Create a Calendar | A homework chart kept next to your desk helps y |
| Create Reminders | Stay on track by using a homework app or your work is due. |
| Reduce Your Stress | Make room in your weekly schedule to work on i include some free time for you. |
| Get Assistance | Consult your instructor, family and friends, and ti |

## HOW SHOULD I MANAGE MY TIME?

View the **Course Outline** ☑ to learn about the average investment of time estimated to complete ea With this information, you can plan your time and decide how to pace your learning effectively.



☰ CL850 Education Law

Discussions List › View To...  ⚙ Settings  ❓ Help  [ Search Virt... 🔍 ]

# Virtual Office

☆ Subscribe

This space is set aside for you to ask questions about the course. However, this is not a place to discuss graded assessments such as quizzes or essays that you have started or finished as students work at their own pace and sharing information on assessments is a violation of the Student Conduct Code.

Please send questions about assessments for which you have received your grade privately to me. If you have started an assessment but haven't received a grade yet and have a question, direct it to the administration or technical support as appropriate.

I will check the Virtual Office daily Monday through Friday and respond within the next business day to questions posted over the weekend.

Place any questions about the course below.

**Start a New Thread**

Filter by:   All Threads ⌄

Sort by:

[ Most Recent Activity ⌄ ]

USDC IN/ND case 4:26-cv-00028-PPS-AZ   document 3-1   filed 04/09/26   page 116 of 136

# OFFICE OF BAR COUNSEL OF THE

Nicole Lawtone-Bowles posted Mar 1, 2026 11:32 AM ☆ Subscribe

https://www.massbbo.org/s/complaints

⌄ more

| 0 | 0 | 24 |
|---|---|---|
| Unread | Replies | Views |

# AI Spring Training Camp for Law Firn

Nicole Lawtone-Bowles posted Feb 28, 2026 2:43 PM ☆ Subscribe

I wanted to share a free, CLE-eligible virtual webinar series that's worth a look if your firm is sorting out where AI fits day to

⌄ more

| 0 | 0 | 5 |
|---|---|---|
| Unread | Replies | Views |

# Defense Secretary Pete Hegseth ord

Nicole Lawtone-Bowles posted Feb 28, 2026 11:33 AM ☆ Subscribe

https://www.columbiaspectator.com/news/2026/02/27/defense-secretary-pete-hegseth-orders-cancellation-of-dod-ties-with-

⌄ more

| 0 | 0 | 2 |
|---|---|---|
| Unread | Replies | Views |

# 'Wokeness and weakness' War secre

Nicole Lawtone-Bowles posted Feb 27, 2026 11:21 PM    ☆ Subscribe

https://www.foxnews.com/politics/hegseth-bans-military-attending-princeton-columbia-other-elite-universities-

∨ more

| 0 | 0 | 2 |
|---|---|---|
| Unread | Replies | Views |

# If you have federal student loan deb

Nicole Lawtone-Bowles posted Feb 27, 2026 11:16 PM    ☆ Subscribe

https://www.pbs.org/newshour/nation/if-you-have-federal-student-loan-debt-heres-what-experts-want-you-to-know

∨ more

| 0 | 0 | 3 |
|---|---|---|
| Unread | Replies | Views |

# 5 Minutes with Ryan Baker on Bias i

Nicole Lawtone-Bowles posted Feb 25, 2026 10:20 AM    ☆ Subscribe

https://educatingalllearners.podbean.com/e/5-minutes-with-ryan-baker-on-bias-in-artificial-intelligence/

∨ more

| 0 | 0 | 4 |
|---|---|---|
| Unread | Replies | Views |

# AI & Accessibility in Education

Nicole Lawtone-Bowles posted Feb 25, 2026 10:16 AM    ☆ Subscribe

https://www.cosn.org/wp-content/uploads/2024/09/Blaschke_Report_2024_lfp.pdf

∨ **more**

| 0 | 0 | 4 |
|---|---|---|
| Unread | Replies | Views |

# Office for Civil Rights Discriminatior

Nicole Lawtone-Bowles posted Feb 25, 2026 9:36 AM    ☆ Subscribe

https://ocrcas.ed.gov/office-for-civil-rights-discrimination-complaint-form

∨ **more**

| 0 | 0 | 7 |
|---|---|---|
| Unread | Replies | Views |

# A federal lawsuit alleges University c

Nicole Lawtone-Bowles posted Feb 24, 2026 5:23 PM    ☆ Subscribe

https://www.cbsnews.com/detroit/news/university-michigan-student-lawsuit-ai-disability-discrimination/

∨ **more**

| 0 | 0 | 13 |
|---|---|---|
| Unread | Replies | Views |

# Grades

Lanika Kincy posted Feb 23, 2026 7:14 PM    ☆ Subscribe

Professor,

∨ more

| 0 | 0 | 4 |
|---|---|---|
| Unread | Replies | Views |

# Education Law Bonus Seminar this T

Nicole Lawtone-Bowles posted Feb 22, 2026 6:04 PM    ☆ Subscribe

Professor,

∨ more

| 0 | 0 | 4 |
|---|---|---|
| Unread | Replies | Views |

# Seminar 1 Follow-Up

Amanda Hutch posted Jan 22, 2026 10:30 PM    ☆ Subscribe

Hi everyone!

∨ more

| 0 | 0 | 3 |
|---|---|---|
| Unread | Replies | Views |

# Virtual Office Acknowledgment

Cindy Parham posted Jan 14, 2026 8:34 PM    ☆ Subscribe

Virtual Office rules acknowledged.

| 0 | 1 | 10 |  Last post **January 19** |
| Unread | Replies | Views | **at 9:35 PM** by Felix Lawson |

# Hello All

Monique Johnson posted Jan 8, 2026 4:03 PM    ☆ Subscribe

Hello Professor and classmates,

❯ more

| 0 | 0 | 5 |
| Unread | Replies | Views |

# Posting Attendance

Rikki Gilmore-Byrd posted Jan 7, 2026 6:57 PM    ☆ Subscribe

I do not have any questions and look forward to the term.

❯ more

| 0 | 0 | 3 |
| Unread | Replies | Views |

# Hello!

Hope Rivas posted Jan 7, 2026 1:48 PM    ☆ Subscribe

Hello, and Happy New Year!

⌄ more

| 0 | 0 | 3 |
|---|---|---|
| Unread | Replies | Views |

# Introduction Robert Pierce

Robert Pierce posted Jan 7, 2026 8:47 AM    ☆ Subscribe

My name is Robert and I am currently working full time as a Customs Entry Writer while pursuing an Executive

⌄ more

| 0 | 0 | 2 |
|---|---|---|
| Unread | Replies | Views |

# Brief Introduction

Elle Murphy posted Jan 3, 2026 10:29 AM    ☆ Subscribe

Hello everyone, it's Elle.

⌄ more

| 0 | 0 | 7 |
|---|---|---|
| Unread | Replies | Views |

# Nicole Lawtone-Bowles Virtual Offic

Nicole Lawtone-Bowles posted Jan 2, 2026 12:49 PM    ☆ Subscribe

Happy New Year, Professor,

∨ more

0            0          12

Unread   Replies   Views

⟨    1    / 1   ⟩

Start a New Thread

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 123 of 136

 CL850 Education Law

# Assignments

 Help

**View History**

| Assignment | Completion Status | Score | Evaluation Status |
|---|---|---|---|
| **No Category** | | | |
| Module 1 Assignment Dropbox | 1 Submission, 1 File | - / 75 | |
| **Module 2 Seminar Dropbox** | 1 Submission, 1 File | 2 / 2 - 100 % | Feedback: Read |
| **Module 3 Assignment Dropbox** | 1 Submission, 1 File | - / 130 | |
| **Module 4 Seminar Dropbox** | 1 Submission, 1 File | 2 / 2 - 100 % | Feedback: Read |

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 3-1    filed 04/09/26    page 124 of 136

| | | |
|---|---|---|
| **Module 5 Assignment Dropbox** | 1 Submission, 1 File | - / 75 |
| **Module 6 Seminar Dropbox** | 1 Submission, 1 File | - / 2 |
| **Module 8 Assignment Dropbox** | 1 Submission, 1 File | - / 100 |
| **Module 8 Seminar Dropbox** | 1 Submission, 1 File | - / 2 |
| **Module 10 Seminar Dropbox** | Not Submitted | - / 2 |
| **Module 12 Seminar Dropbox** | Not Submitted | - / 2 |
| **Module 13 Assignment Dropbox** | 1 Submission, 1 File | - / 100 |
| **Module 14 Seminar Dropbox** | Not Submitted | - / 2 |

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 125 of 136

| | | |
|---|---|---|
| **Module 15 Assignment Dropbox** 🔗 | 1 Submission, 4 Files | - / 150 |

200 per page ⌄

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 126 of 136

 CL850 Education Law

# Grades

 Print

## Final Calculated Grade

**Points**

333 / 354

**Grade**

94.07 %

| Grade Item | Points | Grade | Comments and Assessments |
|---|---|---|---|
| Module 1 | | -% | |
| Module 1 Assignment | - / 75 | -% | |
| Module 2 | | 100 % | |
| Module 2 Seminar | 2 / 2 | 100 % | |
| Module 3 | | -% | |

| Module 3 Assignment | - / 130 | -% | |
| Module 4 | | 100 % | |
| Module 4 Seminar | 2 / 2 | 100 % | |
| Module 5 | | -% | |
| Module 5 Assignment | - / 75 | -% | |
| Module 6 | | 100 % | |
| Module 6 Quiz | 105 / 105 | 100 % | View Quiz Attempts |

| Module 6 Seminar | - / 2 | -% | |
|---|---|---|---|
| **Module 7** | | **80 %** | |
| Module 7 Quiz | 28 / 35 | 80 % | View Quiz Attempts |

| Module 8 | | -% |
|---|---|---|
| Module 8 Assignment | - / 100 | -% |
| Module 8 Seminar | - / 2 | -% |

| Module 9 | | | 100 % | |
|---|---|---|---|---|
| Module 9 Quiz | 70 / 70 | 100 % | ![] View Quiz Attempts |

USDC IN/ND case 4:26-cv-00028-PPS-AZ   document 3-1   filed 04/09/26   page 130 of 136

Module 10                                                90 %

Module 10 Quiz          63 / 70       90 %       👥 View Quiz Attempts

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 3-1 filed 04/09/26 page 131 of 136

| | | |
|---|---|---|
| Module 10 Seminar | - / 2 | -% |
| Module 11 | | -% |
| Module 12 | | 90 % |
| Module 12 Quiz | 63 / 70 | 90 %   View Quiz Attempts |

| | | |
|---|---|---|
| Module 12 Seminar | - / 2 | -% |

| | | |
|---|---|---|
| Module 13 | | -% |

| | | |
|---|---|---|
| Module 13 Assignment | - / 100 | -% |

| | | |
|---|---|---|
| Module 14 | | -% |

| | | |
|---|---|---|
| Module 14 Seminar | - / 2 | -% |

| | | |
|---|---|---|
| Module 15 | | -% |

| | | |
|---|---|---|
| Module 15 Assignment | - / 150 | -% |

| | | |
|---|---|---|
| Module 15 Participation | - / 6 | -% |

## Confirmation of Pearson VUE Exam Appointment

From: pearsonvueconfirmation@e.pearson.com

To: ◆◆◆◆◆◆◆◆◆◆

Date: Friday, January 2, 2026 at 03:02 AM EST



## Multistate Professional
## Responsibility Examination

**\*\*PLEASE DO NOT RESPOND TO THIS E-MAIL\*\***

# Confirmation of Your Scheduled Exam

This e-mail contains important information about the Multistate Professional Responsibility Examination (MPRE) that you scheduled, including the location and the time. Please ensure that these details are correct. If any of the information about your scheduled exam is not correct, please contact Pearson VUE immediately at www.pearsonvue.com/contact. Information about the MPRE is available at www.ncbex.org/mpre. **Reminder: it is your responsibility to be familiar with all MPRE registration and test day policies.**

## Appointment Details

Order Number: 0078-2567-6716

---

| **Exam:** | **MPRE - Multistate Professional Responsibility Examination - English (ENU)** |
|---|---|
| | |
| **Candidate:** | Nicole Laura Alexis Lawtone-Bowles |
| **NCBE Number:** |  |
| **Registration ID:** | |
| | |
| Date: | Tuesday, March 24, 2026 |
| Time: | 08:00 AM Eastern Daylight Time (Time shown is test center local time.) |
| Appointment Length: | 210 Minutes |
| | |
| Test Center Location (Directions shown below) | PEARSON PROFESSIONAL CENTERS-LYNDHURST NJ 1099 WALL STREET WEST SUITE 140 LYNDHURST, NEW JERSEY 07071 UNITED STATES |

## Accommodations

You have been approved for the following accommodations:

Accommodation

Receives an additional 50% extended testing time and up to 30 minutes of stop-the-clock break time

Total Appointment Length with Adjustment (in minutes):  210

Your appointment's time extension applies to all information presented on the computer, including any agreements and tutorials, in addition to your actual testing time. The total appointment length noted in this confirmation includes each of these components and is not equal to the actual testing time available to you.

---

### Admission Policy

### IMPORTANT: FOLLOW THE INSTRUCTIONS BELOW ON TEST DAY

### Bring TWO forms of ID.

You will be required to show two forms of original, unexpired identification (no photocopies, digital IDs, or expired IDs): a government-issued **primary ID** and a **secondary ID. The first and last name that you used to register, shown above, must match exactly the first and last name on both of the IDs that you present on test day.** Any corrections to your name must be made by you in your NCBE Account Dashboard and MUST be submitted at least 48 hours prior to the test.

- **First ID:** Your primary ID must be government issued and include your **first and last name**, recent recognizable **photo**, and **signature**. If you do not have a qualifying primary ID issued in the U.S., your primary ID must be an international travel passport issued by your country of citizenship. To be acceptable, passports must be printed in roman characters.
- **Second ID:** Your secondary ID must include at least a **first and last name** and **signature** or **first and last name** and recent recognizable **photo**.

### Arrive 30 minutes early.

We ask that you arrive at the testing center 30 minutes before your scheduled appointment time. This will give you adequate time to complete the necessary sign-in procedures. If you arrive more than 15 minutes after your scheduled appointment time, you may be prohibited from testing.

### Be prepared to store all personal items in a locker.

Except for your primary ID and permitted comfort aids, no personal items are allowed in the testing room, including but not limited to cell phones, hand-held computers/personal digital assistants (PDAs) or other electronic devices, e-cigarettes, watches, larger jewelry, wallets, purses, food or beverages, firearms or other weapons, hats (and other nonreligious head coverings), bags, coats, jackets, eyeglass cases, books, notes, pens, or pencils. You may be asked to remove jewelry and hair accessories and to empty your pockets. Pearson VUE testing centers have small, secure lockers in which you can store any personal items. You may not access your stored personal items during your testing appointment; if you plan to use any permitted comfort aids during your testing session, you must bring them with you the first time you enter the testing room. The testing center is not responsible for lost, stolen, or misplaced personal items.

For details about these policies, review the MPRE test day policies.

If you do not follow these policies, you may be prohibited from testing. If you are allowed to test, your score may be canceled.

### Reschedule Policy

MPRE appointments can be rescheduled only for a different appointment time or a different testing center location for the same test administration for which you originally registered. Exam appointments must be rescheduled at least 48 hours prior to the appointment. To reschedule your exam, you must access your online Pearson VUE account or contact Pearson VUE by telephone at 888-205-1855 and pay a non-refundable and non-transferable $25 fee.

### Cancellation Policy

If you are unable to test during the administration for which you are registered, you can cancel your appointment and receive a $80 refund. You can cancel your appointment in your online Pearson VUE account or by contacting

Pearson VUE by telephone at 888-205-1855. You must cancel your appointment at least 48 hours prior to the appointment to receive the refund. Your registration cannot be transferred to another administration.

This policy is included in the MPRE registration policies.

## Additional Information

The examination is two hours in length. You can expect testing to be completed in approximately 2½ to 3 hours from your arrival time.

Complaints about testing conditions or procedures must be received in writing at NCBE within six calendar days of your test date. (Note: survey responses or other communications with Pearson VUE will not be considered written complaints for this purpose.) Complaints can be submitted at https://www.ncbex.org/mprecomplaints/ or in a letter addressed to

NCBE
Attention: MPRE Complaint
302 S. Bedford St.
Madison, WI 53703-3622

---

Pearson VUE will not be held responsible for expenses incurred beyond the cost of the exam, including but not limited to travel expenses and lost wages on the day of the exam.

Pearson VUE's goal is to make your exam experience a pleasant one. Please feel free to contact us with your comments or questions. Our contact information can be found on our website: www.pearsonvue.com/contact

Sincerely,

Pearson VUE

---

## Directions to Test Center

Center:   PEARSON PROFESSIONAL CENTERS-LYNDHURST NJ

How to get there: DIRECTIONS to LYNDHURST, NJ
IF USING THE GARDEN STATE PARKWAY*************
** NORTH EXIT IS 153A
** SOUTH EXIT IS 153
ONTO RTE. 3 EAST PROCEED APPROX. 6 MILES STAY TO RIGHT
**17 SOUTH-LYNDHURST-SERVICE RD. EXIT
GO STRAIGHT THRU LIGHT ONTO POLITO AVE.(1BLOCK)
LEFT onto WALL ST. W.
(BIG GRAY SIGN----( MEADOWLANDS CORP CENTER)
1099 is second building on left
FIRST FL. ROOM 140.

IF USING THE NEW JERSEY TURNPIKE******************
Take NEW JERSEY TURNPIKE (I-95) TO Exit 16W.
RT 3 WEST to LYNDHURST-17SOUTH EXIT. (1MI ON RIGHT)
end of exit ramp --traffic light make LEFTonto POLITO AVE.
one short block--LEFT onto WALL ST.(MEADOWLANDS CORPORATE CENTER SIGN)
1099 WALL STREET is the second building on the left

IF USING ROUTE 17*******************************************
Take RT 17 SOUTH (stay in middle lane) to LYNDHURST EXIT.
end of exit ramp--traffic light- LEFT onto POLITO AVE.
one short block--LEFT onto WALL STREET(meadowlands corp center sign)
1099 WALL ST is the second building on the left.

IF USING ROUTE 3******************************************
Take RT 3 EAST to LYNDHURST- SERVICE ROAD EXIT

(It is the second exit after the Passaic River Bridge)
Go straight onto POLITO AVE.( one short block)
(GREY MEADOWLANDS CORP. CENTER SIGN)LEFT onto WALL STREET W.
1099 WALL STREET is the second building on the left
*********************OR************************************

Follow RT 3 WEST to LYNDHURST- exit sign reads 17 SOUTH LYNDHURST.
RIGHT JUGHANDLE RAMP WILL BRING TO TRAFFIC LIGHT
LEFT onto POLITO AVE. (1 SHORT BLOCK)
LEFT onto WALL STREET W. AT( GRAY MEADOWLANDS CORP.CTR. SIGN)
1099 WALL STREET is the second building on the left.

PARKING********************************************************
Free and ample parking available.
NJ Transit(1-800-772-2222) & DeCamp bus lines are available
!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! VERY IMPORTANT
!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!
EVENING & WEEKEND TESTERS PLEASE USE THE NORTH DOOR (back of the building)....
ENTERING THE PARKING LOT ON WALL ST. W. Look for the Pearson Professional Center sign on the back
window. If the rear entrance door is locked please use the intercom system in order to gain access to the building.
OFFICE ON FIRST FLOOR-- HALLWAY # 2, Suite #140.

---

https://www.pearsonvue.com/us/en/

https://www.pearsonvue.com/us/en/legal/privacy-and-cookies-policy.html