**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| NICOLE LAWTONE-BOWLES ) | Case No.: 4:26-cv-00028-PPS-AZ |
| ) | |
| Plaintiff(s), ) | PLAINTIFF'S REPLY IN |
| ) | SUPPORT OF MOTION FOR |
| vs. ) | TEMPORARY RESTRAINING |
| ) | ORDER |
| PURDUE UNIVERSITY ) | |
| GLOBAL, PURDUE GLOBAL ) | DATE: April 16, 2026 |
| LAW SCHOOL (FORMERLY ) | TIME: 10:00AM |
| CONCORD LAW SCHOOL) ) | |
| Defendant(s). ) | |
| ) | |

# EXHIBITS

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

NICOLE LAWTONE-BOWLES,    )
            )
   *Plaintiff,*      )
            ) No. 4:26-cv-00028-PPS-AZ
  vs.        )
            )
PURDUE UNIVERSITY GLOBAL, et. al )
            )
   *Defendants.*    )

## DECLARATION OF CAROLYN NORDSTROM

I, Carolyn Nordstrom, declare as follows:

1. I am an adult of sound mind, competent to testify to the matters described in this declaration. I also have personal knowledge of the facts and information as set forth in this declaration.

2. I am the Provost at Purdue Global. I am competent to testify to the matters set forth herein and make this declaration based on my personal knowledge and review of the University's records.

3. My office is responsible for coordinating and maintaining records relating to academic integrity proceedings, including communications between faculty, the Academic Appeals Committee ("AAC"), and the Office of the Provost.

4. In my role, I am responsible for reviewing and making a final determination on a finding of academic misconduct.

5. As stated in the Purdue Global Academic Catalog, academic integrity is a cornerstone of Purdue Global's mission to deliver personalized education that enables students to develop essential academic and professional skills. Integrity in academic instruction and learning is

important because it ensures that the Purdue Global community maintains the highest standards of honesty, fairness, transparency, and accountability.

6. Academic integrity encompasses independent authorship and accurate citation. A student who does not act with academic integrity cannot successfully complete the program, with or without accommodation.

7. I have reviewed the academic integrity record of Plaintiff Nicole Lawtone-Bowles. The facts summarized below are drawn from those records.

8. On May 27, 2025, Plaintiff's instructor in CL685-01: Criminal Procedure reported concerns regarding Plaintiff's submissions for Modules 6 and 10.

9. For Module 6, Plaintiff submitted an essay of approximately 5,300 words, including legal citations, in approximately eight minutes in a closed-book, closed-note format.

10. For Module 10, Plaintiff submitted a similarly detailed essay, also including legal citations, within an implausibly short timeframe and within the first week of the course.

11. The instructor determined that Plaintiff's explanations for completing such work in such a short time without outside assistance were not credible.

12. Plaintiff was notified of the reported breach on June 3, 2025.

13. On June 5, 2025, the Academic Appeals Committee upheld the finding of academic misconduct.

14. The sanction imposed was failure of the relevant assignments.

15. The Committee specifically found that the volume, speed, and citation accuracy of the work were inconsistent with independent authorship and strongly suggested the use of unauthorized assistance.

16. Plaintiff appealed this decision to me in my role as the Provost, and I affirmed the decision on June 23, 2025.

17.     On January 15, 2026, a second academic integrity report was filed by Plaintiff's instructor in CL760-01: Community Property.

18.     The instructor observed that Plaintiff completed all essay quizzes and a discussion assignment for the course within approximately two weeks, with unusually high accuracy and without errors.

19.     The instructor also observed that Plaintiff completed timed essay quizzes significantly faster than expected, including completing one quiz in 22 minutes where two hours were permitted.

20.     During a follow-up discussion, Plaintiff was unable to demonstrate the same level of knowledge reflected in her written submissions.

21.     Plaintiff was notified of the second breach on January 26, 2026.

22.     Plaintiff requested a hearing, which was held on February 23, 2026.

23.     On February 27, 2026, the Academic Appeals Committee found that Plaintiff had engaged in academic misconduct.

24.     The Committee found a disconnect between the sophistication of Plaintiff's written work and her demonstrated knowledge during questioning.

25.     The Committee also found that Plaintiff failed to produce drafts or supporting materials that would substantiate independent authorship.

26.     The sanction imposed was failure of the course.

27.     Plaintiff appealed to the Provost, and I affirmed the decision on March 4, 2026.

28.     On February 14, 2026, a third academic integrity report was submitted in connection with Plaintiff's work in CL850-01: Education Law.

29.     The instructor reported that Plaintiff submitted all course assignments within two weeks, despite the course involving a substantial reading load exceeding 900 pages.

30. The instructor further reported that Plaintiff's submissions reflected writing speed and quality inconsistent with independent work.

31. The matter was referred to the Office of the Provost, and Plaintiff was notified on March 10, 2026.

32. Plaintiff requested a hearing, which was held on March 25, 2026.

33. At the hearing, the Committee considered both the written submissions and Plaintiff's explanations.

34. The Committee identified numerous issues in Plaintiff's work, including:

    a. inaccurate or fabricated legal citations;
    b. citations that did not correspond to the propositions for which they were offered;
    c. inconsistencies in Plaintiff's explanations regarding how the work was prepared.

35. The Committee concluded that Plaintiff's submissions did not reflect genuine legal research and writing and were consistent with the use of unauthorized assistance or fabrication.

36. On March 25, 2026, the Committee determined that Plaintiff committed a third academic integrity violation.

37. Under Purdue Global's Academic Dishonesty Policy, a third academic integrity violation results in dismissal from the University.

38. Plaintiff was notified of her dismissal on April 1, 2026.

39. Plaintiff appealed to the Provost.

40. On April 7, 2026, I affirmed the decision, finding no basis to overturn the Committee's determination.

41. The findings of academic misconduct were made by different instructors across different courses and were independently reviewed by the Academic Appeals Committee and the Office of the Provost.

42.    Throughout Plaintiff's enrollment, Purdue Global permitted Plaintiff to use speech-to-text technology across courses outside of any formal disability accommodation process. This permission was consistent across courses and not restricted or revoked at any time.

43.    The academic integrity findings were not based on Plaintiff's use of assistive technology. Rather, they were based on the content, timing, and characteristics of her submissions, including issues relating to authorship, accuracy, and credibility.

44.    In each instance, Plaintiff was given an opportunity to explain her submissions, including her reliance on speech-to-text technology and prior study. Those explanations were considered but were found not to account for the identified issues.

45.    The findings of misconduct in each instance were based on the characteristics of Plaintiff's submissions and the surrounding circumstances, not on the use of assistive technology.

46.    Plaintiff was provided multiple opportunities to respond to the allegations, including written responses and formal hearings before the Academic Appeals Committee.

47.    Plaintiff's dismissal resulted from three separate findings of academic misconduct, each independently reviewed and upheld through the University's established procedures.

48.    The final determination followed multiple levels of review, including hearings and appeal to the Provost.

49.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 15, 2026.

Carolyn Nordstrom

CL760 Community Property:

Inbox



**Brian Victor**                                                Thu, Jan 15, 9:11 AM
                                                                (13 days ago)

to me

From: "Brian Victor"
Subject: CL760 Community Property:
To: "Nicole Lawtone-Bowles"
Cc:
Bcc:

Nicole,

I am writing to inform you that I have submitted a formal report to the Office of the Provost regarding your performance in Community Property. This is a standard procedural requirement when certain patterns are identified.

The report was initiated following a review of your course progress, specifically noting that all coursework including timed essay exams was completed in less than two weeks.

After consulting with the Associate Dean of Academics, I was advised that the speed and nature of this completion requires a formal review to ensure compliance with our institutional academic integrity standards.

The Provost's Office will contact you to discuss the next steps and any potential findings. Once you receive the official communication from their office, you will have the opportunity to appeal the decision.

Please understand that this is a standard procedural requirement when such patterns are identified. I encourage you to wait for the official notification from the Provost's Office for further guidance on the review process.

Professor Victor



March 4th, 2026

Dear Nicole Lawtone-Bowles,

I received your appeal of the decision by the Academic Appeals Committee about a grade received in CL760-01: Community Property.

In my review of your appeal, I examined the assignment requirements, syllabus, and all other associated documents, as well as any additional materials submitted to the Appeals Committee.

After careful consideration of all the information provided, I am upholding the decision to deny your appeal. While I understand this was not the outcome you sought, I found no compelling evidence to contradict the Appeals Committee.

Sincerely,

**Carolyn Nordstrom, Ph.D.**
Pronouns: she, her, hers
Provost



April 7th, 2026

Dear Ms. Lawtone Bowles:

I have carefully reviewed your appeal communications, the written decision of the Academic Appeals Committee, and the written material presented to the Academic Appeals Committee by you and by Purdue Global Law School. Following this review, I have concluded that there is no basis to change the decision of the Academic Appeals Committee.

My review indicated that the Committee carefully considered the arguments you presented in your appeal, particularly that the speed with which you completed the assignments at issue was due to the use of assistive technology and non-generative Artificial Intelligence ("AI"). Your appeal continues, as before, to focus on the use of assistive technology and a claim that Purdue Global is not honoring your accommodations.

Purdue Global has never disputed your approved accommodations or your ability to use assistive technology. The violations of academic integrity you had the opportunity to defend resulted from allegations of the inappropriate use of generative AI to complete assignments and assessments. Your appeal did not provide evidence addressing the inappropriate use of generative AI, and you have not provided substantive information that would support a reversal of the Academic Appeals Committee's thoughtful and comprehensive review.

I agree with the Academic Appeals Committee's conclusion that your conduct constituted a breach of Purdue Global's academic integrity rules. Further, this is the third academic integrity violation for which you have been found responsible. Accordingly, I am upholding the April 1st, 2026 decision of the Academic Appeals Committee, and you are dismissed from the University, effective immediately. This decision is final.


Sincerely,

Carolyn Nordstrom, Ph.D
Provost



June 23rd, 2025

Dear Nicole Lawtone-Bowles,

I received your appeal of the decision by the Academic Appeals Committee about a grade received in CL685-01: Criminal Procedure.

In my review of your appeal, I examined the assignment requirements, syllabus, and all other associated documents, as well as any additional materials submitted to the Appeals Committee.

After careful consideration of all the information provided, I am upholding the decision to deny your appeal. While I understand this was not the outcome you sought, I found no compelling evidence to contradict the Appeals Committee.

Sincerely,

**Carolyn Nordstrom, Ph.D.**
Pronouns: she, her, hers
Provost

**Narrative of the Situation**

On January 14, 2026, I was reviewing the grades of all of my students in the CL-760 Community Property class and I noticed that Nicole Lawtone-Bowles had completed all of the course curriculum in only six days. Most notably, all required essays, which require significant research and reflection were submitted on the same day. Producing this volume of detailed work in such a short window is highly unusual.

I emailed Shaun Jamison and informed him of my concerns. He instructed me to have a conversation with the student.

I then emailed the student asking for a phone call with her and she wrote me back quickly saying I could call her now. I had a telephone conversation with the student on January 14 and informed her of my concerns. I asked if she had a Word document of the worksheet she was using to complete the quizzes, but she mentioned she studied this topic before, so she did not have a word document. I also asked her a question about how pensions get divided in California at time of divorce, which is something she would have studied to prepare to take the essay quizzes. She provided a brief answer of how it works in New York, and after repeating tangents, she was unable to provide the answer or even any theory as to how to obtain the answer. She was unable to demonstrate even a basic understanding of the content.

I discussed this phone call and my concerns with Shuan Jamison and he informed me I should make a report.

On January 15, 2026, I made a report of Academic Dishonesty. Later that day, I informed the student via email that I made the report. I sent her another email clarifying the issues I was concerned about. She has sent me 4 emails about this situation, which I have included in this documentation. She also sent me subsequent emails, asking me to explain the subject matter she supposedly studied and wrote about. For example, she has asked me about how equitable distribution differs from community property, which was the subject matter of the first essay she wrote. I have included these emails herein.

## Complaint Summary 2601L Term (CL760-01): Nicole Lawtone-Bowles

Ms. Nicole Lawtone-Bowles' is a 6 term student pursuing the Juris Doctor. Her claim of discrimination states that she is a 54 year old, Black, disabled woman who is experiencing a level of scrutiny, with allegations of misconduct, that would not occur if she were a white male. Ms. Lawtone-Bowles states that her instructor and the Associate Dean at Purdue Global Law School, who are white, have discriminated against her and accused her of academic misconduct because she is a black female working ahead and completing assignments early in her CL760-01 Community Property course in the 2601L term (January 7, 2026 – April 28, 2026). She claims this practice is directly related to her documented disability and is expressly covered by her approved Section 504/IEP accommodations. (*Note: Individualized Education Programs (IEPs) and 504 plans both provide support for students with disabilities. An IEP provides specialized instruction for students needing academic intervention, normally K-12 students, while 504 plans provide accommodations (e.g., extra time) for access to the general curriculum without specialized instruction, which applies to students in a Juris Doctor program.)*

Despite efforts to explain how her disability affects her academic work patterns, she has experienced treatment she claims is discriminatory and inconsistent with her accommodations.

The investigation of her complaint includes a review of emails, documents, transcript of recorded seminar and personal statements she submitted as evidence. *File attached*

### Findings

To support her claim of racial discrimination, Ms. Lawtone-Bowles provided pictures of her instructors and the Associate Dean, showing they are white while she is black. This documents the racial difference, but is not evidence of discriminatory words or behavior.

Ms. Lawtone-Bowles also provided a recording of one of her seminars in the CL760-01 Community Property course. The video showed the instructor telling Ms. Lawtone-Bowles he would take one final comment before moving on to break-out sessions. When he felt she had made her point and continued, he prompted her to finish so he could move on. Rushing her may have been interpreted as rude, but it does not constitute discrimination. There was no pattern of differential treatment in the seminar by the instructor in the interactions with black and white students. Instructors have a responsibility to keep seminars moving forward so material can be covered and all students can participate. Ms. Lawtone-Bowles was given the same amount of time to contribute to the class as other students were given. Throughout the seminar, the professor politely addressed Ms. Lawtone-Bowles and complimented her contributions.

Ms. Lawtone-Bowles claims her OCD-related accommodations were not honored and resulted in discrimination based on her disability. Ms. Lawtone-Bowles has received ADA accommodations since 2024. Her current approved accommodations include use of speech-to-text and text-to-speech tools: this allows copying and pasting text as part of those processes. There have been questions about the speed with which Ms. Lawtone-Bowles has completed assignments, with expressed concerns about the appropriate use of Artificial Intelligence (AI). She explains that the tools necessary for her to access and complete coursework on an equal basis cannot be recharacterized as misconduct. She claims that scrutinizing her work to evaluate the use of AI is penalizing conduct that flows directly from a disregard for her approved accommodations, and is not based on faculty experience that a student could not complete the volume of work presented without the inappropriate support of AI.

The approved accommodations on file did not, in fact, include a diagnosis of Obsessive Compulsive Disorder (OCD) or an approval to work ahead in classes for the 2601L term that began on January 7, 2026. An OCD diagnosis was not mentioned until a doctor's January 28th, 2026, note was submitted by Ms. Lawtone-Bowles. Working ahead in her classes was a presumed privilege she exercised before the doctor's statement was submitted, in which it was noted that working ahead was a way to manage her symptom escalation. Even so, the physician's statement does not preclude the Law School from determining how much farther ahead work would be accepted. This is not the student's decision. Working with Student Accessibility Services, it is within the prerogative of the Law School to set expectations about how much work will be accepted and graded within an accommodations timeframe.

To request accommodations be updated, documentation from a physician has to be provided. The physician's documentation was received on January 30th, 2026. Once accommodations for a new diagnosis are approved, they go into effect for the upcoming term. Accommodations are not retroactive. Accommodations including Ms. Lawtone-Bowles' OCD disability were not on file. There were no updates to the previously approved accommodations, for the 2601L term in which she claims discrimination occurred based on that disability.

There are numerous emails from Ms. Lawtone-Bowles, expressing her belief that the questions about her potentially inappropriate use of AI are based solely on bias related to her race. Further, she claims the extraordinary pace at which her work is completed is a direct result of the approved use of speech-to-text and text-to-speech tools. Her conclusion is that the allegations of misconduct are the result of persistent disregard for the benefit of these tools to mitigate her disability, and not because her performance significantly outpaces any of the metrics documented for the amount of time students would require to complete the number of assignments submitted. Assignment completion metrics are used as a baseline in all accredited programs to award Carnegie credits for courses. The Law School has documentation of these baseline metrics for its courses.

The evidence provided documents that the decision to work ahead was made independently by Ms. Lawtone-Bowles. It was not approved within the policy of the Law School, or by an exception resulting from updated, approved accommodations. Denying her permission to work ahead was a decision related to School policy, independent of race or disability. Questions about the actual work submitted were prompted by routine faculty practice to monitor the appropriate use of AI. The Law School prepares students for this practice by requiring students to complete and pass module 3 of CL600 Academic Integrity . Ms. Lawtone-Bowles took and passed the class.

https://kapextmediassl-a.akamaihd.net/global/CTL/pgls_academic_integrity/story.html

The evidence reviewed does not provide evidence of discriminatory words or actions by the instructor or the university, demonstrating racial bias or a disregard for the student's approved accessibility accommodations. The instructor's questions about AI use and the unwillingness to accept assignments submitted outside of policy guidelines are consistent with the practices of the Law School. Updated information was submitted for consideration of additional accommodations, and this new documentation may change accommodations going forward. It is not retroactive. There were no changes to the approved accommodations on file for the term in which the student was enrolled and claims there was discrimination.

Purdue Global takes claims of discrimination seriously. The university holds itself accountable to foster a culture that promotes inclusion and belonging. There were no documented words or

behaviors in the evidence provided that demonstrated failure to provide a fair or accessible learning environment.

Hello, JNavarro1   [ Log out ]

Home       GEL       PC       AAC Appeal       AAC Review       Admin

# Appeal - Viewing

[ Edit ]   [ Back To List ]

| | |
|---|---|
| Id | 1493 |
| Student Name | Nicole Lawtone-Bowles |
| Student Email | nicolelawtone@aol.com, nicolelawtonebow@student.purdueglobal.edu |
| Student Degree Program | Juris Doctor (Full-Time) |
| School | Purdue Global Law School |
| Campus | 848 Purdue Global Law School |
| Term/Session | 2601L |
| Course Code | CL760 |
| Course Title | Community Property |
| Course Section | 01 |
| Course Level | Graduate |
| Assignment | Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion |
| Type of Appeal | Academic Integrity 2nd Offense |
| Received | 01/26/2026 |
| Received Confirmed | 01/28/2026 |
| Supporting Documents | Lawtone-Bowles Notes and Analysis.docx |
| | Nicole.zip |
| | Lawtone-Bowles Discrimination Investigation Summary - 02.2026.docx |
| | Provost Appeal Response_Nicole Lawtone-Bowles_03.04.26.docx |
| | Provost level appeal docs for Nicole Lawtone-Bowles.docx |
| Instructor | Brian Victor |
| Instructor Email | Brian.Victor@purdueglobal.edu |
| Appeal Status | Completed |
| Reviewer 1 | James Dodge (Purdue Global Law School) |
| Reviewer 1 Recommendation | Deny Appeal |

https://cps.purdueglobal.edu/AAC/1493

1/5

USDC IN/ND case 4:26-cv-00028-PPS-AZ   document 16-1   filed 04/20/26   page 16 of 85

| | |
|---|---|
| Reviewer 1 Form | 2416 |
| Reviewer 2 | Sheri Dennis (Purdue Global Law School) |
| Reviewer 2 Recommendation | Deny Appeal |
| Reviewer 2 Form | 2417 |
| AAC Meeting Date | |
| AAC Decision | Denied by Review |
| AAC Decision Date | 02/27/2026 |
| AAC Decision Comments | Reviewer 1: James Dodge / Recommendation: Deny Appeal<br>Reviewer 2: Sheri Dennis / Recommendation: Deny Appeal |

• In addition to my coursework on neurodivergence in higher education, I am the parent of a special needs child. I was forced to sue my local school district so that my daughter could receive an Individual Education Plan (IEP). My daughter (like the student) is also a participant in an Individualized Plan for Employment (IPE) (as disclosed by the student in her non-appeal documents). Because of this, I am very aware of and very sensitive to the challenges facing persons with disabilities and neurodivergent persons in education.

• After reviewing the student's submissions, I observed the high quality of the work provided in the assignments in question together with the short time periods in which the work was completed (both in terms of the writing time online while the timed assignments were accessed by the student and in terms of the number of days in which the student completed the content and assignments for the course). The quality of work and depth of knowledge reflected in the submitted assignments was not evident in the student's response to the instructor when questioned.

• In the hearing requested by the student, the student's responses to the questions of substantive law posed by the appeal panel were not reflective of the quality of the course work submitted by the student nor were they completed in anything approaching the very brief time periods for similar types of assignments within the course. This observation of the disconnect between the work submitted by the student and the in-person performance of the student leads me to believe that the assignments submitted by the student are not the student's own work.

• In the course of reading the materials provided by the student, I read the student's own article "When Accommodation Becomes Suspicion" (provided with the student's other submitted materials) and was interested in reading the support for her assertions. I was disappointed to discover that two of the references were entirely fictional. The first - Harbour, M. E. (2019). The accommodation crisis in higher education. New Directions for Higher Education, 2019(185–186), 25–38 – does not exist in this journal nor under this title in any journal, nor was I able to locate any similar titles by the author indicated or any other author. For the second - Onwuachi-Willig, A. (2018). The trauma of wrongful discipline. Stanford Law Review, 70(6), 1791–1842 – the author is the current dean of Boston University's School of Law and is an expert on trauma who has kindly made public her entire CV. Both a review of her CV and extensive searches reveals that Dean Onwuachi-Willig has not: (1) written on the trauma of wrongful discipline, (2) written an article with the same name or a similar name, and (3) published an article in the Stanford Law Review.

• After reviewing all submitted materials and following a hearing where the student was provided an opportunity to present information, it appears that the student engaged in conduct inconsistent with the institution's academic integrity standards.

• The Module essays and quizzes were completed in a timeframe substantially shorter than would reasonably be expected for a student to read, analyze, and respond. Additionally, all course requirements were completed in a timeframe significantly shorter than the typical progression for similarly situated

students.
• While speed alone is not dispositive, the student's submissions exhibit polished syntax and error-free grammar, which, when viewed collectively and in conjunction with the compressed completion times, raise concerns regarding independent authorship. In addition, during the hearing, the student was unable to complete comparable multiple-choice and short-answer questions at a similar pace.
• Moreover, course policy requires that students retain Word documents of their submissions. The student was unable to produce draft materials when requested and indicated she was unaware of the requirement. The absence of retained drafts, limits the ability to verify the independent development of the submitted work and is appropriate to consider.

| | |
|---|---|
| Outcome Notification Date | 03/02/2026 |
| Appeal to Provost | 03/03/2026 |
| Provost Decision Expected By | 03/24/2026 |
| Provost Decision | Appeal Denied |
| AAC Administrator | Joanna Navarro |
| AAC Chair | Joanna Navarro |
| Administrative Comments | Sent with attachment****** |

Dear Nicole Lawtone-Bowles,

I appreciate your patience during this review period.

Our Provost, Carolyn Nordstrom, has conducted a thorough review of your appeal; please find attached a letter with the decision. Please be advised that this is the final stage in the review process.

Thank you.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost

****************
Dear Nicole Lawtone-Bowles,

Thank you for your patience while waiting for the outcome of your CL760-01: Community Property Academic Dishonesty Appeal and the investigation of your claim of discrimination based on race and disability.

Re the investigation into the claims of discrimination: the summary document is attached.

Re the charge of academic misconduct: Supporting documentation from you, the instructor, and the Law School were reviewed by the Academic Appeals Committee as part of the February 23rd, 2026 hearing process to determine if there was evidence of academic dishonesty.

The Committee found:
After reviewing the student's submissions, one can observe the high quality of the work provided in the

assignments in question, together with the short time periods in which the work was completed, both in terms of the writing time online while the timed assignments were accessed by the student and in terms of the number of days in which the student completed the content and assignments for the course.

The quality of work and depth of knowledge reflected in the submitted assignments were not evident in the student's response to the instructor when questioned.

The Module essays and quizzes were completed in a timeframe substantially shorter than would reasonably be expected for a student to read, analyze, and respond. Additionally, all course requirements were completed in a timeframe significantly shorter than the typical progression for similarly situated students.

While speed alone is not dispositive, the student's submissions exhibit polished syntax and error-free grammar which, when viewed collectively and in conjunction with the compressed completion times, raise concerns regarding independent authorship. In addition, during the hearing, the student was unable to complete comparable multiple-choice and short-answer questions at a similar pace. This observation of a disconnect between the student's submitted work and in-person performance suggests that the assignments are not the student's own work.

Moreover, the course syllabus requires that students retain Word documents of their submissions. The student was unable to produce draft materials when requested and indicated she was unaware of the requirement. The absence of retained drafts limits the ability to verify the independent development of the submitted work and is appropriate to consider.

In the materials provided by the student, there was her own article, "When Accommodation Becomes Suspicion," explaining her situation. Of the five sources cited/referenced, two were fabricated sources (Harbour and Onwuachi-Willig).

After reviewing all submitted materials and following a hearing where the student was provided an opportunity to present information, the preponderance of evidence supports the conclusion that the student engaged in conduct inconsistent with the University's academic integrity policy.

The Committee, therefore, determined that this is a violation of the Student Code of Conduct. As a result, the failure of the CL760-01: Community Property class will stand; you will be administratively withdrawn from the course, and the 2nd Academic Dishonesty charge will remain documented in the University's database.

If you disagree with the Academic Appeals Committee's decision, you may send a rebuttal to the Office of the Provost within 10 days of receiving the Committee's decision. The Office of the Provost will review the Committee's appeal decision process, the information submitted, and any new material presented to make a final ruling.

If you have any questions, you may email provost@purdueglobal.edu.

Thank you.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost

| | |
|---|---|
| Created | 01/28/2026 21:05:48 |
| Created By | Joanna Navarro |
| Modified | 03/10/2026 19:30:29 |
| Modified By | Joanna Navarro |



- <u>Close Window</u>
- <u>Print This Page</u>
- <u>Expand All</u> | <u>Collapse All</u>

# Case: C-6523986

## Case Summary

| | | | |
|---|---|---|---|
| **Case Record Type** | Academic Engagement | **Product Family of Case** | |
| **Case Type** | Student Concern | **Case Number** | C-6523986 [<u>View Hierarchy</u>] |
| **Case SubType** | Plagiarism Charges | **Case Owner** | JoAnna Navarro |
| **Formal Approval Process?** | No | **Status** | Closed |
| **Prefix for Course** | | **Campus** | 848 Purdue Global Law School |
| **Term** | | **Campus From Campus Lookup** | 848 Purdue Global Law School |

## Case Information

**Estimated Credits Remaining**

## Case Account Information

| | | | |
|---|---|---|---|
| **Account Name** | Nicole Lawtone-Bowles | **Opportunity** | |
| **Academic Engagement** | | **Contact Name** | Nicole Lawtone-Bowles |
| **Desired Program** | Juris Doctor (Full Time) | **CVUE Student Number** | 40055989 |
| **Desired Program of Interest** | | **Instructor Name** | |
| **Emphasis Area** | | **Course Code** | |

## Description

**Subject**    Academic Dishonesty - 3rd Breach: Nicole Lawtone-Bowles

**Description**    Nicole Lawtone-Bowles
Term: 2601L
Class: CL850-01: Education Law
Assignment: Modules 1 and 8
Instructor Name: Sarah Diab

Reason:
*******From the Professor, Sarah Diab

The student submitted all assignments for the course within 2 weeks, between January 7 and January 22. The assigned textbook is over 900 pages, assigned in full. The only explanation for her ability to submit all assignments within days of one another is use of Ai, which is indicated by Turnitin.

The student first refused to meet, claiming to be too busy, then scheduled a meeting; upon an emergency on my end, I requested to reschedule our meeting for the following day or any other upcoming day. The student refused to reschedule and displayed intense hostility. Since her offensive remarks and display of aggression, I have seized all communication with the student and decided to report her. I have attached both email threads below. No other student that I have met with or whose appointment was rescheduled reacted in the same hostile manner.

****From the Chair and Associate Dean of Academic Affairs, Shaun Jamison

Dear Nicole Lawtone Bowles,

I have carefully reviewed this matter. Much of the concerns were addressed in more detail in the inquiry letter so I won't be repeating everything in detail here. I will be referring this matter to the Provost's office as an academic integrity violation.

It is important to clarify a few foundational matters:
• The appropriateness of speech to text technology for the assessments in this course is uncontested by the academic department.
• The use of spell check and ordinary grammar checkers (i.e. fixing your tense) on open book assessments are not a violation whether they use AI or not.
• The fact that a speech to text software uses AI to train itself to your voice, accent, or manner of speaking is not a violation.
• Using AI to generate expression such as sentences, paragraphs, etc, or substantially rewrite sentences, paragraphs, etc. would be a violation in this course.
• We are not relying on AI detection in determining whether to move forward with this violation.
• It's undisputed that you were given an opportunity to speak to your professor. The first you refused. The second, you agreed, but unfortunately the professor had a conflict. The third time, you refused.

Having reviewed your submitted materials, I found the properties of the documents the most helpful. You felt they were objective and dispositive. I find, particularly looking at Module One and Eight, concerning.

Module 8 assessment shows it was created over a period of 5 minutes for 6 pages and over a 1000 words. Module 1 (which you sent the properties for) was 29 pages long, with 6140 words, and produced over 194 minutes or approximately 3.25 hours. This means that you produced 8.92 pages of law school writing and analysis per hour including editing for Module 1 and about one page per minute for Module 8.

So while the properties seem to support that you put forth some effort to edit the material, the speed and quality of the documents produced in the amount of time is not believable without the aid of unpermitted resources such as generative artificial intelligence. Add to that the context of what you agree is full-time employment (plus other obligations) and the ordinary need for sleep and other tasks, the other 15 credits you were taking, it is not believable. I am also concerned that your correspondence, at times, belays that the quality of your analysis and knowledge of subjects you took at the school are not complete.

You ask us to believe you, and yet what we see demonstrated is not honesty. You stated on your attestation for the full-time program that you were only working 20 or fewer hours per week, but, in fact, you are working full-time and possibly more than that. You submitted the Module 1 assignment for review and feedback, knowing that was not allowed. You did not admit this was the reason for the very high Turnitin report until I prompted you. You filled out the end of module acknowledgements that you had completed the work and hours when you clearly had not (because the seminars had not happened yet, for one).

I know this is not the result you were hoping for. I will communicate my investigation to the Provost's office. As you know, they will reach out and you will have the opportunity to appeal. Note that if you intend to appeal, additional evidence or arguments must be submitted through that process as I have completed my investigation.

Here is a link to our student assistance service: https://campus.purdueglobal.edu/page/student-assistance-program. Their phone number is 855-384-1800.

**Close Case Reason**  Completed

**Case Closure Comments**  Dear Nicole Lawtone-Bowles,

This letter confirms your third Academic Dishonesty breach of the Student Code of Conduct. The following information summarizes your breaches:

First Breach
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

Second Breach
Term: 2601L
Class: CL760-01: Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion
Instructor Name: Brian Victor

Third Breach
Term: 2601L
Class: CL850-01: Education Law
Assignment: Modules 1 and 8
Instructor Name: Sarah Diab

All reports of academic dishonesty are recorded in Purdue Global's database and remain there permanently. All breaches you accumulate while completing a program will be carried over to any subsequent program at Purdue Global.

If you disagree with these findings and wish to appeal this breach, you must complete the following steps:
If you have not done so already, discuss the breach with your instructor, providing a thorough explanation and evidence of why you believe the suspicion of academic dishonesty to be inaccurate.
If the dispute is still unresolved and you wish to pursue an appeal of the report of academic dishonesty, you must submit an Academic Appeal Form to the Office of the Provost. The appeal form can be found on your student portal under quicklinks or by following this link.
The appeal form should include an explanation and evidence to support your position.
Please note all appeals must take place in writing within 10 days of receiving this letter. Submissions made more than 10 days after notification of the breach will not be accepted.

The Code of Student Conduct Policy is accessible via the Purdue University Global catalog.

Regards,

Office of the Provost

Cc:

Carolyn Nordstrom, Provost, Purdue Global
Martin Pritikin, Purdue Global Law School
Shaun Jamison, Chair and Associate Dean of Academic Affairs, Purdue Global Law School
Sarah Diab, Instructor, Purdue Global Law School

**Action Taken**

**Case Evaluation Result**

**International Background Check**

| | | | |
|---|---|---|---|
| Programs | | BG Cost | |
| Permanent State and Country | New York<br>United States of America | BG Code | |
| BG Notes | | | |

**System Information**

| | | | |
|---|---|---|---|
| Created By | JoAnna Navarro, 3/10/2026 4:12 PM | Last Modified By | JoAnna Navarro, 3/10/2026 4:26 PM |
| Portal Submitted By | | Date/Time Opened | 3/10/2026 4:12 PM |
| Parent Case | | ODI Link | |
| Parent Case Date Opened | | | |

## Contact Information

### Open Case and Task

# # OF OPEN CASES: 3
# # OF OPEN TASKS: 0

### Account Information

| | | | |
|---|---|---|---|
| Account Name | Nicole Lawtone-Bowles | Account Record Type | Student Enrollment |
| Chosen First Name | Nicole | Account Owner | Integration API Pre-Enrollment |
| Student Status | Dismissal | Industry Owner | |
| Admissions Advisor | Integration API Pre-Enrollment | Lead Classification | PGLS |
| Admissions Advisor ID | 505141 | Previous Lead Classification | null (Integration API Pre-Enrollment on 3/4/2024 1:30:12 AM EST) |
| ActiveOpportunitySyStaffID | 505141 | Source Description | |
| Latest Opportunity Owner | Integration API Pre-Enrollment | Shared Service | |
| Latest Opportunity Creation Date | 4/9/2026 11:29 AM | Fraud | |
| Ledger Balance | USD 0.00 | EWC | Yes |

| | | | |
|---|---|---|---|
| **Scholarship** | | **Education Advising Team** | |
| Dean Enrollment Approval Required | ✓ | FERPA | ☐ |
| DEAR Approval Case Required | ✓ | Directory Information Withheld | ☐ |
| Academic Violation | ✓ | Do Not Call | ☐ |
| AV Approval Case Required | ✓ | Do Not Email | No |
| SAP Appeal Required | FA Warning | GDPR | No |
| Lead Type | Adult | Region | |
| Partner Current Term Eligibility | ☐ | Has RN Nursing License | |
| Partner Next Term Eligibility | ☐ | HS Articulation | |
| Partner Code | | Success Coach Student Engagement | ☐ |
| Transfer Credit Evaluation | ☐ | Success Coach Last Interaction | |
| Active Scheduled Appointment | ☐ | | |

## Student Profile

| | | | |
|---|---|---|---|
| | | Campus | 848 Purdue Global Law School |
| CVue Student Number | 40055989 | syStudentID | 42122638 |
| Middle Name | | PG Law ID | |
| Block Student | | Maiden Name | |
| COVID-19 Impacted | | Education Mapping | ☐ |

## Contact Information

| | | | |
|---|---|---|---|
| Best Method to Contact | | Best Time to Contact | Morning; Afternoon; Evening |
| Primary Phone | (347) 538-5386 | Contact Frequency | |
| Is Primary Mobile? | ☐ | Primary Phone DNC | ☐ |
| Secondary Phone | (347) 538-5386 | Primary Phone Call Through Date | |
| Is Secondary Mobile? | ☐ | Secondary Phone DNC | ☐ |
| Tertiary Phone | 3475385386 | Secondary Phone Call Through Date | |

| | | |
|---|---|---|
| **Is Tertiary Mobile?** | | **Tertiary Phone DNC** |
| **Primary Email** | nicolelawtone@aol.com | **Tertiary Phone Call Through Date** |
| | | **Student/Alternate Email** nicolelawtonebow@student.purdueglobal.edu |
| | | **Secondary Email** nicolelawtone@aol.com |
| | | **Time Zone** (GMT-05:00) Eastern Standard Time (America/Panama) |

## Permanent Address

| | | | |
|---|---|---|---|
| **Permanent Street Address** | 56 Center Street | | |
| **Permanent City** | Highland Falls | **Permanent State/Province/Region** | New York |
| **Permanent Zip Code / Postal Code** | 10928 | **Permanent Country** | United States of America |

## Shipping Address

| | | | |
|---|---|---|---|
| **Shipping Street Address 1** | 56 Center Street | **Shipping Street Address 2** | |
| **Shipping City** | Highland Falls | **Shipping State/Province/Region** | New York |
| **Shipping Zip Code / Postal Code** | 10928 | **Shipping Country** | United States of America |

## Billing Address

| | | | |
|---|---|---|---|
| **Billing Street Address 1** | | **Billing Street Address 2** | |
| **Billing City** | | **Billing State/Province/Region** | |
| **Billing Zip Code / Postal Code** | | **Billing Country** | |

## Personal Information

| | | | |
|---|---|---|---|
| **Birthdate** | 12/4/1971 | **Citizenship Status** | U.S. Citizen |
| **Gender** | Female | **Country of Citizenship** | |
| **Marital Status** | Single | **PG Campus Username** | NicoleLawtoneBow |
| **Is Hispanic/Latino?** | Yes | **Last 4 digits on SSN** | 1555 |
| **Ethnic Background** | American Indian or Alaska Native; Asian; Black or African American; White | **Disability** | ✓ |

## Military Information

| | | | |
|---|---|---|---|
| **Current Military Status** | Military Dependent | **Military Hybrid** | |
| **Secondary Military Status** | | **Military Outreach Program** | |
| **Military Spouse Type** | | **Military Occupation Specialty: Primary** | |
| **Military Branch** | Marines | **Military Occupation Specialty: Secondary** | |
| **Military Rank** | | **Agency Sponsor** | ELS USFG PGLS 10% |
| **Date of Separation** | | | |

## Military Scholarship Information

| | | | |
|---|---|---|---|
| **Military Scholarship** | | **Effective Date** | |
| **Approval Status** | | **End Date** | |
| | | **Military Scholarship Discussion** | |

## Shared Profile

| | | | |
|---|---|---|---|
| **Key Motivation** | Graduate w a Doctorate degree - Career advancement | **Past/Current Education** | Bachelors degree completed - Was doing a legal masters degree at liberty university - did not complete Masters degree |
| **Current Employer** | The City of New York & United States Military Academy | **Education Goals** | Graduate w a EJD degree |
| **Approved for SBS Enrollment** | ☐ | **School Needs** | SAS |
| **Time Management Analysis** | Made all appointments and deadlines / kept promises | **Potential Transfer Credits** | ✓ |
| **Computer Access** | Online classes in the past | **Prior Schools** | Liberty University,Liberty University |
| **Tech Comfort** | Completely comfortable | **Additional Information** | NA |
| **Support System** | NA | **SIF Notes** | |
| **VA Employer** | NA | **Passed Online Course?** | |
| **Upcoming Life Event?** | | **Passed Two Courses?** | |
| **Life Event Specifics** | | **C or Better?** | |
| | | **Work Experience in Field?** | |
| | | **Referral Program** | |

## Educational Benefits GOK

**Employee Name**

**Employee Email**

**Employee ID**

**Employee Division**

**Employee Campus**

**Manager Name**

**Manager Email**

**Relationship**

**Immediate Relationship**

**Extended Relationship**

**GOK IRC Code**

### Alliance

*Content cannot be displayed: You do not have sufficient privileges to access the page: /apex/AllianceAccount*

## PGLS Information

**Allowed Overrides**

**Utilized Overrides**

**Moodle Total Attempts**     2

## PG Information

**PG Business Development Manager**

**PG Local Marketing**

**PG Work From Home**

## Excel Track Student Information

**Have you worked 3+ yrs in field of study**

**College Courses Passed with C or better?**

**Why is Excel Track a Good Fit?**

**How many hrs/week for school work?**

**ExcelTrack SIF**

**ExcelTrack Candidate**

## System Information

| | | | |
|---|---|---|---|
| **Created By** | Integration API CVue, 3/4/2021 10:18 AM | **Last Modified By** | Chris Liang, 4/13/2026 9:16 AM |
| **No of Open Opportunity** | 1 | **mkLeadImportID** | 62075092 |
| **# of ORS Opportunities** | 0 | **Lead Date** | 3/4/2021 |
| **# of Reengage Opportunity** | 0 | **Re-SIF** | |
| **Total # of Opportunities** | 8 | **Last SIF Submission** | 3/4/2024 1:30 AM |
| **HelloSign Blocked** | | **Is Student Self-Enrollment** | ✓ |
| **HelloSign Date Unblock** | | **Parent/Guardian Last Name** | |
| **Release Date** | | **User Last ADM Contact Attempt** | |
| **Parent/Guardian Email** | | **User Last Date of Contact from ADM** | |
| **Parent/Guardian First Name** | | **PDL** | |
| **Last ADM Contact Attempt** | | **PDL Referee** | |
| **Last Date of Contact from ADM** | | **Segmentation Code** | 11 |
| | | **Source Application** | VA |

Transfer StudentID

Transfer From Org

**Documents**

Load Student Documents

**Student 's Documents**          **Academic File Status:**

**Default**    All

**Case History**

**3/10/2026 4:26 PM**

User  JoAnna Navarro

Action  Changed **Case Closure Comments.** Changed **Close Case Reason** to **Completed.** Changed **Status** from New to **Closed.** Closed.

**3/10/2026 4:26 PM**

User  JoAnna Navarro

Action  Changed **Case Owner** from Office of the Provost to **JoAnna Navarro.**

**3/10/2026 4:12 PM**

User  JoAnna Navarro

Action  Changed **Owner (Assignment)** from JoAnna Navarro to **Office of the Provost.** Created.

**Attachments**

| **Mail - Your EL Assignments (Nicole Lawtone-Bowles).pdf** | | **Mail - CL850 Education Law_ Missing Grades.pdf** | |
|---|---|---|---|
| Size | **139KB** | Size | **124KB** |
| Ownership | **JoAnna Navarro** | Ownership | **JoAnna Navarro** |
| View | **View file** | View | **View file** |
| Last Modified | **3/10/2026 4:19 PM** | Last Modified | **3/10/2026 4:18 PM** |

**SGJ #6 NLB Document Properties.docx**          **SGJ #5 CL850 Academic Integrity Inquiry.pdf**

Size **330KB**
Ownership **JoAnna Navarro**
View **View file**
Last Modified **3/10/2026 4:17 PM**

Size **104KB**
Ownership **JoAnna Navarro**
View **View file**
Last Modified **3/10/2026 4:17 PM**

### SGJ #3 NLB Notice of Report CL850.docx

Size **9KB**
Ownership **JoAnna Navarro**
View **View file**
Last Modified **3/10/2026 4:15 PM**

### SGJ #2 NLB Linkedin.docx

Size **298KB**
Ownership **JoAnna Navarro**
View **View file**
Last Modified **3/10/2026 4:15 PM**

### SGJ #1 NLB Correspondence post CL850 Inquiry Letter.docx

Size **4.14MB**
Ownership **JoAnna Navarro**
View **View file**
Last Modified **3/10/2026 4:15 PM**

Copyright © 2000-2026 salesforce.com, inc. All rights reserved.

- Close Window
- Print This Page
- Expand All | Collapse All

# Case: C-6449123

## Case Summary

| | | | |
|---|---|---|---|
| **Case Record Type** | Academic Engagement | **Product Family of Case** | |
| **Case Type** | Student Concern | **Case Number** | C-6449123 [View Hierarchy] |
| **Case SubType** | Plagiarism Charges | **Case Owner** | JoAnna Navarro |
| **Formal Approval Process?** | No | **Status** | Closed |
| **Prefix for Course** | | **Campus** | 848 Purdue Global Law School |
| **Term** | | **Campus From Campus Lookup** | 848 Purdue Global Law School |

## Case Information

**Estimated Credits Remaining**

## Case Account Information

| | | | |
|---|---|---|---|
| **Account Name** | Nicole Lawtone-Bowles | **Opportunity** | |
| **Academic Engagement** | | **Contact Name** | Nicole Lawtone-Bowles |
| **Desired Program** | Juris Doctor (Full Time) | **CVUE Student Number** | 40055989 |
| **Desired Program of Interest** | | **Instructor Name** | |
| **Emphasis Area** | | **Course Code** | |

## Description

**Subject**     Academic Dishonesty - 2nd Breach - Nicole Lawtone-Bowles

**Description**     Nicole Lawtone-Bowles
Term: 2601L
Class: CL760-01 Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion
Instructor Name: Brian Victor

Reason: Falsification of Authorship.

Student has completed all of the essay quizzes for the entire course and the module 11 discussion within less than two weeks of starting class.

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 16-1 filed 04/20/26 page 31 of 85

Her answers to the essay quizzes showed a high level of answering without any mistakes. Additionally, it only took her 28 minutes to complete the module four essay quiz, 22 minutes to complete the module 10 essay quiz, and 38 minutes to complete the module 11 essay quiz. Student was allowed two hours to complete these quizzes. I am extremely concerned that she was able to complete all of this material with such completeness of answers in such a short amount of time.

During my phone call with the student, I questioned how she was able to complete all of the material in this class in less than two weeks. She said she has been studying law school since 2019 and uses the Bar Max program. She said she starts looking at class material during preview week.

I asked if she had a word document of the worksheet she was using to complete the quizzes, so I could see it, but Student mentioned she studied this topic before so she did not have a word document. She stated that she took the fact pattern and pasted into the Dragon Voice to Text software and read it so this is why she was able to complete the quizzes in such a short time. According to the student, she has to complete an essay in 30 mins for the NY bar so she has practiced completing essays quickly. She stated that she outlines the question first then picks out parts of the rules to use. The student stated that she has 7 classes now and has finished the material in all of her classes already. She also stated that she has listened to all my recorded lectures.

I asked the student if she could answer a question regarding how pensions are divided in California at time of divorce, and after providing a brief answer of how it works in New York, and repeating tangents, she was unable to provide the answer or even any theory as to how to obtain the answer. This would have been material she should have studied in advance of completing these quizzes.

She then later sent me an email with the link to Audible and Bar Exam Essay Rules by Ed Aruffo and stated that is where she learned the rules.

| | |
|---|---|
| **Close Case Reason** | Completed |
| **Case Closure Comments** | Dear Nicole Lawtone-Bowles, |

This letter confirms your second Academic Dishonesty breach of the Student Code of Conduct. The consequence of this second breach is failure of the course in which the action occurred. The following information summarizes your breaches:

First Breach
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

Second Breach
Term: 2601L
Class: CL760-01 Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion
Instructor Name: Brian Victor

All reports of academic dishonesty are recorded in Purdue Global's database and remain there permanently. All breaches you accumulate while completing a program will be carried over to any subsequent program at Purdue Global.

If you disagree with these findings and wish to appeal this breach, you must complete the following steps:
Discuss the breach with your instructor, providing a thorough explanation and evidence of why you believe the suspicion of academic dishonesty to be inaccurate.
If the dispute is still unresolved and you wish to pursue an appeal of the report of academic dishonesty, you must submit an Academic Appeal Form to the Office of the Provost. The appeal form can be found on your student portal under quicklinks.
The appeal form should include an explanation and evidence to support your position.
Please note all appeals must take place in writing within 10 days of receiving this letter. Submissions made more than 10 days after notification of the breach will not be accepted.

If you breach Purdue University Global's Academic Dishonesty Code of Student Conduct a third time, the consequence will be expulsion from the University. For more information, please refer to the Code of Student Conduct Policy, which can be found in the Purdue University Global catalog.

We want you to be successful; therefore, encourage you to take advantage of the following resources:
Plagiarism Information Page
Writing Center located in the Academic Success Center section of Purdue Global Campus.
Thank you.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost

| | |
|---|---|
| **Action Taken** | Failed course |
| **Case Evaluation Result** | |

## International Background Check

| | | | |
|---|---|---|---|
| **Programs** | | **BG Cost** | |
| **Permanent State and Country** | New York<br>United States of America | **BG Code** | |
| **BG Notes** | | | |

## System Information

| | | | |
|---|---|---|---|
| **Created By** | JoAnna Navarro, 1/26/2026 1:03 PM | **Last Modified By** | JoAnna Navarro, 1/26/2026 1:08 PM |
| **Portal Submitted By** | | **Date/Time Opened** | 1/26/2026 1:03 PM |
| **Parent Case** | | **ODI Link** | |
| **Parent Case Date Opened** | | | |

## Contact Information

---

**Open Case and Task**

# # OF OPEN CASES: 3
# # OF OPEN TASKS: 0

**Account Information**

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 16-1    filed 04/20/26    page 33 of 85

Hello, JNavarro1 [ Log out ]

Home          GEL          PC          AAC Appeal          AAC Review          Admin

# Appeal - Viewing

[ Edit ]   [ Back To List ]

| | |
|---|---|
| Id | 1208 |
| Student Name | Nicole Lawtone-Bowles |
| Student Email | nicolelawtonebow@student.purdueglobal.edu, nicolelawtone@aol.com |
| Student Degree Program | Juris Doctor |
| School | Purdue Global Law School |
| Campus | 848 Purdue Global Law School |
| Term/Session | 2505L |
| Course Code | CL685 |
| Course Title | Criminal Procedure |
| Course Section | 01 |
| Course Level | Graduate |
| Assignment | Modules 6 and 10 Essay |
| Type of Appeal | Academic Integrity 1st Offense |
| Received | 06/03/2025 |
| Received Confirmed | 06/04/2025 |
| Supporting Documents | Lawtone-Bowles, Nicole.zip |
| | Provost Appeal Response_Nicole Lawtone-Bowles_6.23.25.docx |
| Instructor | Victoria Vidt |
| Instructor Email | victoria.vidt@purdueglobal.edu |
| Appeal Status | Completed |
| Reviewer 1 | James Dodge (Purdue Global Law School) |
| Reviewer 1 Recommendation | Deny Appeal |
| Reviewer 1 Form | 1969 |
| Reviewer 2 | Howard Anderson (Purdue Global Law School) |

USDC IN/ND case 4:26-cv-00028-PPS-AZ　　document 16-1　　filed 04/20/26　　page 34 of 85

| | |
|---|---|
| Reviewer 2 Recommendation | Deny Appeal |
| Reviewer 2 Form | 1970 |
| AAC Meeting Date | |
| AAC Decision | Denied by Review |
| AAC Decision Date | 06/05/2025 |
| AAC Decision Comments | Reviewer 1: James Dodge / Recommendation: Deny Appeal<br>Reviewer 2: Howard Anderson / Recommendation: Deny Appeal |

• This is a very confusing document set. The documents labeled "Professor Vidt" and "ProofofVictoriaVidtBiasOnMinorityAttorneys" relate to a complaint filed by Victoria Vidt alleging age-based discrimination against Victoria Vidt by Allegheny County, Pennsylvania. Neither contain any mention of bias against a minority attorney on the part of Victoria Vidt.

• A review of the statements made and documents provided by the student regarding the alleged discrimination of Victoria Vidt against her and/or her accommodations provide no support for such allegations.

• That said, the student's responses to the instructor's concerns regarding the student's ability to create 5,300-plus word documents (complete with case citations) in under 8 minutes without violating the closed book/closed note requirements of the assignments in quo serve only to reinforce the instructor's position that these answers are academic integrity violations.

• The instructor only filed one misconduct charge, even though two assignments are at issue. Thus, to prevail on the appeal, the instructor would have had to have been wrong twice. Having reviewed the student's answers, it is unlikely that a student could have written so much, so quickly, without unauthorized AI assistance. Even if I were to credit the student's explanation as to the writing speed, the chances that a student would know the relevant case numbers--much less the case reporter citations--independently strains credulity. Had I been the instructor, I would have filed two separate charges of academic misconduct, not just the one that the instructor filed.

| | |
|---|---|
| Outcome Notification Date | 06/17/2025 |
| Appeal to Provost | 06/17/2025 |
| Provost Decision Expected By | 07/08/2025 |
| Provost Decision | Appeal Denied |
| AAC Administrator | Joanna Navarro |
| AAC Chair | Joanna Navarro |
| Administrative Comments | Sent with attachment***********<br>Dear Nicole Lawtone-Bowles, |

I appreciate your patience during this review period.

Our Provost, Carolyn Nordstrom, has conducted a thorough review of your appeal; please find attached a letter with the decision. Please be advised that this is the final stage in the review process.

All the best as you move forward.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost
*************************

Dear Nicole Lawtone-Bowles,

Thank you for your patience while waiting for the outcome of your CL685-01: Criminal Procedure Academic Dishonesty appeal. Your supporting documentation, along with support from your instructor, has been thoroughly reviewed by the Academic Appeals Committee. Decisions are based on whether or not there was evidence of academic dishonesty.

In this case, the Committee found:
The student's responses to the instructor's concerns regarding the student's ability to create 5,300-plus word documents (complete with case citations and without grammar errors or mispellings) in under 8 minutes without violating the closed book/closed note requirements of the assignments serve only to reinforce the instructor's determination that these answers are academic integrity violations.
Having reviewed the student's answers, it is unlikely that a student could have written so much, so quickly, without spelling or grammar mistakes, without unauthorized tools or assistance. Even if we were to credit the student's explanation as to the writing speed, the chances that a student would know the relevant case numbers, much less the case reporter citations, independently strain credulity.
The Committee, therefore, determined that this is a violation of the Student Code of Conduct. With this said, the zero on the Modules 6 and 10 Essay will stand, and the 1st Academic Dishonesty breach will remain documented in the University's database.

We want you to be successful; therefore, encourage you to take advantage of the following resource:
Academic Integrity Course
If you disagree with the Academic Appeals Committee's decision, you may send a written letter of appeal to the Office of the Provost within 10 days of receiving the Committee's decision. The Office of the Provost will review the material presented and make a final ruling.

If you have any questions, you may email plagiarism@purdueglobal.edu.

Thank you.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost

| | |
|---|---|
| Created | 06/04/2025 15:42:38 |
| Created By | Joanna Navarro |
| Modified | 06/23/2025 19:54:07 |
| Modified By | Joanna Navarro |

Hello, JNavarro1   [ Log out ]

Home        GEL        PC        AAC Appeal        AAC Review        Admin

# Appeal - Viewing

[ Edit ]  [ Back To List ]

| | |
|---|---|
| Id | 1527 |
| Student Name | Nicole Lawtone-Bowles |
| Student Email | nicolelawtone@aol.com, nicolelawtonebow@student.purdueglobal.edu |
| Student Degree Program | Juris Doctor (Full-Time) |
| School | Purdue Global Law School |
| Campus | 848 Purdue Global Law School |
| Term/Session | 2601L |
| Course Code | CL850 |
| Course Title | Education Law |
| Course Section | 01 |
| Course Level | Graduate |
| Assignment | Modules 1 and 8 |
| Type of Appeal | Academic Integrity 3rd Offense |
| Received | 03/11/2026 |
| Received Confirmed | 03/11/2026 |
| Supporting Documents | NLB - 3rd breach.docx |
| | Provost Appeal Response_Nicole Lawtone-Bowles_04.07.26.docx |
| | |
| Instructor | Sarah Diab |
| Instructor Email | Sarah.Diab@purdueglobal.edu |
| Appeal Status | Completed |
| Reviewer 1 | Howard Anderson (Purdue Global Law School) |
| Reviewer 1 Recommendation | Deny Appeal |
| Reviewer 1 Form | 2459 |
| Reviewer 2 | Steve Bracci (Purdue Global Law School) |

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 16-1    filed 04/20/26    page 37 of 85

| | |
|---|---|
| Reviewer 2 Recommendation | Deny Appeal |
| Reviewer 2 Form | 2460 |
| AAC Meeting Date | |
| AAC Decision | Denied by Review |
| AAC Decision Date | 03/25/2026 |
| AAC Decision Comments | Reviewer 1: Howard Anderson / Recommendation: Deny Appeal |
| | Reviewer 2: Steve Bracci / Recommendation: Deny Appeal |

• Based on the written submissions and the oral arguments presented at the virtual hearing on March 25, 2026, the Dean's representative has established, by a preponderance of the evidence, that the Student committed academic misconduct in connection with both the Module 1 assignment and the Module 8 assignment. That same evidence would, in the alternative, even satisfy a clear-and-convincing standard.

• With respect to the Module 1 assignment, both its length (31 pages) and its polished prose are difficult to reconcile with the Student's claim that she completed the assignment during the term without AI assistance. (If, instead, the assignment was begun before the term began, that would also appear to constitute misconduct; the Student represented that she performed the work during the term as instructed per the end-of-module acknowledgment).

• The citations in the Module 1 assignment reinforce my view that the Student used generative AI. The Student cited T.K. v. New York City Department of Education, 779 F.3d 144 (2d Cir. 2015), but no such case appears at that citation. That reporter citation instead corresponds to Newton v. City of New York, 779 F.3d 140 (2d Cir. 2015), an unrelated case. Likewise, although N.Y. Educ. Law § 3204(1) does exist as a statute, it does not concern, as the Student asserted on page 9, "minimum instructional requirements." Rather, it addresses the place of instruction. Given the Student's claimed prior advanced academic legal training (a masters in law. from Liberty University per her oral argument) and given her statement at oral argument that she was taught "to proofread everything," ordinary carelessness in recording these citations appears unlikely. These errors are more consistent with fabrication or hallucination associated with generative AI than with mere inadvertence.

• As to the assignment in Module 8, the evidence of academic misconduct is even stronger.

• First, as the Student conceded during oral argument, the years given for the case citations in her assignment were almost all incorrect, with Appeal of Aversa as the apparent exception.

• Second, with the same exception, the cited cases bore little or no relation to the propositions for which they were offered. For example, Appeal of R.D. concerned residency; Appeal of B.M. concerned grading; and Appeal of A.M. concerned a school district's failure to adopt a budget. The decision the Student identified as Appeal of P.B. was, in fact, Appeal of S.U. In addition, one of the cited authorities, "Decision 17,297," actually stated that "hearsay alone may constitute competent and substantial evidence," which directly contradicts the proposition asserted on page 5 of the Student's paper that hearsay "may not, standing alone, constitute substantial evidence."

• Third, the Student's explanations for these discrepancies were inconsistent. When asked where she had obtained the cases, the Student stated that she found them on the New York website for administrative decisions. At the same time, despite citing to that reporter, she appears not to have had access to the Education Department Reporter, a specialized reporter not available through the school's Westlaw subscription. When asked to explain the mismatch between the cited authorities and the legal propositions attributed to them, the Student asserted that she believed the assignment required her to generate fictional cases. That explanation, however, is difficult to reconcile with her March 24, 2026, email to the Committee, in which she stated that she was providing PDFs of the cases so that the Committee could "cross-check[]" them against the propositions in her paper and verify that "the cases are real." Moreover, with respect to the citations to the Education Department Reporter, the Student appeared to acknowledge

USDC IN/ND case 4:26-cv-00028-PPS-AZ   document 16-1   filed 04/20/26   page 38 of 85

at oral argument that she had fabricated those citations, which would explain why she could not provide the Committee with the corresponding decisions from that reporter rather than from the public website.

• Taken together, these errors and shifting explanations lead me to conclude that the Module 8 assignment did not reflect genuine legal research and writing but was rather the product of AI hallucinations. If, however, I were incorrect in that conclusion such that the Student somehow generated all the work with no generative AI, the gross mismatch between the authorities cited and the propositions claimed would, in my view, also constitute academic misconduct. Indeed, had this assignment been submitted to a court, I believe that the cases were so far afield that the Student would have faced money sanctions.

• Thus, whether on the basis of Module 1 or Module 8, or both, academic misconduct occurred.

• Based on the submitted documentation and the presentations by both parties on March 25, 2026, it seems clear to me that the student used prohibited external assistance in completing the assignments in question. The speed at which these assignments were created, together with the errors in the citations embedded in the assignments leads me to this conclusion.

| | |
|---|---|
| Outcome Notification Date | 04/01/2026 |
| Appeal to Provost | 04/02/2026 |
| Provost Decision Expected By | 04/23/2026 |
| Provost Decision | Appeal Denied |
| AAC Administrator | Joanna Navarro |
| AAC Chair | Joanna Navarro |
| Administrative Comments | Dear Ms. Lawton Bowles: |

I appreciate your patience during this review period.

Our Provost, Carolyn Nordstrom, has completed a thorough review of your appeal. Attached is the decision letter.

Please be advised that this is the final stage in the review process.

Thank you.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost
*******************
Dear Ms. Lawtone-Bowles,

Thank you for your patience while waiting for the outcome of your CL850-01: Education Law Academic Dishonesty Appeal.

Re the academic dishonesty breach of the Student Code of Conduct:

Supporting documentation from you, the instructor, and the Law School were reviewed by the Academic Appeals Committee as part of the March 25th, 2026 hearing process to determine if there was evidence of academic dishonesty.

The Committee found:

Based on the written submissions and the oral arguments presented at the virtual hearing, the Dean's representative has established, by a preponderance of the evidence, that the student committed academic misconduct in connection with both the Module 1 and Module 8 assignments. That same evidence would, in the alternative, even satisfy a clear-and-convincing standard.

With respect to the Module 1 assignment:

Both the length of the submission (31 pages) and the level of polished prose are difficult to reconcile with the student's claim that the work was completed during the term without AI assistance. Alternatively, if the assignment was started prior to the beginning of the term, this would also raise concerns of misconduct, as the student affirmed—via the end-of-module acknowledgment—that the work was completed during the assigned period.

The citations in the Module 1 assignment reinforce the view that the student used generative AI. The student cited T.K. v. New York City Department of Education, 779 F.3d 144 (2d Cir. 2015), but no such case appears at that citation. That reporter citation instead corresponds to Newton v. City of New York, 779 F.3d 140 (2d Cir. 2015), an unrelated case. Likewise, although N.Y. Educ. Law § 3204(1) does exist as a statute, it does not concern, as the student asserted on page 9, "minimum instructional requirements." Rather, it addresses the place of instruction. These inaccuracies are notable in light of the student's stated advanced legal training (including a master's degree in law) and her representation during oral argument that she was trained to carefully proofread citations. Under such circumstances, these errors are less consistent with ordinary inadvertence and more consistent with citation fabrication or AI-generated hallucination, both of which undermine the credibility of the submission.

With respect to the Module 8 assignment:

As the student conceded during oral argument, the years given for the case citations in her assignment were almost all incorrect, with Appeal of Aversa as the apparent exception.

Second, with the same exception, the cited cases bore little or no relation to the propositions for which they were offered. For example, Appeal of R.D. concerned residency; Appeal of B.M. concerned grading; and Appeal of A.M. concerned a school district's failure to adopt a budget. The decision the student identified as Appeal of P.B. was, in fact, Appeal of S.U. In addition, one of the cited authorities, "Decision 17,297," actually stated that "hearsay alone may constitute competent and substantial evidence," which directly contradicts the proposition asserted on page 5 of the student's paper that hearsay "may not, standing alone, constitute substantial evidence."

Third, the student's explanations for these discrepancies were inconsistent. When asked where she had obtained the cases, the student stated that she found them on the New York website for administrative decisions. At the same time, despite citing to that reporter, she appears not to have had access to the Education Department Reporter, a specialized reporter not available through the school's Westlaw subscription. When asked to explain the mismatch between the cited authorities and the legal propositions attributed to them, the student asserted that she believed the assignment required her to generate fictional cases. That explanation, however, is difficult to reconcile with her March 24, 2026, email to the Committee, in which she stated that she was providing PDFs of the cases so that the Committee could "cross-check" them against the propositions in her paper and verify that "the cases are real." Moreover, with respect to the citations to the Education Department Reporter, the student appeared to acknowledge at oral argument that she had fabricated those citations, which would explain why she could not provide the Committee with the corresponding decisions from that reporter rather than from the public website.

Taken together, these errors and shifting explanations led the Committee to conclude that the Module 8 assignment did not reflect genuine legal research and writing but was rather the product of AI

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 16-1    filed 04/20/26    page 40 of 85

hallucinations. If, however, the Committee was incorrect in that conclusion, and the student created all the work without using generative AI, the gross mismatch between the authorities cited and the propositions claimed would constitute academic misconduct.

The Committee, therefore, determined that this constitutes a violation of the Student Code of Conduct. This is your third Academic Dishonesty breach. It will be recorded in the Purdue Global database and remain permanently, per the catalog. This breach will result in dismissal from the university. Prior to any dismissal action, you have a final option to appeal within 10 days of receiving this notification. This appeal should present evidence that the just-completed hearing did not consider.

If dismissed, any future application to return to the university must be reviewed and approved by the Dean of the School, who has the final decision.

If you decide to appeal the outcome of the hearing, you may send the new evidence to the Office of the Provost within 10 days of receiving the Committee's decision. The Office of the Provost will review the Committee's appeal decision process, the information submitted as part of the hearing, and any new material presented to make a final ruling.

Please email provost@purdueglobal.edu with any questions.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost
*******************************

Dear Ms. Lawtone-Bowles,

On behalf of the Provost's Office, I am writing to confirm that the hearing you requested re the Academic Dishonesty breach of the Student Code of Conduct for CL850-01: Education Law has been scheduled for Wednesday, March 25, 2026, from 10:00 a.m. to 11:30 a.m. ET. A Google meeting invitation was sent on March 19th, 2026.

Please be reminded that this hearing is an internal process. As previously explained, legal representation is not a part of this hearing process. Purdue Global personnel will continue to communicate directly with you, as they would with any student participating in the university's internal processes.

We understand from your statement that you may "not attend or participate in the hearing without your attorney present." If you choose not to attend to provide additional commentary or respond to questions, the Academic Appeals Committee will proceed with reviewing the evidence file in accordance with its standard procedures.

For your reference, please find attached the documentation for your upcoming appeal hearing.

Thank you.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Dear Ms. Lawtone-Bowles,

Consistent with Purdue Global Law School's Academic Dishonesty Appeals process, I am writing to confirm the details of the hearing you requested to appeal the Academic Dishonesty breach of the Student Code of Conduct for CL850-01: Education Law.

The hearing will consist of two 40-minute sessions, allowing you and the Law School to separately present evidence to the Academic Appeals Committee and answer questions. There will be 10 minutes for the Committee to transition between sessions.

Please provide two 90-minute time slots for the hearing between now and March 25, 2026. A decision will be communicated within 5 business days of the hearing.

Please provide me with a list of questions for the Committee by close of business on March 21, 2026.

Once the date and time for the hearing are confirmed with you and the Academic Appeals Committee, you will receive a file with documentation at least 2 days before the hearing.

Thank you.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Dear Nicole Lawtone-Bowles,

The Office of the Provost has received your Academic Appeal Form and supporting documentation. This information will be included in the file submitted to the Academic Appeals Committee for review.

You are reminded that, pursuant to PGLS Academic Dishonesty Appeals Policy, a hearing is provided upon request. If you wish to request a hearing, please do so by March 18th, 2026.

Thank you.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost

| | |
|---|---|
| Created | 03/11/2026 16:23:53 |
| Created By | Joanna Navarro |
| Modified | 04/07/2026 17:15:37 |
| Modified By | Joanna Navarro |



PG Plagiarism <plagiarism@purdueglobal.edu>

## Academic Dishonesty Appeal Outcome - 1st Breach
1 message

**PG Plagiarism** <plagiarism@purdueglobal.edu>                                    Tue, Jun 17, 2025 at 10:17 AM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, nicolelawtone@aol.com
Cc: Victoria Vidt <victoria.vidt@purdueglobal.edu>, Shaun Jamison <SJamison@purdueglobal.edu>
Bcc: Student Accessibility Services <sas@purdueglobal.edu>

Dear Nicole Lawtone-Bowles,

Thank you for your patience while waiting for the outcome of your CL685-01: Criminal Procedure Academic Dishonesty appeal. Your supporting documentation, along with support from your instructor, has been thoroughly reviewed by the Academic Appeals Committee.  Decisions are based on whether or not there was evidence of academic dishonesty.

In this case, the Committee found:

- The student's responses to the instructor's concerns regarding the student's ability to create 5,300-plus word documents (complete with case citations and without grammar errors or mispellings) in under 8 minutes without violating the closed book/closed note requirements of the assignments serve only to reinforce the instructor's determination that these answers are academic integrity violations.
- Having reviewed the student's answers, it is unlikely that a student could have written so much, so quickly, without spelling or grammar mistakes, without unauthorized tools or assistance. Even if we were to credit the student's explanation as to the writing speed, the chances that a student would know the relevant case numbers, much less the case reporter citations, independently strain credulity.

The Committee, therefore, determined that this is a violation of the Student Code of Conduct.  With this said, the zero on the Modules 6 and 10 Essay will stand, and the 1st Academic Dishonesty breach will remain documented in the University's database.

We want you to be successful; therefore, encourage you to take advantage of the following resource:

    1. **Academic Integrity Course**

If you disagree with the Academic Appeals Committee's decision, you may send a written letter of appeal to the Office of the Provost within 10 days of receiving the Committee's decision. The Office of the Provost will review the material presented and make a final ruling.

If you have any questions, you may email plagiarism@purdueglobal.edu.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 16-1    filed 04/20/26    page 43 of 85



*Purdue University Global holds itself accountable to foster a culture that promotes diversity and inclusion, offering an environment that is fair, equitable, and accessible for all.*

 **PURDUE GLOBAL.**

PG Provost <provost@purdueglobal.edu>

---

## Academic Dishonesty Appeal Outcome - 2nd breach
1 message

---

**PG Provost** <provost@purdueglobal.edu>                                                    Mon, Mar 2, 2026 at 3:47 PM
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: Brian Victor <Brian.Victor@purdueglobal.edu>, Shaun Jamison <SJamison@purdueglobal.edu>

Dear Nicole Lawtone-Bowles,

Thank you for your patience while waiting for the outcome of your CL760-01: Community Property Academic Dishonesty Appeal and the investigation of your claim of discrimination based on race and disability.

Re the investigation into the claims of discrimination: the summary document is attached.

Re the charge of academic misconduct: Supporting documentation from you, the instructor, and the Law School were reviewed by the Academic Appeals Committee as part of the February 23rd, 2026 hearing process to determine if there was evidence of academic dishonesty.

The Committee found:

- After reviewing the student's submissions, one can observe the high quality of the work provided in the assignments in question, together with the short time periods in which the work was completed, both in terms of the writing time online while the timed assignments were accessed by the student and in terms of the number of days in which the student completed the content and assignments for the course.
- The quality of work and depth of knowledge reflected in the submitted assignments were not evident in the student's response to the instructor when questioned.
- The Module essays and quizzes were completed in a timeframe substantially shorter than would reasonably be expected for a student to read, analyze, and respond. Additionally, all course requirements were completed in a timeframe significantly shorter than the typical progression for similarly situated students.
- While speed alone is not dispositive, the student's submissions exhibit polished syntax and error-free grammar which, when viewed collectively and in conjunction with the compressed completion times, raise concerns regarding independent authorship. In addition, during the hearing, the student was unable to complete comparable multiple-choice and short-answer questions at a similar pace. This observation of a disconnect between the student's submitted work and in-person performance suggests that the assignments are not the student's own work.
- Moreover, the course syllabus requires that students retain Word documents of their submissions. The student was unable to produce draft materials when requested and indicated she was unaware of the requirement. The absence of retained drafts limits the ability to verify the independent development of the submitted work and is appropriate to consider.
- In the materials provided by the student, there was her own article, "When Accommodation Becomes Suspicion," explaining her situation. Of the five sources cited/referenced, two were fabricated sources (Harbour and Onwuachi-Willig).
- After reviewing all submitted materials and following a hearing where the student was provided an opportunity to present information, the preponderance of evidence supports the conclusion that the student engaged in conduct inconsistent with the University's academic integrity policy.

The Committee, therefore, determined that this is a violation of the Student Code of Conduct. As a result, the failure of the CL760-01: Community Property class will stand; you will be administratively withdrawn from the course, and the 2nd Academic Dishonesty charge will remain documented in the University's database.

If you disagree with the Academic Appeals Committee's decision, you may send a rebuttal to the Office of the Provost within 10 days of receiving the Committee's decision. The Office of the Provost will review the Committee's appeal decision process, the information submitted, and any new material presented to make a final

USDC IN/ND case 4:26-cv-00028-PPS-AZ     document 16-1     filed 04/20/26     page 45 of 85

ruling.

If you have any questions, you may email provost@purdueglobal.edu.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu



---

**2 attachments**

 **Lawtone-Bowles Discrimination Investigation Summary - 02.2026.docx**
32K

 **Lawtone-Bowles, Nicole.zip**
2633K


**PURDUE GLOBAL.**

PG Provost <provost@purdueglobal.edu>

## Academic Dishonesty Appeal Outcome - 3rd Breach

1 message

**PG Provost** <provost@purdueglobal.edu>                                    Wed, Apr 1, 2026 at 4:47 PM
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: Sarah.Diab@purdueglobal.edu, Shaun Jamison <SJamison@purdueglobal.edu>

Dear Ms. Lawtone-Bowles,

Thank you for your patience while waiting for the outcome of your CL850-01: Education Law Academic Dishonesty Appeal.

Re the academic dishonesty breach of the Student Code of Conduct:

Supporting documentation from you, the instructor, and the Law School were reviewed by the Academic Appeals Committee as part of the March 25th, 2026 hearing process to determine if there was evidence of academic dishonesty.

The Committee found:

Based on the written submissions and the oral arguments presented at the virtual hearing, the Dean's representative has established, by a preponderance of the evidence, that the student committed academic misconduct in connection with both the Module 1 and Module 8 assignments. That same evidence would, in the alternative, even satisfy a clear-and-convincing standard.

With respect to the Module 1 assignment:

- Both the length of the submission (31 pages) and the level of polished prose are difficult to reconcile with the student's claim that the work was completed during the term without AI assistance. Alternatively, if the assignment was started prior to the beginning of the term, this would also raise concerns of misconduct, as the student affirmed—via the end-of-module acknowledgment—that the work was completed during the assigned period.
- The citations in the Module 1 assignment reinforce the view that the student used generative AI. The student cited T.K. v. New York City Department of Education, 779 F.3d 144 (2d Cir. 2015), but no such case appears at that citation. That reporter citation instead corresponds to Newton v. City of New York, 779 F.3d 140 (2d Cir. 2015), an unrelated case. Likewise, although N.Y. Educ. Law § 3204(1) does exist as a statute, it does not concern, as the student asserted on page 9, "minimum instructional requirements." Rather, it addresses the place of instruction. These inaccuracies are notable in light of the student's stated advanced legal training (including a master's degree in law) and her representation during oral argument that she was trained to carefully proofread citations. Under such circumstances, these errors are less consistent with ordinary inadvertence and more consistent with citation fabrication or AI-generated hallucination, both of which undermine the credibility of the submission.

With respect to the Module 8 assignment:

- As the student conceded during oral argument, the years given for the case citations in her assignment were almost all incorrect, with Appeal of Aversa as the apparent exception.
- Second, with the same exception, the cited cases bore little or no relation to the propositions for which they were offered. For example, Appeal of R.D. concerned residency; Appeal of B.M. concerned grading; and Appeal of A.M. concerned a school district's failure to adopt a budget. The decision the student identified as Appeal of P.B. was, in fact, Appeal of S.U. In addition, one of the cited authorities, "Decision 17,297," actually stated that "hearsay alone may

USDC IN/ND case 4:26-cv-00028-PPS-AZ     document 16-1     filed 04/20/26     page 47 of 85

constitute competent and substantial evidence," which directly contradicts the proposition asserted on page 5 of the student's paper that hearsay "may not, standing alone, constitute substantial evidence."

- Third, the student's explanations for these discrepancies were inconsistent. When asked where she had obtained the cases, the student stated that she found them on the New York website for administrative decisions. At the same time, despite citing to that reporter, she appears not to have had access to the Education Department Reporter, a specialized reporter not available through the school's Westlaw subscription. When asked to explain the mismatch between the cited authorities and the legal propositions attributed to them, the student asserted that she believed the assignment required her to generate fictional cases. That explanation, however, is difficult to reconcile with her March 24, 2026, email to the Committee, in which she stated that she was providing PDFs of the cases so that the Committee could "cross-check" them against the propositions in her paper and verify that "the cases are real." Moreover, with respect to the citations to the Education Department Reporter, the student appeared to acknowledge at oral argument that she had fabricated those citations, which would explain why she could not provide the Committee with the corresponding decisions from that reporter rather than from the public website.

Taken together, these errors and shifting explanations led the Committee to conclude that the Module 8 assignment did not reflect genuine legal research and writing but was rather the product of AI hallucinations. If, however, the Committee was incorrect in that conclusion, and the student created all the work without using generative AI, the gross mismatch between the authorities cited and the propositions claimed would constitute academic misconduct.

The Committee, therefore, determined that this constitutes a violation of the Student Code of Conduct. This is your third Academic Dishonesty breach. It will be recorded in the Purdue Global database and remain permanently, per the catalog. This breach will result in dismissal from the university. Prior to any dismissal action, you have a final option to appeal within 10 days of receiving this notification. This appeal should present evidence that the just-completed hearing did not consider.

If dismissed, any future application to return to the university must be reviewed and approved by the Dean of the School, who has the final decision.

If you decide to appeal the outcome of the hearing, you may send the new evidence to the Office of the Provost within 10 days of receiving the Committee's decision. The Office of the Provost will review the Committee's appeal decision process, the information submitted as part of the hearing, and any new material presented to make a final ruling.

Please email provost@purdueglobal.edu with any questions.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu



PURDUE
GLOBAL

 Outlook

## Re: <<Action Required>> NLB: 3rd Breach - Academic Dishonesty Appeal Hearing

**From** Toni Pesce <tpesce@purdueglobal.edu>

**Date** Fri 3/27/2026 10:07 AM

**To**  nicolelawtone@aol.com <nicolelawtone@aol.com>; Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Nicole,

I received the newly completed Section II (attached), which your healthcare provider requests "dictation and word-to-text software to produce written documents," and the letter (attached) your healthcare provider wrote on 3/25/26 explaining the use of the Dragon dictation program and the ADA.

As previously stated in several emails, there is no need for an accommodation approval for a student to use their personal Dragon dictation program in their classes.

Thank you,

**Toni Pesce, MBA**
**Manager, Student Accessibility Services (SAS)**
T: 317-208-1686
F: 866-422-4773
E: tpesce@purdueglobal.edu
www.PurdueGlobal.edu

The information contained in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

**From: Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>
Date: Thu, Mar 26, 2026 at 5:50 PM
Subject: Fwd: <<Action Required>> NLB: 3rd Breach - Academic Dishonesty Appeal Hearing
To: Toni Pesce <tpesce@purdueglobal.edu>

Good Evening Toni,
Please see attached doctors letter and notes.



**PURDUE GLOBAL**

---

## Section II: To Be Completed By a Qualified Medical Professional

The policy of Purdue University Global (Purdue Global) to comply with the Americans with Disabilities Act (ADA) includes the provision of appropriate accommodations under the ADA. To enable Purdue Global to evaluate and process our student's request, please complete these forms in their entirety and submit to Student Accessibility Services, as all medical verification of disabilities must be received in writing.

Forms can be submitted by fax (866-422-4773), by email as an attachment (SAS@PurdueGlobal.edu), or by standard mail:
  Purdue University Global
  ATTN: Student Accessibility Services
  2550 Northwestern Avenue, Suite 1100
  West Lafayette, IN 47906

Incomplete forms will delay the accommodation process.

It is highly recommended the qualified medical professional have an open conversation with the student/patient regarding their request for accommodation(s) prior to completion of this form.

### Student Information (Please Print)

STUDENT/PATIENT NAME: Nicole Lawtone-Bowles

STUDENT/PATIENT DIAGNOSED DISABILITY OR IMPAIRMENT* _Degenerative Osteoarthritis of Both hands_
*Diagnosed learning disabilities must be confirmed through comprehensive evaluation results. Section II will not be accepted._Cervical and Lumbar Degenerative disk disease w/ accompanying osteoarthritis_

Does the above listed disability/impairment impact a major life function, as defined by the Americans with Disabilities Act (ADA), subsequently impacting online learning? Please explain.

_Ms. Lawtone-Bowles has a permanent disability to her neck and back as a result of a work incident on 5-24-2019. Additionally she presents with degenerative Osteoarthritis of both her hands, this requires her to use assistive devices such as dictation and word to text software to produce written documents._

Please verify the accommodation(s) requested by the student/patient is/are necessary for them to attend and participate in Purdue Global online programs by listing the specific accommodations below:

_dictation and word to text software to produce written documents_

Date you last treated/evaluated the student/patient: _3-20-26_

By signing this form, you certify all of the information listed is true and correct to the best of your knowledge and belief.

Qualified Medical Professional verifying diagnosed disability:

Signature (Physical Signature Required): _[signature]_   Date: _3-25-26_

Print Name: _Robert J DeSantis DC_

Designation: _Chiropractor_

Office Telephone Number: _845/561-8505_

Office Address: _53 Willow Lane_   City: _New Windsor_   State: _NY_ Zip: _12553_

Office Stamp If Available:

SAS Accommodation Request 10/2023

## MID-HUDSON CHIROPRACTIC CENTER

### DR. ROBERT J. DeSANTIS
DIPLOMATE OF THE AMERICAN ACADEMY OF PAIN MANAGEMENT
CERTIFIED STRENGTH AND CONDITIONING SPECIALIST
53 WILLOW LANE
P.O. BOX 4330
NEW WINDSOR, NEW YORK 12553

March 25, 2026

Purdue Global

Under the ADA and Section 504, dictation software is recognized as an auxiliary aid for effective communication when the use of this tool is strictly for transcription and does not involve the generative capabilities as typically restricted by AI policies. Based on federal law and specific policies from your university, the use of dictation software is legally protected as an accessibility tool and is not considered a violation of "No AI" policies.

I have provided the following Federal ADA and Section 504 citations for your reference where dictation is classified as an "auxiliary aid" for effective communication, not a generative writing tool.

- **ADA Title II & III (28 CFR § 36.303):** This regulation explicitly lists "voice recognition software" and "real-time computer-aided transcription services" as examples of **auxiliary aids and services**. These are required to ensure that individuals with disabilities can communicate effectively.
- **Section 504 of the Rehabilitation Act:** This requires institutions receiving federal funding to provide **"Academic Adjustments"** to ensure students have equal access to the educational environment. Using a dictation program to "write" is a recognized adjustment for students who cannot type due to a physical or cognitive impairment.

Additionally, your specific policies and documentation make a clear distinction between "assistive technology" and "generative AI."

- **SAS Accommodation Policy:** The Student Accessibility Services (SAS) explicitly lists "dictation program" as an approved assistive technology.
- **Free Tools Provided by Purdue:** Your university actually provides all students and faculty with **Read&Write**, a software that includes dictation features specifically to help with "writing papers or brainstorming."
- **AI Governance Policy:** The **Purdue AI Policy (VII.A.5)** states that AI usage must comply with the **Electronic Information, Communication and Technology Accessibility (S-5)** standard. This means AI restrictions cannot override legally mandated accessibility needs.

The use of "Nuance Dragon NaturallySpeaking" in this course is an **auxiliary aid** as defined by **28 CFR § 36.303** of the ADA. Per **Purdue Global's SAS policy**, dictation is an approved **assistive technology** used for transcription, not for the generation of content. It serves as a functional replacement for a keyboard to ensure **effective communication** and does not violate the spirit of the 'No AI' policy. This tool does not alter the academic standards or the intellectual output required for the course.

Respectfully,

Robert J. DeSantis, DC, DAAPM, CSCS

PHONE: 845/561-8505    FAX: 845/561-8529    E-MAIL: MID.HUDSON.CHIROPRACTIC1@GMAIL.COM

On Wed, Mar 25, 2026 at 17:03 Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:

JoAnna,

Please see attached proof of MPRE Exam Taken Yesterday, March 24, 2026.

On Wed, Mar 25, 2026 at 3:09 PM Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:

JoAnna,

Here is the book Professor Anderson asked me about https://store.legal.thomsonreuters.com/en-us/products/mckinneys-consol-laws-of-ny-anno-full-set-22043540

Here is the link to Decisions from NYS Education Department https://www.counsel.nysed.gov/Decisions/dcommissionersdecisions

On Wed, Mar 25, 2026 at 8:43 AM Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:

JoAnna,

I need to see the TurnIIn Report. regardless, if it's related, I was accused of using AI and not writing the stuff myself same thing. I need to see the TurnItIn Report. Your teaching staff have failed to accommodate me and in violation of ed.gov and PG policies by harassing me over my use of assitive technology.

Can you explain what does this mean

**At this time, the Purdue System, including Purdue Global, does not recognize the validity of any AI detection tools.**

USDC IN/ND case 4.26-cv-00028-PPS-AZ    document 16-1    filed 04/20/26    page 52 of 85

AI Detection tools remain inaccurate and unreliable. Faculty must not use AI detection applications alone to conclude that there has been plagiarism or a violation of academic integrity. These indicators are only tools to prompt faculty to further investigate how the student completed the assignment.

https://sites.google.com/purdueglobal.edu/pg-artificialintelligencetaskf/faculty-resources/detecting-ai-generated-content

On Wed, Mar 25, 2026 at 08:25 PG Provost <provost@purdueglobal.edu> wrote:
Good morning, Ms. Lawtone-Bowles,

Please be advised that I do not have that information, as the breach in question, like the previous ones, is not related to the Turnitin report.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

On Wed, Mar 25, 2026 at 4:38 AM Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:
Good Morning, Joanna. Before the meeting, I'm gonna need to see the instructor's view of TurnItIn from flag assignments from the following.

First Breach

Term: 2505L

Class: CL685-01: Criminal Procedure

Assignment: Modules 6 and 10 Essays

Instructor Name: Victoria Vidt

I received zeros and still got a B- in the class.

Second Breach

Term: 2601L

Class: CL760-01: Community Property

Assignment: Modules 4, 10, and 11 Essay Quizzes & Module 11 Discussion

Instructor Name: Brian Victor

Which resulted in an F and being locked out of the class and forced to repeat it the next semester even though I already completed all the work.

On Wed, Mar 25, 2026, at 03:16 Nicole Lawtone-Bowles
<nicolelawtonebow@student.purdueglobal.edu> wrote:

JoAnna,

This is how serious I am about my career as a lawyer because while in school, I'm studying for exams and taking them.



## MPRE.

### Multistate Professional Responsibility Examination

### Exam Administration Receipt

**Candidate:** Nicole Lawtone-Bowles          **Exam Date:** 24-Mar-2026
**NCBE Number:** N10480424                      **Site ID:** 47068
**Registration ID:** 524991491                  **Examination:** MPRE

MPRE scores are typically released to examinees within five weeks from the date of the examination. Your score will be posted to your NCBE Account File Cabinet (https://auth.ncbex.org/login). An email will be sent to you when your score is available.

We trust you had a professional, well-managed experience testing with Pearson. If you experienced technical or other issues during the exam which may have caused a loss of exam time or significantly interrupted your exam session, you should submit a formal written complaint through https://www.ncbex.org/mprecomplaints/ as soon as possible, but no later than three calendar days after your scheduled exam, so that NCBE staff are best positioned to prioritize and address the situation.

(Note: survey responses or other communications with Pearson will not be considered formal written complaints for this purpose.)

Other feedback about MPRE testing conditions or procedures can be submitted through https://www.ncbex.org/contact, and will be reviewed by NCBE staff.

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 16-1 filed 04/20/26 page 54 of 85

On Tue, Mar 24, 2026 at 23:16 Nicole Lawtone-Bowles
<nicolelawtonebow@student.purdueglobal.edu> wrote:

JoAnna,
I added the wrong one

On Tue, Mar 24, 2026 at 11:14 PM Nicole Lawtone-Bowles
<nicolelawtonebow@student.purdueglobal.edu> wrote:

JoAnna,

Here is the assignment for Module 8.
Also, Module 1A TurnItIn shows no AI
Detected, and I still don't have a grade
for it.

On Tue, Mar 24, 2026 at 7:28 PM Nicole Lawtone-Bowles
<nicolelawtonebow@student.purdueglobal.edu> wrote:

JoAnna,

My citations have incorrect years. I
attempted to format them in
accordance with Bluebook 22nd
edition, but I may not have proofread
them as carefully as I should have. I
should have used the decision
numbers in the documents. I was
rushing to finish my work before I went
to have surgery. I listened to a lot of
cases and have attached the materials
I relied on so that the citations can be
cross-checked against the correct
authorities. No I did not use AI the
cases are real. See attached. Many

cases because they involve minors the names are redacted to initials. Thank you for your time and consideration.

On Tue, Mar 24, 2026 at 5:56 PM PG Provost <provost@purdueglobal.edu> wrote:
Dear Ms. Lawtone-Bowles,

To help the Committee discuss your work on the Module 8 Assignment, please provide the following cases that you cited in your assignment:

- Appeal of Aversa, 48 Ed Dep't Rep. 523 (2009).
- Appeal of R.D., 47 Ed Dep't Rep. 375 (2008).
- Appeal of D.C., 46 Ed Dep't Rep. 428 (2007).
- Appeal of B.M., 48 Ed Dep't Rep. 441 (2009).
- Appeal of A.M., 45 Ed Dep't Rep. 437 (2006).
- Appeal of P.B., 48 Ed Dep't Rep. 354 (2008).

Please provide the cases by 9:00 a.m. ET so that the Committee can review them before the hearing.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu

- Close Window
- Print This Page
- Expand All | Collapse All

## Case: C-6040271

### Case Summary

| | | | | |
|---|---|---|---|---|
| **Case Record Type** | Academic Engagement | | **Product Family of Case** | |
| **Case Type** | Student Concern | | **Case Number** | C-6040271 [View Hierarchy] |
| **Case SubType** | Plagiarism Charges | | **Case Owner** | JoAnna Navarro |
| **Formal Approval Process?** | No | | **Status** | Closed |
| **Prefix for Course** | | | **Campus** | 848 Purdue Global Law School |
| **Term** | | | **Campus From Campus Lookup** | 848 Purdue Global Law School |

### Case Information

**Estimated Credits Remaining**

### Case Account Information

| | | | | |
|---|---|---|---|---|
| **Account Name** | Nicole Lawtone-Bowles | | **Opportunity** | |
| **Academic Engagement** | | | **Contact Name** | Nicole Lawtone-Bowles |
| **Desired Program** | Juris Doctor (Full Time) | | **CVUE Student Number** | 40055989 |
| **Desired Program of Interest** | | | **Instructor Name** | |
| **Emphasis Area** | | | **Course Code** | |

### Description

**Subject**      Academic Dishonesty - 1st Breach

**Description**   Nicole Lawtone-Bowles
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

Reason:
Module 6: Student submitted essay consisting of approx. 5,300 words, including case citations, completed in 8 minutes in a closed book/close note essay. The student's explanations for how such a detailed essay could be completed in 8 minutes without outside assistance are not credible.

USDC IND sealed the case back 00028 PPS-JAZ suspicious because of the citations 04/20/26 es in a closed book environment. Then I realized that the entire essay was completed within 8 minutes. The only response I received was that the student has exceptional memory.

Module 10: The student submitted essay consisting of approx. 13,055 characters, including case citations in a closed book/close note essay. Student completed this essay and a prior one in module 6 within the first week of class. The mod 6 essay is also a subject of an academic integrity report. Student's explanations for how such a detailed essay could be completed without outside assistance are not credible. I did not address student a second time with this second essay. I am attaching the conversation about the prior essay here. As the issues were the same for both essays, I did not engage the student again. I am also attaching the attempt log, which shows the last typing of the essay occurred on 9:55 but the essay was not submitted until 11:22 - a similar situation to the prior essay. I have given a zero grade, but the student cannot redo the essay as she has had the model answer in her possession. This action is linked to the same problems with the mod 6 essay, which I discussed with the student at length (see emails).

**Close Case Reason**    Completed

**Case Closure Comments**    Dear Nicole Lawtone-Bowles,

This letter confirms your first Academic Dishonesty breach of the Student Code of Conduct. The consequence of this breach is failure of the Modules 6 and 10 Essay. The following information summarizes the breach:

First Breach
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

All reports of academic dishonesty are recorded in Purdue Global's database and remain there permanently. All breaches you accumulate while completing a program will be carried over to any subsequent program at Purdue Global.

If you disagree with these findings and wish to appeal this breach, you must complete the following steps:
Discuss the breach with your instructor, providing a thorough explanation and evidence of why you believe the suspicion of academic dishonesty to be inaccurate.
If the dispute is still unresolved and you wish to pursue an appeal of the report of academic dishonesty, you must submit an Academic Appeal Form to the Office of the Provost. The appeal form can be found on your student portal under quicklinks.
The appeal form should include an explanation and evidence to support your position.
Please note all appeals must take place in writing within 10 days of receiving this letter. Submissions made more than 10 days after notification of the breach will not be accepted.

If you breach Purdue University Global's Academic Dishonesty Student Code of Conduct a second time, the consequence is failure of the course in which the breach occurs. For more information, please refer to the Student Code of Conduct Policy, which can be found in the Purdue University Global catalog.

We want you to be successful; therefore, encourage you to take advantage of the following resources:
Plagiarism Information Page
Writing Center located in the Academic Success Center section of Purdue Global Campus.
Thank you.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost

**Action Taken**    Failed assignment

 Gmail

## CL850 Academic Integrity Inquiry

**Shaun Jamison** <sjamison@purdueglobal.edu>                                    Wed, Mar 4 at 12:19
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, Shaun Jamison <SJamison@purdueglobal.edu>

Dear Nicole,

I am writing on behalf of Professor Sarah Diab, who is your professor for CL850. As you know, the professor has reached out to all CL850 students to discuss the authorship of their work.

On February 11, 2026, the professor let you know she would like to discuss your assignments. On that same day, you responded that you have no time to meet because you are "homeless, fighting a foreclosure and bankruptcy matter, and [you had] just started a new position as Interim Deputy Commissioner for the New York City Department of Homeless Services." You then scheduled Sunday, February 14, 2026 at 10 AM ET on your professor's calendar to meet. At 7:55 AM ET on Sunday, February 14, 2026, the professor informed you that she had a sudden conflict and asked to reschedule the following day or "any other day [that] week." At 8:15 AM ET on February 14, 2026, you refused to reschedule and made the following remarks and threats verbatim:

1. Professor, you are an inconvenience to my schedule.
2. I cleared my schedule today to deal with you after learning from my classmates that you are playing AI police.
3. Let me be clear that I am preparing my complaint to Purdue Global Law School.
4. If you intend to claim that my Dragon speech-to-text usage, which is approved by SAS for me, is proof that I am using ChatGPT, that allegation is unfounded.
5. AI detectors are biased against disabled, English-as-a-second-language, and minority students, which has been proven by Professor Ryan Baker in his published research.
6. If we cannot meet today, then we will not meet at all.
7. Labeling my work as inappropriate AI use is a violation of disability laws.
8. If you plan to file complaints, I am prepared to respond accordingly.
9. I am also very disappointed that Scott Johnson is not teaching this class because he wrote the book and I have had him as a professor several times. I enrolled in this course expecting that he would be teaching.
10. You are a disservice to this class, and I am not happy.
11. If I were not graduating in seven months, I would request a refund and withdraw from the course.
12. This situation is unnecessary and raises serious civil rights concerns. As an attorney, you should know better.

Because the professor was the subject of disrespectful remarks, accusations, and threats on your part, I am reaching out to you in order to complete the investigation. You may reply directly to me; do not contact the professor about this matter further.

The professor is concerned about whether you are the author of the work you submitted in the course. Because this matter has come to my desk, I am providing additional context. The investigation is for the following reasons:

- You completed the work in the course at an extraordinary pace. CL850 is a four-credit law school course, which is designed to involve 180 total hours of study (45 hours per credit). You completed CL850 by January 22, 2026, about 16 calendar days into the term. According to the schedule you provided to your advisor, you were also working full-time during this timeframe.

- However, you were not solely working on CL850 and full-time employment during this period. You also completed 15 other law school credits, for a total of 19 credits. The typical course load per term is 7-9 credits for part-time students and 10-12 credits for full-time students (who are required to affirm that they do not have more than 20 hours per week on average of outside work or dependent care commitments).

- Based on our expected time frame of 45 hours of total study per credit, your coursework would have taken approximately 855 hours (45 x 19), or nearly 36 straight twenty-four-hour days, without sleeping, eating, or working. Obviously, this is not physically possible.

- In addition, your courses require that you acknowledge that you have completed the work and the estimated hours in each module.

- Even if you worked extraordinarily quickly and completed all of your work in half the time it is expected to take (and notwithstanding your hours acknowledgments within your courses), it would still have required nearly 18 straight twenty-four-hour days, without sleeping, eating, or working—which is, again, physically impossible.

- Further, based on the totality of the circumstances, where you initially refused to meet with your professor to discuss your assignments and then refused to reschedule, this indicia remains uncontested.

- However, Module One's assignment is an exception in that it is 98% copied from another student paper. The Turnitin report is attached. Your Module 1 submission is 31 pages, submitted on the first official day of the semester, January 7, 2026, at 12:01 ET, prior to the first Seminar scheduled on January 8, 2026.

- To clarify, the subject of this inquiry is:
    - Module One - 98% copied from another student paper.
    - Module Three - AI usage
    - Module Five - AI usage
    - Module Eight - AI usage
    - Module Thirteen - AI usage

Your PG Supplemental Student Manual (which is automatically posted in all PGLS courses), Version 1.2, Effective January 2025 outlines Generative Artificial Intelligence policy beginning on Page 10 of that manual. The pertinent policy states the following:

"AI tools may not be used with open-book assessments unless explicitly allowed through an announcement by the faculty member teaching or course or through the course materials or as outlined below:

1. AI-enabled assistance similar to Grammarly for spelling and grammar may be used unless disallowed by the faculty or course materials.

2. If used consistently with assignment instructions, AI-assisted research tools are allowed for open-book assignments

3. AI may be used to help organize your writing. For more information on using AI tools, please see Student Resources. AI tools may be used to assist you with studying. Some examples of the use of AI in studying include assisting with outlining, creating practice quizzes, and generating emails to communicate with faculty, staff, and other students. You can even use AI to role-play negotiations.

Using AI tools beyond the permissions granted in a course constitutes a violation of the Student Code of Conduct."

This policy restricts AI use to research and studying, and instances where explicitly allowed through an announcement by the faculty member teaching or course or through the course materials; your use appears to exceed research and studying, and none of the other permitted instances are applicable to the class in question where no such announcement has been made in the course and no course materials have prescribed permitted use of AI. Further, when consulted, Professor Scott Johnson had expressly confirmed that the course is of an open-book nature that demands conventional research methods that do not involve AI use. No express allowance was made anywhere in the course for AI usage.

You took and passed the PGLS Academic Integrity Course prior to this term which explained that AI use on graded assessments was not permitted without explicit permission. Likewise, the course, along with the Student Code of Conduct and Academic Integrity Course do not permit submitting someone else's work as your own.

Additionally, the amount of time set for completion of each of these modules and respective assignments and when they were completed is as follows:

- Module 1:
  - Total time for module: 14.8;
  - Total time for assignment: 5 hours.
  - Submission stamp: January 7, 2026 12:01 AM
- Module 3:
  - Total time for module: 16.1;
  - Total time for assignment: 8 hours.
  - Submission stamp: January 12, 2026 3:35 PM
- Module 5:
  - Total time for module: 13;
  - Total time for assignment: 4 hours.
  - Submission stamp: January 12, 2026 9:40 PM
- Module 8:
  - Total time for module: 17.3;
  - Total time for assignment: 8 hours.
  - Submission stamp: January 13, 2026 1:19 PM
- Module 13:
  - Total time for module: 13.6;
  - Total time for assignment: 5 hours.
  - Submission stamp: January 14, 2026 3:28 AM
- Module 15:
  - Total time for module: 12.5;
  - Total time for assignment: 10 hours.
  - Submission stamp: January 22, 2026 6:34 AM

The speed with which you've completed your assignments, within 2 weeks, does not match the requisite time assigned for each of these modules and respective assignments, especially when taking your schedule and personal challenges into consideration.

On February 25, 2026, you emailed the professor a "request for clarification and accommodation compliance," while continuing to threaten your professor with a civil rights complaint. Your email contained the following statements verbatim:

- I received your email to the class regarding AI after you canceled my appointment one hour before we were scheduled to meet on Valentine's Day, after I had cleared my schedule.
- I completed my work early because I have surgery coming up and needed to plan accordingly. I understand that all of my instructors received notice of my approved accommodations before the semester began.
- The failure to accommodate my approved use of assistive technology, including speech-to-text, raises concerns under applicable disability laws.
- In addition, your lack of response to my questions since the beginning of the class has raised serious concerns and contributed to my decision to file a civil rights complaint.
- My work should be evaluated based on the substance and quality of the information provided, not solely on the results of an AI-detection tool such as GPTZero, to which I have a subscription.
- Research by scholars, including Professor Ryan Baker and researchers affiliated with institutions such as Harvard and Yale, has raised concerns about the reliability and potential bias of AI-detection systems. These studies indicate that such tools can produce false positives and may disproportionately impact certain writing styles or users of assistive technology. For these reasons, reliance on AI-detection software without substantive academic review raises fairness and accuracy concerns. Law students' work should be graded on its academic merit based on the rubric, not on an automated suspicion score.
- AI-detection tools like GPTZero are probabilistic systems, not forensic instruments. Independent research has shown that these tools can produce false positives, meaning they sometimes label human-written work as AI-generated. Scholars in educational data science, including Professor Ryan Baker, have cautioned that detection systems are not reliably accurate across different writing styles and linguistic patterns. Research discussions from institutions such as Harvard and Yale have also emphasized the risk of bias and over-reliance on automated academic integrity tools without human review. The concern becomes more serious when assistive technology is involved.
- Speech-to-text software can produce syntactic patterns that differ from conventional typing, which may inadvertently trigger AI-detection flags. I have observed this issue in my own research because I use speech-to-text applications and devices. If a disability accommodation changes the mechanics of writing, an algorithm trained on typical keyboard-generated prose may misclassify that output. This creates a potential disparate impact issue if disabled students are disproportionately flagged. For that reason, best practice in academic integrity review requires substantive faculty evaluation rather than sole reliance on detection software.

In your February 25, 2026 email, you raised several concerns regarding (1) disability accommodations, including speech-to-text software; (2) the reliability and potential bias of AI-detection tools; and (3) the propriety of relying on such tools in evaluating student work.

To clarify the basis of this investigation, kindly note the following:

1. The issue under review is not your use of approved assistive technology; PG fully honors approved accommodations, including speech-to-text software, and nothing in this investigation concerns or restricts your lawful use of such tools. As mentioned above, where the policy expressly permits certain limited uses of AI-enabled tools, such as grammar assistance and research and study support, such use must be consistent with course instructions. There is no prohibition on approved disability accommodations, and that is not at issue here.
2. While you assert that AI-detection systems are probabilistic and may produce false positives, no academic integrity determination is made solely on the basis of an automated detection score. AI-detection software is used as one screening mechanism among others to help professors with their

identification of work that may warrant further review. It is not treated as a forensic instrument or as dispositive proof of misconduct. Rather, it functions as an integrity-support tool that prompts substantive faculty evaluation, similar to plagiarism detection software, and is more probative of plagiarism in conjunction with other proof such as the speed of submission in your case, which is disproportionate to the time allocated for completion of the assigned coursework.

3. Regardless of ongoing scholarly debate about detection accuracy, the controlling standard in this matter is PG's Supplemental Student Manual, cited above, which limits AI use to specific contexts: primarily research, studying, or where explicitly authorized by the instructor in open-book assignments, which is not the case here. Use of AI beyond these permissions constitutes a violation of the Student Code of Conduct, and where Professor Scott Johnson has not prescribed for use of AI in his designed course assignments, the likelihood of violation in the case of your submissions is high; no announcement, course material, or instruction authorizes generative AI use for drafting or composing the module assessments in this course, signaling the need for conventional research and original written analysis. Even if AI-detection tools are imperfect, that does not authorize the use of generative AI beyond what the policy or course permits, which is "none" in this course.

The central question in this investigation is therefore not whether detection software is flawless; rather, it is whether your submissions of all assignments within two weeks complied with the AI policy and the assignment instructions. Excessive or unauthorized generative AI use cannot be justified by general concerns about detection methodology. The relevant inquiry is whether the work submitted reflects your own analysis consistent with the permitted scope of AI use under institutional policy.

Lastly, academic integrity protections exist to ensure fairness across the student body. If some students rely on generative AI beyond authorized limits, while others comply with restrictions, the grading process becomes inequitable. PG's policy restrictions and the tools used to enforce them are intended to maintain consistent standards, protect the value of student work and the integrity of your degree, and ensure that all students are evaluated under the same rules.

Given the above, I request the following:
As to assignments from Modules 3, 5, 8, and 13:
- A statement about whether you have used AI in the creation of graded assessments in CL850.
- If you have used AI, explain how you have used it for each graded assignment.
- Any supporting evidence that you are the author of the graded assessments in CL850. For example, drafts, research notes, document properties, versioning history, or other proof that you created these documents yourself.

As to the assignment from Module 1:
- Any supporting evidence that you are the author of the graded assessments in CL850. For example, drafts, research notes, document properties, versioning history, or other proof that you created these documents yourself.
- An explanation for the 98% match with another student's paper

I request that you provide the following to me by 11:59 p.m. ET on Mar 6, 2026 at sjamison@purdueglobal.edu. Pending an outcome, the assessments will not be graded and thus remain zeros, though the zeros are placeholders only until the matter is resolved. If you do not respond, we will proceed with the allegations above. If you do respond, we will review and consider your response. Thank you for your attention to this matter.

USDC IN/ND case 4:26-cv-00026-PPS-AZ    document 16-1    filed 04/20/26    page 63 of 85

Nicole Lawtone-Bowles has filed an appeal for the Academic Dishonesty violation of the Code of Student Conduct (CL685-01: Criminal Procedure, Modules 6 and 10 Essay); attached.

To understand the situation better, thoroughly investigate the student's concern, and fully inform the Academic Appeals Committee, we would like additional documentation and background information from you.

You may submit a number of documents, which include, but not limited to, the following:

- A short narrative of the situation, including a timeline of events (required)
- The student's work as submitted
- TurnItIn report where applicable
- Term syllabus
- Assignment instructions
- Assignment Grading Rubric
- Gradebook comments (including both commentary and points awarded)
- Any remediation you offered
- All email communication with the student regarding this matter

Please submit the requested documentation within the next 5 business days. The Academic Appeals Committee will review the appeal and supporting documentation.

Please let me know if you have any questions.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu



*Purdue University Global holds itself accountable to foster a culture that promotes diversity and inclusion, offering an environment that is fair, equitable, and accessible for all.*

**attempt log, mod 10 essay NL-B.PNG**
153K

**Shaun G. Jamison**
Pronouns: he, him, his
Associate Dean of Academic Affairs

Purdue Global Law School
2029 Century Park East, Suite 400
Los Angeles, CA 90067
**Email:** sjamison@purdueglobal.edu

image.png

Make a tax-deductible donation to Purdue Global Law School

Lawtone-BowlesCL850M1A.pdf

**CL850 Nicole Lawtone-Bowles (NLB) Academic Integrity Investigation Summary**

**Author:** Shaun Jamison

**Conclusion:** NLB did not complete the work entirely herself on the assignments in Modules 1, 3, 5, 8, and 13. This is a violation of the Code of Student Conduct and the Academic Integrity Policy.

**Recommendation:** A report to the Provost's office of the academic integrity violation and a referral to the assistant dean of students for Code of Student Conduct violations identified during the investigation.

**Genesis of the complaint:** The faculty member of record for CL850, Sarah Diab, reached out to me because she noticed several students appeared to be using artificial intelligence (AI) and that one student, in particular, had somehow completed the entire course, which she found suspicious. Diab discussed her plan to meet with all of the students in the course in order to understand if they were using AI and to address it. As this was a monumental task, it took a while for Diab to reach out to NLB.

When NLB received an outreach from Diab, she initially refused to meet. Then she agreed to meet, but, unfortunately, the professor had an unexpected and sudden conflict. Diab tried to reschedule with NLB, but NLB refused.

Due to the disrespectful attitude of NLB toward the professor, including accusing her discrimination even though Diab was trying to meet with the entire class and accusing her of playing "AI police," I took over communication and the investigation with NLB to help the professor focus on the course.

**The investigation:**
In consultation with Diab, I drafted a letter to let NLB know our concerns and to respond with information showing that she was, in fact, the author of the identified assignments. As part of my investigation prior to drafting the letter, I discovered that the Module One assignment was showing a 98% match with a prior student submission. I also reviewed NLB's progress through the course and their overall courseload. This is documented in my letter to her.

I sent the letter to NLB. NLB made a number of replies, provided dozens of attachments, and a video. NLB's submissions appear to fall into these categories:
1. Doctor's notes - As to the notes regarding the need for voice-to-text software use, these are unnecessary as the accommodation is not being contested by the academic department. As to the OCD diagnosis, which the student has disclosed and made part of the record, this was not the basis of a request for accommodation made prior to completing the course. The student may wish to provide it for context, but Diab would have been unaware of any expectations with regards to NLB's diagnosis. Please note

that the faculty is not made aware of actual diagnosis; rather, we receive instructions with regard to student accommodations.

2. **Complaints to external agencies** - These are not relevant and merely repeat NLB's arguments. They are supplied by her for the purpose of intimidation. NLB appears to believe that any action against her would be retaliatory once we have notice of the complaints, so she is intending to use them as a shield against consequences.

3. **Articles about AI detection** - I'll leave it to the committee to determine if they agree with the positions of the articles. However, to be clear, AI detection software is not the basis for this report, nor is it the sole basis. NLB argues that it is the sole basis, even though she knows that isn't the case.

4. **GPT Zero Video:** This video purports to show NLB's process of writing using adaptive technology. However, it is not a video of that technology; rather, it is a video of GPT Zero analyzing what she purports to be her use of assistive technology. No sound or view of the assistive technology was included, so there is no way to verify the genuineness of the video. I believe that NLB might be trying to prove that AI detectors are biased against users of assistive technology. First, AI detection is not the basis of the complaint. Second, there is no way to know if the video is genuine because we are only seeing the outputs.

5. **Replies to my inquiry** - Despite having a fairly narrow line of inquiry for NLB to reply to, she responded to all or most of the email rather than just the questions needed to resolve the matter. This was my request (NLB responses in **bold**):

"Given the above, I request the following: **I use Assitive Technology due to my disability**

"As to assignments from Modules 3, 5, 8, and 13: **I use Assitive Technology due to my disability** A statement about whether you have used AI in the creation of graded assessments in CL850. If you have used AI, explain how you have used it for each graded assignment. Any supporting evidence that you are the author of the graded assessments in CL850. For example, drafts, research notes, document properties, versioning history, or other proof that you created these documents yourself."

"As to the assignment from Module 1: **I use Assitive Technology due to my disability**

"Any supporting evidence that you are the author of the graded assessments in CL850. For example, drafts, research notes, document properties, versioning history, or other proof that you created these documents yourself.

An explanation for the 98% match with another student's paper **Turn on the TurnItIn Feature in the course now**"

Below are additional responses she provided (for brevity and to focus the report on relevant information, I am not including numerous responses that merely accused me or others of discrimination or asserted the invalidity of AI detection):

NLB "Response to the question regarding the pace at which I completed CL850:

I began working on my coursework during preview week on January 2, 2026, because I knew I was scheduled to have surgery on March 6, 2026 and would be down for a period of time. Because of that, I planned my schedule so that I could complete as much coursework as possible before my surgery. If you review Brightspace, you will see that I am frequently logged into the system because I spend a significant amount of time studying and reviewing course materials. I go to sleep once I get home at 2000 and in bed by 2100 Monday through Friday because I use that time to work, commute, and study. I wake up at 0200 and leave my home at 0300 to find parking at 33 Beaver Street before work."

Also: "Response to the question regarding how I managed coursework while working full-time: During my commute and while on the road, I listen to audiobooks and BarMax so that I can continue studying. When I arrive at my job, I sleep in my car until 0800. I also arrive at work an hour before I have to punch in so that I can work on my homework. I continue working on my coursework during my lunch hour and whenever my boss is not in the building. I use every available moment during the day to review and complete assignments."

Also: "Response to the question regarding the speed at which I completed written assignments: The UBE requires examinees to complete six essays with approximately 30 minutes allowed for each essay. Because of that format, I train myself by setting a timer and writing essays within 30 minutes. I review work every day, which is why I am prepared at the seminars I attend. Practicing timed essays and reviewing materials daily allows me to complete assignments efficiently. I also began completing coursework early because I knew my upcoming surgery would limit my ability to work later in the semester."

SGJ: Because the professor was the subject of disrespectful remarks, accusations, and threats on your part, I am reaching out to you in order to complete the investigation. You may reply directly to me; do not contact the professor about this matter further.

NLB: Freedom of speech is a fundamental human right protecting the ability to express opinions without government censorship or retaliation. In the U.S., the First Amendment safeguards this right, covering spoken, written, and symbolic speech. This is my career, my life and my family life you people are playing with and you expect me after I have $200,000.00 in student loans to take this abuse from you. You can't be serious I am angry because this is emotional distress. I am set to graduate on August 25, 2026 I am busting my ass despite my disablity to complete my law degree. You Victoria Vidt, Brian A Victor, and Sarah Diab is standing in my way to change my life and my family life. You know why I am in law school one because my 8 year old grandson has never been held by my son his father who is sittting in a California Prison for a crime he did not commit. I am in school to save my family not to be harrassed for assitive technology. When I

graduate I have five months to prepare for the Connecticut State Bar Feburary 2027 and six months to prepare for the Californina Bar July 2027 you are standing in my way to save my son and my home.

NLB: Dear Dean Jamison,

"Attached is a screenshot illustrating how metadata appears in a Microsoft Word document. As the screenshot shows, the document was originally created on January 2 at 10:56 p.m. and last modified on Tuesday, the 13th at 10:48 p.m. The metadata also reflects a total editing time of approximately 198 minutes and indicates that the document underwent six revisions. These embedded details are automatically generated by Microsoft Word and appear consistently across all of my Word documents.

This metadata clearly shows the time spent drafting and revising the document. It reflects a normal writing and editing process conducted directly in Word. For that reason, the metadata indicates that the document was produced through standard drafting and revision rather than through external automated tools.

I am requesting that this information be reviewed carefully before any conclusions are drawn about how my work is produced. The metadata provides an objective record of when the document was created, how long it was worked on, and the number of revisions made during the drafting process."

NLB: "Yes I do use Dragon and my computer is Apple As of early 2026, Apple has integrated OpenAI's ChatGPT into iOS, iPadOS, and macOS via Apple Intelligence. Users can leverage ChatGPT for writing, image generation, and, as of iOS 26, on-screen analysis, with options to connect existing accounts. However, for core Siri upgrades, Apple has increasingly shifted toward partnering with Google and Anthropic."

6. **Analysis:**
   a. **Timeframe:** Even taking into consideration the student's claims of additional efficiencies from studying, operating on little sleep, starting five days prior to the term, and doing school work when her boss is out of the building, it is implausible that she could complete all her coursework in that timeframe. Even if she were to complete all of her work in half the time it is expected to take, that would involve approximately 422 hours of total study (19 cr. x 45 hrs/2) in no more than 21 days, which is 20 hours per day.
      Moreover, it is not reasonable for a person to be able to master the material well enough to write at a high level and incorporate analysis for this course specifically and nineteen law school credits generally in the timeframe she claims. Additionally, NLB does not demonstrate the ability to prioritize or manage

time. For example, she spent a lot of effort arguing about the merits of emails she sent, but gave minimal effort to the actual questions I asked as part of the investigation. Given this, it seems unlikely she could organize a heroic completion of 19 law school credits in a few weeks.

b.  **Evidence of authorship:** NLB was invited specifically to provide evidence of authorship in my letter to her. I inquired about the evidence a second time during the investigation. Yet the only response is "I use assistive technology." NLB has cited any number of articles and seems conversant with AI and the issues of academic integrity and AI. Yet she is unwilling to demonstrate authorship when there are strategies to do so that she was invited to submit, such as versions, drafts, notes, etc. In our Academic Integrity course, we include an _article_ that points out that one way to prevent plagiarism is to keep a research journal. NLB took and passed that course prior to taking CL850.

NLB did eventually present the properties from her submissions as she considered objective proof of the time spent editing and not through the use of external tools. Given that she submits that this should be sufficient proof of her authorship and offers no qualification or limitation on that, I proceeded to analyze the data. If we pretend for the purpose of a thought experiment that the work was not produced in the context of completing the course, 15 other law school credits, working full-time plus other obligations under an impossibly short timeframe, then it's possible reviewing the properties that some of the documents were produced without outside assistance. The properties are included in the record. However, the Module 8 assessment shows it was created over a period of 5 minutes for 6 pages and over a 1000 words. Module 1 (which she sent the properties for) was 29 pages long, with 6140 words, and produced over 194 minutes or approximately 3.25 hours. This means that NLB produced 8.92 pages of law school writing and analysis per hour including editing. This is not believable. Looking at this in the best light for NLB, this shows she was willing to edit the results of generative AI, but, unfortunately, it still points to a substantial use of generative AI in violation of course, school, and university policies.

NLB denies the use of generative AI, but states without qualification that her computer has generative AI capabilities and what they are capable of. I'm unclear if she is saying she cannot avoid using generative AI or if she's admitted its use.

c.  **Evidence of knowledge of subject matter:** Because the student never met with Diab as requested, it is difficult to ascertain directly if NLB understands the underlying material in CL850, Education Law, sufficiently to be the author of the assignments. However, we can determine that she misunderstands freedom of speech based on her reply to the reasoning of my stepping into the investigation. She apparently believes that she can say whatever she wants without consequence and that that's guaranteed in the Constitution. No one with a legal education believes that and would understand that speech is, in fact, regulated. While CL850 focuses on K-12 freedom of expression, the basic concept should

be apparent. Likewise, a law student getting ready to graduate is required to have taken Constitutional Law, which would have addressed freedom of speech.

d.  **Evidence of application of knowledge and skills from the program.** NLB reports she is one more term from graduation. Yet her communications do not demonstrate that she has incorporated either law school level writing or analytical skills. In writing courses, one learns to write for the audience, yet NLB is insulting the people she is trying to persuade, which is not a successful strategy. She persists in attacking and claiming we are relying solely on AI detection when that is clearly not the case. She sent me dozens of attachments, but didn't organize them into a kind of argument or explanation. She implies, solely based on my appearance, that I discriminate against her. When I asked her about a 98% match on her Module One assignment, she accused me of being a liar. As it turned out, she is the one who submitted the earlier document, causing a false positive. I asked her if that was the case and she did agree it was her and she showed me that she had submitted it. She had to know that she had submitted the document earlier, yet lacked the reasoning ability or honesty to explain to me that that was the reason for the match.

NLB emailed the dean of the law school, apparently asking him both to intervene in her prior academic integrity charge, and apparently to replace Professor Diab. She intimated that she was considering filing a "class action lawsuit" because she and other students were upset that Professor Diab, and not Professor Johnson, who wrote the textbook for the course, was teaching their section. Again, anyone who is almost done with law school, and who completed Education Law, should know that there is no legal basis to file a lawsuit because someone is disappointed that they did not get to take a course with the professor of their choice. Further, no court would certify a class action lawsuit for a couple of dozen students and a few thousand dollars. This is something one would know from Civil Procedure class.

e.  **Evidence of Code of Student Conduct Violations.**
    i.   I note that NLB does not deny either that she is working full-time, nor that she signed an attestation for students enrolled in our full-time program that should not work more than twenty hours a week. She is further required to notify us should her situation change. She petitioned for an excessive amount of credits knowing she was working full-time. She misrepresented her situation to the administration and made a false statement. In fact, NLB sent me her LinkedIn profile as part of her submissions which shows her to be full-time with the City of New York, part-time with West Point, full-time with Adrain's Place, and full-time with Ultress. I'm not sure about Ultress, but she has presently mentioned her current associations with the first three.

ii.    NLB does not deny her words to professor Diab or that they were disrespectful. Her position is that she has an absolute right to free speech. Obviously, being disrespectful to the professor is a violation of the Student Code of Conduct.

iii.    NLB submitted the Module One assignment to the tutors for review and feedback prior to submission. PGLS students are not allowed to have pre-submission review of their papers. This is a violation of our academic integrity policy. Further, this triggered a 98% match in Turnitin. When I asked her about the 98% match, she replied "Your a liar." So not only did she ask for help she was not allowed to have, she did not come clean about it until she thought it was to her advantage. Further, when confronted with the report, she was insulting and made a false statement.

iv.    In an email with the Dean, she referenced the fact that she was a federal government employee, that she and other students use federal financial aid, and attached several articles referencing how the federal government may be cutting off federal financial aid eligibility for schools or programs that were determined not to meet its standards. The Dean asked if she was threatening to use her influence as a federal government employee to induce the government to cut off the law school's financial aid eligibility if he did not provide her the relief she was requesting. She responded in two separate emails, but did not deny that.

v.    NLB completed the course in an incredibly short amount of time, making it impossible for her to have completed the tasks and hours indicated. PGLS students complete an attestation at the end of each module that they have completed the work and the requisite hours. Given the timeframe it's not possible that these attestations were close to true. Here is an example of one:

    Nicole Lawtone-Bowles   |   Attempt 1   ⌄

### Quiz Results

**Question 1**

I have completed all of the assignments and activities in this module by spending at least the following total hours in study and preparation:

✓ ◉ True

◯ False

Save Time
12:02 AM

vi.    Prior to the conclusion of the internal discrimination investigation, NLB notified Shaun Jamison and Brian Victor that she was reporting them to their respective bar authorities, Minnesota and California. She conceded in her reports that this was unrelated to the practice of law, but claimed violations by virtue of discrimination. There has not been a conclusion to the internal investigation and after the fact, it was determined that there

was no basis for the discrimination complaint. After receiving the results of the internal investigation finding no discrimination, NLB proceeded to file a similar report in the Massachusetts bar against Sarah Diab. It should be noted that the result of bar discipline could include loss of the ability to practice law. Both Sarah Diab and Brian Victor are adjuncts and rely on their licenses for their livelihood. NLB appears to have filed these complaints, in part for intimidation, but also for revenge for perceived wrongs. Naturally, creating a hostile work environment for our adjuncts makes it difficult for us to retain them and, in fact, former adjunct, Victoria Vidt, who filed the first academic integrity complaint against NLB has retired and part of the reasoning was her experience with NLB.

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 16-1    filed 04/20/26    page 73 of 85



PG Plagiarism <plagiarism@purdueglobal.edu>

## Re: Nicole Lawtone-Bowles: Academic Dishonesty Appeal Received
1 message

**Victoria Vidt** <victoria.vidt@purdueglobal.edu>                  Wed, Jun 4, 2025 at 4:31 PM
To: PG Plagiarism <plagiarism@purdueglobal.edu>
Cc: Shaun Jamison <SJamison@purdueglobal.edu>, jfishman@purdueglobal.edu, Toni Pesce <tpesce@purdueglobal.edu>,
Melissa Eckenrod <MPrichard@purdueglobal.edu>, barbara.kent@purdueglobal.edu, jperryman@purdueglobal.edu

This is my response to the grade appeal.

Nicole Lawtone-Bowles is a student in my Criminal Procedure class, CL 685-01. The term began on May 7, I believe. Within the first week of the term's start, this student had submitted assignments up through and including at least module 10, or 2/3 of the coursework for the term. I initially asked the student if they were repeating the course, as it made no sense to me that all the material in the first 2/3 of the course could be learned in a week (without the benefit of seminars or professor feedback). When she explained that no, she hadn't taken the course before, I told her that I would begin grading her materials shortly.

Grading started, but I stopped when I reached the module 6 essay. All essay assignments are closed-book/closed-note. Thus, when the student's essay contained full case citations (i.e., Smith v. United States, 356 U.S. 2233 (1999) (not a real cite, but an example)), it appeared that the student either did not complete the assignment without accessing her notes or she had assistance in completing the assignment, for something like AI. I asked the student about the citations. I explained that in a closed-book situation, citations are not expected as lawyers don't tend to memorize them. The student then explained that she worked quickly because she used the Dragon voice-to-type system per her accommodations. Initially, she seemed to suggest that the Dragon program completed the citations for her, as "suggestions" that she just had to hit the Enter key to accept. So I asked if the Dragon software had access to citation services like Westlaw or Lexis, is that how it was able to "suggest" the citations? The student then said that Dragon does not input the citations for her.

The student then tried to tell me that tutors had explained to her that she had to include citations for good grades. I suspected that was untrue, but I did reach out to the two professors she mentioned, Quintin Huff and Dave Cook. While I did not hear back from Professor Cook, Professor Huff explained his interaction with the student and reaffirmed that students are not told that they have to put citations in their work.

As this went on, I looked at the attempt log for this essay and found interesting results. The log is attached herein. Basically, the student wrote an essay of almost 5,300 characters in 8 minutes. Then she left her page on the website open and did not submit the essay, letting it auto submit in 2 hours (the student has 2x the time period for assignments because of her disability). While not submitting the assignment herself and letting the essay auto-submit at the time limit is not wrong per se, it is unusual in my experience.

I told the student that it was not credible that she read the question, composed an answer including detailed case citations, and uploaded it in 8 minutes. I gave the essay a zero grade and submitted the academic integrity report. Today, I submitted a second report for the mod 10 essay.

The student continues to deliberately misinterpret my comments to her, and now accuses me of being racist and discriminating against her because she uses disability accommodations. This is wholly false. I attempted to explain to the student that the Dragon software was not the issue – the issue was whether she had help in completing the essay. The student continues to maintain, without credibility in my opinion, that she completed this essay on her own in 8 minutes, including case citations.

As for the second essay, as I stated earlier, she submitted this one soon after she submitted the module 6 essay, and she did not wait to get her first one graded by me, where she would have been put on notice that citations are an indicator of having assistance in the writing process. The mod 10 assignment was also full of case citations, indicating to me that the student had help in some way. The attempt log also shows irregularities. The essay was started at 9:22 pm, and 2400 characters were saved 17 minutes later. An additional 4600 characters were saved 11 minutes later. And the final 6,055 characters were added to the essay 3 minutes after that. The essay then sat open without additional amending until it was auto-submitted two hours after it was started.

None of my issues with the student's work involve the use of the Dragon software, now that the student assures me that it does not access the internet or help her to complete citations while she is composing an essay. However, this student's actions in completing the assignments within a week of the class starting, the obfuscation about her use of citations in her essays, and the strange timing of her essay submissions indicated in the attempt logs have led me to the conclusion that this student did not complete the assignments without assistance that was outside of her accommodations.

Now the student is attacking me personally and has said she does not want to be in my class anymore. I would be amenable to this result. In her appeal of the grade situation, she is instigating personal attacks against me in my personal life and affairs. Moreover, she clearly doesn't understand what she attached to her appeal, as she mischaracterizes it as my being charged with discrimination. This was not the case, it was a case where I alleged that I was being discriminated against, just like Nicole.

I will attach the attempt logs for both essays here, as well as my correspondence with the student.

I will note that remediation is not an option. The student has seen both model answers for the two essays, and there are no alternatives available.

Please let me know if you need additional information from me. Thank you.

On Wed, Jun 4, 2025 at 12:37 PM PG Plagiarism <plagiarism@purdueglobal.edu> wrote:
Dear Victoria Vidt,

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

NICOLE LAWTONE-BOWLES )
)
*Plaintiff,* )
)
v. )      No. 4:26-cv-00028-PPS-AZ
)
PURDUE UNIVERSITY GLOBAL, et. al )
)
*Defendants.* )

### PURDUE UNIVERSITY GLOBAL'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Although it is unclear whether Plaintiff has even pleaded sufficiently to invoke this Court's limited jurisdiction, her request for extraordinary injunctive relief fails on multiple fronts. Plaintiff was dismissed from her law school program at Purdue Global for multiple and repeated serious violations of the law school's academic honesty standards. Academic judgments are not subject to judicial second-guessing, and Plaintiff does not meet her heavy burden to overcome the deference given to faculty's professional judgment.

Plaintiff has not cited to any law, so Purdue Global is inferring that she may be seeking relief under the Americans with Disabilities Act. The Americans with Disabilities Act ensures equal access to places of education for students with disabilities in need of accommodations. But it does not displace academic standards. In this case, Plaintiff claims she was improperly dismissed from her law school program at Purdue University Global due to her use of assistive technology because of her disability. Nothing could be further from the truth.

Rather, Plaintiff was dismissed from the program due to repeated findings of academic misconduct in her coursework. These findings stemmed from implausible production speeds, an inability to explain her work, and fabricated citations. Plaintiff was given notice of each finding and a chance to explain her misconduct, including how her use of assistive technology may have impacted

the University's findings. These explanations were not credible, and the University's findings were evaluated and affirmed in multiple levels of review. Plaintiff now seeks a Temporary Restraining Order to prevent Purdue Global from effectuating its academic decision to dismiss her from the program. This result is not warranted and fails as a matter of law.

## I.   Factual Background

Purdue Global Law School operates as part of Purdue University Global, a regionally accredited institution organized as a public, nonprofit university serving adult learners. Its law school, accredited by the Committee of Bar Examiners of the State Bar of California, provides a fully online legal education designed to meet professional standards for entry into the legal profession.

Plaintiff Nicole Lawtone-Bowles was a law student at Purdue Global. Dkt 1 at ¶ 1. On May 27, 2025, her instructor reported concerns with her submissions on two modules. Declaration of Carolyn Nordstrom, attached as Ex. A, at ¶ 8. In the first module, Plaintiff submitted an essay of approximately 5,300 words, including legal citations, in about eight minutes during a closed-book, closed-note exam. *Id.* ¶ 9. On the second module, she also submitted a detailed essay with legal citations in an implausibly short timeframe. *Id.* ¶ 10. The Academic Appeals Committee upheld a finding of academic misconduct and imposed a sanction where Plaintiff was given a failing grade on the relevant assignments. *Id.* ¶¶ 13-14. On January 15, 2026, a second instructor submitted an academic integrity report concerning the Plaintiff. *Id.* ¶ 17. Again, Plaintiff's volume and speed of work strongly suggested the use of unauthorized technology and assistance. *Id.* ¶ 18. During a follow-up discussion, Plaintiff failed to demonstrate the same level of knowledge reflected in her submission. *Id.* ¶ 20. The Academic Appeals Committee found that Plaintiff had engaged in academic misconduct, and as a result, Plaintiff received a failing grade for the course. *Id.* ¶¶ 23, 26. A third academic integrity report was submitted on February 14, 2026, after Plaintiff submitted *all* course assignments within two weeks, despite the course's required reading of 900 pages. *Id.* ¶¶ 28, 29. The Academic Appeals Committee

2

granted a hearing and identified inaccurate or fabricated legal citations and inconsistencies in Plaintiff's explanations on how her work was prepared. *Id.* ¶ 34.

Academic integrity, including independent authorship, is a core requirement of Purdue Global Law School's program. *Id.* ¶ 5. A student who does not meet these requirements cannot successfully complete the program. *Id.* ¶ 6. Under the University's Academic Dishonesty Policy, a third academic integrity violation results in dismissal. *Id.* ¶ 37. Purdue Global dismissed Plaintiff from its program following the third finding of academic misconduct. *Id.* ¶ 38.

Plaintiff claims her use of speech-to-text technology, which Purdue Global permitted her to use due to her disability, makes her writing appear faster and different from traditional typing. Dkt 1 ¶ 8. But the findings of misconduct were not based on the use of this assistive technology. Ex. A ¶ 43. Plaintiff was given multiple opportunities to respond to the allegations and explain how she completed her work. *Id.* ¶ 44. Purdue Global personnel did not find these explanations credible and affirmed each finding of misconduct. *Id.* ¶ 47. Plaintiff now brings a claim against Purdue Global for violations of the Americans with Disabilities Act and asks the Court to grant a temporary restraining order to allow her to complete her coursework and graduate from the program on time. See Dkt. 1.

## II.    Legal Standard

A temporary restraining order is an extraordinary and drastic remedy that should not be granted unless the movant carries the burden of persuasion by a clear showing of (1) reasonable likelihood of success on the merits, (2) no adequate remedy at law, (3) irreparable harm absent injunctive relief outweighing irreparable harm if injunctive relief is granted, and (4) no harm to the public interest. *Goodman v. Illinois Dep't of Fin. & Pro. Regul.*, 430 F.3d 432, 437 (7th Cir. 2005). Under federal law a temporary restraining order should be restricted to preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer. *Granny Goose*

3

*Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974) (citations omitted).

### III.    Argument

This case sits at the intersection of two settled principles: while federal disability statutes apply to institutions of higher education, courts afford substantial deference to academic judgments, particularly where discipline is based on independent findings of misconduct rather than discrimination. Indeed, the Americans with Disabilities Act ("ADA") applies broadly to institutions of higher education, including private universities as places of public accommodation under Title III and public institutions under Title II, while Section 504 of the Rehabilitation Act independently applies to entities receiving federal financial assistance. 42 U.S.C. § 12181-12189; 29 U.S.C. § 794. Congress made that coverage explicit. The ADA defines a "public accommodation" to include "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education." 42 U.S.C. § 12181(7)(J). Courts within the Seventh Circuit treat this as settled law: private universities, including private law schools, fall squarely within Title III. *See Castelino v. Rose-Hulman Inst. of Tech.*, No. 2:17-cv-139-WTL-MJD, 2019 WL 367623, at *7 (S.D. Ind. Jan. 30, 2019); *Rothman v. Emory Univ.*, 828 F. Supp. 537, 541 (N.D. Ill. 1993).

But while the ADA ensures equal access, it does not displace academic standards. As the Seventh Circuit has repeatedly emphasized, the statute does not require institutions to lower or abandon legitimate academic requirements, nor does it immunize students from the consequences of academic misconduct. *See Royan v. Chicago State Univ.*, 145 F.4th 681, 684 (7th Cir. 2025); *Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018). Courts, therefore, afford substantial deference to academic decisions. *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). This is because academic judgments involve expert evaluation not suited to judicial second-guessing. *See Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 90, 96 n.6 (1978). That deference is not absolute; it requires

4

courts to apply a balanced approach between deferring to honest academic judgments and scrutinizing claims of pretext or discrimination. *Royan*, 145 F.4th at 684; *Khan*, 879 F.3d at 844.

Lastly, a temporary restraining order is governed by a four-factor equitable framework that applies in all preliminary injunction contexts, including some likelihood of success on the merits, no adequate remedy at law, and a showing of irreparable harm. *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992).

### A. Purdue Global's professional judgment in this academic decision is given substantial deference.

Courts may not override academic decisions, including dismissals, "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225. ("When judges are asked to review the substance of a genuinely academic decision…they should show great respect for the faculty's professional judgment.") Deference is afforded to the academic dismissal process to avoid the risk of "deterioration of many beneficial aspects of the faculty-student relationship." *Horowitz,*, 435 U.S. at 90.

The record reflects that Purdue Global recognized and permitted Plaintiff to use assistive technology throughout her enrollment. Dkt. 1 ¶ 6. She received formal approval to speech-to-text software due to her disability across all her courses. *Id.* Purdue Global never denied her access to assistance. *Id.* Beginning in May 2025, several of Plaintiff's instructors reported academic integrity concerns. Ex. A ¶¶ 8, 17, 28. After each report, Plaintiff was notified, and Purdue Global's Academic Appeals Committee reviewed and upheld the findings of academic misconduct. *Id.* ¶¶ 12, 13, 21-23, 31, 36, 40. Only after the third report of misconduct was Plaintiff dismissed from the program. *Id.* ¶¶ 36-40.

Plaintiff insists that the academic integrity findings were based on her use of assistive technology, but they were instead based on independent academic misconduct. Plaintiff was provided

5

multiple opportunities to respond to the allegations, including written responses and formal hearings. *Id.* ¶ 46 She was unable to adequately explain how she accomplished the volume, speed, and citation accuracy in her closed-book, closed-note exams or how she completed entire courses within only a few weeks. *Id.* ¶¶ 43-44. Purdue Global's final determination came after multiple reports of academic misconduct, multiple levels of review, hearings, and appeals. This level of review supports a finding of deference to Purdue Global's decision and exemplifies the level of professional judgment required by law.

### B. Plaintiff does not meet the requirements of an ADA claim.

The operative questions under Plaintiff's ADA claim are whether Plaintiff was otherwise qualified to meet academic standards and whether Purdue Global's misconduct determinations were honest academic judgments or a pretext for discrimination. See *Khan*, 879 F.3d at 843; *Novak v. Bd. of Trs. of S. Illinois Univ.*, 777 F.3d 966, 974 (7th Cir. 2015).

#### i. Plaintiff is not "otherwise qualified" because she failed to meet program requirements.

A student must meet program requirements with or without accommodation. *Khan*, 879 F.3d at 843. The ADA does not require institutions to lower their standards, and it does not excuse academic dishonesty. *Royan*, 145 F.4th at 684. Additionally, good performance in some courses does not mean a student was "otherwise qualified." *Id.* at 690.

Academic integrity, including independent authorship and accurate citation, is a core requirement of Purdue Global Law School's program. Ex. A ¶¶ 5-6. A student who does not meet these requirements cannot successfully complete the program, with or without accommodation. *Id.* Under Purdue Global's Academic Dishonesty Policy, a third academic integrity violation results in dismissal from the University. *Id.* ¶ 37. The findings of academic misconduct were made by different instructors across different courses. Each one was independently reviewed by the Academic Appeals Committee. Purdue Global followed its procedures as it would for any student and determined that

6

Plaintiff should be dismissed. Her failure to follow the university's academic dishonesty policy allowed Purdue Global to dismiss her from its program and establishes that she is not otherwise qualified under the University's standard. Attached to her complaint, Plaintiff submitted her academic records from the law school and other academic institutions, presumably to demonstrate her qualifications, but these do not show that she was "otherwise qualified" because she failed to follow the University's policies regarding academic dishonesty. *See* Dkt. 3-1. Past performance does not excuse current or future misconduct. *See Royan*, 145 F.4th at 690.

### ii. Purdue Global's dismissal of Plaintiff was the result of an honest academic decision, not a pretext for discrimination.

To establish pretext, Plaintiff must point to evidence that would let a reasonable jury find that the explanation for her dismissal was dishonest or the result of discriminatory animus. *Royan*, 145 F.4th at 691.

Plaintiff cannot show that Purdue Global's findings of academic misconduct, and its ultimate decision to dismiss her from the program, were anything other than honest academic judgments. *See Royan*, 145 F.4th at 692. Purdue Global's findings rested on implausible production speed, Plaintiff's inability to explain her work, fabricated or mismatched citations, and repeated violations across her courses. Misconduct is distinct from disability and universities are permitted to discipline students and impose sanctions for misconduct. *See Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013); *Tate v. Ancell*, 551 F. App'x 877, 885 (7th Cir. 2014). Plaintiff was given repeated opportunities to explain her submissions, including her reliance on speech-to-text technology and prior study. But the Academic Appeals Committee, the Provost, and her instructors found that these explanations failed to explain the issues in her work. The findings of misconduct were based on the characteristics of her submissions and the surrounding circumstances that could not be adequately explained by her use of assistive technology. Instead, her work was repeatedly found to be consistent with the use of unauthorized assistance or fabrication.

C.     **Plaintiff is not entitled to a temporary restraining order because her claim does not meet the equitable framework.**

A request for a temporary restraining order under the ADA is governed by the "traditional rule" that applies in all preliminary injunction cases. See *Starbucks Corp. v. McKinney*, 602 U.S. 339, 339-40 (2024) ("Absent a clear command from Congress, then, court must adhere to the traditional four-factor test articulated in *Winter*."); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The Seventh Circuit applies this test in two stages. At the threshold, the movant must establish some likelihood of success on the merits and that there is no adequate remedy at law and they will suffer irreparable harm. *Abbott Labs.*, 971 F.2d at 11. If the movant fails on either requirement, the "inquiry is over and the injunction must be denied." *Id.* Only if those threshold requirements are satisfied does the Court proceed to balance the equities and consider the public interest under a sliding scale approach. *Id.* at 12. Critically, the Seventh Circuit has made clear that no presumption of irreparable harm attaches to ADA claims. *Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 844 (7th Cir. 2005).

### i.  Plaintiff cannot show a likelihood of success.

The likelihood-of-success standard requires at least a "better than negligible" chance of prevailing. *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 846 (7th Cir. 1999). Plaintiff cannot meet even that modest threshold. As discussed above, Purdue Global permitted Plantiff to use assistive technology throughout Plaintiff's enrollment. Her dismissal rests on independent findings of academic misconduct, not her disability or use of assistive technology. There is no evidence of pretext, only consistent academic judgment. Under controlling Seventh Circuit precedent, that is precisely the circumstance in which courts defer to the institution's decision. Plaintiff therefore cannot demonstrate a likelihood of success on the merits. *See generally Novak*, 777 F.3d, *Khan*, 879 F.3d, and *Royan*, 145 F.4th. That failure alone is dispositive.

### ii.  Plaintiff cannot establish irreparable harm.

8

Even if Plaintiff could show some chance of success, she must independently establish irreparable harm—a harm that cannot be remedied by damages or later relief. *Abbott Labs.*, 971 F.2d at 16. Here, Plaintiff identifies the loss of continued enrollment and the inability to complete her degree. Dkt 1 at ¶¶ 26-28. But the Seventh Circuit has been clear that irreparable harm must be immediate and non-compensable, not speculative or retrospective; and the absence of such harm is fatal to injunctive relief. *Id.*

Unlike cases where courts have found irreparable harm—such as the loss of a discrete, time-sensitive opportunity or denial of essential services—Plaintiff's alleged injury is neither unique nor incapable of later redress. Compare *Washington*, 181 F.3d at 853; *Indiana Prot. & Advoc. Servs. Comm'n v. Indiana Fam. & Soc. Servs. Admin.*, 149 F.4th 917, 938 (7th Cir. 2025). More fundamentally, where the underlying claim fails on the merits, any asserted harm cannot justify extraordinary relief.

### iii.   The balance of harm and the public interest confirm denial.

Because Plaintiff cannot satisfy the threshold requirements, the Court need not reach the balancing stage. *Abbott Labs.,* 971 F.2d at 11-12. Even if it did, the balance weighs decisively against relief. An injunction would require the Court to override the University's academic judgment and effectively compel continued enrollment despite findings of academic misconduct. The Seventh Circuit has cautioned against precisely that intrusion, recognizing that academic institutions retain primary authority over questions of academic integrity and qualification. *See Ewing*, 474 U.S. at 225; *Royan*, 145 F.4th at 684.

The public interest likewise does not favor relief. While enforcement of federal disability law is important, so too is the integrity of academic programs and the consistent application of academic standards. Where, as here, the record reflects accommodations were permitted and the decision rests on independent misconduct findings, the public interest favors respecting, not displacing, institutional judgment.

## IV.    Conclusion

For these reasons, Purdue Global respectfully moves the Court to deny Plaintiff's request for a temporary restraining order and to afford Purdue Global all other just and proper relief.

Respectfully submitted,

*/s/ John R. Maley*

John R. Maley (#14300-89)
Amanda Jane Gallagher (#32662-79)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
jmaley@btlaw.com
agallagher@btlaw.com

*Attorneys for Purdue University Global*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on April 15, 2026, a true and correct copy of the foregoing was

served by United States mail on the following recipients at the addresses listed below:

Nicole Lawtone-Bowles
56 Center Street
Highland Falls, NY 10928-1800

/s/ *Amanda Jane Gallagher*
Amanda Jane Gallagher

11