The following record set is confidential.

Dissemination of these materials to any persons constitutes a violation of policy and will result in disciplinary action.

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 31-1 filed 05/20/26 page 2 of 118

- Close Window
- Print This Page
- Expand All | Collapse All

## Case: C-6040271

### Case Summary

| | | | |
|---|---|---|---|
| Case Record Type | Academic Engagement | Product Family of Case | |
| Case Type | Student Concern | Case Number | C-6040271 [View Hierarchy] |
| Case SubType | Plagiarism Charges | Case Owner | JoAnna Navarro |
| Formal Approval Process? | No | Status | Closed |
| Prefix for Course | | Campus | 848 Purdue Global Law School |
| Term | | Campus From Campus Lookup | 848 Purdue Global Law School |

### Case Information

Estimated Credits Remaining

### Case Account Information

| | | | |
|---|---|---|---|
| Account Name | Nicole Lawtone-Bowles | Opportunity | |
| Academic Engagement | | Contact Name | Nicole Lawtone-Bowles |
| Desired Program | Juris Doctor (Full Time) | CVUE Student Number | 40055989 |
| Desired Program of Interest | | Instructor Name | |
| Emphasis Area | | Course Code | |

### Description

Subject     Academic Dishonesty - 1st Breach

Description     Nicole Lawtone-Bowles
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

Reason:
Module 6: Student submitted essay consisting of approx. 5,300 words, including case citations, completed in 8 minutes in a closed book/close note essay. The student's explanations for how such a detailed essay could be completed in 8 minutes without outside assistance are not credible.

We emailed several times back and forth. I was first suspicious because of the citations to legal cases in a closed book environment. Then I realized that the entire essay was completed within 8 minutes. The only response I received was that the student has exceptional memory.

Module 10: The student submitted essay consisting of approx. 13,055 characters, including case citations in a closed book/close note essay. Student completed this essay and a prior one in module 6 within the first week of class. The mod 6 essay is also a subject of an academic integrity report. Student's explanations for how such a detailed essay could be completed without outside assistance are not credible. I did not address student a second time with this second essay. I am attaching the conversation about the prior essay here. As the issues were the same for both essays, I did not engage the student again. I am also attaching the attempt log, which shows the last typing of the essay occurred on 9:55 but the essay was not submitted until 11:22 - a similar situation to the prior essay. I have given a zero grade, but the student cannot redo the essay as she has had the model answer in her possession. This action is linked to the same problems with the mod 6 essay, which I discussed with the student at length (see emails).

| | |
|---|---|
| Close Case Reason | Completed |
| Case Closure Comments | Dear Nicole Lawtone-Bowles, |

This letter confirms your first Academic Dishonesty breach of the Student Code of Conduct. The consequence of this breach is failure of the Modules 6 and 10 Essay. The following information summarizes the breach:

First Breach
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

All reports of academic dishonesty are recorded in Purdue Global's database and remain there permanently. All breaches you accumulate while completing a program will be carried over to any subsequent program at Purdue Global.

If you disagree with these findings and wish to appeal this breach, you must complete the following steps: .
Discuss the breach with your instructor, providing a thorough explanation and evidence of why you believe the suspicion of academic dishonesty to be inaccurate.
If the dispute is still unresolved and you wish to pursue an appeal of the report of academic dishonesty, you must submit an Academic Appeal Form to the Office of the Provost. The appeal form can be found on your student portal under quicklinks.
The appeal form should include an explanation and evidence to support your position.
Please note all appeals must take place in writing within 10 days of receiving this letter. Submissions made more than 10 days after notification of the breach will not be accepted.

If you breach Purdue University Global's Academic Dishonesty Student Code of Conduct a second time, the consequence is failure of the course in which the breach occurs. For more information, please refer to the Student Code of Conduct Policy, which can be found in the Purdue University Global catalog.

We want you to be successful; therefore, encourage you to take advantage of the following resources:
Plagiarism Information Page
Writing Center located in the Academic Success Center section of Purdue Global Campus.
Thank you.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost

| | |
|---|---|
| Action Taken | Failed assignment |

Lawtone-Bowles 002

]

Quizzes › Module 6 Essay Quiz - Requires Respondus LockDown Browser + Webcam › Attempt Logs

## Attempt Logs

Overview                                                    Detailed

Export CSV

6 Items in the list.

| Attempt | Event | Modified by | Session ID | Date ▲ |
|---|---|---|---|---|
| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Entry | Nicole Lawtone-Bowles | | May 11, 2025 5:22 AM |
| Nicole Lawtone-Bowles (Attempt: 1) | Response to Question 1, Saved 5,298 Characters | Nicole Lawtone-Bowles | | May 11, 2025 5:30 AM |
| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Time Limit Expired | System | | May 11, 2025 7:22 AM |
| Nicole Lawtone-Bowles (Attempt: 1) | Page 1 Saved | Nicole Lawtone-Bowles | | May 11, 2025 7:22 AM |
| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Automatically Submitted | System | | May 11, 2025 7:22 AM |
| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Completion | Nicole Lawtone-Bowles | | May 11, 2025 7:22 AM |

Lawtone-Bowles 003



| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Entry | Nicole Lawtone-Bowles | May 11, 2025 9:22 PM |
| Nicole Lawtone-Bowles (Attempt: 1) | Response to Question 1, Saved 2,460 Characters | Nicole Lawtone-Bowles | May 11, 2025 9:39 PM |
| Nicole Lawtone-Bowles (Attempt: 1) | Response to Question 1, Saved 0 Characters | Nicole Lawtone-Bowles | May 11, 2025 9:40 PM |
| Nicole Lawtone-Bowles (Attempt: 1) | Response to Question 1, Saved 6,989 Characters | Nicole Lawtone-Bowles | May 11, 2025 9:50 PM |
| Nicole Lawtone-Bowles (Attempt: 1) | Response to Question 1, Saved 6,989 Characters | Nicole Lawtone-Bowles | May 11, 2025 9:52 PM |
| Nicole Lawtone-Bowles (Attempt: 1) | Response to Question 1, Saved 13,055 Characters | Nicole Lawtone-Bowles | May 11, 2025 9:55 PM |
| Nicole Lawtone-Bowles (Attempt: 1) | Response to Question 1, Saved 13,055 Characters | Nicole Lawtone-Bowles | May 11, 2025 11:20 PM |
| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Time Limit Expired | System | May 11, 2025 11:22 PM |
| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Automatically Submitted | System | May 11, 2025 11:22 PM |
| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Completion | Nicole Lawtone-Bowles | May 11, 2025 11:22 PM |

Lawtone-Bowles 004



**PG Plagiarism <plagiarism@purdueglobal.edu>**

## Re: Nicole Lawtone-Bowles: Academic Dishonesty Appeal Received
1 message

**Victoria Vidt** <victoria.vidt@purdueglobal.edu>                                    Wed, Jun 4, 2025 at 4:31 PM
To: PG Plagiarism <plagiarism@purdueglobal.edu>
Cc: Shaun Jamison <SJamison@purdueglobal.edu>, jfishman@purdueglobal.edu, Toni Pesce <tpesce@purdueglobal.edu>,
Melissa Eckenrod <MPrichard@purdueglobal.edu>, barbara.kent@purdueglobal.edu, jperryman@purdueglobal.edu

This is my response to the grade appeal.

Nicole Lawtone-Bowles is a student in my Criminal Procedure class, CL 685-01. The term began on May 7, I believe. Within the first week of the term's start, this student had submitted assignments up through and including at least module 10, or 2/3 of the coursework for the term. I initially asked the student if they were repeating the course, as it made no sense to me that all the material in the first 2/3 of the course could be learned in a week (without the benefit of seminars or professor feedback). When she explained that no, she hadn't taken the course before, I told her that I would begin grading her materials shortly.

Grading started, but I stopped when I reached the module 6 essay. All essay assignments are closed-book/closed-note. Thus, when the student's essay contained full case citations (i.e., Smith v. United States, 356 U.S. 2233 (1999) (not a real cite, but an example)), it appeared that the student either did not complete the assignment without accessing her notes or she had assistance in completing the assignment, for something like AI. I asked the student about the citations. I explained that in a closed-book situation, citations are not expected as lawyers don't tend to memorize them. The student then explained that she worked quickly because she used the Dragon voice-to-type system per her accommodations. Initially, she seemed to suggest that the Dragon program completed the citations for her, as "suggestions" that she just had to hit the Enter key to accept. So I asked if the Dragon software had access to citation services like Westlaw or Lexis, is that how it was able to "suggest" the citations? The student then said that Dragon does not input the citations for her.

The student then tried to tell me that tutors had explained to her that she had to include citations for good grades. I suspected that was untrue, but I did reach out to the two professors she mentioned, Quintin Huff and Dave Cook. While I did not hear back from Professor Cook, Professor Huff explained his interaction with the student and reaffirmed that students are not told that they have to put citations in their work.

As this went on, I looked at the attempt log for this essay and found interesting results. The log is attached herein. Basically, the student wrote an essay of almost 5,300 characters in 8 minutes. Then she left her page on the website open and did not submit the essay, letting it auto submit in 2 hours (the student has 2x the time period for assignments because of her disability). While not submitting the assignment herself and letting the essay auto-submit at the time limit is not wrong per se, it is unusual in my experience.

Lawtone-Bowles 005

I told the student that it was not credible that she read the question, composed an answer including detailed case citations, and uploaded it in 8 minutes.  I gave the essay a zero grade and submitted the academic integrity report.  Today, I submitted a second report for the mod 10 essay.

The student continues to deliberately misinterpret my comments to her, and now accuses me of being racist and discriminating against her because she uses disability accommodations.  This is wholly false.  I attempted to explain to the student that the Dragon software was not the issue – the issue was whether she had help in completing the essay.  The student continues to maintain, without credibility in my opinion, that she completed this essay on her own in 8 minutes, including case citations.

As for the second essay, as I stated earlier, she submitted this one soon after she submitted the module 6 essay, and she did not wait to get her first one graded by me, where she would have been put on notice that citations are an indicator of having assistance in the writing process.  The mod 10 assignment was also full of case citations, indicating to me that the student had help in some way.  The attempt log also shows irregularities.  The essay was started at 9:22 pm, and 2400 characters were saved 17 minutes later.  An additional 4600 characters were saved 11 minutes later.  And the final 6,055 characters were added to the essay 3 minutes after that.  The essay then sat open without additional amending until it was auto-submitted two hours after it was started.

None of my issues with the student's work involve the use of the Dragon software, now that the student assures me that it does not access the internet or help her to complete citations while she is composing an essay.  However, this student's actions in completing the assignments within a week of the class starting, the obfuscation about her use of citations in her essays, and the strange timing of her essay submissions indicated in the attempt logs have led me to the conclusion that this student did not complete the assignments without assistance that was outside of her accommodations.

Now the student is attacking me personally and has said she does not want to be in my class anymore.  I would be amenable to this result.  In her appeal of the grade situation, she is instigating personal attacks against me in my personal life and affairs.  Moreover, she clearly doesn't understand what she attached to her appeal, as she mischaracterizes it as my being charged with discrimination.  This was not the case, it was a case where I alleged that I was being discriminated against, just like Nicole.

I will attach the attempt logs for both essays here, as well as my correspondence with the student.

I will note that remediation is not an option.  The student has seen both model answers for the two essays, and there are no alternatives available.

Please let me know if you need additional information from me. Thank you.

On Wed, Jun 4, 2025 at 12:37 PM PG Plagiarism <plagiarism@purdueglobal.edu> wrote:
Dear Victoria Vidt,

Lawtone-Bowles 006

Nicole Lawtone-Bowles has filed an appeal for the Academic Dishonesty violation of the Code of Student Conduct (CL685-01: Criminal Procedure, Modules 6 and 10 Essay); attached.

To understand the situation better, thoroughly investigate the student's concern, and fully inform the Academic Appeals Committee, we would like additional documentation and background information from you.

You may submit a number of documents, which include, but not limited to, the following:

- A short narrative of the situation, including a timeline of events (required)
- The student's work as submitted
- TurnItIn report where applicable
- Term syllabus
- Assignment instructions
- Assignment Grading Rubric
- Gradebook comments (including both commentary and points awarded)
- Any remediation you offered
- All email communication with the student regarding this matter

Please submit the requested documentation within the next 5 business days. The Academic Appeals Committee will review the appeal and supporting documentation.

Please let me know if you have any questions.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu



*Purdue University Global holds itself accountable to foster a culture that promotes diversity and inclusion, offering an environment that is fair, equitable, and accessible for all.*

**attempt log, mod 10 essay NL-B.PNG**
153K

Lawtone-Bowles 007

From: "Victoria Vidt"
Subject: CL685 Criminal Procedure: Query
To: Nicole Lawtone-Bowles
Cc:
Bcc:

Nicole:

I see you've completed a bunch of assignments up through at least module 10. Did you take this course in the past?  This is highly unusual.

Professor Vidt

## Re: CL685 Criminal Procedure: Query

Inbox
Search for all messages with label Inbox
Remove label Inbox from this conversation



**Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>** Mon, May 12, 3:53 PM

to me

Dear Professor Vidt,

Thank you for your message and for taking the time to review my progress in the course. To clarify, I have not taken this course previously, nor have I ever had access to any prior course materials outside of those currently assigned. My early completion of assignments is the direct result of a disciplined academic strategy rooted in my legal training, time management, and unwavering commitment to staying ahead in my studies.

As someone living with a partial disability, I have the unique advantage of being able to dedicate substantial

Lawtone-Bowles 008

uninterrupted time to my legal education. I utilize assistive technologies, such as eBooks with read-aloud functions, which allow me to absorb materials efficiently and complete assignments with thorough attention to detail. I am simply following the longstanding guidance of my academic mentor: "Never fall behind." That principle, paired with my own sense of duty and preparedness, has driven my accelerated progress.

Please rest assured that all submitted work is my own and completed within the scope of academic integrity. I remain fully committed to honoring the rigor and expectations of this course and look forward to your continued guidance.

Respectfully,
**Nicole Lawtone-Bowles**



**Victoria Vidt <victoria.vidt@purdueglobal.edu>**                    Tue, May 13, 12:58 PM

to Nicole

I understand, and thank you for explaining. While I appreciate the need to not fall behind, and I think that it is extremely important to not do so, I just worry that this is not a great strategy. You have done this previously, so ignore my advice if it does not comport with your experience. But a couple of things to think about: first, if you complete assignments and move forward without feedback, you are shorting yourself of a learning opportunity. For example, there are several essays, in this course, I would think that you'd want to get my feedback on your submission before doing another so that formatting issues, etc, are not repeated over the modules. I also worry about finishing the term early in that you'll still be responsible for logging in to the site regularly for attendance purposes, even with no work to complete. Further, I would worry that having a long period of down time not working in the course would hurt retention for the final exam. Again, I could be way off base here. Just offering suggestions for what I've seen successful students do in the past.

Lawtone-Bowles 009

No worries, I will grade your submissions over the next few days.  Have a great term.

Professor Vidt



**Nicole Lawtone-Bowles**

Tue, May 13, 2:31 PM

to me

Dear Professor Vidt,

Thank you for your thoughtful response and for taking the time to share your perspective—I truly appreciate it.

I completely understand your concerns about moving ahead without feedback, and I agree that learning from each assignment is essential, especially when it comes to formatting and structure in legal writing. I want to assure you that I'm not trying to bypass the learning process. Rather, my approach is shaped by my unique circumstances and background.

As a full-time student at Purdue Global Law School, I'm currently enrolled in five courses this term. I also have OCD, which drives me to stay highly organized and proactive. I've been studying law independently for years, including through the Law Office Study Program, and I've already read many of the materials in our curriculum. This allows me to grasp concepts quickly and stay ahead without feeling overwhelmed.

Additionally, I'm in a time-sensitive situation. I lost my home due to assignment of mortgage fraud, and I'm working diligently to understand the law so I can advocate for myself and hopefully recover what was lost. This urgency motivates me to stay on top of my coursework and avoid falling behind, as delays could impact my ability to meet legal deadlines outside of school.

That said, I do take your advice seriously. I will be more mindful about pausing for feedback, especially on essays, to ensure I'm not missing valuable learning opportunities. I also appreciate the reminder about attendance and retention leading up to the final exam—I'll make sure to stay engaged throughout the term.

Thank you again for your support and for grading my submissions in the coming days. I'm looking forward to a productive and enriching term.

Warm regards,
**Nicole Lawtone-Bowles**

Lawtone-Bowles 010

**Victoria Vidt**

Wed, May 14, 10:33 AM (13 days ago)

to me

From: "Victoria Vidt"
Subject: CL685 Criminal Procedure: Essay mod 6
To: Nicole Lawtone-Bowles
Cc:
Bcc:

Hi Nicole:

I wanted to reach out and ask about your essay. As I called it up to grade, I noticed that you had cited cases during your analysis. If you were unaware, all essays are closed book/closed note. Thus there should be no citations to case law. You can see why I was concerned. I thought I would reach out to you to inquire about this issue. Also, in the interim, a zero grade has been put in place.

Can you please explain why there are case citations in your essay. Thank you!

Professor Vidt

## Re: CL685 Criminal Procedure: Essay mod 6
Inbox
Search for all messages with label Inbox
Remove label Inbox from this conversation



**Nicole Lawtone-Bowles**

Wed, May 14, 12:48 PM (13 days ago)

to me

Dear Professor Vidt,

I want to clarify that I previously worked with essay writing tutors David Cook and Quentin Huff, both of whom emphasized the importance of incorporating case law into legal writing. As I've mentioned before, I've been representing myself since 2011 and have been enrolled in a law study program since 2019.
If you would prefer that I revise my work to exclude specific case references, I'm more than willing to do so. However, I must express that I take great offense at any implication of academic dishonesty. I do not cheat, and I stand firmly by the integrity of my work.
It is deeply upsetting to feel singled out, especially during such a challenging time as I

Lawtone-Bowles 011

fight to save my home. I sincerely hope your concerns are not influenced by bias, as I have not experienced this kind of treatment in any other class. The stress this situation is causing is affecting my mental health, and I respectfully ask for fairness and understanding moving forward.

Thank you for your time and consideration.

https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=FRxxnzodtH9HwQ3BEl

KDxg==&display=all



**Nicole Lawtone-Bowles**

Wed, May 14, 4:38 PM (13 days ago)

to me

Professor,

I've rewritten the essay answer after reviewing the ARC on Criminal Procedure. I had thought we were expected to remember and reference cases for the bar or law exams, so I've been studying with that in mind.

Please let me know if I've misunderstood the expectations for legal writing in this context.

Fourth Amendment Analysis

Introduction

This essay analyzes the constitutionality of four distinct law enforcement actions under the Fourth Amendment, which protects individuals against unreasonable searches and seizures. The actions in question are: (a) the arrest of Chris Conner, (b) the arrest of Danny Martin, (c) the warrantless entry into Danny's bathroom, and (d) the seizure of the white powder packet. Each issue will be analyzed under established legal doctrines, with full attention to both factual detail and legal nuance.

(a) The Arrest of Chris
Issue:
Did Officer Fife have constitutional grounds to arrest Chris Conner based on what he observed?

Rule:
The Fourth Amendment permits a warrantless arrest in public if the officer has probable cause to believe the individual has committed, is committing, or is about to commit a crime. Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that a crime has occurred.

Application:
Officer Fife observed what reasonably appeared to be a hand-to-hand drug transaction between Danny and Chris. This observation was corroborated by an anonymous tip identifying Danny as a recent drug offender and suggesting he was again selling drugs. Although the baggie ultimately contained gummy worms, probable cause is evaluated based on what the officer knew at the time, not on later-discovered facts.

Conclusion:
Chris's arrest was lawful under the Fourth Amendment, as it was supported by objective probable cause based on the officers' observations and the tipster's information.

(b) The Arrest of Danny
Issue:

Was Officer Pearlman's warrantless entry into Danny's home and subsequent arrest lawful under the Fourth Amendment?

Rule:
Warrantless entry into a private home to effectuate an arrest is presumptively unreasonable unless justified by exigent circumstances. One recognized exigency is hot pursuit, which permits officers to enter a residence without a warrant if they are immediately pursuing a fleeing felon.

Application:
Upon seeing the officers, Danny fled into his home despite an order to stop. Officer Pearlman immediately pursued him without delay and observed behavior consistent with a felony drug transaction. Although the substance was later found to be non-criminal, probable cause existed at the moment of pursuit. The pursuit was continuous, and the suspected crime was a serious felony. Therefore, the hot pursuit doctrine applies.

Conclusion:
Officer Pearlman's entry into Danny's home and arrest was constitutionally justified under the hot pursuit exception to the warrant requirement.

(c) Entry into the Bathroom
Issue:
Was Officer Pearlman justified in entering the bathroom without a warrant after observing Violet on the couch?

Lawtone-Bowles 014

Rule:
The emergency aid exception to the Fourth Amendment allows officers to enter a dwelling without a warrant when they reasonably believe that someone inside is in need of immediate medical assistance.

Application:
Officer Pearlman found Violet unresponsive on the couch with foam at the mouth—signs potentially indicating overdose or medical distress. Upon questioning, Danny stated that Violet might have ingested pills. These facts gave Officer Pearlman an objectively reasonable basis to believe that immediate aid was needed and justified swift action.

Conclusion:
The warrantless entry into the bathroom was valid under the emergency aid exception, as Officer Pearlman reasonably believed Violet's life was in danger.

(d) Seizure of the White Powder Packet
Issue:
Was the seizure of the packet of white powder from the sink constitutionally valid?

Rule:
Under the plain view doctrine, officers may lawfully seize items without a warrant if (1) they are lawfully present in the location where the item is observed, (2) the item's incriminating character is immediately apparent, and (3) they have lawful access to the object.

Lawtone-Bowles 015

Application:
Officer Pearlman was lawfully present in the bathroom under the emergency aid exception. The small packet was clearly visible in the sink, and her training and experience allowed her to reasonably believe that the packet could contain narcotics. Because she had legal access and could identify its likely incriminating nature on sight, all conditions of the plain view doctrine were satisfied.

Conclusion:
The seizure of the white powder was constitutionally valid under the plain view doctrine.

Final Conclusion
Each action taken by Officer Pearlman and Officer Fife aligns with Fourth Amendment principles. Chris was arrested based on valid probable cause. Danny's arrest was justified under the hot pursuit doctrine. Entry into the bathroom was warranted by the emergency aid exception, and the seizure of the white powder was lawful under the plain view doctrine. Although the investigation did not lead to criminal charges, the officers' actions complied fully with constitutional standards at every stage.



**Nicole Lawtone-Bowles**

Wed, May 14, 11:07 PM (13 days ago)

to me

Subject: Clarification and Apology Regarding Seminar Submission and Essay 6

Lawtone-Bowles 016

Dear Professor Vidt,

I hope this message finds you well. I am writing to sincerely apologize for the confusion regarding our class schedule and my submission. I mistakenly believed we had class tonight and, as a result, labeled Seminar 1 as Seminar 2. I also want to express my regret for any misunderstanding caused by my comments in Essay 6.

Due to my disability, I rely on assistive technology—including Dragon Legal Individual v16 voice dictation software and predictive text features—to complete my assignments. My computer often suggests text based on previous inputs, and I typically use the tab key to accept these suggestions. This may explain why some of my citations appear unusually precise. I want to assure you that there was no intention to misrepresent my work in any way.

I have recently received approval from the California Bar to use this technology during the bar exam, and I am working diligently to succeed. This is my final opportunity to become a lawyer and advocate for others with similar challenges. Being accused of academic dishonesty is deeply distressing, especially as I am currently facing significant personal hardships, including fighting to save my home from foreclosure due to mortgage fraud. Despite these obstacles, I remain committed to completing my degree with integrity and perseverance.

Lawtone-Bowles 017

Purdue is fully aware of my disability, and I have always been transparent about my accommodations. I respectfully ask for your understanding and compassion as I continue my studies under these difficult circumstances. My goal is to uphold the highest standards of academic integrity and to become a legal professional who uplifts and defends those facing adversity.

Thank you for your time and consideration.

Sincerely,
Nicole Lawtone-Bowles

**One attachment** · Scanned by Gmail



**Victoria Vidt <victoria.vidt@purdueglobal.edu>**                Thu, May 15, 7:34 PM (12 days ago)

to Nicole

Nicole, I am sorry this has been so distressing for you.
First, let me tell you that I have reached out to Professor Cook and Professor Huff, I am waiting to hear back from them. I take you at your word regarding how this happened, but I am still uncomfortable with an essay that does not appear to have been written without help.

I cannot accept new copies of the essays as you have seen the model answer by this point. It would not be fair. Just as it is not fair to have assistance with an essay. I want to know what you know, not what Dragon knows or whatever. I am reaching out to the Dean of Faculty because this is a new thing for me, to see if PG has a policy that I am unaware of. He is (or was yesterday, and I think till the weekend) at a conference, so there may be a brief delay. I know this is important to you and will attempt to resolve it quickly. Look to hear from me at the beginning of the week.



**Nicole Lawtone-Bowles**                Thu, May 15, 7:54 PM (12 days ago)

Lawtone-Bowles 018

to me

Subject: Clarification Regarding My Use of Dragon Dictation

Professor,

I have been disabled since I was hit by a car on May 24, 2019. I have reasonable accommodations to use Dragon dictation because I can't type for long periods due to my disability. Dragon only inputs what I tell it to. It saves all my dictation and alerts me if I reuse something. It is a tool for me and the school. I have been using this program throughout my education since becoming disabled.

The school sent you an email about my disability—have you read it?

This situation is distressing because if I were not disabled, I would not need this tool. That is why it feels like I am being discriminated against. It feels like you are telling me I am not smart enough to write on my own. I have attached a link that explains what <u>Dragon</u> is.

This feels insulting and discriminatory. I had to talk to my therapist last night. You are playing with my life, and that deeply bothers me. This is affecting my moral character. I no longer want to be in your class. This is distressing and is negatively impacting my mental health.

Lawtone-Bowles 019

Sincerely,
Nicole



**Nicole Lawtone-Bowles**

Thu, May 15, 8:22 PM (12 days ago)

to Monica, jfishman@purdueglobal.edu, Student, me

Subject: Request for Immediate Review of Disability Accommodations and Classroom Conduct

Dear Jen,

I am writing to formally express concern regarding the treatment I have received in CL685-01: Criminal Procedure, taught by Professor Victoria Vidt. Since the beginning of my enrollment at Purdue Global Law School (formerly Concord Law School), the institution has been fully informed of my disability and the accommodations in place, including the use of Dragon dictation software.

Despite this, I have recently experienced what I believe to be discriminatory and harassing behavior in the form of repeated emails questioning both my accommodations and my academic integrity. This has caused significant emotional distress and has placed my moral character in jeopardy. Most notably, I received a zero on an essay due to the use of my dictation software, which retains and suggests frequently used phrases based on my own prior input. This is a core feature of the tool, not an indication of misconduct.

For reference, here is a link to the software I use:
<u>Dragon Dictation Software</u>

I respectfully request that you advise Professor Vidt of my approved accommodations and ensure that they are fully honored. I am currently managing significant anxiety, compounded by the fact that I am also representing myself in a mortgage fraud appeal. Law school is meant to be a supportive environment for learning—not a source of undue stress, especially for students with disabilities.

This experience has been deeply discouraging. I have worked extremely hard to reach this point in my legal education, and I am committed to overcoming the stigma often associated with disability. I ask for your immediate attention to this matter and for steps to be taken to ensure that I am treated equitably and with respect.

Sincerely,
Nicole Lawtone-Bowles
**One attachment** · Scanned by Gmail



**Victoria Vidt** <victoria.vidt@purdueglobal.edu>

Fri, May 16, 9:47 AM (11 days ago)

to Nicole

I appreciate your need to use the Dragon software. Are you saying that somehow your software is connected to legal citation sites like Westlaw or Lexis that fills in the citations for you?  I did not think it had that capability.
I'm not telling you that you're not smart enough on your own. I'm telling you that in my experience people don't know citations off the top of their head, they look them up.  I can't tell you a citation for any case off the top of my head, even cases where I was the

Lawtone-Bowles 021

attorney of record.  I'm just trying to find out how you were able to reproduce citations, that's my focus at this time.

I apologize if you are construing it as a personal attack. I would ask these same questions of any student who submitted an essay with citations.



**Nicole Lawtone-Bowles**

Fri, May 16, 1:09 PM (11 days ago)

to Monica, jfishman@purdueglobal.edu, Student, me

Subject: Clarification and Request for Respectful Engagement

Dear Professor Vidt,

I'd like to respectfully address the ongoing concerns regarding my academic work and the feedback I've received from you in class. I will also be CC'ing the appropriate PGLS team members I've been working with to support the completion of my education in future correspondence.

First and foremost, I want to acknowledge that you have your methods, and I have mine. But we are not the same. This is not just coursework for me—this is my life. I study every day, I read every day, and I complete class assignments daily. As a disabled student, education is my primary focus and outlet. I don't have distractions or other commitments pulling me away from learning, so I devote myself fully to my studies.

I also come into this with skills that may differ from yours. I can read and understand algorithms. I've built computer systems and developed programs. That doesn't make me better—it makes me different. Just because a method or approach is unfamiliar to you does not mean it's invalid or dishonest. How I process and retain information may not match your expectations, but that doesn't make it less legitimate.

Since the start of this course, I've felt consistently questioned in a way that feels personal. I submitted documentation of my disability and accommodations, yet I continue to feel scrutinized in ways that seem to disregard those accommodations. Receiving a zero on work I put significant time and effort into, especially under my current personal and financial challenges, has added unnecessary stress. I am currently fighting to keep my home while investing in my education, and I need my learning environment to be one of support—not hostility.

To clarify, I never claimed that the Dragon software I use generates citations or research material on its own. I've been using Dragon NaturallySpeaking since 2019. It's integrated into my 2017 Apple computer, and everything I dictate or type is saved locally. I research legal materials on my own—via Westlaw, Lexis, and other databases.

Lawtone-Bowles 022

Never on closed book assignments. I have a degrees in Criminal Justice with a concentration in Law and Legal Studies, and I've developed strong recall for the references I use often. Like most professionals, I still double-check sources when needed. Never on closed book assignments.

I respect your role as an educator, and I ask for the same respect in return as a student working hard under challenging circumstances. This is not about ego—it's about fairness and understanding. I do not regularly email professors because I usually don't have to. I study thoroughly, read critically, and complete my work with integrity.

I hope we can move forward with mutual respect and clarity. I am committed to doing my best in your course, and I would appreciate your support in that process.

Sincerely,

Nicole Lawtone-Bowles

**Victoria Vidt**

Wed, May 21, 9:50 AM (6 days ago)

to me

From: "Victoria Vidt"
Subject: CL685 Criminal Procedure:
To:
Cc:
Bcc: "Nicole Lawtone-Bowles"

Dear Nicole:

I had said in my last email that you would hear from me at the beginning of this week. In the interim, I have been speaking to colleagues at the University and educating myself about the uses and capabilities of the Dragon software that you use. Again let me emphasize that it was not wrong to use this software as per your accommodation. Further, as you may recall from me stating earlier, the zero score on the essay in mod 6 is essentially a placeholder used during this investigatory process, and not a final determination that anything had been improper during your essay exam.

In fact, it is because your submitted work was significantly more detailed from what I generally see from a student that I wanted to ensure the academic integrity of this course.  I was hoping that it would be possible for you to help me to understand how your software works?  Can you please verify how you use the software – maybe it's best to ask this way: during the composition of this essay, did you dictate for example, U.S. v. Watson, and then the software filled in the 423 U.S. 411 (1976)?  If so, you said that the Dragon software does not connect to anything like Westlaw, so can you please tell me how it would know what citation to use, as there must be hundreds of cases with the United States and Watson being parties?  Does it access your class outline, for example?  If that is not what your writing process was like for the essay, can you explain what you told Dragon to write?

Moreover, I also must now ask how long you took to complete the entire assignment.  You should be aware that once an investigation is begun, it is not limited to the essay you have submitted, the school also can access logs that tell us when a student accesses an assignment and for how long.  I have included a screenshot of the report for this essay so that you can see it as well.  But the log raised a second question for me.  It shows initial accessing of the quiz on May 11, at 5:22 am.  At 5:30 am, 8 minutes later, you had inputted 5,298 characters, and the log shows no entry of any further writing.  The next entry is the quiz time expiring two hours later and the quiz automatically being submitting for grading.  I should say that your submitted essay was 5,304 characters.

Quizzes Module 6 Essay Quiz - Requires Respondus LockDown Browser + Webcam Attempt Logs

# Attempt Logs

Lawtone-Bowles 024

- Overview
- Detailed

6 items in the list.

| Attempt | Event |
| --- | --- |
| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Entry |
| Nicole Lawtone-Bowles (Attempt: 1) | Response to Question 1, Saved 5,298 Characters |
| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Time Limit Expired |
| Nicole Lawtone-Bowles (Attempt: 1) | Page 1 Saved |
| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Automatically Submitted |
| Nicole Lawtone-Bowles (Attempt: 1) | Quiz Completion |

Thus, I must ask if you had completed the essay in this short time frame, as this information is also critical to the law school's academic integrity. Your response will be very important to the school's decision on how to proceed. Thank you for your prompt response.

Professor Vidt

 ReplyForward

Dear Vidt,

I need to be absolutely clear: you really need to read the accommodation letter that was submitted to you. It spells out exactly what I can use, what I cannot use, what I need, and what I don't need. It is not optional reading—it is essential to understanding how I work and what I am entitled to under University policy and disability law. The fact that I'm still being questioned about a process that complies fully with my documented accommodations is not only inappropriate, it's beginning to feel like harassment based on my disability. That is not acceptable.

To address your specific questions: Dragon NaturallySpeaking is a dictation tool. It does not connect to Westlaw, Lexis, or any legal database. It transcribes exactly what I say. When you see a citation like U.S. v. Watson, 423 U.S. 411 (1976), it's because I studied, prepared, and dictated it to Dragon before not because any software autofilled it. I use outlines, like many students do, and I do so in a way that's consistent with how I was trained and how I learn best—through speech, not typing.

As for the time log, yes—I accessed the assignment, dictated my response using Dragon, and completed the essay efficiently, as I often do when using tools that are

tailored to my learning needs. The fact that this is being scrutinized says more about assumptions being made than any actual issue with integrity. Please ensure going forward that any concerns raised are grounded in policy and evidence, not unfamiliarity with disability accommodations.

Nicole Lawtone-Bowles A.A.B., A.A., B.P.S., J.M., Ph.D. (ABD), DHA (ABD) 2L

# Module 6 essay



**Victoria Vidt <victoria.vidt@purdueglobal.edu>**
10:11 AM (21 minutes ago)

to Nicole

Nicole,

Thank you for your patience during this investigation and your willingness to answer questions. I have considered everything that you've told me and, unfortunately, it is not credible to say that a person can read, strategize, and compose a response to a law school essay of this length (5,298 characters) in eight minutes without assistance beyond the technology authorized in the accommodation. The zero grade will stand, and I will file a report with the university. Within a few days, you will receive a notice from them about how to appeal this decision if you wish. I know this is not the decision you were hoping for, but please know that I am committed to your success and happy to discuss strategies for moving forward with the rest of your course.

Professor Vidt

 ReplyForward

Lawtone-Bowles 026

 **PURDUE GLOBAL**

PG Plagiarism <plagiarism@purdueglobal.edu>

## Academic Dishonesty Appeal Outcome - 1st Breach

1 message

**PG Plagiarism** <plagiarism@purdueglobal.edu>
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, nicolelawtone@aol.com
Cc: Victoria Vidt <victoria.vidt@purdueglobal.edu>, Shaun Jamison <SJamison@purdueglobal.edu>
Bcc: Student Accessibility Services <sas@purdueglobal.edu>

Tue, Jun 17, 2025 at 10:17 AM

Dear Nicole Lawtone-Bowles,

Thank you for your patience while waiting for the outcome of your CL685-01: Criminal Procedure Academic Dishonesty appeal. Your supporting documentation, along with support from your instructor, has been thoroughly reviewed by the Academic Appeals Committee. Decisions are based on whether or not there was evidence of academic dishonesty.

In this case, the Committee found:

- The student's responses to the instructor's concerns regarding the student's ability to create 5,300-plus word documents (complete with case citations and without grammar errors or mispellings) in under 8 minutes without violating the closed book/closed note requirements of the assignments serve only to reinforce the instructor's determination that these answers are academic integrity violations.
- Having reviewed the student's answers, it is unlikely that a student could have written so much, so quickly, without spelling or grammar mistakes, without unauthorized tools or assistance. Even if we were to credit the student's explanation as to the writing speed, the chances that a student would know the relevant case numbers, much less the case reporter citations, independently strain credulity.

The Committee, therefore, determined that this is a violation of the Student Code of Conduct. With this said, the zero on the Modules 6 and 10 Essay will stand, and the 1st Academic Dishonesty breach will remain documented in the University's database.

We want you to be successful; therefore, encourage you to take advantage of the following resource:

1. Academic Integrity Course

If you disagree with the Academic Appeals Committee's decision, you may send a written letter of appeal to the Office of the Provost within 10 days of receiving the Committee's decision. The Office of the Provost will review the material presented and make a final ruling.

If you have any questions, you may email plagiarism@purdueglobal.edu.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu

Lawtone-Bowles 027

**PURDUE GLOBAL**

*Purdue University Global holds itself accountable to foster a culture that promotes diversity and inclusion, offering an environment that is fair, equitable, and accessible for all.*

Lawtone-Bowles 028

**PURDUE GLOBAL.**

PG Provost <provost@purdueglobal.edu>

## Provost Level Appeal Response - Nicole Lawtone-Bowles

1 message

**PG Provost** <provost@purdueglobal.edu>                                        Mon, Jun 23, 2025 at 3:59 PM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, nicolelawtone@aol.com
Cc: Victoria Vidt <victoria.vidt@purdueglobal.edu>, Shaun Jamison <SJamison@purdueglobal.edu>

Dear Nicole Lawtone-Bowles,

I appreciate your patience during this review period.

Our Provost, Carolyn Nordstrom, has conducted a thorough review of your appeal; please find attached a letter with the decision. Please be advised that this is the final stage in the review process.

All the best as you move forward.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu

**PURDUE GLOBAL.**

*Purdue University Global holds itself
accountable to foster a culture that
promotes diversity and inclusion,
offering an environment that is fair,
equitable, and accessible for all.*

📄 **Provost Appeal Response_Nicole Lawtone-Bowles_6.23.25.docx**
33K

Lawtone-Bowles 029



June 23rd, 2025

Dear Nicole Lawtone-Bowles,

I received your appeal of the decision by the Academic Appeals Committee about a grade received in CL685-01: Criminal Procedure.

In my review of your appeal, I examined the assignment requirements, syllabus, and all other associated documents, as well as any additional materials submitted to the Appeals Committee.

After careful consideration of all the information provided, I am upholding the decision to deny your appeal. While I understand this was not the outcome you sought, I found no compelling evidence to contradict the Appeals Committee.

Sincerely,

**Carolyn Nordstrom, Ph.D.**
Pronouns: she, her, hers
Provost

Lawtone-Bowles 030

- Close Window
- Print This Page
- Expand All | Collapse All

# Case: C-6449123

## Case Summary

| | | | |
|---|---|---|---|
| Case Record Type | Academic Engagement | Product Family of Case | |
| Case Type | Student Concern | Case Number | C-6449123 [View Hierarchy] |
| Case SubType | Plagiarism Charges | Case Owner | JoAnna Navarro |
| Formal Approval Process? | No | Status | Closed |
| Prefix for Course | | Campus | 848 Purdue Global Law School |
| Term | | Campus From Campus Lookup | 848 Purdue Global Law School |

## Case Information

Estimated Credits Remaining

## Case Account Information

| | | | |
|---|---|---|---|
| Account Name | Nicole Lawtone-Bowles | Opportunity | |
| Academic Engagement | | Contact Name | Nicole Lawtone-Bowles |
| Desired Program | Juris Doctor (Full Time) | CVUE Student Number | 40055989 |
| Desired Program of Interest | | Instructor Name | |
| Emphasis Area | | Course Code | |

## Description

Subject     Academic Dishonesty - 2nd Breach - Nicole Lawtone-Bowles

Description     Nicole Lawtone-Bowles
Term: 2601L
Class: CL760-01 Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion
Instructor Name: Brian Victor

Reason: Falsification of Authorship.

Student has completed all of the essay quizzes for the entire course and the module 11 discussion within less than two weeks of starting class.

Lawtone-Bowles 031

Her answers to the essay quizzes showed a high level of answering without any mistakes. Additionally, it only took her 28 minutes to complete the module four essay quiz, 22 minutes to complete the module 10 essay quiz, and 38 minutes to complete the module 11 essay quiz. Student was allowed two hours to complete these quizzes. I am extremely concerned that she was able to complete all of this material with such completeness of answers in such a short amount of time.

During my phone call with the student, I questioned how she was able to complete all of the material in this class in less than two weeks. She said she has been studying law school since 2019 and uses the Bar Max program. She said she starts looking at class material during preview week.

I asked if she had a word document of the worksheet she was using to complete the quizzes, so I could see it, but Student mentioned she studied this topic before so she did not have a word document. She stated that she took the fact pattern and pasted into the Dragon Voice to Text software and read it so this is why she was able to complete the quizzes in such a short time. According to the student, she has to complete an essay in 30 mins for the NY bar so she has practiced completing essays quickly. She stated that she outlines the question first then picks out parts of the rules to use. The student stated that she has 7 classes now and has finished the material in all of her classes already. She also stated that she has listened to all my recorded lectures.

I asked the student if she could answer a question regarding how pensions are divided in California at time of divorce, and after providing a brief answer of how it works in New York, and repeating tangents, she was unable to provide the answer or even any theory as to how to obtain the answer. This would have been material she should have studied in advance of completing these quizzes.

She then later sent me an email with the link to Audible and Bar Exam Essay Rules by Ed Aruffo and stated that is where she learned the rules.

**Close Case Reason** Completed

**Case Closure Comments** Dear Nicole Lawtone-Bowles,

This letter confirms your second Academic Dishonesty breach of the Student Code of Conduct. The consequence of this second breach is failure of the course in which the action occurred. The following information summarizes your breaches:

First Breach
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

Second Breach
Term: 2601L
Class: CL760-01 Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion
Instructor Name: Brian Victor

All reports of academic dishonesty are recorded in Purdue Global's database and remain there permanently. All breaches you accumulate while completing a program will be carried over to any subsequent program at Purdue Global.

If you disagree with these findings and wish to appeal this breach, you must complete the following steps:
Discuss the breach with your instructor, providing a thorough explanation and evidence of why you believe the suspicion of academic dishonesty to be inaccurate.
If the dispute is still unresolved and you wish to pursue an appeal of the report of academic dishonesty, you must submit an Academic Appeal Form to the Office of the Provost. The appeal form can be found on your student portal under quicklinks.
The appeal form should include an explanation and evidence to support your position.
Please note all appeals must take place in writing within 10 days of receiving this letter. Submissions made more than 10 days after notification of the breach will not be accepted.

Lawtone-Bowles 032

If you breach Purdue University Global's Academic Dishonesty Code of Student Conduct a third time, the consequence will be expulsion from the University. For more information, please refer to the Code of Student Conduct Policy, which can be found in the Purdue University Global catalog.

We want you to be successful; therefore, encourage you to take advantage of the following resources:
Plagiarism Information Page
Writing Center located in the Academic Success Center section of Purdue Global Campus.
Thank you.

JoAnna Navarro
Pronouns: she, her, hers
On behalf of the Office of the Provost

| | |
|---|---|
| **Action Taken** | Failed course |
| **Case Evaluation Result** | |

## International Background Check

| | | | |
|---|---|---|---|
| **Programs** | | **BG Cost** | |
| **Permanent State and Country** | New York<br>United States of America | **BG Code** | |
| **BG Notes** | | | |

## System Information

| | | | |
|---|---|---|---|
| **Created By** | JoAnna Navarro, 1/26/2026 1:03 PM | **Last Modified By** | JoAnna Navarro, 1/26/2026 1:08 PM |
| **Portal Submitted By** | | **Date/Time Opened** | 1/26/2026 1:03 PM |
| **Parent Case** | | **ODI Link** | |
| **Parent Case Date Opened** | | | |

## Contact Information

**Open Case and Task**

# # OF OPEN CASES: 3
# # OF OPEN TASKS: 0

**Account Information**

Lawtone-Bowles 033

**Narrative of the Situation**

On January 14, 2026, I was reviewing the grades of all of my students in the CL-760 Community Property class and I noticed that Nicole Lawtone-Bowles had completed all of the course curriculum in only six days. Most notably, all required essays, which require significant research and reflection were submitted on the same day. Producing this volume of detailed work in such a short window is highly unusual.

I emailed Shaun Jamison and informed him of my concerns. He instructed me to have a conversation with the student.

I then emailed the student asking for a phone call with her and she wrote me back quickly saying I could call her now. I had a telephone conversation with the student on January 14 and informed her of my concerns. I asked if she had a Word document of the worksheet she was using to complete the quizzes, but she mentioned she studied this topic before, so she did not have a word document. I also asked her a question about how pensions get divided in California at time of divorce, which is something she would have studied to prepare to take the essay quizzes. She provided a brief answer of how it works in New York, and after repeating tangents, she was unable to provide the answer or even any theory as to how to obtain the answer. She was unable to demonstrate even a basic understanding of the content.

I discussed this phone call and my concerns with Shuan Jamison and he informed me I should make a report.

On January 15, 2026, I made a report of Academic Dishonesty. Later that day, I informed the student via email that I made the report. I sent her another email clarifying the issues I was concerned about. She has sent me 4 emails about this situation, which I have included in this documentation. She also sent me subsequent emails, asking me to explain the subject matter she supposedly studied and wrote about. For example, she has asked me about how equitable distribution differs from community property, which was the subject matter of the first essay she wrote. I have included these emails herein.

Lawtone-Bowles 034


**PURDUE**
GLOBAL

PG Provost <provost@purdueglobal.edu>

---

## Academic Dishonesty - 2nd Breach - Nicole Lawtone-Bowles
1 message

---

**PG Provost** <provost@purdueglobal.edu>
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: Brian Victor <brian.victor@purdueglobal.edu>, Shaun Jamison <SJamison@purdueglobal.edu>
Bcc: PG Registrar <registrar@purdueglobal.edu>

Mon, Jan 26, 2026 at 1:09 PM

Dear Nicole Lawtone-Bowles,

This letter confirms your second Academic Dishonesty breach of the Student Code of Conduct. The consequence of this second breach is failure of the course in which the action occurred. The following information summarizes your breaches:

**First Breach**
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

**Second Breach**
Term: 2601L
Class: CL760-01 Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion
Instructor Name: Brian Victor

All reports of academic dishonesty are recorded in Purdue Global's database and remain there permanently. All breaches you accumulate while completing a program will be carried over to any subsequent program at Purdue Global.

If you disagree with these findings and wish to appeal this breach, you must complete the following steps:

1. Discuss the breach with your instructor, providing a thorough explanation and evidence of why you believe the suspicion of academic dishonesty to be inaccurate.
2. If the dispute is still unresolved and you wish to pursue an appeal of the report of academic dishonesty, you must submit an Academic Appeal Form to the Office of the Provost. The appeal form can be found on your student portal under quicklinks.
3. The appeal form should include an explanation and evidence to support your position.

Please note all appeals must take place in writing within 10 days of receiving this letter. Submissions made more than 10 days after notification of the breach will not be accepted.

If you breach Purdue University Global's Academic Dishonesty Code of Student Conduct a third time, the consequence will be expulsion from the University. For more information, please refer to the Code of Student Conduct Policy, which can be found in the Purdue University Global catalog.

We want you to be successful; therefore, encourage you to take advantage of the following resources:

Lawtone-Bowles 035

1. Plagiarism Information Page
2. Writing Center located in the Academic Success Center section of Purdue Global Campus.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu

**PURDUE GLOBAL**

Lawtone-Bowles 036

**Appeal Request**

**Nicole Lawtone-Bowles**
Term: 2601L
Class: CL760-01 Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion
Instructor Name: Brian Victor
Academic Dishonesty – 2nd Breach


Reason: "Subject: Formal ADA and Section 504 Civil Rights Grievance Appeal
First Breach
Term: 2505L
Class: CL685-01 Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor: Victoria Vidt

Second Breach
Term: 2601L
Class: CL760-01 Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz and Module 11 Discussion
Instructor: Brian Victor

Good Afternoon,

This letter serves as a formal civil rights grievance and appeal under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. I am filing this grievance based on disability discrimination, racial discrimination, and denial of equal access to education arising from academic misconduct allegations levied against me without appropriate consideration of my documented disability or approved accommodations.

I am a Distinguished Scholar and Dean's List student with a Paralegal Degree from Eastern Gateway Community College and a Master of Jurisprudence from Liberty University School of Law. I am also a law office study student in New York and California, a pro se litigant since 2011, and scheduled to graduate on August 25, 2026. I passed the New York State Law Exam in September 2025 and am preparing to sit for the New York Bar Examination in February 2026, pending receipt of a seat ticket. I categorically deny the academic misconduct allegations and do not require or engage in cheating in any academic or professional context.

The allegations were initiated by two white instructors, Brian Victor and Victoria Vidt, based on conduct they failed to understand—specifically, my practice of working ahead and completing assignments early. This conduct is directly related to my documented disability, Obsessive-Compulsive Disorder (OCD), and is expressly covered by my approved Section 504/IEP accommodations. Rather than engaging in an individualized assessment or accommodation analysis, my disability-related conduct was mischaracterized as suspicious and dishonest, constituting discrimination based on disability and a failure to provide reasonable accommodation as required by federal law.

I am a Black disabled woman, and the pattern of treatment reflects racialized and ableist bias. Based on my lived experience and the disparate scrutiny applied to my conduct, it is my firm belief that had I been a white male, I would not be facing academic misconduct allegations for the same behavior. No administrator or instructor made any good-faith effort to speak with me, review my background, or engage in an interactive process before escalating this matter, in violation of ADA and Section 504 procedural protections.

I am 54 years old, a mother, and a grandmother, and this is not my first experience encountering racism in higher education. Despite repeated requests, I have been denied an accessible forum, including a virtual meeting, to explain my disability-related conduct before being subjected to punitive academic processes. This denial has caused significant distress and has interfered with my ability to access my education on equal terms.

The failure to recognize my approved accommodations, the refusal to engage in an interactive process, and the escalation to misconduct proceedings constitute discrimination under the ADA and Section 504. I am therefore formally appealing and grieving this matter and requesting immediate remedial action, including cessation of discriminatory scrutiny, withdrawal or suspension of misconduct allegations pending proper review, and provision of an immediate virtual hearing or meeting.

Please confirm receipt of this grievance and advise me of the formal investigative and appeal procedures, including applicable timelines.

Sincerely,
Nicole Lawtone-Bowles"

Lawtone-Bowles 038

1/26/26, 3:59 PM                                    Purdue University Global Mail - CL760 Community Property:

 **PURDUE GLOBAL**          **Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>**

## CL760 Community Property:
5 messages

**Brian Victor** <Brian.Victor@purdueglobal.edu>                     Wed, Jan 14, 2026 at 5:31 PM
Reply-To: Brian Victor <Brian.Victor@purdueglobal.edu>
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Hi Nicole,

I see that you have gone ahead all the way through the entire course in the span of a week. I would like to have a phone call with you to discuss that and see if you have any questions in any other aspects of the class material. Let me know some days and times at work so we can have a brief call.

Professor Victor

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>              Wed, Jan 14, 2026 at 5:32 PM
To: Brian Victor <Brian.Victor@purdueglobal.edu>

Professor,
You can call me now 347 538 5386

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>              Wed, Jan 14, 2026 at 6:54 PM
To: Brian Victor <Brian.Victor@purdueglobal.edu>

Professor,
See my case here. I am fighting for my life right now.

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

[Quoted text hidden]

📄 **ViewDocument.pdf**
   410K

Lawtone-Bowles 039

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>          Wed, Jan 14, 2026 at 7:20 PM
To: Brian Victor <Brian.Victor@purdueglobal.edu>

Professor

Here is where I learned the rules

https://www.audible.com/pd/B0B14493F2?source_code=ASSORAP0511160006&share_location=player_overflow

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>          Thu, Jan 15, 2026 at 5:51 AM
To: Brian Victor <Brian.Victor@purdueglobal.edu>

Professor,
This is New York Bar Exam dates I am trying to sit for.

Lawtone-Bowles 040

## 05:49    ●    ..ıl 5G 99

### ‹ IMMEDIATE ACTION REQUIRED - Sel... AA

EXAM TIMES (General Population):

TUESDAY, February 24, 2026: 9:30AM - 12:30PM (MPT section); 2:00PM - 5:00PM (MEE section).
WEDNESDAY, February 25, 2026: 9:30AM - 12:30PM (MBE AM); 2:00PM - 5:00PM (MBE PM).

Please note that, when making your travel plans at the conclusion of the exam, it is recommended that you allow for extra time (30 to 45 minutes) for the collection process on BOTH days. Please also be reminded that, should the need arise for you to travel home immediately following the conclusion of the exam, your travel arrangements MUST include an arrangement for the storage of your luggage as the Board will NOT permit any luggage of any size at any site.

Current Test Centers (General Population)

ALBANY: Albany Capital Center

BUFFALO: Buffalo-Niagara Convention Center

LONG ISLAND: Mack Sports Arena at Hofstra University in Hempstead, Nassau County

MANHATTAN (NEW YORK CITY): Armory Track and Field Center in Upper Manhattan

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

Lawtone-Bowles 041

 Gmail

Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

---

## CL760 Community Property:

13 messages

---

**Brian Victor** <Brian.Victor@purdueglobal.edu>                                     Thu, Jan 15 at 12:11
Reply-To: Brian Victor <Brian.Victor@purdueglobal.edu>
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Nicole,

I am writing to inform you that I have submitted a formal report to the Office of the Provost regarding your performance in Community Property. This is a standard procedural requirement when certain patterns are identified.

The report was initiated following a review of your course progress, specifically noting that all coursework including timed essay exams was completed in less than two weeks.

After consulting with the Associate Dean of Academics, I was advised that the speed and nature of this completion requires a formal review to ensure compliance with our institutional academic integrity standards.

The Provost's Office will contact you to discuss the next steps and any potential findings. Once you receive the official communication from their office, you will have the opportunity to appeal the decision.

Please understand that this is a standard procedural requirement when such patterns are identified. I encourage you to wait for the official notification from the Provost's Office for further guidance on the review process.

Professor Victor

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                  Thu, Jan 15 at 12:28
To: Brian Victor <Brian.Victor@purdueglobal.edu>

Professor,

Unfortunately, this has been a recurring challenge for me as a student managing a documented disability, including obsessive-compulsive disorder. I am seeking clarification because I am struggling to understand how the course pacing policy is being applied in practice. When I fall behind, I understand and accept that there may be penalties, but I am confused as to why working ahead also appears to result in negative consequences when the course materials state that students may work at their own pace.

I want to be clear that my intention is not to circumvent course requirements, but to manage my workload responsibly in light of my disability-related limitations. The ambiguity surrounding pacing expectations has made it difficult for me to determine how best to stay compliant while also maintaining my health and academic performance. I would appreciate any guidance you can provide regarding how pacing flexibility is meant to function and whether accommodations apply in this context.

Thank you for your time and consideration.

Respectfully,

Nicole Lawtone-Bowles

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc

Lawtone-Bowles 042

Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]
2601L- Accommodation Notification from Student Accessibility Services (SAS).pdf

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>          Thu, Jan 15 at 12:33
To: Student Accessibility Services <sas@purdueglobal.edu>, Toni Pesce <tpesce@purdueglobal.edu>

Good morning Toni,

I am writing to request clarification regarding the course pacing policy and how penalties are applied. I am confused about why falling behind results in a penalty, yet working ahead also appears to be penalized, particularly when the course indicates that students may work at their own pace. I am trying to understand how to remain compliant with expectations while managing my workload responsibly.

Because I manage obsessive-compulsive disorder, clear and consistent guidelines are especially important for me to function effectively and avoid unnecessary stress. At this point, I am feeling uncertain about what is expected of me and understand whether my actions are being interpreted incorrectly. My goal is simply to complete the course successfully and in accordance with stated policies.

I would appreciate any guidance you can provide to help clarify this issue.

Thank you for your time and assistance.

Respectfully,

Nicole Lawtone-Bowles


[Quoted text hidden]
2601L- Accommodation Notification from Student Accessibility Services (SAS).pdf

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>          Thu, Jan 15 at 12:37
To: Monica Johnson-Nino <monino@support.purdueglobal.edu>, jfishman@purdueglobal.edu <jfishman@purdueglobal.edu>

Good morning Jen & Monica

[Quoted text hidden]
2601L- Accommodation Notification from Student Accessibility Services (SAS).pdf

---

**Student Accessibility Services** <sas@purdueglobal.edu>          Thu, Jan 15 at 12:58
To: <nicolelawtone@aol.com>, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Hi, Nicole. Happy New Year!

For policies regarding the law school courses and pacing of coursework, you'll want to reach out to the law school dean's office. Here is their email address: pglawassociatedean@purdueglobal.edu.

Have a great day!
Toni

**Toni Pesce, MBA**
**Manager, Student Accessibility Services (SAS)**
**Student Accessibility Services (SAS)**

T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
https://www.purdueglobal.edu/academic-support/student-accessibility-services/

Lawtone-Bowles 043



The information in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.
[Quoted text hidden]

2601L- Accommodation Notification from Student Accessibility Services (SAS).pdf

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>    Thu, Jan 15 at 13:05
To: Student Accessibility Services <sas@purdueglobal.edu>
Cc: <nicolelawtone@aol.com>

Good morning Toni,

Every semester I encounter the same issue, and it has become both frustrating and detrimental to my mental health. I have consistently provided documented medical and physician's notes supporting my disability accommodations, yet despite this, I continue to experience repeated harassment each term. Although accommodation reminder emails are sent out every semester, the conduct persists without meaningful resolution. I am currently in my next-to-last semester and on track to graduate on August 25, 2026, and the continued failure to enforce my approved accommodations places an unnecessary and inequitable burden on me. Because of my disability, I already have to work significantly harder to meet academic requirements, and this ongoing situation exacerbates that challenge rather than alleviating it. If I fall behind I am penalized if I work ahead I am penalized. When does it stop.

I am requesting that this matter be addressed promptly and effectively to ensure that my approved accommodations are respected and that I can complete my final semesters without continued distress or interference.

Thank you for your attention to this matter.

Sincerely,

Nicole Lawtone-Bowles

[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>    Thu, Jan 15 at 13:52
To: Student Accessibility Services <sas@purdueglobal.edu>
Cc: <nicolelawtone@aol.com>

Toni,

I am writing to address ongoing concerns related to repeated accusations of academic misconduct that arise despite my compliance with approved accommodations. Students are penalized for being late, yet I am now facing scrutiny for working ahead, which places me in an untenable position and creates unnecessary stress. This pattern has occurred multiple times and has become both disruptive and discouraging, particularly given that my actions are directly tied to how I must manage coursework due to my disability. I am requesting that these concerns be reviewed in light of my documented accommodations to prevent continued misunderstandings.

To avoid recurring issues each semester, I believe it would be appropriate to formally add specific exam functionality requirements to my approved reasonable accommodations. To successfully complete my courses, right-click functionality must be enabled, as access to context menus is necessary for copying, pasting, and performing other essential exam-related tasks. Additionally, the ability to use "select all" and standard copy-and-paste features is critical for efficiently reviewing, organizing, and editing substantial amounts of text during exams. Continued restrictions on these basic functions create unnecessary barriers and require repeated intervention each term.

I also rely on assistive technology as part of my documented accommodations, specifically Dragon speech-to-text software and Read&Write. When speech-to-text functionality is disabled, I am unable to use Dragon for dictation, which is essential for accuracy and productivity, and restrictions within the testing environment interfere with my use of Read&Write. Adding these functionality requirements directly to my reasonable accommodations would promote consistency, reduce repeated

Lawtone-Bowles 044

disruptions, and allow me to focus on completing my coursework rather than repeatedly addressing the same issues each semester. I am requesting confirmation that these items can be formally incorporated into my accommodations moving forward.

Thank you for your time and attention to this matter.

Sincerely,

Nicole Lawtone-Bowles


[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                     Thu, Jan 15 at 13:56
To: Brian Victor <Brian.Victor@purdueglobal.edu>


Professor,

I am writing to inform you that I have forwarded your email to the Dean and Student Accessible Services for review. Given my documented disability and approved accommodations, I should not be required to repeatedly address the same issues each term. For that reason, I have filed a formal complaint so the matter can be reviewed and resolved at the administrative level. This step was taken to ensure clarity, consistency, and compliance with my accommodations moving forward.

Thank you for your understanding.

Sincerely,

Nicole Lawtone-Bowles

[Quoted text hidden]

---

**Jennifer Fishman** <jfishman@purdueglobal.edu>                                          Thu, Jan 15 at 13:57
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: Monica Johnson-Nino <monino@support.purdueglobal.edu>, Student Accessibility Services <sas@purdueglobal.edu>,
PGLawAssociateDean PGLawAssociateDean <pglawassociatedean@purdueglobal.edu>

Hi Nicole-

As I have explained in prior emails and conversations since the start of your studies at Purdue Global Law School, students are discouraged from working too far ahead in their classes. I believe that this issue first arose when you submitted assignments during the preview period. Remaining on schedule with the module completion table is essential.

We are currently in Module 2, and while this is not a formal rule, students are expected to remain at roughly this pace. We understand that students sometimes need to adjust their schedules to balance school with other responsibilities. However, moving too far ahead without the support of seminars and ongoing instruction can take away from the learning experience. From an academic standpoint, this approach is not effective for learning the law.

Thank you-
Jen Fishman


**Jennifer Fishman**
Senior Student Operations Manager
Purdue Global Law School
2029 Century Park East, Suite 400
Los Angeles, CA 90067
www.PurdueGlobalLawSchool.edu
    Office Hours: CLICK HERE to schedule an appointment.

Lawtone-Bowles 045



**Law School**

Purdue University Global holds itself
accountable to foster a culture that
promotes inclusion and belonging,
offering an environment that is fair,
accessible, and engaging for all.

Logo, title, text. Purdue Global. ©2025 TCM Education. All rights reserved. Used under license.

[Quoted text hidden]
2601L Spring Term. Specific Dates and Module Progress Completion Chart.pdf

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>    Thu, Jan 15 at 14:01
To: Jennifer Fishman <jfishman@purdueglobal.edu>
Cc: Monica Johnson-Nino <monino@support.purdueglobal.edu>, Student Accessibility Services <sas@purdueglobal.edu>,
PGLawAssociateDean PGLawAssociateDean <pglawassociatedean@purdueglobal.edu>

Jen,

I would like to clarify the record regarding my assignment submissions. I did not submit assignments during the preview week; I waited until the official start of the term and began working from that point forward. I worked ahead because I have significant obligations outside of school, including fighting for my home, istarting a new job, and I am making a concerted effort to stay current and avoid late submissions. Given that this is my next-to-last semester, maintaining timely progress is especially important to me.

Additionally, how and when I complete coursework is directly affected by my documented disability and approved accommodations. Working ahead, when possible, is one of the ways I manage my workload and ensure consistent academic performance. I understand the importance of seminars and instruction, and I remain fully engaged with course materials and required activities. My intent is not to bypass the learning process, but to comply with expectations while balancing competing responsibilities in a manner consistent with my accommodations.

[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>    Thu, Jan 15 at 14:22
To: Jennifer Fishman <jfishman@purdueglobal.edu>
Cc: Monica Johnson-Nino <monino@support.purdueglobal.edu>, Student Accessibility Services <sas@purdueglobal.edu>,
PGLawAssociateDean PGLawAssociateDean <pglawassociatedean@purdueglobal.edu>

Jennifer, you know me. I do not like people telling me what I cannot do. It is already hard for me being a Black disabled woman.On top of my schoolwork, I am in a battle with the New York Board of Law Examiners to allow me to sit for the February 2026 Bar, so I am studying for the Uniform Bar Exam if the New York Court of Appeals allows me to sit. If I am granted the opportunity to sit, I will be the first student from Purdue Global Law School to sit for the New York Bar, so I honestly do not have the time for being written up for going ahead and getting my work done. See attached
[Quoted text hidden]
--
[Quoted text hidden]
R - LAWTONE-BOWLES_NICOLE_FEB2026_UBE_(B10328131).pdf, AOL Mail - IMMEDIATE ACTION REQUIRED - Selection of Testing Location for February 2026 New York Bar Examination.pdf

---

**Student Accessibility Services** <sas@purdueglobal.edu>    Thu, Jan 15 at 15:30
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, <nicolelawtone@aol.com>
Cc: CLS AssociateDean <pglawassociatedean@purdueglobal.edu>

Nicole,

Lawtone-Bowles 046

The technology and accessibility concerns raised in your email have already been reviewed and addressed in previous terms. All of your courses have been reviewed by the Curriculum Accessibility Team, which has confirmed that the coursework is accessible.

Regarding your statement that your accommodations are not being honored, please note that your approved accommodations do not include the ability to work ahead or to submit coursework for multiple modules in advance during the first two weeks of a new term.

Thank you,
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                    Thu, Jan 15 at 15:32
To: Student Accessibility Services <sas@purdueglobal.edu>
Cc: <nicolelawtone@aol.com>, CLS AssociateDean <pglawassociatedean@purdueglobal.edu>

Ok, But I still not be penalized for working ahead.
[Quoted text hidden]

Lawtone-Bowles 047

 **PURDUE GLOBAL.**

Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

## CL760 Community Property:

13 messages

**Brian Victor** <Brian.Victor@purdueglobal.edu>                                    Thu, Jan 15, 2026 at 12:11 PM
Reply-To: Brian Victor <Brian.Victor@purdueglobal.edu>
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Nicole,

I am writing to inform you that I have submitted a formal report to the Office of the Provost regarding your performance in Community Property. This is a standard procedural requirement when certain patterns are identified.

The report was initiated following a review of your course progress, specifically noting that all coursework including timed essay exams was completed in less than two weeks.

After consulting with the Associate Dean of Academics, I was advised that the speed and nature of this completion requires a formal review to ensure compliance with our institutional academic integrity standards.

The Provost's Office will contact you to discuss the next steps and any potential findings. Once you receive the official communication from their office, you will have the opportunity to appeal the decision.

Please understand that this is a standard procedural requirement when such patterns are identified. I encourage you to wait for the official notification from the Provost's Office for further guidance on the review process.

Professor Victor

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>            Thu, Jan 15, 2026 at 12:28 PM
To: Brian Victor <Brian.Victor@purdueglobal.edu>

Professor,

Unfortunately, this has been a recurring challenge for me as a student managing a documented disability, including obsessive-compulsive disorder. I am seeking clarification because I am struggling to understand how the course pacing policy is being applied in practice. When I fall behind, I understand and accept that there may be penalties, but I am confused as to why working ahead also appears to result in negative consequences when the course materials state that students may work at their own pace.

I want to be clear that my intention is not to circumvent course requirements, but to manage my workload responsibly in light of my disability-related limitations. The ambiguity surrounding pacing expectations has made it difficult for me to determine how best to stay compliant while also maintaining my health and academic performance. I would appreciate any guidance you can provide regarding how pacing flexibility is meant to function and whether accommodations apply in this context.

Thank you for your time and consideration.

Respectfully,

Nicole Lawtone-Bowles


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adralns Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]

---

Lawtone-Bowles 048

📩 **2601L- Accommodation Notification from Student Accessibility Services (SAS).pdf**
89K

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                    Thu, Jan 15, 2026 at 12:33 PM
To: Student Accessibility Services <sas@purdueglobal.edu>, Toni Pesce <tpesce@purdueglobal.edu>

Good morning Toni,

I am writing to request clarification regarding the course pacing policy and how penalties are applied. I am confused about why falling behind results in a penalty, yet working ahead also appears to be penalized, particularly when the course indicates that students may work at their own pace. I am trying to understand how to remain compliant with expectations while managing my workload responsibly.

Because I manage obsessive-compulsive disorder, clear and consistent guidelines are especially important for me to function effectively and avoid unnecessary stress. At this point, I am feeling uncertain about what is expected of me and understand whether my actions are being interpreted incorrectly. My goal is simply to complete the course successfully and in accordance with stated policies.

I would appreciate any guidance you can provide to help clarify this issue.

Thank you for your time and assistance.

Respectfully,

Nicole Lawtone-Bowles


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

[Quoted text hidden]

📩 **2601L- Accommodation Notification from Student Accessibility Services (SAS).pdf**
89K

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                    Thu, Jan 15, 2026 at 12:37 PM
To: Monica Johnson-Nino <monino@support.purdueglobal.edu>, "jfishman@purdueglobal.edu" <jfishman@purdueglobal.edu>

Good morning Jen & Monica

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

📩 **2601L- Accommodation Notification from Student Accessibility Services (SAS).pdf**
89K

---

**Student Accessibility Services** <sas@purdueglobal.edu>                    Thu, Jan 15, 2026 at 12:57 PM
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Hi, Nicole. Happy New Year!

For policies regarding the law school courses and pacing of coursework, you'll want to reach out to the law school dean's office. Here is their email address: pglawassociatedean@purdueglobal.edu.

Have a great day!
Toni

Lawtone-Bowles 049

Toni Pesce, MBA
Manager, Student Accessibility Services (SAS)
Student Accessibility Services (SAS)

T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
https://www.purdueglobal.edu/academic-support/student-accessibility-services/



**PURDUE GLOBAL**

The information in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

From: **Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>
Date: Thu, Jan 15, 2026 at 12:33 PM
Subject: Fwd: CL760 Community Property:
To: Student Accessibility Services <sas@purdueglobal.edu>, Toni Pesce <tpesce@purdueglobal.edu>
[Quoted text hidden]

---

📄 **2601L- Accommodation Notification from Student Accessibility Services (SAS).pdf**
89K

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                    Thu, Jan 15, 2026 at 1:05 PM
To: Student Accessibility Services <sas@purdueglobal.edu>
Cc: nicolelawtone@aol.com

Good morning Toni,

Every semester I encounter the same issue, and it has become both frustrating and detrimental to my mental health. I have consistently provided documented medical and physician's notes supporting my disability accommodations, yet despite this, I continue to experience repeated harassment each term. Although accommodation reminder emails are sent out every semester, the conduct persists without meaningful resolution. I am currently in my next-to-last semester and on track to graduate on August 25, 2026, and the continued failure to enforce my approved accommodations places an unnecessary and inequitable burden on me. Because of my disability, I already have to work significantly harder to meet academic requirements, and this ongoing situation exacerbates that challenge rather than alleviating it. If I fall behind I am penalized if I work ahead I am penalized. When does it stop.

I am requesting that this matter be addressed promptly and effectively to ensure that my approved accommodations are respected and that I can complete my final semesters without continued distress or interference.

Thank you for your attention to this matter.

Sincerely,

Nicole Lawtone-Bowles


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                    Thu, Jan 15, 2026 at 1:52 PM
To: Student Accessibility Services <sas@purdueglobal.edu>
Cc: nicolelawtone@aol.com

Lawtone-Bowles 050

Toni,

I am writing to address ongoing concerns related to repeated accusations of academic misconduct that arise despite my compliance with approved accommodations. Students are penalized for being late, yet I am now facing scrutiny for working ahead, which places me in an untenable position and creates unnecessary stress. This pattern has occurred multiple times and has become both disruptive and discouraging, particularly given that my actions are directly tied to how I must manage coursework due to my disability. I am requesting that these concerns be reviewed in light of my documented accommodations to prevent continued misunderstandings.

To avoid recurring issues each semester, I believe it would be appropriate to formally add specific exam functionality requirements to my approved reasonable accommodations. To successfully complete my courses, right-click functionality must be enabled, as access to context menus is necessary for copying, pasting, and performing other essential exam-related tasks. Additionally, the ability to use "select all" and standard copy-and-paste features is critical for efficiently reviewing, organizing, and editing substantial amounts of text during exams. Continued restrictions on these basic functions create unnecessary barriers and require repeated intervention each term.

I also rely on assistive technology as part of my documented accommodations, specifically Dragon speech-to-text software and Read&Write. When speech-to-text functionality is disabled, I am unable to use Dragon for dictation, which is essential for accuracy and productivity, and restrictions within the testing environment interfere with my use of Read&Write. Adding these functionality requirements directly to my reasonable accommodations would promote consistency, reduce repeated disruptions, and allow me to focus on completing my coursework rather than repeatedly addressing the same issues each semester. I am requesting confirmation that these items can be formally incorporated into my accommodations moving forward.

Thank you for your time and attention to this matter.

Sincerely,

Nicole Lawtone-Bowles


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>     Thu, Jan 15, 2026 at 1:56 PM
To: Brian Victor <Brian.Victor@purdueglobal.edu>


Professor,

I am writing to inform you that I have forwarded your email to the Dean and Student Accessible Services for review. Given my documented disability and approved accommodations, I should not be required to repeatedly address the same issues each term. For that reason, I have filed a formal complaint so the matter can be reviewed and resolved at the administrative level. This step was taken to ensure clarity, consistency, and compliance with my accommodations moving forward.

Thank you for your understanding.

Sincerely,

Nicole Lawtone-Bowles

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN

Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

On Thu, Jan 15, 2026 at 12:11 Brian Victor <Brian.Victor@purdueglobal.edu> wrote:
[Quoted text hidden]

---

**Jennifer Fishman** <jfishman@purdueglobal.edu>                                      Thu, Jan 15, 2026 at 1:56 PM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: Monica Johnson-Nino <monino@support.purdueglobal.edu>, Student Accessibility Services <sas@purdueglobal.edu>,
PGLawAssociateDean PGLawAssociateDean <pglawassociatedean@purdueglobal.edu>

Hi Nicole-

As I have explained in prior emails and conversations since the start of your studies at Purdue Global Law School, students are discouraged from working too far ahead in their classes. I believe that this issue first arose when you submitted assignments during the preview period. Remaining on schedule with the module completion table is essential.

We are currently in Module 2, and while this is not a formal rule, students are expected to remain at roughly this pace. We understand that students sometimes need to adjust their schedules to balance school with other responsibilities. However, moving too far ahead without the support of seminars and ongoing instruction can take away from the learning experience. From an academic standpoint, this approach is not effective for learning the law.

Thank you-
Jen Fishman


**Jennifer Fishman**

Senior Student Operations Manager

Purdue Global Law School

2029 Century Park East, Suite 400

Los Angeles, CA 90067

www.PurdueGlobalLawSchool.edu

Office Hours: CLICK HERE to schedule an appointment.



PURDUE
GLOBAL.
Law School

*Purdue University Global holds itself accountable to foster a culture that promotes inclusion and belonging, offering an environment that is fair, accessible, and engaging for all.*

[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                Thu, Jan 15, 2026 at 2:01 PM
To: Jennifer Fishman <jfishman@purdueglobal.edu>
Cc: Monica Johnson-Nino <monino@support.purdueglobal.edu>, Student Accessibility Services <sas@purdueglobal.edu>,
PGLawAssociateDean PGLawAssociateDean <pglawassociatedean@purdueglobal.edu>

Jen,

I would like to clarify the record regarding my assignment submissions. I did not submit assignments during the preview week; I waited until the official start of the term and began working from that point forward. I worked ahead because I have significant obligations outside of school, including fighting for my home, starting a new job, and I am making a concerted effort to stay current and avoid late submissions. Given that this is my next-to-last semester, maintaining timely progress is especially important to me.

Additionally, how and when I complete coursework is directly affected by my documented disability and approved accommodations. Working ahead, when possible, is one of the ways I manage my workload and ensure consistent academic performance. I understand the importance of seminars and instruction, and I remain fully engaged with course materials and required activities. My intent is not to bypass the learning process, but to comply with expectations while balancing competing responsibilities in a manner consistent with my accommodations.

Thank you for your understanding.

Lawtone-Bowles 052

Sincerely,

Nicole Lawtone-Bowles

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."
[Quoted text hidden]



---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>                Thu, Jan 15, 2026 at 2:22 PM
To: Jennifer Fishman <jfishman@purdueglobal.edu>
Cc: Monica Johnson-Nino <monino@support.purdueglobal.edu>, Student Accessibility Services <sas@purdueglobal.edu>,
PGLawAssociateDean PGLawAssociateDean <pglawassociatedean@purdueglobal.edu>

Jennifer, you know me. I do not like people telling me what I cannot do. It is already hard for me being a Black disabled woman.On top of my schoolwork, I am in a battle with the New York Board of Law Examiners to allow me to sit for the February 2026 Bar, so I am studying for the Uniform Bar Exam if the New York Court of Appeals allows me to sit. If I am granted the opportunity to sit, I will be the first student from Purdue Global Law School to sit for the New York Bar, so I honestly do not have the time for being written up for going ahead and getting my work done. See attached

[Quoted text hidden]

--

[Quoted text hidden]

---

**2 attachments**

📄 **R - LAWTONE-BOWLES_NICOLE_FEB2026_UBE_(B10328131).pdf**
76K

📄 **AOL Mail - IMMEDIATE ACTION REQUIRED - Selection of Testing Location for February 2026 New York Bar Examination.pdf**
92K

---

**Student Accessibility Services** <sas@purdueglobal.edu>                Thu, Jan 15, 2026 at 3:29 PM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, nicolelawtone@aol.com
Cc: CLS AssociateDean <pglawassociatedean@purdueglobal.edu>

Nicole,

The technology and accessibility concerns raised in your email have already been reviewed and addressed in previous terms. All of your courses have been reviewed by the Curriculum Accessibility Team, which has confirmed that the coursework is accessible.

Regarding your statement that your accommodations are not being honored, please note that your approved accommodations do not include the ability to work ahead or to submit coursework for multiple modules in advance during the first two weeks of a new term.

Thank you,

**Toni Pesce, MBA**
**Manager, Student Accessibility Services (SAS)**
**Student Accessibility Services (SAS)**

T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
https://www.purdueglobal.edu/academic-support/student-accessibility-services/

Lawtone-Bowles 053



The information in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.
[Quoted text hidden]

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>          Thu, Jan 15, 2026 at 3:32 PM
To: Student Accessibility Services <sas@purdueglobal.edu>
Cc: nicolelawtone@aol.com, CLS AssociateDean <pglawassociatedean@purdueglobal.edu>

Ok, But I still not be penalized for working ahead.


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

[Quoted text hidden]

Lawtone-Bowles 054

 **PURDUE** GLOBAL

PG Provost <provost@purdueglobal.edu>

---

## Re: Request for Immediate Virtual Hearing Regarding Academic Misconduct Allegations Academic Dishonesty - 2nd Breach - Nicole Lawtone-Bowles

1 message

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>        Tue, Jan 27, 2026 at 12:39 PM
To: PGLawAssociateDean <pglawassociatedean@purdueglobal.edu>
Cc: "Dr. Nicole Lawtone-Bowles" <nicolelawtone@aol.com>, "martin.pritikin@purdueglobal.edu" <martin.pritikin@purdueglobal.edu>, Toni Pesce <tpesce@purdueglobal.edu>, "jfishman@purdueglobal.edu" <jfishman@purdueglobal.edu>, Monica Johnson-Nino <monino@support.purdueglobal.edu>, "provost@purdueglobal.edu" <provost@purdueglobal.edu>, "studentrelations@purdueglobal.edu" <studentrelations@purdueglobal.edu>, "brian.victor@purdueglobal.edu" <brian.victor@purdueglobal.edu>, "sjamison@purdueglobal.edu" <sjamison@purdueglobal.edu>

---

Jen,

I already did that, and they keep telling me to talk to the instructor, which I already did. Therefore, to protect my mental health, I will not continue being subjected to the continuous racism I've experienced. He gave me zeros on open-book assignments — if that's not discrimination, I don't know what is. I've been Black for 54 years; I know when I'm being discriminated against. The Dean of Academics is just the same — he's a racist too, and I'm tired of it. I have worked too hard to get to this point for racists to take it away from me.


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."


On Tue, Jan 27, 2026 at 12:34 PM PGLawAssociateDean <pglawassociatedean@purdueglobal.edu> wrote:

> Hello Nicole-
> As outlined in the email sent from Dean Moody yesterday, please follow this process for any discrimination grievance you believe you are experiencing. Here is the link to the policy in the catalog and Dean Moody's email is pasted below.
> https://catalog.purdueglobal.edu/policy-information/student-rights-responsibilities/nondiscrimination-policy/
>
> Thank you-
> Jen Fishman

Lawtone-Bowles 055

---------- Forwarded message ----------
From: **PGLawAssociateDean** <pglawassociatedean@purdueglobal.edu>
Date: Mon, Jan 26, 2026 at 4:05 PM
Subject: Re: Request for Immediate Virtual Hearing Regarding Academic Misconduct Allegations Academic Dishonesty - 2nd Breach - Nicole Lawtone-Bowles
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: <martin.pritikin@purdueglobal.edu>, Toni Pesce <tpesce@purdueglobal.edu>, jfishman@purdueglobal.edu <jfishman@purdueglobal.edu>, Monica Johnson-Nino <monino@support.purdueglobal.edu>, <provost@purdueglobal.edu>, <studentrelations@purdueglobal.edu>, <brian.victor@purdueglobal.edu>, <SJamison@purdueglobal.edu>, Dr. Nicole Lawtone-Bowles <nicolelawtone@aol.com>


Hello Ms. Lawtone-Bowles,

If you do not agree with the decision of the Provost office regarding your academic integrity charge. You must follow the appeal procedures outlined below.

**Step 1:** You must submit the Academic Appeal form found on the PG Campus portal to the Purdue Global Office of the Provost at provost@purdueglobal.edu within 10 days of the report of academic dishonesty. The appeal form should include an explanation and evidence to support your position. The Academic Appeals Committee composed of faculty and academic administrators will meet to review the submission. Please allow up to three weeks from the appeal acceptance date to be notified of the Committee's decision.

**Step 2:** If you disagree with the Academic Appeals Committee's decision, you may send a written letter of appeal to the Office of the Provost within 10 days of receiving the Committee's decision. The Office of the Provost will review the material presented and make a final ruling.

**Step 3:** If you have an issue or concern that cannot be addressed through one of the appeal processes mentioned above or through the Discrimination Grievance Procedures, follow the steps below to seek a resolution. Please note, this process may not be used to change or remove University requirements or decisions made by the Office of the Dean.
 1) If your issue is related to your coursework, discuss the issue with your instructor. If you have an issue not related to your coursework, discuss it with the appropriate advisor. Many questions or concerns that you have can be resolved simply through discussion.
 2) If you are not satisfied with the outcome of the discussion, your instructor or advisor can escalate your complaint to a resolution specialist, dean, or department-designated resolution person.
3) If you remain unsatisfied or the complaint remains unresolved, you can file a formal grievance with Purdue Global's Office of Student Relations. The Office of Student Relations will serve as an impartial entity that is not directly involved in the issues of the complaint.

The Grievance form is attached to this email. Your grievance form should be emailed to studentrelations@purdueglobal.edu. The Office of Student Relations will review all material pertinent to the case and will notify you of the outcome of the investigation in writing. You will likely receive the decision within 5 business days, though some cases require additional time to complete the investigation. All decisions made by Student Relations are final.


Thank you
Assistant Dean Moody


Purdue Global Law School

2029 Century Park East, Suite 400

Los Angeles, CA 90067

pglawassociatedean@purdueglobal.edu

www.PurdueGlobalLawSchool.edu

**Community Resources Site**

Lawtone-Bowles 056

**Schedule Office Hours:**

CLICK HERE to schedule with Assistant Dean Moody

CLICK HERE to schedule with Jen Fishman, Sr. Student Ops Mgr.

CLICK HERE to schedule with Maria Dougherty, Sr. Student Ops Mgr.



*Purdue University Global holds itself accountable to foster a culture that promotes inclusion and belonging, offering an environment that is fair, accessible, and engaging for all.*

Logo from the Princeton Review. ©2025 TPR Education. All rights reserved. Used under license.

On Tue, Jan 27, 2026 at 12:29 PM Dr. Nicole Lawtone-Bowles <nicolelawtone@aol.com> wrote:

Subject: Request for Review – Discrimination Concern and Course Reassignment

Dear Ms. Fishman,

Thank you for your response. While I understand that the add/drop period for 2601L has closed, my request is based on a serious concern regarding discriminatory conduct and not on a routine scheduling preference. I am formally reporting that I have experienced racial discrimination in this class and believe remaining in the current section would create a hostile educational environment.

Accordingly, I am requesting that my situation be reviewed under Purdue Global's policies governing discrimination and student safety. Please forward my concern to the appropriate Title IX or Equal Opportunity office for immediate evaluation, and confirm receipt of this message. I am willing to cooperate fully with any investigation and accept any academic accommodations deemed appropriate.

Sincerely,

Lawtone-Bowles 057

Nicole Lawtone-Bowles
Juris Doctor Candidate, Class of 2026
Purdue Global Law School
nicolelawtone@aol.com | (347) 538-5386


Sincerely,
Nicole Lawtone-Bowles
A.A.B., A.A., B.P.S., J.M., Ph.D. (ABD), D.H.A. (ABD)
Juris Doctor 2026
Purdue Global Law School
(formerly Concord Law School)
Pronouns: She/Her
📎 Adrain's Place Inc.
📎 SSRN Author Profile
📎 LinkedIn
*"Master your mind because a thought can ruin your whole day."*


On Tuesday, January 27, 2026 at 12:22:33 PM EST, PGLawAssociateDean <pglawassociatedean@purdueglobal.edu> wrote:

Hello Nicole-
We are not able to switch a student's course section after add/drop has ended. The 2601L add/drop period ended on January 13, 2026, and we can't adjust your schedule.

Thank you-
Jen Fishman

Purdue Global Law School
2029 Century Park East, Suite 400
Los Angeles, CA 90067
pglawassociatedean@purdueglobal.edu
www.PurdueGlobalLawSchool.edu
**Community Resources Site**
**Schedule Office Hours:**

     CLICK HERE to schedule with Assistant Dean Moody

Lawtone-Bowles 058

CLICK HERE to schedule with Jen Fishman, Sr. Student Ops Mgr.

CLICK HERE to schedule with Maria Dougherty, Sr. Student Ops Mgr.



**PURDUE GLOBAL.**
**Law School**

*Purdue University Global holds itself*
*accountable to foster a culture that*
*promotes inclusion and belonging,*
*offering an environment that is fair,*
*accessible, and engaging for all.*

Logo from the Princeton Review. ©2025 TPR Education. All rights reserved. Used under license.

On Mon, Jan 26, 2026 at 5:37 PM Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:

### Request for Section Reassignment as Disability Accommodation

Dear Dean Moody-Villarose,

I am writing to respectfully request reassignment to the other available section of CL760 Community Property. This request is made as a disability-related accommodation due to ongoing issues in my current section with Instructor Brian Victor that have significantly impacted my mental health and academic functioning.

As you are aware, I have a documented disability, Obsessive-Compulsive Disorder (OCD), with approved accommodations on file. Despite my efforts to explain how my disability affects my academic work patterns, I have experienced treatment in this course that I reasonably perceive as discriminatory and inconsistent with my accommodations. The continued stress associated with remaining in this section has caused a noticeable deterioration in my mental well-being and has interfered with my ability to focus on my studies.

This is my next-to-last semester before graduation, and it is a critical period for me academically and professionally. I am actively preparing for the February 2026 bar examination, contingent on receiving a seat ticket, as well as the March MPRE. Remaining in a course environment that is causing ongoing distress places my academic progress and bar preparation at risk.

Lawtone-Bowles 059

I am requesting this section change in good faith as a narrowly tailored solution that would allow me to continue my studies in an environment conducive to learning, without disruption to the program or the institution. I believe reassignment would be an appropriate and reasonable accommodation under Section 504 and the ADA.

Thank you for your consideration of this request. I would appreciate confirmation of next steps or any additional information needed to facilitate this accommodation.

Sincerely,
Nicole Lawtone-Bowles

On Mon, Jan 26, 2026 at 5:00 PM Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:
Re: Follow-Up and Next Steps
Dear Dean Moody-Villarose,

Thank you for your assistance and for providing information regarding the complaint process. I have reviewed the materials and will proceed accordingly.

My sole objective is to be treated fairly and to have my academic work evaluated based on its substance and merit. Because of my documented disability, I am required to exert significantly more effort than many students to meet academic expectations. When that effort is instead treated as suspect, non-credible, or framed as misconduct, it is deeply harmful and undermines my equal access to education.

As a Black disabled woman, I am particularly concerned about how disability-related work patterns are perceived and judged, and I expect those evaluations to be free from bias, assumptions, or discriminatory scrutiny. I am seeking nothing more than a fair, lawful, and nondiscriminatory academic review process consistent with institutional policy and federal disability protections.

Thank you for your time and attention.

Sincerely,
Nicole Lawtone-Bowles

On Mon, Jan 26, 2026 at 4:05 PM PGLawAssociateDean <pglawassociatedean@purdueglobal.edu> wrote:
Hello Ms. Lawtone-Bowles,

If you do not agree with the decision of the Provost office regarding your academic integrity charge. You must follow the appeal procedures outlined below.

**Step 1:** You must submit the Academic Appeal form found on the PG Campus portal to the Purdue Global Office of the Provost at provost@purdueglobal.edu within 10 days of the report of academic dishonesty. The appeal form should include an explanation and evidence to support your position. The Academic Appeals Committee composed of faculty and academic administrators will meet to review the submission. Please allow up to three weeks from the appeal acceptance date to be notified of the Committee's decision.

**Step 2:** If you disagree with the Academic Appeals Committee's decision, you may send a written letter of appeal to the Office of the Provost within 10 days of receiving the Committee's decision. The Office of the Provost will review the material presented and make a final ruling.

Lawtone-Bowles 060

**Step 3:** If you have an issue or concern that cannot be addressed through one of the appeal processes mentioned above or through the Discrimination Grievance Procedures, follow the steps below to seek a resolution. Please note, this process may not be used to change or remove University requirements or decisions made by the Office of the Dean.

1) If your issue is related to your coursework, discuss the issue with your instructor. If you have an issue not related to your coursework, discuss it with the appropriate advisor. Many questions or concerns that you have can be resolved simply through discussion.

2) If you are not satisfied with the outcome of the discussion, your instructor or advisor can escalate your complaint to a resolution specialist, dean, or department-designated resolution person.

3) If you remain unsatisfied or the complaint remains unresolved, you can file a formal grievance with Purdue Global's Office of Student Relations. The Office of Student Relations will serve as an impartial entity that is not directly involved in the issues of the complaint.

The Grievance form is attached to this email. Your grievance form should be emailed to studentrelations@purdueglobal.edu. The Office of Student Relations will review all material pertinent to the case and will notify you of the outcome of the investigation in writing. You will likely receive the decision within 5 business days, though some cases require additional time to complete the investigation. All decisions made by Student Relations are final.

Thank you
Assistant Dean Moody

Purdue Global Law School

2029 Century Park East, Suite 400

Los Angeles, CA 90067

pglawassociatedean@purdueglobal.edu

www.PurdueGlobalLawSchool.edu

**Community Resources Site**

**Schedule Office Hours:**

CLICK HERE to schedule with Assistant Dean Moody

CLICK HERE to schedule with Jen Fishman, Sr. Student Ops Mgr.

CLICK HERE to schedule with Maria Dougherty, Sr. Student Ops Mgr.

Lawtone-Bowles 061

**PURDUE GLOBAL**

**Law School**

*Purdue University Global holds itself
accountable to foster a culture that
promotes inclusion and belonging,
offering an environment that is fair,
accessible, and engaging for all.*

Logo from the Princeton Review. ©2025 TPR Education. All rights reserved. Used under license.

On Mon, Jan 26, 2026 at 2:17 PM Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:
Good Afternoon Dean Pritikin,

You and I have communicated via email on several occasions. I am a distinguished scholar and Dean's List student with a Paralegal Degree from Eastern Gateway Community College and a Master of Jurisprudence from Liberty University School of Law. I am also a law office study student in New York and California, a pro se litigant since 2011, and I am scheduled to graduate on August 25, 2026. I passed the New York State Law Exam in September 2025 and am currently preparing to sit for the New York Bar Examination UBE in February 2026, pending receipt of a seat ticket. I do not need to cheat in any academic or professional setting, and I categorically deny the allegations of academic misconduct that have been made against me.

Two white instructors, Brian and Victoria, along with Shaun, who is also white, have accused me of academic misconduct based on conduct they do not understand—specifically, my practice of working ahead and completing assignments early. This practice is directly related to my documented disability, Obsessive-Compulsive Disorder (OCD), and is expressly covered by my approved Section 504/IEP accommodations. I am a Black disabled woman, and based on my lived experience and the pattern of treatment I am currently facing, it is my firm belief that if I were a white male, I would not be subjected to these allegations or this level of scrutiny. No one has taken the time to speak with me, review my academic or professional background, or make any good-faith effort to understand who I am before levying these accusations.

I am 54 years old, a mother, and a grandmother, and this is not my first experience encountering racism in higher education while pursuing advanced degrees. I know when I am being discriminated against, and I know when I am being treated unfairly. Despite repeated requests, I have not been afforded even the basic courtesy of a virtual meeting to discuss these allegations before being subjected to academic misconduct proceedings. I am paying substantial tuition for my education, and I am not here to engage in misconduct; I am here to complete my degree and advance my legal career.

The failure to engage with me, the refusal to provide an accessible forum to be heard, and the disregard for my documented disability and approved accommodations constitute discriminatory treatment. I am therefore formally demanding an immediate virtual hearing to address these allegations in a manner that is accessible, fair, and compliant with disability and nondiscrimination obligations. This matter requires prompt attention and must be handled with the seriousness it warrants.

Please confirm receipt of this request and advise me immediately of the next procedural steps.

Sincerely,

Nicole Lawtone-Bowles


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."


On Mon, Jan 26, 2026 at 13:14 Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:

Good Afternoon,

I am writing to formally request that the hearing regarding the current allegation be conducted virtually. I categorically deny the accusation and did not engage in the conduct alleged. I have a documented disability, Obsessive-Compulsive Disorder (OCD), which compels me to complete my work thoroughly and independently; I do not leave work unfinished, nor do I engage in academic dishonesty.

I am also raising concerns that this matter has had a discriminatory impact. As a Black woman with a disability, I believe my conduct has been misinterpreted and scrutinized in a manner that is inconsistent with equitable treatment. A virtual hearing is necessary to ensure accessibility and to allow me to participate fully and effectively.

Please confirm whether this request can be accommodated and advise of any next steps. Thank you for your attention to this matter.

Sincerely,

Nicole Lawtone-Bowles



Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."


On Mon, Jan 26, 2026 at 13:09 PG Provost <provost@purdueglobal.edu> wrote:
Dear Nicole Lawtone-Bowles,

Lawtone-Bowles 063

This letter confirms your second Academic Dishonesty breach of the Student Code of Conduct. The consequence of this second breach is failure of the course in which the action occurred. The following information summarizes your breaches:

**First Breach**
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

**Second Breach**
Term: 2601L
Class: CL760-01 Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion
Instructor Name: Brian Victor

All reports of academic dishonesty are recorded in Purdue Global's database and remain there permanently. All breaches you accumulate while completing a program will be carried over to any subsequent program at Purdue Global.

If you disagree with these findings and wish to appeal this breach, you must complete the following steps:

1. Discuss the breach with your instructor, providing a thorough explanation and evidence of why you believe the suspicion of academic dishonesty to be inaccurate.
2. If the dispute is still unresolved and you wish to pursue an appeal of the report of academic dishonesty, you must submit an Academic Appeal Form to the Office of the Provost. The appeal form can be found on your student portal under quicklinks.
3. The appeal form should include an explanation and evidence to support your position.

Please note all appeals must take place in writing within 10 days of receiving this letter. Submissions made more than 10 days after notification of the breach will not be accepted.

If you breach Purdue University Global's Academic Dishonesty Code of Student Conduct a third time, the consequence will be expulsion from the University. For more information, please refer to the Code of Student Conduct Policy, which can be found in the Purdue University Global catalog.

We want you to be successful; therefore, encourage you to take advantage of the following resources:

1. Plagiarism Information Page
2. Writing Center located in the Academic Success Center section of Purdue Global Campus.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu

Lawtone-Bowles 064



--

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."


--

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

Lawtone-Bowles 065

USDC IN/ND case 4:26-cv-00028-PPS-AZ   document 31-1   filed 05/20/26   page 67 of 118

 **PURDUE** GLOBAL

PG Plagiarism <plagiarism@purdueglobal.edu>

---

## Re: Nicole Lawtone-Bowles: Appeal Received - CL760-01 Community Property

1 message

---

**Dr. Nicole Lawtone-Bowles** <nicolelawtone@aol.com>                                          Wed, Jan 28, 2026 at 11:47 PM
To: PG Plagiarism <plagiarism@purdueglobal.edu>, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Subject: Request for Evidence Disclosure and Virtual Meeting Regarding Academic Dishonesty Appeal

Dear Ms. Navarro,

Thank you for confirming receipt of my Academic Appeal Form. I must formally object to any decision being made without my participation, disclosure of the alleged evidence, and an opportunity to be heard.

I did not cheat, plagiarize, or misrepresent my work. Seminar recordings clearly show that I consistently answered questions accurately and without hesitation, including questions I had not previously seen. My written work is consistent with my demonstrated oral performance and legal reasoning.

I am a Black woman with a documented disability who relies on assistive technology, including speech-to-text, because I cannot type conventionally. Treating this as academic dishonesty rather than an accommodation issue raises serious concerns of discrimination and lack of due process.

Before any decision is made, I request:
1. Disclosure of the specific evidence relied upon, including any metadata or reports; and
2. A virtual meeting so I may respond directly to the allegations.

Please confirm receipt and advise on next steps.

Respectfully,
Nicole Lawtone-Bowles


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program

Purdue Global Law School (formerly Concord Law School) Juris Doctor August 25, 2026

Pronouns: She/Her
https://adrainsplaceinc.square.site/
https://ssrn.com/author=6965456
https://www.linkedin.com/in/nicole-lawtone-bowles

"Master your mind because a thought can ruin your whole day."

Lawtone-Bowles 066

On Wednesday, January 28, 2026, 16:16, PG Plagiarism <plagiarism@purdueglobal.edu> wrote:

Dear Nicole Lawtone-Bowles,

The Office of the Provost has received your Academic Appeal Form. Academic Dishonesty appeals are reviewed, and a decision is made based on whether or not there is evidence of plagiarism, cheating, or misrepresentation. Your appeal will be reviewed by the Academic Appeals Committee. Please allow up to three (3) weeks to be notified of the decision.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu

Lawtone-Bowles 067

Date: Wed, Jan 28, 2026 at 4:44 PM
Subject: Re: Nicole Lawtone-Bowles: Appeal Received - CL760-01 Community Property
To: PG Plagiarism <plagiarism@purdueglobal.edu>
Cc: Dr. Nicole Lawtone-Bowles <nicolelawtone@aol.com>

Dear Ms. Navarro,

Request for Virtual Hearing, Disclosure of Metadata, and Failure to Accommodate Disability

Thank you for confirming receipt of my Academic Appeal Form and for outlining the review process. I acknowledge the notice provided; however, for purposes of clarity, completeness of the record, and fundamental fairness, I submit this supplemental statement and formally request direct participation in the review of this matter.

I categorically deny any allegation of plagiarism, cheating, or misrepresentation. I did not engage in academic misconduct. The work at issue was completed strictly in accordance with the written course instructions, which expressly designated the relevant coursework as an **open-book assignment and accompanying discussion**, as well as closed-book essays, and was completed in full compliance with my approved disability accommodations. Efficient or expedited completion of authorized coursework, particularly within an open-book and discussion format, does not constitute misconduct and is fully consistent with course policy.

I have documented disabilities, including Obsessive-Compulsive Disorder (OCD) and Post-Traumatic Stress Disorder (PTSD), as well as significant physical impairments, including lumbar degenerative disc disease, cervical degenerative disc disease at C4–C5, and bilateral knee replacements. Due to these conditions, I am unable to type rapidly and must rely on speech-based and accessibility technologies to complete coursework. I am formally approved to utilize assistive technologies, including Dragon speech-to-text, text-to-speech, and related accessibility functions that may involve copying and pasting text as part of their medically necessary operation.

My computer system is specifically configured to support my disabilities through integrated accessibility features and assistive technology. When exam or course platforms restrict, disable, or override these functions, they prevent me from accessing coursework on an equal basis. Such interference creates a discriminatory barrier, negates approved accommodations, and constitutes a failure to provide reasonable accommodations under applicable disability-rights laws. Disability-related work patterns and the use of approved assistive technology cannot lawfully be treated as evidence of dishonesty.

I am deeply concerned that the allegations in this matter appear to have been based not on objective evidence, but on subjective disbelief and unfamiliarity with how a student with disabilities works. Statements suggesting that my performance was implausible or that I am unlike other students are not evidence of misconduct and raise serious concerns regarding bias and failure to accommodate. Notably, no instructor or administrator met with me, engaged in an interactive process, or reviewed my accommodation documentation or academic background prior to escalating this matter.

I have been continuously enrolled as a law study student since January 2019, studying across multiple jurisdictions, including New York and California, and I am independently preparing for bar eligibility while pursuing my degree. I have no incentive, need, or motivation to engage in dishonest conduct. My sole objective has consistently been to complete my academic work lawfully, diligently, and in strict accordance with published instructions and approved accommodations.

Accordingly, I respectfully request that the Academic Appeals Committee evaluate this matter solely on the presence or absence of actual evidence of plagiarism, cheating, or misrepresentation, and that disability-related conduct and authorized open-book preparation not be misconstrued as misconduct. I further request formal assurance that my approved accommodations and the express open-book assignment and discussion designation are fully and meaningfully considered.

Finally, I formally request that **all relevant metadata** associated with the assignments, platform activity, and allegations be disclosed and reviewed **in a virtual meeting.** I do not consent to this matter being decided solely on paper or behind closed doors without direct engagement. I am requesting

Lawtone-Bowles 068

the opportunity to be heard in real time and to address the Committee directly. I am a human being, not a file, and I respectfully insist on being treated as such through a transparent, participatory process consistent with principles of due process and disability accommodation.

Thank you for your attention to this matter. I await confirmation regarding scheduling of a virtual meeting and disclosure of the requested materials.

Sincerely,
Nicole Lawtone-Bowles

On Wed, Jan 28, 2026 at 16:16 PG Plagiarism <plagiarism@purdueglobal.edu> wrote:
Dear Nicole Lawtone-Bowles,

The Office of the Provost has received your Academic Appeal Form. Academic Dishonesty appeals are reviewed, and a decision is made based on whether or not there is evidence of plagiarism, cheating, or misrepresentation. Your appeal will be reviewed by the Academic Appeals Committee. Please allow up to three (3) weeks to be notified of the decision.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu

Lawtone-Bowles 069

 Gmail

Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

---

## CL760 Community Property: Failure to Honor Approved Disability Accommodations

---

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>　　　　　　Fri, Jan 30 at 12:51
Reply-To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
To: <nicolelawtonebow@student.purdueglobal.edu>

From: "Nicole Lawtone-Bowles"
Subject: CL760 Community Property: Failure to Honor Approved Disability Accommodations
To: "Brian Victor"
Cc:
Bcc:

Dear Professor Victor,

I am writing to formally document my concerns regarding your handling of my approved disability accommodations and the resulting impact on my academic record. As reflected in my current transcript, the outcome in Community Property is directly connected to your failure to honor my reasonable accommodations and to an allegation made without consideration of those accommodations. I experience a documented disability that substantially affects how I complete academic work, and compliance with approved accommodations is required under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

Additionally, I am concerned that the process you used did not provide a fair opportunity to respond in a live or interactive setting, which is particularly significant where disability-related behaviors may be misunderstood. The lack of an opportunity for verbal clarification and your failure to engage meaningfully contributed to harm that could have been avoided through proper accommodation and dialogue. I am therefore placing this communication on record to preserve my rights and to ensure that these issues are appropriately reviewed.

I intend to pursue review through the appropriate institutional and external channels to address these concerns. This message is provided to give notice of the issues and to document their academic and legal significance. I remain willing to engage constructively through formal processes.

Sincerely,
Nicole Lawtone-Bowles


Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Adrains Place Inc 501(c)(3)
Phi Alpha Delta
Bar Exam Essay Rules
Free Themis Outlines from LexisNexis
TestMax BarMax Bar Prep
National Conference of Bar Examiners
Studicata
Failure To Accomindate.PNG

DOB: 12/04/1971


**PURDUE GLOBAL**

## Section II: To Be Completed By a Qualified Medical Professional

The policy of Purdue University Global (Purdue Global) to comply with the Americans with Disabilities Act (ADA) includes the provision of appropriate accommodations under the ADA. To enable Purdue Global to evaluate and process our student's request, please complete these forms in their entirety and submit to Student Accessibility Services, as all medical verification of disabilities must be received in writing.

Forms can be submitted by fax (866-422-4773), by email as an attachment (SAS@PurdueGlobal.edu), or by standard mail:

Purdue University Global
ATTN: Student Accessibility Services
2550 Northwestern Avenue, Suite 1100
West Lafayette, IN 47906

Incomplete forms will delay the accommodation process.

It is highly recommended the qualified medical professional have an open conversation with the student/patient regarding their request for accommodation(s) prior to completion of this form.

### Student Information (Please Print)

**STUDENT/PATIENT NAME:** Nicole Lawtone-Bowles

**STUDENT/PATIENT DIAGNOSED DISABILITY OR IMPAIRMENT\*** Obsessive-Compulsive Disorder (OCD)

*\*Diagnosed learning disabilities must be confirmed through comprehensive evaluation results. Section II will not be accepted.*

**Does the above listed disability/impairment impact a major life function, as defined by the Americans with Disabilities Act (ADA), subsequently impacting online learning? Please explain.**

Yes. Obsessive-Compulsive Disorder (OCD) substantially limits major life functions recognized under the Americans with Disabilities Act, including concentrating, thinking, learning, and managing time. Because OCD causes intrusive thoughts and distress around unfinished tasks, Nicole is compelled to complete assignments as early as possible to relieve anxiety and prevent symptom escalation.

**Please verify the accommodation(s) requested by the student/patient is/are necessary for them to attend and participate in Purdue Global online programs by listing the specific accommodations below:**

The student's disability substantially impacts major life functions, including concentrating, thinking, learning, and managing time, particularly in an online learning environment that requires independent pacing and delayed deadlines. Allowing the student to work ahead reduces disability-related distress and prevents symptom escalation

**Date you last treated/evaluated the student/patient:** August 16, 2025

By signing this form, you certify all of the information listed is true and correct to the best of your knowledge and belief.

Qualified Medical Professional verifying diagnosed disability:

**Signature (Physical Signature Required):** Koreen E Thomas FNP    **Date:** 01/28/2026

**Print Name:** Koreen E Thomas FNP

**Designation:** Family Nurse Practitioner

**Office Telephone Number:** 845 446 4076

**Office Address:** 127 Main Street    **City:** Highland Falls    **State:** NY  **Zip:** 10928

**Office Stamp If Available:**

Koreen E. Thomas, FNP
DEA: MT0399672
NPI: 9932545

SAS Accommodation Request 10/2023

Lawtone-Bowles 071

# Montefiore

MONTEFIORE EINSTEIN ORTHOPEDIC SURGERY
327 ROUTE 59
AIRMONT NY 10952-3420
845-356-2900

April 7, 2025

Nicole LAWTONE-BOWLES
56 Center Street
Highland Falls NY 10928-1800


Patient:    **Nicole LAWTONE-BOWLES**
Date of Birth: **12/4/1971**
Date of Visit: **4/7/2025**


To Whom It May Concern:

o Whom It May Concern:

This letter serves as certification that the Nicole Lawtone-Bowles is an individual with severe physical disability that requires accommodations, so she can be considered for employment under the schedule A hiring authority 5 CFR 213.3102 (u). Thank you for your interest in considering this individual for employment. You may contact me at 845-356-2900.

The accommodations that the patient requires include the following: She requires the use of a speech to text application on her computer, because she cannot type for long periods of time or consistently. The application should also be able to read out the text to her. Due to her disability, she has difficulty tolerating prolonged positions. She needs to be placed at a desk position, either in-office or remotely, where she is able to change position as needed. She also requires the use of a rollator and the ability to use a back brace while working.


Sincerely,

Christine Hinke, MD


Nicole LAWTONE-BOWLES
06220015

Lawtone-Bowles 072

# Montefiore

MONTEFIORE EINSTEIN ORTHOPEDIC SURGERY
327 ROUTE 59
AIRMONT NY 10952-3420
845-356-2900

April 7, 2025

Patient:     **Nicole LAWTONE-BOWLES**
Date of Birth: **12/4/1971**
Date of Visit: **4/7/2025**

Diagnosis:
1.  Lumbar DDD
2.  Cervical DDD at C4-C5

Treatment Referrals:

1.  Chiropractic evaluation and 12 treatment sessions.

2.  Massage Therapy x 20 sessions

Sincerely,

Christine Hinke, MD
Dept: 845-356-2900

Nicole LAWTONE-BOWLES
06220015

Lawtone-Bowles 073

# Montefiore

MONTEFIORE EINSTEIN ORTHOPEDIC SURGERY
327 ROUTE 59
AIRMONT NY 10952-3420
845-356-2900

November 18, 2024

Patient:    **Nicole LAWTONE-BOWLES**
Date of Birth: **12/4/1971**
Date of Visit: **11/18/2024**

To Whom It May Concern:

This letter serves as certification that the Nicole Lawtone-Bowles is an individual with severe physical disability that requires accommodations, so she can be considered for employment under the schedule A hiring authority 5 CFR 213,3102 (u).  Thank you for your interest in considering this individual for employment.  You may contact me at 845-356-2900.

The accommodations that the patient requires include the following: She requires the use of a speech to text application on her computer because she cannot type for long periods of time or consistently.  The application should also be able to read out the text to her.  Due to her disability, she has difficulty tolerating prolonged positions.  She needs to be placed at a desk position, where she is able to change position as needed.  She also requires the use of a rollator and the ability to use a back brace while working.

Sincerely,

Christine Hinke, MD
Board Certified Physiatrist

Nicole LAWTONE-BOWLES
06220015

Page 1 of 1

Lawtone-Bowles 074

 **PURDUE**
GLOBAL.

PG Provost <provost@purdueglobal.edu>

## Re: Nicole Lawtone-Bowles: Grade appeal received - CL760-01 Community Property

1 message

**Dr. Nicole Lawtone-Bowles** <nicolelawtone@aol.com>
To: PG Provost <provost@purdueglobal.edu>, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Thu, Jan 29, 2026 at 7:26 AM

Dear Ms. Navarro,

I write to clarify the basis of my appeal and to correct the record regarding the F grade imposed in CL760 Community Property. That grade rests entirely on the assertion of a second academic-conduct violation. I categorically deny that any such violation occurred. The finding resulted from a fundamental misunderstanding and mischaracterization of my Student Accessibility Services (SAS)–approved accommodations by Professor Victor and Associate Shaun Jamison, rather than from any evidence of plagiarism, cheating, or misrepresentation.

My coursework was completed in strict accordance with the written course instructions, which expressly designated the relevant components as an open-book assignment and accompanying discussion, alongside closed-book essays. I completed the work using approved assistive technologies and accommodation-consistent methods. Disability-related work patterns—such as using speech-to-text, text-to-speech, and related accessibility functions that may involve copying and pasting as part of their operation—cannot lawfully be treated as indicia of misconduct. Working efficiently or ahead of schedule within an open-book framework is not a violation of course policy.

The determination at issue reflects a failure to engage in the required interactive process and a failure to understand how my accommodations function in practice. Instead of reviewing my accommodation documentation or meeting with me to clarify the context, accommodation-consistent conduct was reframed as suspicion. This approach converts access into alleged misconduct and produces a sanction unsupported by evidence.

Lawtone-Bowles 075

I respectfully request that the Appeals Committee reassess the F grade based on the absence of any actual second academic-conduct violation and on the proper application of my approved accommodations to the open-book assignment and discussion. I further request disclosure and review of all relevant metadata in a virtual meeting, so that this matter is not decided behind closed doors without direct engagement. I am requesting the opportunity to be heard, to explain my accommodations, and to address the Committee in real time.

For the Committee's reference, I have attached a memorandum analyzing how accommodation-consistent conduct was misconstrued as misconduct and the implications for equal access and compliance under disability-rights standards.

Thank you for your attention. I look forward to confirmation regarding scheduling of a virtual meeting and the review of the complete record.

Sincerely,

Nicole Lawtone-Bowles

Lawtone-Bowles 076



Lawtone-Bowles 077

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 31-1    filed 05/20/26    page 78 of 118

Purdue University Global Mail - Re: Nicole Lawtone-Bowles: Grade appeal received - CL760-01 Community Property

https://mail.google.com/mail/b/AEoRXRSr92mLxIVtO1IH8aEocUwXBjjz56/cR55...ReYILoEIn9mTf/u/0/?ik=fc7832969986&view=pt&search=all&permthid=thread-a%3A453727059417666060607%7Cmsg-f%...

Lawtone-Bowles 078

4/12

2/12/26, 5:50 PM

Purdue University Global Mail - Re: Nicole Lawtone-Bowles: Grade appeal received - CL760-01 Community Property



Lawtone-Bowles 079



Lawtone-Bowles 080



2/12/26, 5:50 PM

Purdue University Global Mail - Re: Nicole Lawtone-Bowles: Grade appeal received - CL760-01 Community Property

https://mail.google.com/mail/b/AEoRXRS-92mLxIVtQ1IH8aEocUwXBjjz56rcR55_ReYlLoEh9mTf/u/0/?ik=fc78329698&view=pt&search=all&permthid=thread-a%3Ar453727056417666060607%7Cmsg-f%...    7/12





Lawtone-Bowles 083



2/12/26, 5:50 PM

Purdue University Global Mail - Re: Nicole Lawtone-Bowles: Grade appeal received - CL760-01 Community Property

https://mail.google.com/mail/u/0/?ik=fc783295698&view=pt&search=all&permthid=thread-a%3Ar4537270594176660607%7Cmsg-f...

Lawtone-Bowles 084                10/12



Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program

Purdue Global Law School (formerly Concord Law School) Juris Doctor August 25, 2026

Pronouns: She/Her
https://adrainsplaceinc.square.site/

https://ssrn.com/author=6965456

https://www.linkedin.com/in/nicole-lawtone-bowles

"Master your mind because a thought can ruin your whole day."

On Wednesday, January 28, 2026, 16:47, PG Provost <provost@purdueglobal.edu> wrote:

Dear Nicole Lawtone-Bowles,

The Office of the Provost has received your Academic Appeal Form. Please be advised that the Office of the Provost cannot process a grade appeal for CL760-01 Community Property, as the failure of the course is the consequence of the second Academic Dishonesty breach of the Student Code of Conduct.

To clarify, your Academic Dishonesty appeal has been received and is currently in progress. A separate email has been sent to you about this matter.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu

Lawtone-Bowles 085



**When Accommodation Becomes Suspicion.docx**
17K

Lawtone-Bowles 086

**PURDUE GLOBAL**

PG Provost <provost@purdueglobal.edu>

---

## Re: Nicole Lawtone-Bowles: Grade appeal received - CL760-01 Community Property

1 message

---

**Dr. Nicole Lawtone-Bowles** <nicolelawtone@aol.com>                    Thu, Jan 29, 2026 at 11:06 PM
To: Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, PG Provost <provost@purdueglobal.edu>, Student Accessibility Services <sas@purdueglobal.edu>

Dear Ms. Navarro,

Attached please find documentation from my treating physicians confirming my disabilities and the accommodations I require. These accommodations include the use of assistive technology, which directly explains my ability to complete coursework efficiently and ahead of schedule.

I was also informed that Victoria Vidt attempted to withdraw her complaint but was told by Shaun Jamison, JD, PhD, Associate Dean of Academics, that doing so was not permitted. I am requesting clarification as to why a complaint cannot be withdrawn once submitted.

For context, Professor Victor himself reached out to me stating:

"Hi Nicole,

I see that you have gone ahead all the way through the entire course in the span of a week. I would like to have a phone call with you to discuss that and see if you have any questions in any other aspects of the class material. Let me know some days and times at work so we can have a brief call."

Subsequently, I received the following notice from Professor Victor:

"Nicole,

I am writing to inform you that I have submitted a formal report to the Office of the Provost regarding your performance in Community Property. This is a standard procedural requirement when certain patterns are identified.

Lawtone-Bowles 087

The report was initiated following a review of your course progress, specifically noting that all coursework including timed essay exams was completed in less than two weeks.

After consulting with the Associate Dean of Academics, I was advised that the speed and nature of this completion requires a formal review to ensure compliance with our institutional academic integrity standards.

The Provost's Office will contact you to discuss the next steps and any potential findings. Once you receive the official communication from their office, you will have the opportunity to appeal the decision.

Please understand that this is a standard procedural requirement when such patterns are identified. I encourage you to wait for the official notification from the Provost's Office for further guidance on the review process."

Given this sequence, I am requesting clarification on how my documented disabilities and approved accommodations were considered before escalating this matter, as well as confirmation that I will be provided the evidence relied upon and an opportunity to be heard before any determination is made.

Respectfully,
Nicole Lawtone-Bowles


Sincerely,
Nicole Lawtone-Bowles
A.A.B., A.A., B.P.S., J.M., Ph.D. (ABD), D.H.A. (ABD)
Juris Doctor 2026
Purdue Global Law School
(formerly Concord Law School)
Pronouns: She/Her
⚇ Adrain's Place Inc.
⚇ SSRN Author Profile
⚇ LinkedIn
*"Master your mind because a thought can ruin your whole day."*


On Wednesday, January 28, 2026 at 04:47:58 PM EST, PG Provost <provost@purdueglobal.edu> wrote:


Dear Nicole Lawtone-Bowles,

Lawtone-Bowles 088

The Office of the Provost has received your Academic Appeal Form. Please be advised that the Office of the Provost cannot process a grade appeal for CL760-01 Community Property, as the failure of the course is the consequence of the second Academic Dishonesty breach of the Student Code of Conduct.

To clarify, your Academic Dishonesty appeal has been received and is currently in progress. A separate email has been sent to you about this matter.

Thank you.

**JoAnna Navarro**
Pronouns: she, her, hers
On behalf of the Office of the Provost

www.PurdueGlobal.edu

---

**8 attachments**



**Nicole Lawtone-Bowles.jpeg**
10K



**vidt_vicki.jpg**
23K

Lawtone-Bowles 089



**victor_brian.png**
106K




**jamison_shaun.jpg**
16K

 **Nicole Lawtone-Bowles Proof of OCD.pdf**
1320K

 **Purdue University Global Grade Report.pdf**
61K

 **Schedule A Letter From Licensed Medical Practitioner Christine Hinke MD April 7 2025.pdf**
1738K

 **Nicole Lawtone-Bowles Proof of OCD.pdf**
1320K

Lawtone-Bowles 090

**PURDUE GLOBAL**

PG Provost <provost@purdueglobal.edu>

## Urgent: Grading Status and Academic Record Concern – CL760 Community Property
1 message

Dr. Nicole Lawtone-Bowles <nicolelawtone@aol.com>
To: "provost@purdueglobal.edu" <provost@purdueglobal.edu>

Good morning,

I should not have zeros in this course, and I will not repeat it. I should be graded based on my work and the rubrics, not because Professor Brian Victor refused my accommodatic I will not tolerate discrimination.

CL760 Community Property

**PURDUE GLOBAL**

Nicole Lawtone-Bowles avatar — Nicole Lawtone-Bowles

Content   Discussions   Assignments   Quizzes   Grades   More Tools   Help

Grades

# Final Calculated Grade

**Points**
168 / 534

**Grade**
31.46 %

| Grade Item | Points | Grade | Comments and Assessments |
|---|---|---|---|
| Module 2 | | 100 % | |
| Module 2 Resource Quiz | 10 / 10 | 100 % | View Quiz Attempts |
| Module 2 Seminar | 2 / 2 | 100 % | Overall Feedback  Good participation in seminar.  View Graded Rubric |
| Module 3 | | 83.33 % | |
| Module 3 Resource Quiz | 8 / 10 | 80 % | View Quiz Attempts |
| Module 3 Seminar | 2 / 2 | 100 % | View Graded Rubric |

Lawtone-Bowles 091

| | | | |
|---|---|---|---|
| Module 4 | | 16.13 % | |
| Module 4 Resource Quiz | 8 / 10 | 80 % | View Quiz Attempts |
| Module 4 Essay Quiz | 0 / 50 | 0 % | View Quiz Attempts |
| Module 4 Seminar | 2 / 2 | 100 % | View Graded Rubric |
| Module 5 | | 71.43 % | |
| Module 5 Module Quiz | 28 / 40 | 70 % | View Quiz Attempts |
| Module 5 Seminar | 2 / 2 | 100 % | View Graded Rubric |
| Module 6 | | 100 % | |
| Module 6 Resource Quiz | 10 / 10 | 100 % | View Quiz Attempts |
| Module 6 Seminar | 2 / 2 | 100 % | View Graded Rubric |
| Module 7 | | 100 % | |
| Module 7 Resource Quiz | 10 / 10 | 100 % | View Quiz Attempts |
| Module 7 Seminar | - / 2 | -% | |
| Module 8 | | 80 % | |
| Module 8 Resource Quiz | 8 / 10 | 80 % | View Quiz Attempts |
| Module 8 Seminar | - / 2 | -% | |
| Module 9 | | 100 % | |
| Module 9 Resource Quiz | 10 / 10 | 100 % | View Quiz Attempts |

Lawtone-Bowles 092

| | Score | Percentage | |
|---|---|---|---|
| Module 9 Seminar | - / 2 | -% | |
| Module 10 | | 28.57 % | |
| Module 10 Module Quiz | 40 / 40 | 100 % | View Quiz Attempts |
| Module 10 Essay Quiz | 0 / 100 | 0 % | View Quiz Attempts |
| Module 10 Seminar | - / 2 | -% | |
| Module 11 | | 3.92 % | |
| Module 11 Discussion | 0 / 44 | 0 % | |
| Module 11 Resource Quiz | 8 / 10 | 80 % | View Quiz Attempts |
| Module 11 Essay Quiz | 0 / 150 | 0 % | View Quiz Attempts |
| Module 11 Seminar | - / 2 | -% | |
| Module 12 | | 80 % | |
| Module 12 Resource Quiz | 8 / 10 | 80 % | View Quiz Attempts |
| Module 12 Seminar | - / 2 | -% | |
| Module 13 | | 100 % | |
| Module 13 Resource Quiz | 10 / 10 | 100 % | View Quiz Attempts |
| Module 13 Seminar | - / 2 | -% | |
| Module 14 | | -% | |
| Module 14 Seminar | - / 2 | < | |

Lawtone-Bowles 093

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 31-1    filed 05/20/26    page 95 of 118



Lawtone-Bowles 094

Re: CL760 Community Property:

Inbox



**Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobaThadlam 15, 9:29 AM**

(13 days ago)

to me

Professor,

Unfortunately, this has been a recurring challenge for me as a student managing a documented disability, including obsessive-compulsive disorder. I am seeking clarification because I am struggling to understand how the course pacing policy is being applied in practice. When I fall behind, I understand and accept that there may be penalties, but I am confused as to why working ahead also appears to result in negative consequences when the course materials state that students may work at their own pace.

I want to be clear that my intention is not to circumvent course requirements, but to manage my workload responsibly in light of my disability-related limitations. The ambiguity surrounding pacing expectations has made it difficult for me to determine how best to stay compliant while also maintaining my health and academic performance. I would appreciate any guidance you can provide regarding how pacing flexibility is meant to function and whether accommodations apply in this context.

Thank you for your time and consideration.

Respectfully,

Nicole Lawtone-Bowles

Nicole Lawtone-Bowles

Certified Law Student

The State Bar of California's Practical Training of Law Students Program

Purdue Global Law School (formerly Concord Law School)

Juris Doctor August 25, 2026

Lawtone-Bowles 095

Re: CL760 Community Property:

Inbox



**Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobahedu>** 15, 9:29 AM

(13 days ago)

to me

Professor,

Unfortunately, this has been a recurring challenge for me as a student managing a documented disability, including obsessive-compulsive disorder. I am seeking clarification because I am struggling to understand how the course pacing policy is being applied in practice. When I fall behind, I understand and accept that there may be penalties, but I am confused as to why working ahead also appears to result in negative consequences when the course materials state that students may work at their own pace.

I want to be clear that my intention is not to circumvent course requirements, but to manage my workload responsibly in light of my disability-related limitations. The ambiguity surrounding pacing expectations has made it difficult for me to determine how best to stay compliant while also maintaining my health and academic performance. I would appreciate any guidance you can provide regarding how pacing flexibility is meant to function and whether accommodations apply in this context.

Thank you for your time and consideration.

Respectfully,

Nicole Lawtone-Bowles


Nicole Lawtone-Bowles

Certified Law Student

The State Bar of California's Practical Training of Law Students Program

Purdue Global Law School (formerly Concord Law School)

Juris Doctor August 25, 2026

Lawtone-Bowles 096

Pronouns: She/Her

Adrains Place Inc

Nicole Lawtone-Bowles SSRN

Nicole Lawtone-Bowles LinkedIn

"Master your mind because a thought can ruin your whole day."

Lawtone-Bowles 097

CL760 Community Property:

Inbox



**Brian Victor**

Wed, Jan 14,
2:31 PM

to me

From: "Brian Victor"
Subject: CL760 Community Property:
To: "Nicole Lawtone-Bowles"
Cc:
Bcc:

Hi Nicole,

I see that you have gone ahead all the way through the entire course in the span of a week. I would like to have a phone call with you to discuss that and see if you have any questions in any other aspects of the class material.
Let me know some days and times at work so we can have a brief call.

Professor Victor

Lawtone-Bowles 098

CL760 Community Property: Question

Inbox



**Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>** Jan 18, 4:06 PM (10 days ago)

to me

Professor,

How does California's community property system, as influenced by Spanish civil law traditions, differ in both theory and practical outcomes from common law marital property systems when it comes to ownership, control, and division of property acquired during marriage?

Nicole Lawtone-Bowles

Certified Law Student

The State Bar of California's Practical Training of Law Students Program

Adrains Place Inc 501(c)(3)

Phi Alpha Delta

Bar Exam Essay Rules

Free Themis Outlines from LexisNexis

TestMax BarMax Bar Prep

National Conference of Bar Examiners
Studicata



**Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>** Jan 18, 4:16 PM (10 days ago)

to me

Professor,

Given that California does not apply community property principles to unmarried cohabitants, how should courts balance freedom of contract under Marvin v. Marvin with equitable doctrines such as constructive and resulting trusts when one partner contributes income to jointly managed finances but title to major assets and retirement accounts remains solely in the other partner's name, particularly upon the titled partner's death?



**Brian Victor <brian.victor@purdueglobal.edu>**                    Mon, Jan 19, 9:02 AM (9 days ago)

to Nicole

It sounds like you are asking what is the difference between equitable distribution states and community property states as a relates to distribution of assets at divorce. We will discuss this in much more detail in module four. However, the differences are basically that in an equitable distribution state, they don't divide assets by what is 50-50, they do it by is equitable and fair, and just. Therefore, the division at time of divorce of marital property may be 50-50, less, or more or whereas in community property states it is going to be 50-50 unless there is a reason it shouldn't be.

Brian A. Victor
Adjunct Professor of Law
Purdue Global Law School
Phone: 858-633-3529
Email: brian.victor@purdueglobal.edu



**Brian Victor <brian.victor@purdueglobal.edu>**                    Mon, Jan 19, 10:05 AM (9 days ago)

Lawtone-Bowles 100

to Nicole

We will study Marvin V Marvin and cohabitants much later this semester. The bottom line is that if there are cohabitants in California that are not married and they buy property then they will be distributed outside of Family court in civil court via contract law. Retirement accounts may be different, because if you are allowed to have a beneficiary as part of the plan, you can name anyone you want as a beneficiary and the court is not going to get involved in that matter

Brian A. Victor
Adjunct Professor of Law
Purdue Global Law School
Phone: 858-633-3529
Email: brian.victor@purdueglobal.edu

**Nicole Lawtone-Bowles**

Mon, Jan 19, 11:40 AM (9 days ago)

to me

Professor Victor,

Thank you for the clarification regarding the distinction between equitable distribution states and community property states, particularly the default 50–50 division in California absent a statutory or equitable basis to deviate. That framework is helpful in situating the discussion.

My remaining question is more narrowly focused on how California reconciles that rigid equal-division rule with Family Code § 2641, which treats education and training acquired during marriage as non-property, yet permits reimbursement based on equitable considerations. Specifically, when community funds were used for one spouse's education but the community realized little or no benefit before separation, is reimbursement best understood as a limited equitable remedy operating within the community property system rather than a deviation from equal division? I am trying to understand whether § 2641

Lawtone-Bowles 101

functions as an exception grounded in equity, or simply as a statutory reimbursement mechanism that leaves the 50–50 property division formally intact.

Thank you again, and I look forward to exploring this further in Module Four.

Respectfully,

Nicole Lawtone-Bowles

**Nicole Lawtone-Bowles**                                                Jan 19, 2026, 11:42 AM (9 days ago)

to me

Professor Victor,

Thank you for the clarification regarding unmarried cohabitants and the distinction between family law and civil remedies in California. Your explanation that property disputes between nonmarried cohabitants are resolved in civil court under contract principles, rather than through community property rules, is very helpful.

I also appreciate the clarification regarding retirement accounts and beneficiary designations, particularly that valid beneficiary elections generally operate outside court involvement. That distinction helps frame how far Marvin-based claims can realistically extend in practice.

Thank you again for the guidance, and I look forward to covering Marvin v. Marvin in greater depth later in the semester.

Respectfully,

Nicole Lawtone-Bowles

CL760 Community Property: Question

Inbox





**Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>** Mar 16, 2026, 2:40 AM (12 days ago)

to martin.pritikin, jfishman@purdueglobal.edu, Monica, Toni, studentrelations, me

Dear Professor Victor,

Thank you for outlining the concerns regarding my coursework while I await further guidance from the Provost. I take academic integrity extremely seriously, and I want to respond clearly and directly to each point you raised so there is no misunderstanding regarding my work, my process, or my accommodations.

First, my completion of the course within six days reflects my documented learning style and disability-related work patterns rather than misconduct. I have obsessive-compulsive disorder, which makes it extremely difficult for me to leave assigned tasks unfinished once they are available. When coursework opens, I work continuously until it is completed, as leaving work undone causes significant cognitive distress. This approach has been consistent throughout my academic career and is not new to this course.

Second, completing multiple modules and assessments within a short timeframe does not mean I only studied for six days. I study continuously and cumulatively through listening to audiobooks, watching recorded lectures, reviewing outlines, and repeated exposure to the material over time. I also intentionally use law school coursework as structured practice for bar examination preparation, which requires writing under severe time constraints. My ability to move quickly reflects prior preparation and repetition, not the absence of study.

Third, my ability to recall rule statements accurately is the result of memorization through repeated exposure and structured review, not artificial intelligence. I do not answer questions without understanding the law, and I rely heavily on pattern recognition developed through extensive practice. That said, recall under exam conditions and recall during spontaneous oral questioning are not the same cognitive task.

Being unable to immediately answer a pension-division question during a phone call does not negate my demonstrated written mastery across multiple assessments. That phone questioning caused me significant distress and PTSD-related symptoms because it occurred after I had finished a full workday while I was driving home in traffic. Under those

circumstances, the questioning was stressful, inappropriate, and should not have occurred.

Fourth, my writing speed, organization, grammar, and spelling are directly related to my approved accommodations. I use Dragon speech-to-text software because of my disability, which allows me to dictate rather than type. Dictation produces fluent, grammatically correct text more quickly than manual typing, particularly for someone trained in structured legal writing. This is not unusual for dictation users and should not be interpreted as evidence of AI use.

Fifth, with respect to file documentation, I did not intentionally withhold information. I draft my work through dictation software integrated with accessibility tools, and I was not previously informed that I would need to preserve or extract metadata from those files. I am willing to cooperate fully with any reasonable request to demonstrate my drafting process going forward, provided such requests account for disability accommodations and assistive technology.

Finally, I am deeply concerned that my pace of work, use of approved accommodations, and demonstrated competence are being treated as indicators of misconduct rather than diligence. I am committed to transparency and fairness, and I respectfully request that my work be evaluated based on evidence rather than assumptions about how long learning "should" take or how a student "should" perform.

I appreciate the opportunity to clarify these issues and remain available to provide any additional information requested through the appropriate academic integrity process.

Sincerely,

Nicole Lawtone-Bowles

Re: CL760 Community Property:

Inbox



**Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>** 2026, 2:57 PM (13 days ago)

to me

Professor,

You only have a problem with how I work because I am a Black woman, specifically a Black disabled woman. I know exactly what this is, because I have been through this before. You are not the first white person who has taken issue with how I complete my work. For some reason, you believe that Black people are incapable or unintelligent, when in reality I am fully capable of reading, understanding, and comprehending complex material. There is nothing you can teach me that I cannot read and comprehend on my own.

Nicole Lawtone-Bowles

Certified Law Student

The State Bar of California's Practical Training of Law Students Program

Purdue Global Law School (formerly Concord Law School)

Juris Doctor August 25, 2026

Pronouns: She/Her

Adrains Place Inc

Nicole Lawtone-Bowles SSRN

Nicole Lawtone-Bowles LinkedIn

"Master your mind because a thought can ruin your whole day."

On Thu, Jan 15, 2026 at 17:52 Brian Victor <Brian.Victor@purdueglobal.edu> wrote:

Nicole,

Based on your question, I sense it would be better to clarify the academic integrity issues while you wait to hear from the provost.

As I mentioned, your rapid progress through the course is what attracted a closer review of your work. In reviewing your work, I determined that it was not credibly your work based on a number of factors:

1. Completion of everything in the course within 6 days.

2. Completion of Module 4 essay quiz on 1/12/26, Module 10 essay quiz on 1/12/26, Module 11 essay quiz on 1/12/26, and Module 11 discussion on 1/12/26, which means you only had 6 days to study for all of the above work.

3. Despite the rapid and unlikely speed through the modules, the essays have detailed and mostly accurate rule statements. Meaning that, in each case, without knowing what the essay was on, you were able to recall the rule statements in detail.

4. Despite being able to rapidly complete each essay; Module 4 in 38 minutes with 575 words, Module 10 in 22 minutes with 760 words, Module 11 in 28 minutes with 896 words, you were able to complete the essays with logical organization and near perfect grammar and spelling. You were able to draft longer essays than most students in about half the time.

5. Despite having near perfect recall of the rules on the essay quizzes, you were unable to satisfactorily demonstrate knowledge of the rule regarding the division of pensions in California which I inquired about during our phone call.

6. Despite likely having drafted the exams in MS Word, you said you did not have any documentation or ability to show the properties of the files to me to demonstrate that you drafted and edited the documents.

I hope this clarifies the concerns.

Professor Victor

CL760 Community Property:

Inbox



**Brian Victor**                                              Thu, Jan 15, 2:52 PM
                                                             (13 days ago)

to me

From: "Brian Victor"
Subject: CL760 Community Property:
To: "Nicole Lawtone-Bowles"
Cc:
Bcc:

Nicole,

Based on your question, I sense it would be better to clarify the academic integrity issues while you wait to hear from the provost.

As I mentioned, your rapid progress through the course is what attracted a closer review of your work. In reviewing your work, I determined that it was not credibly your work based on a number of factors:

1. Completion of everything in the course within 6 days.

2. Completion of Module 4 essay quiz on 1/12/26, Module 10 essay quiz on 1/12/26, Module 11 essay quiz on 1/12/26, and Module 11 discussion on 1/12/26, which means you only had 6 days to study for all of the above work.

3. Despite the rapid and unlikely speed through the modules, the essays have detailed and mostly accurate rule statements. Meaning that, in each case, without knowing what the essay was on, you were able to recall the rule statements in detail.

4. Despite being able to rapidly complete each essay; Module 4 in 38 minutes with 575 words, Module 10 in 22 minutes with 760 words, Module 11 in 28 minutes with 896 words, you were able to complete the essays with logical organization and near perfect grammar and spelling. You were able to draft longer essays than most students in about half the time.

5. Despite having near perfect recall of the rules on the essay quizzes, you were unable to satisfactorily demonstrate knowledge of the rule regarding the division of pensions in California which I inquired about during our phone call.

6. Despite likely having drafted the exams in MS Word, you said you did not have any documentation or ability to show the properties of the files to me to demonstrate that you drafted and edited the documents.

I hope this clarifies the concerns.

Professor Victor

CL760 Community Property:

Inbox



**Brian Victor**

Thu, Jan 15, 9:11 AM
(13 days ago)

to me

From: "Brian Victor"
Subject: CL760 Community Property:
To: "Nicole Lawtone-Bowles"
Cc:
Bcc:

Nicole,

I am writing to inform you that I have submitted a formal report to the Office of the Provost regarding your performance in Community Property. This is a standard procedural requirement when certain patterns are identified.

The report was initiated following a review of your course progress, specifically noting that all coursework including timed essay exams was completed in less than two weeks.

After consulting with the Associate Dean of Academics, I was advised that the speed and nature of this completion requires a formal review to ensure compliance with our institutional academic integrity standards.

The Provost's Office will contact you to discuss the next steps and any potential findings. Once you receive the official communication from their office, you will have the opportunity to appeal the decision.

Please understand that this is a standard procedural requirement when such patterns are identified. I encourage you to wait for the official notification from the Provost's Office for further guidance on the review process.

Professor Victor

**Module 4 Essay Quiz**

Use the three-step source, actions, presumptions (SAP) approach to help you spot the issues and organize your answer. Within the SAP approach, the IRAC writing method is used to discuss each issue and sub-issue raised by the facts. You start by reading the hypothetical below:

Harold purchased 100 shares of ABCDE stock for $20 a share in 1991. He met Wendy in 1994, and they dated for three years. In 1997, Harold and Wendy were married in Florida. At the time of their marriage, ABCDE stock was worth $40 a share.

Harold and Wendy had two children, James and Tania. Wendy was an accountant, and she and Harold decided Wendy would stop working and raise the children. Harold was a loan officer and continued to work while Wendy was responsible for taking the children to all of their activities, helping them with homework, and taking them to medical appointments.

In 2005, Harold sold 20 shares of ABCDE stock at $50 a share for $1,000. He then purchased 50 shares of Acument stock at $20 a share. Instead of using the $1,000 from his sale of ABCDE stock, he used his business earnings for the week to purchase it.

In 2015, Wendy decided she was tired of being married to Harold since he never helped out with the children, and she filed for divorce in Florida. Wendy is asking the court to provide her with the $1,000 Harold sold ABCDE stock for as well as 50% of the ABCDE stock, and she is requesting the entire Acument stock.

 What are Harold and Wendy's respective rights in the following?

1.  The ABCDE stock, which is now worth $40,000? Discuss.

2.  The Acument stock, which is now worth $20,000? Discuss.

Answer according to equitable distribution law.

1. ABCDE Stock (Now Worth $40,000)

Source

Harold acquired the 100 shares of ABCDE stock in 1991, several years before his marriage to Wendy in 1997. Because the stock was acquired prior to marriage, it is initially classified as nonmarital property under equitable distribution law. The increase in value of the stock before marriage does not alter its classification, as premarital appreciation remains nonmarital.

Actions

During the marriage, Harold sold 20 shares of ABCDE stock in 2005 for $1,000, while retaining the remaining 80 shares. There is no indication that marital funds were invested into the ABCDE stock or that Wendy directly participated in managing or enhancing the stock as an asset. Wendy's contributions during the marriage were primarily domestic and caretaking in nature, which supported the marital household but did not directly affect the stock's performance.

Presumptions

Nonmarital property is presumed to remain nonmarital unless it is transformed through commingling, transmutation, or active appreciation attributable to marital efforts. Passive market-driven appreciation remains nonmarital. Here, there is no evidence that Harold's labor as a loan officer or Wendy's domestic contributions caused active appreciation of the ABCDE stock.

Conclusion as to ABCDE Stock

The ABCDE stock retains its nonmarital character because it was acquired before marriage and was not altered by marital actions. Wendy is therefore not entitled to 50% of the remaining ABCDE stock now valued at $40,000. The $1,000 proceeds from the sale of 20 shares likewise retain their nonmarital character because they are directly traceable to Harold's premarital asset and were not commingled or converted. Accordingly, Wendy has no ownership interest in either the remaining ABCDE stock or the sale proceeds, though her contributions may be considered elsewhere in equitable distribution.

2. Acument Stock (Now Worth $20,000)

Source

The Acument stock was acquired in 2005, well after the parties were married. Property acquired during marriage is presumptively marital property under equitable distribution principles. Although Harold had nonmarital funds available from the ABCDE stock sale, those funds were not used to acquire the Acument stock.

Actions

Harold used his business earnings for the week to purchase 50 shares of Acument stock at $20 per share. Income earned by either spouse during marriage is marital property, regardless of which spouse earned it. As a result, the funds used to purchase the Acument stock were marital in nature.

Presumptions

There is a strong presumption that property acquired during marriage with marital earnings is marital property. That presumption is not rebutted here because Harold cannot trace the purchase to a nonmarital source. There is also no evidence of an agreement designating the Acument stock as Harold's separate property.

Conclusion as to Acument Stock

The Acument stock is entirely marital property and subject to equitable distribution. Wendy is therefore entitled to an equitable share of its $20,000 value. In determining the appropriate division, the court may consider Wendy's decision to leave her accounting career, her role as primary caregiver, and Harold's limited involvement in childcare. While Wendy's request for the entire Acument stock may be excessive, the court could reasonably award her at least 50%, and potentially more, depending on its assessment of fairness.

Overall Conclusion

Harold retains full ownership of the ABCDE stock and the $1,000 proceeds as nonmarital property. The Acument stock is marital property, and Wendy is entitled to an equitable portion based on the

circumstances of the marriage. The court's ultimate division will balance property classification with fairness considerations inherent in equitable distribution law.

**Module 10 Essay Quiz**

Use the three-step source, actions, presumptions (SAP) approach to help you spot the issues and organize your answer. Within the SAP approach, the IRAC writing method is used to discuss each issue and sub-issue raised by the facts. You start by reading the hypothetical below:

Hap and Winnie were married in Los Angeles in 2000. Hap was working as a lawyer in a large law firm at the time. Winnie had been working as Hap's secretary in the same law firm, and in 2000, at Hap's encouragement, she returned to school to get a law degree. Winnie graduated in 2004, passed the bar exam that same year, and by 2005, the couple opened their own firm, Hap taking several of his biggest clients with him.

In 2001, Winnie perfected and sold a computer program that she had been working on for the prior two years, which was of great use to law firm lawyers and was thus quite profitable.

The couple lived from the time they were married until they were divorced (in December 2007) in the large Los Angeles home Hap bought in 1999, though they often worked remotely from the condo they bought in 2002 in Ventura, CA.

What are Hap's and Winnie's respective rights to the following?

1.  Winnie's computer program profits

2.  The couple's law practice

3.  The Los Angeles house

4.  The Ventura condo

5.  Hap's claim to reimbursement of expenses for Winnie's legal education

Discuss each and answer according to California law.

1. Winnie's Computer Program Profits

Source.
Winnie began working on the computer program two years before the marriage, meaning the initial idea and development originated before marriage. However, the program was perfected and sold in 2001, after the marriage began. Intellectual property is characterized by when the right to receive income arises, not merely when the idea is conceived.

Actions.
Winnie continued development during marriage and completed the program during marriage, at which point it became marketable and generated profits. The labor, skill, and effort expended during marriage are presumptively community efforts. The profits arose because the program was finalized, sold, and exploited during marriage.

Presumptions and Conclusion.
Property acquired during marriage is presumed community property unless traceable to a separate source. Although the idea predated marriage, the profits were generated by substantial community labor during marriage. Accordingly, the computer program itself may be treated as a mixed asset,

Lawtone-Bowles 113

but the profits generated during marriage are community property, to be divided equally between Hap and Winnie upon divorce.

## 2. The Couple's Law Practice

Source.
The law firm was opened in 2005, well after the marriage began. Any business formed during marriage is presumptively community property unless established with separate property and insulated from community efforts.

Actions.
Hap contributed existing clients from his prior employment, and both spouses worked in the firm. Winnie contributed her labor as a newly licensed attorney, and Hap contributed his professional reputation, experience, and client relationships. Both spouses' time, skill, and effort during marriage were devoted to the practice.

Presumptions and Conclusion.
Because the firm was created during marriage and operated using community labor, it is community property. Even if Hap argues that some client relationships predated marriage, the income and goodwill generated during marriage are attributable to community efforts. The law practice, including any goodwill developed during marriage, is subject to equal division.

## 3. The Los Angeles House

Source.
Hap purchased the Los Angeles house in 1999, before marriage. Property acquired before marriage is separate property by source.

Actions.
The couple lived in the home throughout the marriage. There are no facts indicating that community funds were used to pay down principal on a mortgage, nor that title was changed. Mere use of separate property as the family residence does not change its character.

Presumptions and Conclusion.
The house remains Hap's separate property. However, if community funds were used to reduce principal on a purchase-money mortgage, the community would acquire a pro rata ownership interest under Moore. Absent such facts, the community has no ownership interest, though it could potentially claim reimbursement if community funds were used for principal reduction. Based on the facts given, Hap retains sole ownership.

## 4. The Ventura Condo

Source.
The Ventura condo was purchased in 2002, during the marriage. Property acquired during marriage is presumptively community property.

Actions.
The condo was used by both spouses and purchased while the marital community was intact.

There is no indication that separate property funds were used for the purchase or that title was taken in a manner rebutting the community presumption.

Presumptions and Conclusion.
Because the condo was acquired during marriage and no tracing to separate property is provided, it is community property, to be divided equally between Hap and Winnie at divorce.

5. Hap's Claim for Reimbursement of Winnie's Legal Education

Source.
Winnie pursued her law degree during marriage, beginning in 2000 and completing it in 2004. Educational degrees and professional licenses are not property and are not divisible at divorce.

Actions.
Community funds were presumably used to pay for Winnie's tuition and related educational expenses. Winnie obtained the degree during marriage and shortly thereafter used it to practice law in the community firm.

Presumptions and Conclusion.
Under California law, the exclusive remedy for a supporting spouse is reimbursement to the community for community contributions to education that substantially enhance earning capacity. Hap may claim reimbursement of community funds used for tuition, fees, books, and related costs, with interest. However, reimbursement may be reduced or eliminated if the community has substantially benefited from the education. Because Winnie practiced law for several years before divorce and contributed to the community law practice, a court may find that the community substantially benefited, potentially reducing or eliminating reimbursement. The claim is therefore available but subject to reduction based on the community benefit.

Overall Conclusion

Winnie's computer program profits: Community property to the extent generated during marriage.

The law practice: Community property, including goodwill developed during marriage.

Los Angeles house: Hap's separate property, absent evidence of community principal payments.

Ventura condo: Community property, divided equally.

Reimbursement for legal education: Available in principle but subject to reduction if the community substantially benefited.

**Module 11 Essay Quiz**

Use the three-step source, actions, presumptions (SAP) approach as it will help you spot the issues and organize your answer. Within the SAP approach, the IRAC writing method is used to discuss each issue and sub-issue raised by the facts. You start by reading the hypothetical below:

All of the following events occurred in California.

In 2000, Harriet's grandfather died and left her a 100-acre parcel known as Goldenacre. Goldenacre was undeveloped land located in a rural area. In 2002, Harriet met Walter through an online dating service. In 2005, Harriet and Walter were married.

Harriet and Walter have been living on Harriet's earnings from her job as a college professor. Walter's earnings from his job as a mechanic for Urban Motors were placed in a savings account in his name alone.

In 2008, Walter's uncle, who was also a mechanic, died and left him ownership of his auto repair shop. Walter immediately quit his job at Urban Motors and began sole management of the auto repair shop. Because of Walter's expertise, the auto repair shop flourished.

In 2010, Harriet contracted in her name alone with a builder to construct a cabin on Goldenacre. Harriet paid the builder $1,000 per month for 10 months from her earnings.

In 2013, Harriet and Walter decided to separate. An independent analysis determined that Goldenacre was worth $100,000 in its undeveloped state and that the cabin built in 2010 had increased the value of Goldenacre by $25,000. The analysis also determined that the auto repair shop was worth $50,000 in 2008 and is now worth $100,000.

What are Harriet's and Walter's respective rights in:

1. Goldenacre? Discuss.

2. The savings account? Discuss.

3. The auto repair shop? Discuss.

Answer according to California law.

I. Goldenacre

Goldenacre was acquired by Harriet in 2000 through inheritance from her grandfather, which establishes its character by source as Harriet's separate property. Property acquired by gift or inheritance before or during marriage is separate property, and this characterization is fixed at acquisition. Walter has no ownership interest in Goldenacre itself because he did not contribute separate property to its acquisition, and no transmutation occurred. The community property presumption does not apply because the land was not acquired during marriage by onerous title. Accordingly, Goldenacre remains Harriet's separate property unless community actions give rise to reimbursement or apportionment rights.

The construction of the cabin in 2010 raises an actions issue involving community property used to improve one spouse's separate real property. Harriet paid the builder $1,000 per month for ten

months using her earnings, and earnings during marriage are community property. When community funds are used to improve one spouse's separate real property, the community does not acquire an ownership interest due to the law of fixtures. Instead, the community is entitled to reimbursement.

Under California law, when community property improves separate property, the community is entitled to reimbursement for either the amount of community funds expended or the increased value attributable to the improvement, but not both. Here, the community paid $10,000 toward construction, and the cabin increased Goldenacre's value by $25,000. The community is therefore entitled to reimbursement of $25,000, the greater amount. That reimbursement is community property and must be divided equally between Harriet and Walter, giving each spouse $12,500.

Thus, Goldenacre itself remains Harriet's separate property, now valued at $125,000, subject to a $25,000 community reimbursement claim. After reimbursement, Harriet retains the land and cabin as her separate property, while each spouse receives $12,500 as their respective shares of the community reimbursement.

II. The Savings Account

Walter's earnings from his job at Urban Motors were placed into a savings account titled in his name alone. Earnings during marriage are presumptively community property under California law, regardless of which spouse earned them or how they are titled. Title in one spouse's name alone does not rebut the community property presumption for earnings. There is no evidence that Walter's earnings were separate property, nor that they were traceable to a separate source.

The fact that the savings account is in Walter's name alone is relevant only to management and control, not characterization. California Financial Code provisions limit access to accounts titled in one spouse's name, but they do not alter the underlying character of the funds. No evidence suggests a valid transmutation converting the earnings to Walter's separate property, as no express written declaration exists.

Accordingly, the savings account is community property in its entirety. Upon separation, Harriet and Walter are each entitled to one-half of the account balance, regardless of Walter's unilateral control during marriage.

III. The Auto Repair Shop

Walter acquired ownership of the auto repair shop in 2008 by inheritance from his uncle. By source, the shop is Walter's separate property because it was acquired by inheritance during marriage. Harriet has no ownership interest in the business based on acquisition alone. However, the significant increase in value of the business during marriage raises an actions issue involving value enhancement of a separate property business through community effort.

After acquiring the shop, Walter quit his job and devoted his full time, skill, and labor to managing the business. Under California law, the time, skill, and efforts of a spouse during marriage are community property. When a separate property business increases in value during marriage due to the owner-spouse's efforts, the business becomes a mixed asset, and the increased value must be apportioned between separate and community property.