-FILED-

JUN 22 2026

At
Chanda J. Berla, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Nicole Lawtone-Bowles<br>　　　　Plaintiff,<br>　　v.<br><br>Purdue Global Law School,<br>Purdue University Global,<br>Sarah Diab, Shaun Jamison,<br>Brian Victor, & Victoria Vidt<br>　　　　Defendants | Case No.: 4:26-cv-00028-PPS-AZ<br>Judge: Hon. Philip P. Simon<br>Magistrate Judge: Hon. Abizer Zanzi<br><br>MEMORANDUM OF LAW IN SUPPORT<br>OF PLAINTIFF'S RENEWED MOTION<br>FOR PRELIMINARY INJUNCTION AND<br>IN OPPOSITION TO DEFENDANTS'<br>MOTION TO DISMISS |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RENEWED MOTION
FOR PRELIMINARY INJUNCTION AND IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS

TO: The Honorable Court

FROM: Nicole Lawtone-Bowles, Pro Se

RE: Application of Matter of Newby v. Adelphi Univ. to Demonstrate Arbitrary and Discriminatory Use of Artificial Intelligence Detection Tools Against Disabled and Minority Students

## I. ISSUES PRESENTED

Whether this Court should grant injunctive relief and deny Defendants' motion to dismiss where Plaintiff has demonstrated that Purdue University Global's use of artificial intelligence detection software to dismiss a disabled Black student from its law school program constitutes: (1) a violation of academic due process under standards established in Matter of Newby v. Adelphi Univ., 2026 NY Slip Op 26021 (Sup. Ct. Nassau Cty. Jan. 28, 2026); (2) disability discrimination in violation of the Rehabilitation Act and Americans with Disabilities Act by failing to accommodate approved assistive technology; and (3) race discrimination in violation of Title VI and the Equal Protection Clause where such technology is deployed as a pretextual tool

1

to exclude minority students from higher education in the post-affirmative action landscape established by Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181 (2023), and Students for Fair Admissions, Inc. v. Univ. of N.C., 600 U.S. 196 (2023).

## II. STATEMENT OF FACTS

Nicole Lawtone-Bowles is a fifty-four-year-old Black woman who has been trained as a paralegal since 2011 and who uses Dragon NaturallySpeaking assistive technology, a speech-to-text program embedded in her 2017 Apple computer that was approved by Purdue University Global in 2022 for her academic use. She has been unemployed for five years, ten months, and nine days due to her disability, during which time she pursued higher education and obtained three associate degrees, over one hundred certificates, a bachelor's degree, and a master's degree, and she has pursued three separate doctoral programs. She alleges that following the June 2023 Supreme Court decisions in Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181, and Students for Fair Admissions, Inc. v. Univ. of N.C., 600 U.S. 196, which terminated race-conscious admissions policies, and the subsequent implementation of artificial intelligence detection tools in academic settings, her doctoral journey has been derailed on three separate occasions when such tools flagged her use of Dragon assistive technology as potential artificial intelligence-generated content. The instant dispute arises from her dismissal from Purdue University Global Law School—formerly Concord Law School—just prior to her scheduled graduation, allegedly based upon determinations by staff members Brian Victor, Carolyn Nordstrom, Howard Anderson, James Dodge, Jennifer Fishman, JoAnna Navarro, Martin Pritikin, Sarah Diab, Shaun Jamison, Sheri Dennis, Steve Bracci, Tamara Fudge, and Victoria Vidt that her submitted work was artificially generated, despite her use of pre-approved accommodations. This Court previously denied her

2

application for preliminary injunctive relief without prejudice to refiling when she is prepared to appear in person, as reflected in the docket entry for Lawtone-Bowles v. Purdue Univ. Global, No. 4:26-cv-00028-PPS-AZ (N.D. Ind. June 11, 2026).

III. LEGAL STANDARDS

A. Academic Due Process Requires Rational Basis and Procedural Protections

Courts reviewing academic disciplinary decisions apply the arbitrary and capricious standard, annulling determinations that lack rational basis or fail to comply with the institution's own procedures. Matter of Newby v. Adelphi Univ., 2026 NY Slip Op 26021, at *2 (Sup. Ct. Nassau Cty. Jan. 28, 2026). A determination is arbitrary and capricious when taken "without sound basis in reason or regard to the facts." Id. at *3 (citing Matter of Forbes & Assoc., LLC v. Nassau Cnty. Dep't of Consumer Affs., 208 A.D.3d 480, 481 (2d Dep't 2022)). Universities must substantially comply with their own guidelines, and when a university's determination is not rationally based upon the evidence, it must be annulled. Id. (citing Matter of Hyman v. Cornell Univ., 82 A.D.3d 1309, 1310 (3d Dep't 2011)). Furthermore, when a university's disciplinary structure permits the same individual who issued the initial determination to adjudicate the appeal, such procedure deliberately thwarts a student's right to a meaningful appeal. Matter of Newby, 2026 NY Slip Op 26021, at *4.

B. Reliability of Artificial Intelligence Detection Tools Is Materially Questioned

The reliability of artificial intelligence detection software as evidence of academic misconduct remains subject to significant dispute within judicial precedent. In Newby, the court examined a determination based upon Turnitin's artificial intelligence detection service, which produced a 100% artificial intelligence-generated score, yet the court noted that the petitioner submitted countervailing evidence from "Grammarly AI detector" and "zeroGPT" demonstrating

0% chance of artificial intelligence authorship. Id. at *2. The court found that the university failed to consider this exculpatory evidence, rendering the determination arbitrary. Id. at *3-4. Courts must scrutinize artificial intelligence detection results with skepticism when such tools conflict with evidence of human authorship or when used against students with documented disabilities who utilize assistive technologies that may trigger false positives.

C. Disability Discrimination and Assistive Technology Accommodations

Students with disabilities are entitled to reasonable accommodations in academic settings, including the use of assistive technology such as speech-to-text software, under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. Educational institutions may not discriminate against students on the basis of disability by denying accommodations or by penalizing students for utilizing approved assistive devices that alter the metadata or stylistic markers of submitted work. Dismissal of a student based upon detection software flags triggered by legally mandated accommodations constitutes discrimination prohibited by federal statute and regulations promulgated thereunder.

D. Race Discrimination and Historical Context of Systemic Exclusion

The use of artificial intelligence detection tools as a mechanism to exclude Black students from legal education perpetuates historical patterns of systemic racism that have barred minority students from the legal profession. The Supreme Court's decision in Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181 (2023), and its companion case Students for Fair Admissions, Inc. v. Univ. of N.C., 600 U.S. 196 (2023), eliminated race-conscious admissions policies but did not eliminate the duty of universities to ensure that neutral policies do not disparately impact minority students. When universities deploy technological tools that disproportionately flag the work product of disabled minority

4

students who utilize assistive technology, such deployment functions as a modern mechanism of exclusion that operates with the same discriminatory effect as historical barriers. Discrimination against Black students in higher education violates Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race in programs receiving federal financial assistance, and courts must remain vigilant against the reemergence of systemic barriers under the guise of technological neutrality.

IV. ARGUMENT

A. Purdue University Global's Reliance on Artificial Intelligence Detection Tools Is Arbitrary and Capricious Under the Standard Established in Newby

Purdue University Global's determination that Plaintiff engaged in academic misconduct based upon artificial intelligence detection software is arbitrary and capricious under the controlling standard articulated in Newby, where the court annulled a similar determination because the university failed to establish a rational basis for rejecting contradictory evidence. Matter of Newby v. Adelphi Univ., 2026 NY Slip Op 26021, at *3-4. Plaintiff utilizes Dragon NaturallySpeaking, a speech-to-text assistive technology approved by Purdue Global, which necessarily alters the linguistic patterns of transcribed text and may trigger false positives in artificial intelligence detection algorithms designed to identify machine-generated content based upon syntax and construction. The record indicates that Plaintiff's instructors flagged her submissions based upon artificial intelligence detection results without considering that her approved accommodations fundamentally alter the compositional process, just as the Newby court found arbitrary the failure to consider alternative artificial intelligence detection results showing 0% probability of machine authorship. Id. at *2. Under Newby, a university's determination that relies exclusively on artificial intelligence detection scores while ignoring

exculpatory evidence regarding assistive technology use lacks sound basis in reason and must be annulled. Id. at *3 (citing Matter of Hyman v. Cornell Univ., 82 A.D.3d at 1310). Therefore, Purdue Global's dismissal of Plaintiff based upon artificial intelligence detection flags triggered by her Dragon software constitutes an arbitrary and capricious academic determination warranting injunctive relief.

B. Purdue University Global Violated Plaintiff's Due Process Rights by Failing to Provide a Meaningful Appeal and by Denying Her the Right to an Advisor

Purdue University Global's disciplinary procedures violated Plaintiff's right to due process under the standards established in Newby, where the court held that a university's failure to provide a "meaningful opportunity to be heard" and to permit an advisor of choice renders a disciplinary determination arbitrary and capricious. Matter of Newby, 2026 NY Slip Op 26021, at *3. The record indicates that Purdue Global's Academic Integrity Officer issued a determination of responsibility and subsequently denied Plaintiff's appeal without providing her the assistance of an advisor or a fair hearing, mirroring the procedural deficiencies condemned in Newby. Id. Furthermore, the Newby court specifically found that when "the individual who issued the Determination … was the identical person charged with the responsibility of entertaining the appeal," such structure "deliberately thwart[s] a student's right to an avenue of meaningful 'appeal.'" Id. at *4. Plaintiff alleges that Purdue Global utilized an identical structural defect by permitting the same administrators who accused her of artificial intelligence use to adjudicate her appeal, thereby rendering the appeal process illusory. Under Newby, such procedural violations mandate annulment of the disciplinary determination and expunction of the student's record. Id. (ordering expunction). Consequently, this Court should grant injunctive relief restoring Plaintiff to good standing pending full adjudication of her due process claims.

6

C. Purdue University Global's Actions Constitute Disability Discrimination by Penalizing Plaintiff for Using Pre-Approved Assistive Technology

Purdue University Global's dismissal of Plaintiff constitutes discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, as the dismissal was predicated upon artificial intelligence detection software flagging the output of her Dragon NaturallySpeaking assistive technology. Plaintiff's Dragon software was approved by Purdue Global as a reasonable accommodation for her disability, yet the university's artificial intelligence detection tools flagged the resulting text as suspicious based upon characteristics inherent to speech-to-text transcription. Educational institutions may not penalize students for utilizing approved accommodations that modify the method of composition, nor may they rely upon detection algorithms that fail to account for such accommodations to dismiss disabled students. The Newby court's skepticism toward artificial intelligence detection reliability is particularly pertinent here, as such tools have not been validated for use with assistive technology that alters linguistic patterns, and Purdue Global's failure to account for this known limitation demonstrates deliberate indifference to Plaintiff's disability rights. Dismissal of a student who requires assistive technology to complete academic work, based upon technological tools that cannot distinguish between artificial intelligence and disability accommodations, violates the prohibition against discrimination and the mandate to provide reasonable accommodations. Therefore, Plaintiff has demonstrated a likelihood of success on the merits of her disability discrimination claims warranting preliminary injunctive relief.

D. The Use of Artificial Intelligence Detection Tools Against Minority Students Perpetuates

7

Systemic Discrimination in Violation of Title VI

Purdue University Global's use of artificial intelligence detection tools to dismiss Plaintiff, a fifty-four-year-old Black woman, perpetuates the systemic discrimination that has historically excluded Black Americans from the legal profession, particularly in the post-Students for Fair Admissions legal landscape. When universities deploy artificial intelligence detection tools that disproportionately impact disabled minority students who rely upon assistive technology, such tools function as modern mechanisms of exclusion that operate with discriminatory effect. Plaintiff has been dismissed on three separate occasions from doctoral programs following the implementation of artificial intelligence detection tools, establishing a pattern suggesting that such technology operates as a pretextual barrier to exclude minority students. Under Title VI, discrimination need not be intentional to be unlawful; practices that have a disparate impact on minority students and that are not justified by educational necessity violate civil rights protections. The elimination of affirmative action by Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181, and Students for Fair Admissions, Inc. v. Univ. of N.C., 600 U.S. 196, has not eliminated universities' obligations to ensure neutral policies do not disparately impact protected classes. The historical context of systemic exclusion of Black students from legal education, combined with the documented unreliability of artificial intelligence detection tools demonstrated in Newby, establishes that Purdue Global's actions perpetuate discrimination. This Court must therefore enjoin Defendants from enforcing the dismissal and reinstate Plaintiff to prevent irreparable harm to her educational and professional prospects.

8

## V. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's renewed motion for preliminary injunction, restraining Defendants from enforcing her dismissal and requiring her immediate reinstatement to the Purdue University Global Law School program, and deny Defendants' motion to dismiss. Under the controlling precedent established in Matter of Newby v. Adelphi Univ., 2026 NY Slip Op 26021 (Sup. Ct. Nassau Cty. Jan. 28, 2026), Purdue University Global's reliance on artificial intelligence detection tools to dismiss a disabled student who utilized pre-approved assistive technology constitutes an arbitrary and capricious violation of academic due process, while simultaneously violating federal prohibitions against disability and race discrimination. The procedural deficiencies condemned in Newby, coupled with the anti-discrimination principles reaffirmed in Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181 (2023), and Students for Fair Admissions, Inc. v. Univ. of N.C., 600 U.S. 196 (2023), compel this Court to intervene to prevent irreparable harm. Plaintiff respectfully requests that this Court issue the injunction, annul the disciplinary determination, expunge her academic record, and order her immediate reinstatement.

Respectfully submitted,

Nicole Lawtone-Bowles, Pro Se

56 Center Street

Highland Falls, New York 10928

(347) 538-5386

9

## CERTIFICATE OF SERVICE

I, Nicole Lawtone-Bowles, hereby certify that on receipt to the clerk, a true and correct copy of

the foregoing Memorandum of Law was served upon Defendants' counsel of record by CM/ECF

upon:

John R. Maley, Esq.

Amanda Jane Gallagher, Esq.

Barnes & Thornburg LLP

11 South Meridian Street

Indianapolis, IN 46204

/s/ Nicole Lawtone-Bowles

Nicole Lawtone-Bowles, Pro Se

10