UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

NICOLE LAWTONE-BOWLES,                    )
                                          )
            *Plaintiff,*                   )
      v.                                  ) No. 4:26-cv-00028-PPS-AZ
                                          )
PURDUE UNIVERSITY GLOBAL, *et al,*         )
                                          )
            *Defendants.*                  )

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiff's opposition confirms the Complaint's central flaw: it treats two different issues as though they are one. They are not. Purdue approved Plaintiff's use of speech-to-text technology. It later concluded, after multiple reports, hearings, and levels of academic review, that Plaintiff violated the Law School's academic integrity standards. Those are separate decisions. The Complaint itself alleges that Purdue considered Plaintiff's explanation that Dragon software accounted for the issues identified in her work and rejected it. Plaintiff may disagree with that academic judgment, but the question is not whether Purdue reached the correct decision. It is whether Purdue honestly exercised its academic judgment. The Complaint pleads nothing suggesting that Purdue disciplined Plaintiff for using an approved assistive technology, failed to exercise professional judgment, or substantially departed from accepted academic norms. It instead alleges that Purdue accommodated Plaintiff, investigated repeated academic integrity concerns, and ultimately dismissed her only after concluding those concerns remained unresolved. That is precisely the type of academic decision to which courts owe substantial deference.

In short, the Complaint alleges an accommodated student who was later dismissed for academic misconduct—not a student dismissed because she requested or used an accommodation. That is simply not an ADA claim, and Plaintiff's Complaint should be dismissed in its entirety.

1

### I.    Plaintiff Has Not Plausibly Alleged That Purdue Dismissed Her Because of Her Disability or Accommodation.

As an initial matter, Plaintiff's opposition never bridges the gap between an approved accommodation and an adverse action taken because of that accommodation. Instead, Plaintiff assumes that because she attributed the characteristics of her work to Dragon software, Purdue was required to accept that explanation. The law imposes no such requirement.

The Supreme Court has long recognized that courts owe substantial deference to academic judgments because they involve "an expert evaluation of cumulative information" and the exercise of professional judgment. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 90 (1978); *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). Although the Seventh Circuit has explained that *Ewing*'s "substantial departure from accepted academic norms" standard arises in the substantive due process context, it has made equally clear that, in ADA cases, the relevant question remains whether the university honestly exercised its academic judgment—not whether the plaintiff believes the decision was mistaken or unfair. *Novak v. Bd. of Trs. of S. Illinois Univ.*, 777 F.3d 966, 976–77 (7th Cir. 2015); *Royan v. Chicago State Univ.*, 145 F.4th 681, 691–92 (7th Cir. 2025). A plaintiff must plead facts supporting a plausible inference that the university's stated academic reason was dishonest—a "phony reason" masking discrimination—not merely wrong. *Royan*, 145 F.4th at 691–92; *Novak*, 777 F.3d at 976–77.

That is not what Plaintiff alleges. The Complaint alleges that Purdue considered Plaintiff's explanation that Dragon software accounted for the perceived irregularities in her work and rejected it after multiple reports, disciplinary proceedings, and layers of academic review. Those allegations describe the exercise of academic judgment, not disability discrimination. Plaintiff may disagree with Purdue's conclusions, but disagreement does not plausibly suggest that Purdue acted dishonestly or abandoned its professional judgment. *See Novak*, 777 F.3d at 976–77 (alleged flaws in faculty methodology show, at most, possible error—not pretext); *Royan*, 145 F.4th at 692 (same).

Plaintiff's theory also misunderstands the scope of a reasonable accommodation. Purdue approved Plaintiff's use of speech-to-text technology. It did not waive the Law School's academic integrity standards or its requirement that students independently author their work. The Rehabilitation Act and ADA protect qualified students from discrimination; they do not exempt students from meeting legitimate academic standards or require universities to lower those standards as an accommodation. *Royan*, 145 F.4th at 684; *Khan v. Midwestern Univ.*, 879 F.3d 838, 844–45 (7th Cir. 2018), *as amended on denial of reh'g* (Feb. 26, 2018); *Klene v. Trs. of Indiana Univ.*, 413 F. App'x 919, 921 (7th Cir. 2011). Nor does the ADA allow a court to substitute its judgment for the faculty's on whether submitted work satisfied those standards. *Anderson v. Univ. of Wisconsin*, 841 F.2d 737, 741–42 (7th Cir. 1988).

The Complaint also undermines any inference of discriminatory motive. Plaintiff alleges that Purdue approved her use of speech-to-text technology, permitted her to use it throughout her enrollment, considered her explanation during the disciplinary process, and dismissed her only after repeated findings of academic misconduct. The Seventh Circuit has recognized that a university's repeated accommodation of a student's disability weighs strongly against an inference that a later academic dismissal was motivated by disability discrimination. *Royan*, 145 F.4th at 692. The Complaint therefore alleges exactly what those cases contemplate: a university that accommodated a student's disability while separately enforcing its academic standards. That is not disability discrimination.

## II.     Purdue's Decision-Making Process Was Not a Substantial Departure from Accepted Academic Norms.

Even under Plaintiff's articulation of the governing standard, the Complaint falls well short. Plaintiff identifies no facts suggesting that Purdue abandoned its academic policies, dispensed with professional judgment, or otherwise acted outside accepted academic norms. Instead, the Complaint alleges that Purdue followed its ordinary academic integrity process from beginning to end.

According to the Complaint, multiple faculty members independently raised academic integrity concerns. Purdue notified Plaintiff of those concerns, conducted disciplinary proceedings, permitted Plaintiff to explain that Dragon software accounted for the perceived irregularities, reviewed those explanations through multiple levels of academic review, and imposed progressively greater sanctions only after repeated findings of academic misconduct. Those allegations reflect an institution applying its academic standards—not departing from them.

As discussed above, a substantial departure from accepted academic norms is not established merely because a student disagrees with the faculty's conclusions or believes the faculty should have credited a different explanation. *See Ewing*, 474 U.S. at 225; *Novak*, 777 F.3d at 976–77. The Complaint alleges no facts suggesting Purdue ignored its own procedures, applied different standards to similarly situated students, or reached its decision for reasons unrelated to Plaintiff's academic work. At most, Plaintiff alleges that Purdue should have accepted her explanation for the characteristics of her submissions. That allegation challenges the correctness of Purdue's academic judgment, not whether Purdue exercised professional judgment at all.

Plaintiff's cited authorities do not compel a different result. The cases that Plaintiff relies on involve allegations that an institution disregarded its own procedures, failed to afford basic process, or otherwise acted arbitrarily. By contrast, the Complaint here alleges repeated notice, multiple opportunities to respond, committee review, and progressive discipline under Purdue's Academic Dishonesty Policy. Those allegations are fundamentally inconsistent with Plaintiff's assertion that Purdue substantially departed from accepted academic norms.

In the end, Plaintiff asks the Court to do what the Seventh Circuit has instructed courts not to do: second-guess the faculty's academic judgment because Plaintiff believes her explanation should have prevailed. The Complaint does not plausibly allege that Purdue abandoned accepted academic norms or failed to exercise professional judgment. It therefore does not state a claim.

### III.    Plaintiff's Unpleaded Claims Cannot Proceed

Plaintiff's final argument that Purdue failed to address purported Title VI and § 1981 claims is without merit because Plaintiff never pleaded those claims. Purdue reasonably construed the Complaint as asserting a single disability-discrimination claim under the ADA because that is the only claim the factual allegations fairly support. The Complaint does not identify Title VI, § 1981, or § 1983 as causes of action, nor does it allege facts sufficient to state any such claim. It alleges no intentional race discrimination, no similarly situated comparator outside Plaintiff's protected class who was treated more favorably, no exclusion from a federally funded program because of race, no deprivation of any constitutional right, no action taken under color of state law that violated such a right, and no other facts that would place Purdue on notice that Plaintiff intended to pursue those statutory theories. Notably, Plaintiff's response fares no better. Although it references Title VI and § 1981 in passing, it never articulates the legal basis for either claim or explains what constitutional right could support a § 1983 claim. Rule 12(b)(6) tests the sufficiency of the claims actually pleaded, not statutory references unsupported by factual allegations.

To the extent the Court construes the Complaint as asserting any disability-discrimination theory beyond the ADA, Purdue's substantive arguments apply equally. Each theory rests on the same factual allegations: Purdue approved Plaintiff's requested accommodation but later disciplined her based on independent academic integrity concerns. Those allegations do not plausibly state a claim for disability discrimination under any statutory label.

For each and all of the foregoing reasons, Purdue Global respectfully moves the Court to dismiss Plaintiff's Complaint under the Fed. R. Civ. P. 12(b)(6) and award Purdue Global all other just and proper relief.

Respectfully submitted,

 /s/ John R. Maley
John R. Maley (#14300-89)
Amanda Jane Gallagher (#32662-79)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN  46204
Telephone:  317-236-1313
Facsimile:  317-231-7433
jmaley@btlaw.com
amanda.gallagher@btlaw.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 30 day of June, 2026, a true and correct copy of the foregoing was served by electronic mail on all parties.

_/s/ Amanda Jane Gallagher_
Amanda Jane Gallagher