# Exhibit 1

Please See
Both sides of all
Papers

USDC IN/ND case 4:26-cv-00028-PRS-AZ document 53-1 filed 07/01/26 page 3 of 62

 **PURDUE GLOBAL**                                    Student Accessibility Services <sas@purdueglobal.edu>

---

# Updated: 4/2/2024: Purdue Global Law School Accommodation Approval
1 message

---

**Student Accessibility Services** <sas@purdueglobal.edu>                    Tue, Apr 2, 2024 at 10:33 AM
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>

Greetings Nicole Lawtone-Bowles,

Your request for accommodation and supporting documentation has been received by Student Accessibility Services (SAS) at Purdue Global Law School. After careful review, SAS is pleased to report that you have satisfied its eligibility and verification requirements to receive the below reasonable accommodation(s).

**Additional Time on Entrance Exam(s):** Double Time (2.0x)

**5 days from the original module due date to submit assignments without penalty.** (Course policies may allow more than five days past the module due date; this accommodation will not prevent students from taking advantage of more generous policies).

- This applies to written assignments.
- This applies to discussion board posts and group assignments. If an extended deadline for group work would fundamentally alter the curriculum, the instructor should contact SAS to discuss alternatives.
- This does not apply to synchronous seminar participation.

**Additional Time on Timed Assessments:** Double Time (2.0x)

**One Final Exam / Day:** In the instance that the double time applied to an exam will bleed into the next scheduled exam, the student is permitted to take the subsequent exam on a separate day. The student's responsible for contacting SAS two weeks before the final exams to arrange an alternate schedule if warranted.

**PDF/WORD formatted textbooks with receipts.** Should a textbook not be available for you to purchase in electronic format, you would purchase the book in the physical format and send SAS a copy of the receipt along with the attached electronic textbook request form. It is the student's responsibility to request alternate formatted textbooks each term through SAS through the attached form and provide proof of purchase/receipt of the original book for publisher permission purposes (please reference the attached Electronic Textbook Request form). Please note: Student Accessibility Services (SAS) makes every effort to obtain the requested format; however, we cannot guarantee all books will be available. The student's responsible for informing Student Accessibility Services of any change to their course schedule. Course changes will likely result in textbook changes and may result in an additional and sometimes significant delay in fulfillment.

**Assistive Technology:** Read&Write Screen Reader (Purdue Global does not support third-party software, and therefore, it is the student's responsibility to seek technical assistance directly from the manufacturer if needed.) You will receive an email from SAS within 24 business hours. This email will contain a download link for the Read&Write. The Read&Write screenreader license is for one year beginning today (3/13/2024). Should you require an extension to your one-year license and are active in classes at PG, please contact SAS, and we will extend the license.

**Turn off Respondus:** Purdue Global Law School Dean's office will turn off Respondus.

A letter outlining your approved accommodations will be drafted and issued through e-mail to each of your instructor(s) upon approval (if the term is currently in session) within two business days, and during the first week of every new term. Please note that you will be included in your Letter of Accommodation should you desire a copy for your personal records.

Accommodations are not retroactive and will remain in effect until you are no longer an active student at Purdue Global Law School. Upon graduation, withdrawal, and/or dismissal from the University, the student must inform SAS of their re-enrollment if accommodation reinstatement is desired.

Should you have any questions regarding your approved accommodations, please contact SAS directly at sas@purdueglobal.edu.

Respectfully,

**Student Accessibility Services (SAS)**

T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
https://www.purdueglobal.edu/academic-support/student-accessibility-services/



The information contained in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

 **SAS Electronic Textbook Request Form.docx**
35K

 **PURDUE** GLOBAL

**Student Accessibility Services <sas@purdueglobal.edu>**

## 2601L: Accommodation Notification from Student Accessibility Services (SAS)
1 message

**Student Accessibility Services** <sas@purdueglobal.edu>                    Thu, Jan 8, 2026 at 10:18 AM
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, Scott Johnson <Scott.Johnson@purdueglobal.edu>, Sanket Shah <Sanket.Shah@purdueglobal.edu>, Kerii Landry-Thomas <Kerii.Thomas@purdueglobal.edu>, Brian Victor <Brian.Victor@purdueglobal.edu>, Quentin Huff <Quentin.Huff@purdueglobal.edu>, Beau Baez <Humberto.Baez@purdueglobal.edu>, Sarah.Diab@purdueglobal.edu

**Purdue Global Law School**
**Student Accommodation Notification**

\* Confidential Information\*

PLEASE READ CAREFULLY

**Student:** Nicole Lawtone-Bowles
**Term:** 2601L Spring 2026 Law Term
**Course(s):**
CL651-01 Constitutional Law II
CL701-01 Corporations and Business Organizations II
CL735-01Professional Responsibility
CL760-01 Community Property
CL780-01 Capstone I
CL805-01 Federal Taxation
CL850-01 Education Law

**Dear Instructor(s),**

- This information is confidential and should not be shared with others except to meet the student's needs.
- Accommodation(s) are in effect from today until the end of the term, regardless of when you receive this notification.
- Accommodations are not retroactive.
- Students are not expected to notify their instructors when they use their accommodations, as the approved accommodations will automatically be honored.

SAS has approved the above-referenced student to receive the academic accommodations listed below.

**Additional grace period before final exams**
- In courses with a final exam, students typically must turn in all professor-graded assignments no later than seven (7) days before the final exam to receive any credit for the assignment. As an approved accommodation, you will only need to turn in professor-graded assignments within two (2) days of the final exam to receive credit (i.e., you have an additional five (5) days). Note that this end-of-term policy supersedes any grace periods or partial-credit policies that might otherwise apply for interim assignments.
- Other than what is stated above, the standard grace periods at Purdue Global Law School for professor-graded assignments are more generous than any accommodation periods, so no additional days to complete assignments are provided to accommodated students. (For example, if a non-accommodated student can turn in an assignment up to fourteen (14) days after the due date without a grade penalty, accommodated students would also have fourteen (14) days, *not* an additional five (5) days beyond the fourteen days, to avoid a grade penalty.)

**Additional Time on Timed Assessments**
- Double Time (2.0x)

**One Final Exam / Day**

- If double time applied to an exam will bleed into the next scheduled exam, the student is permitted to take the subsequent exam on a separate day. *It is the student's responsibility to contact the SAS two weeks before the final exams to arrange for an alternate schedule if warranted.*

**Turn off Respondus**

- Purdue Global Law School Dean's office will turn off Respondus.

Instructors and students are requested to contact Student Accessibility Services (SAS) directly with any questions or concerns regarding the aforementioned accommodation(s) and information.

Respectfully,

**Student Accessibility Services (SAS)**

**T: 317-208-1686**
F: 866-422-4773
E: sas@purdueglobal.edu
https://www.purdueglobal.edu/academic-support/student-accessibility-services/



The information in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

# Accommodation Request (External) Inbox ×

**Student Accessibility Services** (sent by tpesce@purdueglobal.edu)                     Mon, Mar 2, 12:12 PM (1 day ago)  ☆  ☺  ↰

to nicolelawtone, me ▾

Hi, Nicole,

The SAS office recently received your message submitted through the accommodation request self-referral in your student portal regarding your request to use your personal Dragon Legal dictation program in your classes.

| | |
|---|---|
| Subject | Request accommodations |
| Description | I am writing to formally request accommodation for the use of Nuance® Dragon® Legal as part of my approved assistive technology. [...] drafting. Because of my documented disability, speech-to-text software is necessary for me to effectively complete written assignments While I understand that the university may have general policies regarding third-party software, my approved accommodations include efficiently. Without it, my ability to complete assignments is substantially limited. Please confirm that I may use Nuance® Dragon® Legal for all written coursework consistent with my approved accommodations. If a[...] |
| Created By | Integration API User, 2/27/2026 2:57 PM |
| Portal Submitted By | Student [Nicole Lawtone-Bowles] |

Please note that SAS approval is not required for this request. All students are permitted to use a personal dictation program in their classes.

Thank you,

**Toni Pesce, MBA**
**Manager, Student Accessibility Services (SAS)**
T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu

 **PURDUE GLOBAL**

**Student Accessibility Services <sas@purdueglobal.edu>**

# 2601L: Accommodation Notification from Student Accessibility Services (SAS)

1 message

**Student Accessibility Services <sas@purdueglobal.edu>**                    Thu, Jan 8, 2026 at 10:18 AM
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>, Scott Johnson <Scott.Johnson@purdueglobal.edu>, Sanket Shah <Sanket.Shah@purdueglobal.edu>, Kerii Landry-Thomas <Kerii.Thomas@purdueglobal.edu>, Brian Victor <Brian.Victor@purdueglobal.edu>, Quentin Huff <Quentin.Huff@purdueglobal.edu>, Beau Baez <Humberto.Baez@purdueglobal.edu>, Sarah.Diab@purdueglobal.edu

**Purdue Global Law School**
**Student Accommodation Notification**

**\* Confidential Information\***

**PLEASE READ CAREFULLY**

**Student:** Nicole Lawtone-Bowles
**Term:** 2601L Spring 2026 Law Term
**Course(s):**
CL651-01 Constitutional Law II
CL701-01 Corporations and Business Organizations II
CL735-01 Professional Responsibility
CL760-01 Community Property
CL780-01 Capstone I
CL805-01 Federal Taxation
CL850-01 Education Law

**Dear Instructor(s),**

- This information is confidential and should not be shared with others except to meet the student's needs.
- Accommodation(s) are in effect from today until the end of the term, regardless of when you receive this notification.
- Accommodations are not retroactive.
- Students are not expected to notify their instructors when they use their accommodations, as the approved accommodations will automatically be honored.

SAS has approved the above-referenced student to receive the academic accommodations listed below.

**Additional grace period before final exams**
- In courses with a final exam, students typically must turn in all professor-graded assignments no later than seven (7) days before the final exam to receive any credit for the assignment. As an approved accommodation, you will only need to turn in professor-graded assignments within two (2) days of the final exam to receive credit (i.e., you have an additional five (5) days). Note that this end-of-term policy supersedes any grace periods or partial-credit policies that might otherwise apply for interim assignments.
- Other than what is stated above, the standard grace periods at Purdue Global Law School for professor-graded assignments are more generous than any accommodation periods, so no additional days to complete assignments are provided to accommodated students. (For example, if a non-accommodated student can turn in an assignment up to fourteen (14) days after the due date without a grade penalty, accommodated students would also have fourteen (14) days, *not* an additional five (5) days beyond the fourteen days, to avoid a grade penalty.)

**Additional Time on Timed Assessments**
- Double Time (2.0x)

**One Final Exam / Day**

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 53-1    filed 07/01/26    page 10 of 62

1/8/26, 10:18 AM    Purdue University Global Mail - 2601L: Accommodation Notification from Student Accessibility Services (SAS)

- If double time applied to an exam will bleed into the next scheduled exam, the student is permitted to take the subsequent exam on a separate day. _It is the student's responsibility to contact the SAS two weeks before the final exams to arrange for an alternate schedule if warranted._

**Turn off Respondus**

- Purdue Global Law School Dean's office will turn off Respondus.

Instructors and students are requested to contact Student Accessibility Services (SAS) directly with any questions or concerns regarding the aforementioned accommodation(s) and information.

Respectfully,

**Student Accessibility Services (SAS)**

T: 317-208-1686
F: 866-422-4773
E: sas@purdueglobal.edu
https://www.purdueglobal.edu/academic-support/student-accessibility-services/



The information in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

**PURDUE GLOBAL.**

PG Provost <provost@purdueglobal.edu>

## Academic Dishonesty - 3rd Breach: Nicole Lawtone-Bowles
1 message

**PG Provost** <provost@purdueglobal.edu>
To: nicolelawtone@aol.com, Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>
Cc: sarah.diab@purdueglobal.edu, Shaun Jamison <SJamison@purdueglobal.edu>, Martin Pritikin <martin.pritikin@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Tue, Mar 10, 2026 at 4:27 PM

Dear Nicole Lawtone-Bowles,

This letter confirms your third Academic Dishonesty breach of the Student Code of Conduct. The following information summarizes your breaches:

**First Breach**
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

**Second Breach**
Term: 2601L
Class: CL760-01: Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion
Instructor Name: Brian Victor

**Third Breach**
Term: 2601L
Class: CL850-01: Education Law
Assignment: Modules 1 and 8
Instructor Name: Sarah Diab

All reports of academic dishonesty are recorded in Purdue Global's database and remain there permanently. All breaches you accumulate while completing a program will be carried over to any subsequent program at Purdue Global.

If you disagree with these findings and wish to appeal this breach, you must complete the following steps:

1. If you have not done so already, discuss the breach with your instructor, providing a thorough explanation and evidence of why you believe the suspicion of academic dishonesty to be inaccurate.
2. If the dispute is still unresolved and you wish to pursue an appeal of the report of academic dishonesty, you must submit an Academic Appeal Form to the Office of the Provost. The appeal form can be found on your student portal under quicklinks or by following this link.
3. The appeal form should include an explanation and evidence to support your position.

Please note all appeals must take place in writing within 10 days of receiving this letter. Submissions made more than 10 days after notification of the breach will not be accepted.

The Code of Student Conduct Policy is accessible via the Purdue University Global catalog.

Regards,

Office of the Provost

Cc:

Carolyn Nordstrom, Provost, Purdue Global
Martin Pritikin, Purdue Global Law School

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 53-1 filed 07/01/26 page 11 of 62

Shaun Jamison, Chair and Associate Dean of Academic Affairs, Purdue Global Law School

Sarah Diab, Instructor, Purdue Global Law School

www.PurdueGlobal.edu



The information contained in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 53-1    filed 07/01/26    page 12 of 62

Nicole Lawtone-Bowles
Term: 2601L
Class: CL850-01: Education Law
Assignment: Modules 1 and 8
Instructor Name: Sarah Diab
Academic Dishonesty - 3rd Breach

Reason:

3.7.26
"I am requesting a full review of my entire academic record because the academic misconduct findings on my record resulted from Purdue Global Law School (formerly Concord Law School)'s failure to accommodate my documented disability and my approved use of assistive technology. I have a documented disability and was approved through Student Accessibility Services (SAS) to use assistive technology, including speech-to-text software, extended time, and the ability to complete written work using assistive technology rather than traditional typing. Despite these approved accommodations, my use of assistive technology was repeatedly treated as academic misconduct rather than as accommodation-consistent behavior. As a result, my academic record now reflects misconduct findings that I believe are inaccurate and directly tied to the school's failure to implement my approved accommodations.

The first incident occurred during the May–August 2025 term in CL685 Criminal Procedure with Professor Victoria Vidt. I completed my coursework using approved speech-to-text assistive technology because my disability prevents me from typing effectively. My work and I was labeled "not credible," I received a zero, and an academic integrity finding followed even though my accommodation and use of assistive technology were documented with the university. I explained that the work was original and produced using my approved assistive technology, but the appeal did not resolve the issue.

The second incident occurred during the January 2026 term in CL760 Community Property with Professor Brian A. Victor. On January 8, 2026, Student Accessibility Services issued my accommodation letter confirming my approved accommodations. After receiving this letter, I completed open-book coursework using speech-to-text technology and worked ahead on assignments. Despite this, I was reported for academic dishonesty based solely on the pace at which my work was completed rather than any evidence of copying or collaboration. On January 26, 2026, the Provost's Office issued an F grade in the course and recorded a second academic dishonesty breach without meaningfully considering how my approved assistive technology affects the speed and method of my written work.

I have made repeated efforts to resolve these issues through internal channels. I documented my concerns in writing, requested meetings and hearings, pursued academic integrity appeals, and communicated with Student Accessibility Services and administrators about my accommodations. Supporting documentation includes my accommodation letters, SAS records, email correspondence, course records, grading reports, academic integrity notices, and appeal submissions. These records demonstrate that my disability and my approved use of assistive technology were known to the institution.

My appeal is based on the fact that my assistive technology was repeatedly misinterpreted as misconduct instead of being recognized as a disability accommodation. I rely on speech-to-text technology because my medical condition prevents me from typing effectively. This is the method I use to produce written work in school and in my professional life. The misconduct findings do not reflect cheating or dishonesty; they reflect a failure to properly implement my approved disability accommodations.

My desired outcome is a full review of my entire academic record, removal of the academic misconduct findings and related sanctions that arose from accommodation-consistent conduct, and correction of any grades affected by these findings. I am also requesting that my account clearly reflect my approved use of assistive technology through Student Accessibility Services so that instructors are aware of my accommodations going forward. My goal is to ensure that my academic record accurately reflects my original work and that my disability accommodations are respected so that I can complete my legal education without further misunderstanding or penalty."

3.10.26

"I am appealing the academic dishonesty breach issued in Education Law CL850-01, Modules 1 and 8, taught by Professor Sarah Diab. The work submitted in this course was produced by me using approved assistive technology authorized through Student Accessibility Services due to my documented disabilities. My accommodation allows the use of speech-to-text technology because my medical conditions limit my ability to type for extended periods of time. The assignments identified in the breach notice were dictated by me using speech-to-text software that converts my spoken words into written text. The ideas, legal analysis, citations, and written content in those submissions are my own work.

The speed and structure of the writing reflect the nature of dictation technology, which produces text in real time rather than through traditional keyboard typing. Differences in writing patterns caused by assistive technology should not be interpreted as evidence of generative artificial intelligence or academic misconduct. My writing includes Bluebook 22nd edition citations and hyperlinks to the sources used to answer each question because hyperlinks are required in legal writing and court submissions. I provided Word documents, metadata, and PG411 Turnitin reports demonstrating the authorship and creation history of my assignments. I also requested that Turnitin be activated in the Education Law course so that my submissions could be verified through the system.

I was also previously instructed not to communicate with the instructor regarding these allegations by Shaun Jamison, JD, PhD, Associate Dean of Academics and Chair of Academic Affairs at Purdue Global Law School, formerly Concord Law School. Because of this instruction, I followed the direction provided by the Associate Dean and did not communicate directly with the instructor regarding the accusations. Despite my approved accommodations through Student Accessibility Services, my use of assistive technology has been treated as suspicious and dishonest. The accusations appear to be based on the speed and structure of dictated writing rather than any actual evidence of misconduct.

I have filed complaints regarding failure to accommodate and harassment related to my approved disability accommodations for assistive technology. These accommodations have been ignored despite being formally approved through Student Accessibility Services. I have also filed civil rights complaints regarding disability discrimination and the failure to recognize approved accommodations for assistive technology. Federal civil rights law requires institutions receiving federal financial assistance to provide equal educational opportunities and reasonable academic adjustments to students with disabilities.

I respectfully request that the academic dishonesty finding in Education Law CL850-01 be reversed because the work submitted was produced by me using approved assistive technology. I also request that my approved Student Accessibility Services accommodations be recognized in the evaluation of my coursework. The desired outcome of this appeal is removal of the academic dishonesty breach and recognition that my assignments were produced using approved disability accommodations."

3.11.26
"Dear Office of the Provost,

I submit this Academic Integrity Appeal in response to the notice dated March 10, 2026, stating that I received a third Academic Dishonesty breach under the Purdue Global Student Code of Conduct. I respectfully dispute each alleged breach because my assignments were produced using speech-to-text assistive technology approved by Student Accessibility Services as a disability accommodation. Due to documented medical conditions that limit my ability to type for extended periods, dictation software is the primary method I use to complete written coursework. Speech-to-text technology converts spoken words directly into written text, which can produce writing faster and with structural differences compared to traditional typing. These characteristics may have been misinterpreted as evidence of artificial intelligence use.

The assignments referenced in CL685-01 Criminal Procedure, CL760-01 Community Property, and CL850-01 Education Law were all completed using this approved speech-to-text technology. I dictated my legal analysis verbally, and the software transcribed my speech into written text. The pace and structure of the writing reflect the functionality of dictation software rather than the use of unauthorized tools. The content of the assignments represents my own legal analysis and coursework. No artificial intelligence or unauthorized technology was used.

The allegations appear to rely on assumptions about writing speed and structure without consideration of how speech-to-text assistive technology functions. My use of this technology is a documented disability accommodation approved by Student Accessibility Services. The differences in writing appearance are directly related to the dictation process required by my disability. The work submitted in my courses was produced by me and reflects my own academic work.

For these reasons, I respectfully request that the alleged Academic Dishonesty breaches be reviewed and reconsidered in light of my approved disability accommodations. I ask that the allegations be removed from my academic record following review of the documentation supporting my accommodations and the circumstances of my writing process. I remain

committed to academic integrity and to completing my legal education in compliance with university policies and approved accommodations. I am prepared to provide any documentation necessary to support this appeal."

**PURDUE GLOBAL**

PG Provost <provost@purdueglobal.edu>

**Re: Academic Dishonesty - 3rd Breach: Nicole Lawtone-Bowles**
1 message

Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu>                    Wed, Mar 11, 2026 at 12:12 PM
To: PG Provost <provost@purdueglobal.edu>
Cc: nicolelawtone@aol.com, sarah.diab@purdueglobal.edu, Shaun Jamison <SJamison@purdueglobal.edu>, Martin Pritikin <martin.pritikin@purdueglobal.edu>, Carolyn Nordstrom <cnordstrom@purdueglobal.edu>

Subject: Academic Integrity Appeal – Documentation of Approved Assistive Technology Use

Dear Office of the Provost, Dr. Nordstrom, Professor Pritikin, Associate Dean Jamison, and Professor Diab,

I am writing to follow up on my Academic Integrity Appeal regarding the breaches referenced in the March 10, 2026 notice. As explained in my appeal, the written assignments identified in CL685-01 Criminal Procedure, CL760-01 Community Property, and CL850-01 Education Law were produced using speech-to-text assistive technology that has been formally approved for me through Student Accessibility Services as a disability accommodation. Because my documented medical conditions limit my ability to type for extended periods, dictation software is the primary method I use to complete written coursework. This technology converts spoken words directly into written text, which naturally produces writing more quickly than traditional keyboard typing and can create structural differences in the text compared with manually typed work. Those characteristics appear to have been interpreted as signs of artificial intelligence use, when in fact they are the direct result of approved assistive technology required for my disability.

My assignments were dictated by me and reflect my own legal reasoning, research, and analysis. The pace at which the text appears is a function of speech-to-text transcription rather than the use of unauthorized tools. Students who complete assignments through typing produce text at a different rate and in a different pattern than those who dictate their work verbally. These differences arise from the mechanics of assistive technology and not from academic misconduct. Because this accommodation was formally approved to allow me equal access to coursework, the writing process used in my assignments should be understood within the context of that accommodation.

USDC IN/ND case 4:26-cv-00028-PPS-AZ   document 53-1   filed 07/01/26   page 17 of 62

I have already submitted my Academic Integrity Appeal addressing the breaches and explaining my use of approved assistive technology. To further clarify how my work is produced, I have attached a video demonstrating the use of the speech-to-text dictation software that I rely on to complete my assignments. The purpose of this video is to show how spoken language is converted directly into written text and how that process can produce writing quickly and with structural differences from traditional typing. The demonstration reflects the same method I use when completing my coursework.

I respectfully ask that the allegations be reconsidered in light of the documentation of my approved disability accommodations and the functioning of the assistive technology required for my coursework. My intent has always been to complete my legal education with integrity while using the accommodations approved for my documented disabilities. I appreciate your review of the appeal materials and the additional information provided. Please let me know if any further documentation or clarification is required.

Sincerely,
Nicole Lawtone-Bowles

📄 Academic Appeal Screen Recording 2026-03-11 at
10.57.29 AM.mov

On Tue, Mar 10, 2026 at 7:16 PM Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:

Good Evening,
I forgot to add the following links. Click the links
https://www.ncbex.org/exams/mpre/about-mpre

The Multistate Professional Responsibility Examination (MPRE) is a two-hour, 60-question multiple-choice examination that is administered three times per year. Developed by NCBE, the MPRE is required for admission to the bars of all but two US jurisdictions (Wisconsin and Puerto Rico). (Note that Connecticut and New Jersey accept successful completion of a law school course on professional responsibility in lieu of a passing score on the MPRE.)

Rule 8.4 Misconduct Podcasting of Model Rule 8.4g

USDC IN/ND case 4:26-cv-00028-PPS-AZ   document 53-1   filed 07/01/26   page 18 of 62

https://share.icloud.com/photos/075XrAKPqUxv7OCl5Q1EnTDegAssistive technology (AT) is frequently misunderstood as only high-tech, expensive, or a form of "cheating" for students, rather than a crucial tool for equity. In reality, AT includes simple, low-cost items like pens, magnifying glasses, or built-in accessibility features on phones. It is designed to maximize independence, not act as a crutch.

On Tue, Mar 10, 2026 at 6:05 PM Nicole Lawtone-Bowles <nicolelawtonebow@student.purdueglobal.edu> wrote:

> 📄 OCR Permission to Give My Name to Purdue an...

Good Afternoon,

I received your letter stating that Purdue Global has recorded a third Academic Dishonesty breach under the Student Code of Conduct for assignments in CL685-01 Criminal Procedure, CL760-01 Community Property, and CL850-01 Education Law. I dispute these findings and maintain that the work submitted in these courses was produced by me using approved assistive technology required because of my documented disabilities. My accommodations through Student Accessibility Services authorize the use of speech-to-text technology to complete written coursework because my medical conditions limit my ability to type for extended periods of time.

The assignments identified in your notice were dictated by me using speech-to-text software that converts my spoken words into written text. The ideas, legal analysis, and written content in those submissions were created by me and reflect my own academic work. The speed and structure of the writing reflect the nature of dictation technology, which produces text in real time rather than through traditional keyboard typing. Differences in writing patterns caused by assistive technology should not be interpreted as evidence of generative artificial intelligence or academic misconduct.

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 53-1    filed 07/01/26    page 19 of 62

I was also previously told not to speak to the instructor regarding these matters by Shaun Jamison, JD, PhD, Associate Dean of Academics and Chair of Academic Affairs at Purdue Global Law School, formerly Concord Law School. Because of that instruction, I followed the direction given by the Associate Dean and did not communicate directly with the instructors about the accusations.

I have filed complaints for failure to accommodate and harassment regarding my approved Student Accessibility Services accommodations for assistive technology, which have been ignored by the professors listed above, including Professor Brian A. Victor, Professor Sarah Diab, and Professor Victoria Vidt. These individuals are not only professors but also licensed attorneys, and their actions raise concerns regarding both civil rights violations and professional misconduct. I have filed several civil rights complaints and professional misconduct complaints, and I have also reached out to supervising attorneys regarding these matters and filed charges against the school.

The full name of the institution is Purdue University Global Law School, formerly Concord Law School. I have been told by individuals referenced above that I am not credible, and I have seen statements attributed to Professor Brian Victor indicating that I lack the intellectual capacity to write the way I do despite my prior degrees and education before coming to Purdue University Global Law School.

I have provided documentation including Dragon Documentation, Word documents, Metadata, and PG411 Turnitin reports to demonstrate the authorship of my work. I also requested that Turnitin be activated in the Education Law course so that all of my submissions could be verified through the system. My written submissions include Bluebook 22nd edition citations and hyperlinks to the sources used to answer each question because hyperlinks are required in legal writing and New York State court filings.

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 53-1    filed 07/01/26    page 20 of 62

On March 6, 2026, I underwent surgery and I am currently out of work following my doctor's advice not to make major decisions while I am on medication. I notified the school of my medical condition today, yet I continue to receive communications regarding these accusations despite the school's knowledge of my disability and recent surgery.

As of today, I have exactly 169 days remaining before my expected graduation August 25, 2026. I am studying for my MPRE test schedule on March 24, 2026. I did not engage in the conduct I have been accused of. My appeals have not been decided in my favor despite the documentation I have provided and despite my approved disability accommodations.

Any negative action taken against me for using approved assistive technology will be documented and immediately filed with the United States Department of Justice and the United States Department of Education. Any action taken to terminate my education while this matter is under investigation will be viewed as retaliation.

I once again respectfully request that all academic misconduct findings against me be reversed because I have Student Accessibility Services approval for assistive technology and the work submitted in my courses was produced by me using that approved accommodation.

Nicole Lawtone-Bowles

▭

On Tue, Mar 10, 2026 at 4:27 PM PG Provost <provost@purdueglobal.edu> wrote:

Dear Nicole Lawtone-Bowles,

This letter confirms your third Academic Dishonesty breach of the Student Code of Conduct. The following information summarizes your breaches:

**First Breach**
Term: 2505L
Class: CL685-01: Criminal Procedure
Assignment: Modules 6 and 10 Essay
Instructor Name: Victoria Vidt

**Second Breach**
Term: 2601L
Class: CL760-01: Community Property
Assignment: Modules 4, 10, and 11 Essay Quiz & Module 11 Discussion

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 53-1    filed 07/01/26    page 21 of 62

Instructor Name: Brian Victor

**Third Breach**
Term: 2601L
Class: CL850-01: Education Law
Assignment: Modules 1 and 8
Instructor Name: Sarah Diab

All reports of academic dishonesty are recorded in Purdue Global's database and remain there permanently. All breaches you accumulate while completing a program will be carried over to any subsequent program at Purdue Global.

If you disagree with these findings and wish to appeal this breach, you must complete the following steps:

1. If you have not done so already, discuss the breach with your instructor, providing a thorough explanation and evidence of why you believe the suspicion of academic dishonesty to be inaccurate.
2. If the dispute is still unresolved and you wish to pursue an appeal of the report of academic dishonesty, you must submit an Academic Appeal Form to the Office of the Provost. The appeal form can be found on your student portal under quicklinks or by following this link.
3. The appeal form should include an explanation and evidence to support your position.

Please note all appeals must take place in writing within 10 days of receiving this letter. Submissions made more than 10 days after notification of the breach will not be accepted.

The Code of Student Conduct Policy is accessible via the Purdue University Global catalog.

Regards,

Office of the Provost

Cc:

Carolyn Nordstrom, Provost, Purdue Global
Martin Pritikin, Purdue Global Law School
Shaun Jamison, Chair and Associate Dean of Academic Affairs, Purdue Global Law School
Sarah Diab, Instructor, Purdue Global Law School

www.PurdueGlobal.edu



The information contained in this e-mail and any attachments is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by e-mail and delete the original message.

USDC IN/ND case 4:26-cv-00028-PPS-AZ   document 53-1   filed 07/01/26   page 22 of 62

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

--

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

--

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Purdue Global Law School (formerly Concord Law School)
Juris Doctor August 25, 2026
Pronouns: She/Her
Adrains Place Inc
Nicole Lawtone-Bowles SSRN
Nicole Lawtone-Bowles LinkedIn
"Master your mind because a thought can ruin your whole day."

USDC IN/ND case 4:26-cv-00028-PPS-AZ   document 53-1   filed 07/01/26   page 23 of 62

## Subject: CL850 Education Law: Missing Grades

**Nicole Lawtone-Bowles** <nicolelawtonebow@student.purdueglobal.edu>      Wed, Feb 11, 11:50 AM (8 days ago)
to Sarah Diab

Good morning, Professor,

I wanted to let you know that I have not received any grades from you so far. Could you please confirm if there's an issue with the system or if the grades just haven't been posted yet?

Thank you,

Nicole Lawtone-Bowles
Certified Law Student
The State Bar of California's Practical Training of Law Students Program
Adrains Place Inc 501(c)(3)
Phi Alpha Delta
Bar Exam Essay Rules
Free Themis Outlines from LexisNexis
TestMax BarMax Bar Prep
National Conference of Bar Examiners
Studicata

USDC IN/ND case 4:26-cv-00028-PPS-AZ    document 53-1    filed 07/01/26    page 24 of 62

**Rule 8.4   Misconduct**

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law;

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; or

(g) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, age, religion, national origin, ethnicity, disability, sex, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

**COMMENT**

[1] Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another, as when they request or instruct an agent to do so on the lawyer's behalf. Paragraph (a), however, does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take.

[2] Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offenses carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law.



**Nicole Lawtone-Bowles** ⊘ · You
Empowering Futures
9h · Edited · 🌐

Purdue Global Law School

Thank You for Your Guidance and Support

Dear Dean Martin Pritikin ,

I am profoundly grateful for your guidance and encouragement throughout my journey at Purdue Global Law School. Your accessibility, dedication, and belief in your students have made a lasting impact on me. The faculty you've assembled represents the best in legal education—committed, compassionate, and deeply invested in our success.

Receiving this scholarship is both humbling and ...more

🔵🟢⚪ 13                                    9 comments

👍 Like        💬 Comment        🔁 Repost        ➤ Send

📊 259 impressions                    View analytics

Add a comment...                              😊

Most relevant ▾

November 5, 2025

Hello, Nicole Lawtone-Bowles,

Congratulations! On behalf of the University of West Los Angeles, Purdue University Global, and the Colleges of Law, I'm pleased to share that you have been selected to receive a $3,000.00 award to be used for education-related expenses.

USDC INND case 4:26-cv-00028-PPS-AZ    document 53-1    filed 07/01/26    page 27 of 62

# AI-Integration in Library Databases

- ProQuest
- JSTOR
- Scopus

# Checking GenAI Citations

- Search for the article title using the JFL's Journal Titles search feature

- Google Scholar

- Journal webpage

- DOI resolver
  - Copy the DOI and add to a DOI resolver (for example, https://doi.org)
  - The DOI should lead to a publisher's page or official record
  - Display the same article title, author(s) and journal name

USDC IN/ND case 4:26-cv-00028-PPS-AZ document 53-1 filed 07/01/26 page 28 of 62





# My Badges

View and manage the badges you've earned.

Organization    Others

Q Search...    Q    ▽ Filter

6 badge listed.




◉ Public

### Purdue Global Law School - Distinguished Scholar

✔ Purdue University Global

Dec 23, 2025




◉ Public

### Purdue Global Law School - Dean's List

✔ Purdue University Global

Aug 26, 2025




⊙ Public

### Legal Analysis Micro-credential

 Purdue University Global

Jan 15, 2025




⊙ Public

### Securing Your Home Network Micro-credential

Purdue University Global

Aug 14, 2024




⊙ Public

### Writing for Life: Leveraging AI and Other Tools Micro-credential

Purdue University Global

Aug 14, 2024




⊙ Public

### Social Media Law Micro-credential

Purdue University Global

Jul 6, 2024

Provided by Purdue University Global

English ⌄

Terms of Service ⇲

Privacy Policy ⇲

Support ⇲

Sitemap

**1. In your paper on SSRN, you state that you believe that the use of AI detection software can have discriminatory results against students with disabilities or students with different cultural backgrounds. Do you believe that AI detection tools should never be used in higher education or are you suggesting that AI detection should not be used when a student has a disability or cultural difference?**

Hello, for the first question, which of my papers are you referring to? I have three papers on SSRN. Please be specific and provide the title.

Research by Ryan Baker and studies at institutions such as Harvard and Stanford indicate that AI detection tools exhibit higher false-positive rates for non-native English speakers and students with neurodivergence due to predictable writing patterns or the use of assistive technologies. The prevailing view among these researchers suggests that these tools should not be used for high-stakes decision-making in their current state because they are fundamentally unreliable for specific groups and thus too flawed for ethical use in higher education. Research co-authored by Ryan Baker highlights how educational algorithms can lead to inequitable outcomes for students based on factors such as race, ethnicity, and disability. Studies from sources like the Berkman Klein Center at Harvard, the Yale Journal of Health Policy, Law, and Ethics, and the New York City Bar discuss how AI fairness conversations often exclude disabled people, the legal and ethical hazards of algorithmic discrimination, and how AI-generated models can misrepresent the experiences of people with disabilities. For further details, read the articles below.

news.harvard.edu/gazette/story/2024/04/why-ai-fairness-conversations-must-include-disabled-people/.

https://link.springer.com/article/10.1007/s40593-021-00285-9

**2. Do you agree that law students are responsible for demonstrating honesty and academic integrity in their academic work?**

Absolutely. Here is why. We have to pass a background check on our moral character to ensure we are fit to be attorneys. See, I have been a law office study student since January 1, 2019. I have witnessed and been a victim of people who lack moral character because of racism and stereotyping. I am dealing with it now at Purdue Global Law School (formerly Concord Law School). For some reason, Europeans think anyone who is not European is not smart or needs to be dishonest. That is what I am dealing with in Community Property. Professor Victor sent me an email as if he wanted to help me understand Community Property, which was not the case; he and Shaun Jamison wanted to see if I could answer a cold call question while driving home after working all day in my handicap vehicle in traffic. So the professor was dishonest in his email, which you have on file. So not only do law students need to be honest, but the instructor does as well.

**3. Do you agree that academic integrity includes completing graded assignments without AI assistance, unless given permission to do so (and acknowledging that AI was used where use is permitted only with such acknowledgment?**

You obviously don't know what AI is. Let me explain it to you. AI is artificial intelligence.

Artificial intelligence has been around since its earliest form, tracing back to the mid-20th century. The conceptual foundations were laid in the 1940s and 50s, with pioneers like Alan Turing and John McCarthy pondering the question of machine intelligence. The field officially kicked off in 1956 at the Dartmouth Conference, where the term "artificial intelligence" was coined. From there, research grew through waves of optimism and setbacks, with significant milestones in the 1980s, the 1990s' expert systems, and then the big leaps with machine learning and deep learning in the 2010s. So, we're talking roughly 70 years of history!

- **The Science of Simulation (1950s–1970s):** In 1955, John McCarthy defined AI as the "science and engineering of making intelligent machines". During this era, AI was seen as a quest to simulate human logic using symbols and rules (Symbolic AI) to solve math theorems or play checkers.

- **The Science of Expert Knowledge (1980s–1990s):** The definition narrowed toward expert systems—programs designed to "mimic the decision-making of human specialists" in specific fields like medicine or finance. AI was defined by its ability to store and apply massive amounts of human-coded "if-then" rules.

- **The Science of Data and Learning (2010s–Present):** Today, AI is widely defined as the capability of a machine to imitate intelligent human behavior by learning from data rather than following preset rules. It is now less about "programming" and more about Machine Learning, where systems find their own patterns to recognize faces, translate languages, or generate content.

**4. Would you agree that closed-book exams means that a student is not permitted to use outside sources or artificial intelligence to complete the exam?**

This is a spurious. Here is why. The bar exam is considered a closed-book exam. With that being said, if you have a disability and need accommodation, you are allowed to have under the Americans with Disabilities Act (ADA), jurisdictions are required to provide assistive technology to ensure the exam measures a test-taker's ability rather than their disability.

- Screen Readers: Software like JAWS that reads exam text aloud for visually impaired or dyslexic students.

- Speech-to-Text: Tools that allow examinees with physical disabilities to dictate their essay responses.

- Specialized Hardware: Devices such as electronic magnifiers, Braille embossers, or smart pens that sync audio with handwritten notes.

**5. Do you believe that allowing you the use speech-to-text technology allows you to use AI technology (like ChatGPT) on closed-book exams?**

Another spurious Nuance Dragon is not ChatGPT. Nuance Dragon (Speech-to-Text): This is

categorized as assistive technology (or an accommodation) used for transcription—converting

spoken words into text. It is designed to replace the physical action of writing or typing.

ChatGPT (Generative AI): This is an intelligent, content-generating tool that provides answers,

generates text, and retrieves information.

**6. During your time at PGLS, have you ever been asked about the authorship of your assignments or essay exams?**

Never, because when I go to the seminars, I answer every question because I am prepared, because I study the law every day. I even tutor other students who reach out to me, and many of my favorite instructors. I converse with all of them all the time. I also passed the New York Law Exam in September 2025 and preparing for the MPRE in March while in school for the Spring Semester. See, my tutors came from Harvard and Yale.

**7. If yes, can you describe the nature of those previous incidents?**

The only two instructors who questioned my ability are Victoria Vidt and Brian Victor, who said I was not credible. That is not a good thing to say to a 54-year-old Black Disabled Woman from New York City, New York. Shaun Jamison, the Dean of Academics, never spoke to me, even after I reached out to him.

**8. If you have been asked about the authorship of previous assignments, were you able to provide supporting documentation to demonstrate that you completed the assignments without AI assistance?**

No, because I was never asked to prove to anyone that I wrote any of my papers until I tried to finish my doctorate degrees in health sciences and health administration. For some reason, Europeans think minorities need to cheat to get a degree, and ever since ChatGPT, minorities are being questioned by European instructors even more these days. I feel like I am in a Civil War, fighting to complete my degree so I can change my life for my grandson. That is why, whenever I face discrimination, I write about it and publish it on my own. I will be writing about my experience here at Purdue Global Law School (formerly Concord Law School) and naming my accusers in my paper if I am not allowed to finish the remaining 7 months, so I can complete my degree and sit for the bar in February 2027.

**9. If yes, are you able to provide that support to the committee?**

I am providing this support right now because I am currently speaking into my computer. I am trying to type with my own hands, but due to cervical spine trauma, carpal tunnel, and degenerative disc disease, I cannot type for long periods. Consequently, I alternate between typing and speaking, and I copy and paste my own research notes into all my documents. I am using GPTZero to demonstrate that my work is original. I used to be a substitute teacher, but I am currently finishing my degree to become a full-time teacher. I also work with homeless families and do extensive community work. I want to show the committee that I am answering these questions in Google Docs while using GPTZero to verify my own writing. I do use Grammarly or spell check because speech-to-text isn't always accurate, but spell check is even allowed on the Bar Exam. Just because I use modern technology doesn't mean I can't compete with those who went to school with 'tablets and stones'—and I say that with a bit of sarcasm.

**10. Because of your use of the Dragon software, the exam monitoring program Respondus is turned off for your exams, correct?**

Another spurious. If you read the email sent to my instructors every semester, you will see that Respondus is turned off by the Dean's office. Next time, read your email so you won't be labeled a person who holds prejudice or hostility toward individuals with disabilities, which is known as an Ableist.

**11. You have reviewed the course syllabus for the seven courses in which you are currently Enrolled?**

I have OCD. If you don't know what that is, let me explain it to you. Obsessive-Compulsive Disorder (OCD) is a long-lasting mental health disorder characterized by a cycle of uncontrollable, recurring thoughts (obsessions) and behaviors (compulsions) that a person feels the urge to repeat over and over. Compulsions: Repetitive behaviors or mental acts performed to neutralize the anxiety caused by an obsession. Examples include excessive hand-washing, repeated checking (e.g., of locks or stoves), and mental rituals such as counting or praying silently. I always review my courses daily. Yes, I have seven classes, just like I did last semester. Because I love learning about the law, it keeps me sane. I study law every day, listen to audiobooks, BarMax, and represent myself in court Pro Se. Everything I learn, I use. If you don't believe me, look up my cases; some I win, some I lose, but I take people to court for failure to accommodate me and my disability.

**12. Are you familiar with the policy stated in each syllabus that requires students to retain a Microsoft Word copy of written answers and multiple-choice answers submitted to the system until they successfully receive a grade for the assessment, unless they are using Respondus?**

No. Show me because I never seen or heard of it before. I don't write in Word; I speak into Dragon on my Apple phone or Apple Computer, then copy and paste it into my Apple Phone or Apple Computer, then delete it because the document is uploaded to Brightspace. I can't keep everything I write when it is uploaded to the cloud server; that would be ridiculous. So why keep something on my computer that's already on your cloud server? Every time I answer your list of questions, I realize you don't know how technology works. Every paper I upload has my signature on it from my computer or phone at home and at work.

**13. Do you use Dragon speech-to-text software for all of your coursework (assignments, quizzes, papers, essay exams)?**

Ever since I was hit by the vehicle that crushed me between the car and my work van, I have used Dragon to write everything I do, including my court papers when I sue people for failure to accommodate me and my disability. I did not ask to be disabled, and I would not wish it on my worst enemy. I lost my career as a Commercial Driver Class AM because I can no longer drive a truck or a regular car. My vehicle has assistive technology, so I can still drive when I have no one to drive me. My children had me on suicide watch because when I became disabled, my entire life changed. Going back to school after dropping out 29 years ago, the age of my youngest son saved my life.

**14. When you are using the Dragon software, do you use Word, Docs, or some other program to write your responses?**

No, I use Dragon, then copy and paste into Google Docs or Word, hit Grammarly or the review tab, and listen to what I said and check the grammar.

**15. If you do use the Dragon software with Microsoft Word, are your answers automatically corrected or do you need to manually review your answers and make edits?**

Read the answer to question 14

**16. Are you aware of strategies that one could use to support that their written work product is not AI-generated?**

Spurious again, Nuance Dragon uses AI. Specifically, it uses Deep Learning and Neural Networks to understand your accent, grammar, and context. However, in the world of school and exams, there is a massive difference between Assistive AI (which helps you "type" with your voice) and Generative AI like ChatGPT(which thinks and writes for you).

Key Differences for Exams

| Feature | Assistive AI (e.g., Dragon) | Generative AI (e.g., ChatGPT) |
|---|---|---|
| Primary Goal | Support human tasks and improve efficiency. | Create original content from scratch. |
| Authorship | 100% human-led ideas. | AI-generated ideas and text. |
| Exam Policy | Often, an approved accommodation for disabilities. | Frequently banned or restricted to prevent plagiarism. |
| Function | Dictation and basic formatting. | Ideation, drafting, and summarizing. |

**17. If yes, what has prevented you from using those strategies?**

Another spurious? You really need to take an AI course because you clearly don't understand how artificial intelligence works. AI has existed since before you were born; you should go to the library and actually study it. It is integrated into everything we do—including this document system I am using to speak to you right now. I have to proofread constantly because the software captures my words and runs them together. The problem is that you don't understand technology. You study for the bar exam using textbooks; I study for the bar using BarMax, a program created by a Harvard graduate where our Dean actually teaches Evidence. It is sad that you have no idea how this technology works. Do you think I need to cheat because I have a disability? Or is it the color of my skin? I don't know what it is, but at this point, I have answered all your questions except for the first one. I want you to tell me exactly which one of my papers you are referring to—be specific and provide the title.

**18. If you were given a hypothetical from Community Property now, could you demonstrate drafting at the speed you did for these essays?**

Yes, I can. Here is why I am training myself to take the New York Uniform Bar Exam (UBE). The bar exam is a two-day event, unlike what you took years ago in California. The Uniform Bar Exam (UBE) in New York includes the Multistate Essay Examination (MEE), consisting of six 30-minute questions testing your ability to analyze legal issues, apply facts, and communicate effectively. It covers a wide range of subjects, including Business Associations, Family Law, Trusts and Estates, Secured Transactions, and Conflict of Laws, as well as common law subjects such as Torts and Evidence. The New York Bar Exam gives you six essays, and you have 30 minutes to write each. What that means is that you have five minutes to outline and twenty-five minutes to write. This is unlike the California Bar Exam, which gives you five one-hour essay questions. So, can I do what I did on the exam, absolutely? My goal is to spend 30 minutes on the essay to train myself for the New York Bar if they let me sit. I demonstrate that I know the work in every seminar because I am always prepared for each seminar. Watch the seminars I attended, all of them so far. Professor Brian Victor always makes sarcastic comments when I speak. My classmates always ask me to speak in the breakout room. Watch the seminars, please.

| Exam Name | Type |
|---|---|
| 2-2026_NYS Laptop Program for UBE_Mandatory Mock Exam | Exam |
| 2-2026_NYS Laptop Program for UBE_2-MPT | Exam |
| 2-2026_NYS Laptop Program for UBE_6-MEE | Exam |

Subject: List of Questions for Academic Dishonesty Appeals Hearing – CL850-01

Good morning, JoAnna Navarro,

Attached is my list of questions for the Academic Appeals Committee hearing.

### Accommodation Implementation (5 questions)

1. What specific training have faculty received on recognizing work produced using approved assistive technology accommodations?

2. How does the school define "failure to accommodate" when an instructor suspects academic dishonesty based on the appearance or speed of work produced by assistive technology?

3. Respondus proctoring is disabled for me due to my accommodation, and how does the school account for the lack of proctoring video in integrity investigations?

4. Dean Jamison stated that "the appropriateness of assistive technology for the assessments in this course is uncontested"; how does that align with the misconduct finding?

5. What evidence shows that Professor Diab was notified of my approved Student Accessibility Services accommodation before reviewing my submissions?

### Evidence Standards (5 questions)

1. What direct evidence (e.g., AI tool logs, metadata, or witness statements) shows that I used unauthorized AI, rather than relying on subjective "implausibility"?

2. How does the school distinguish between characteristics of assistive technology output (e.g., speed, structure) and prohibited AI generation in integrity reviews?

3. Why was the student view of Turnitin not activated for CL850 assignments, and what did the instructor's view of Turnitin reports show for Modules 1 and 8?

4. I submitted proof of all my drafts and metadata. Why were no drafts, timestamps, or metadata taken from Brightspace where all my submissions are uploaded before concluding academic dishonesty?

5. What objective benchmarks does the school use to determine whether work produced by dictation is "too fast" or "too polished"?

### Instructor Process (5 questions)

1. Professor Diab canceled two seminars and has not graded modules or assignments for me and other students, despite her syllabus stating "typically within approximately 6 days"; how does this affect the misconduct report?

2. I reached out to Professor Diab multiple times for meetings but received no response except for one cancellation; how does this align with Step 1 of the appeal process ("discuss the breach with your instructor")?

3. Dean Jamison instructed me not to contact Professor Diab further due to alleged "disrespectful remarks"; this instruction was documented, and prevent me from completing Step 1?

4. Has Professor Diab graded any non-seminar work in CL850, and if not, how can ungraded assignments form the basis for a misconduct finding?

5. What specific concerns did Professor Diab document for Modules 1 and 8, and when were they first raised?

**Fairness and Comparators (5 questions)**

1. Student Accessibility Services (SAS) states that dictation software can be used by any student, yet I have been flagged for similar "implausibility" issues and denied my use of Dragon by the Provost's office—see my prior academic appeals (including those involving Professor Brian Victor and Professor Victoria Vidt). How many students with assistive technology accommodations have been flagged for similar issues, and what were the outcomes?

2. Dean Pritikin noted that I completed 19 credits quickly while "working full-time," but this ignores that I have been out of work due to my disability (onset May 24, 2019; on leave without pay or workers' compensation from January 1, 2020, to November 9, 2025) and that I use a structured OCD-driven schedule (seven classes over seven days, one per day, and study for seven hours per day). Professor Victor also questioned my "intellect" in writing. Does the school have data on other students' course loads or disabilities, and was my documented history factored into the review?

3. Why was Module 1 initially closed with respect to Turnitin plagiarism but later included in the third breach?

4. What accommodations were made for my recent surgery (March 6, 2026) and MPRE preparation when scheduling this process?

5. If the Committee finds in my favor, how will the permanent record of this third breach be corrected or removed so that I can complete my degree on August 25, 2026?

Dean Pritikin stated that my essays were completed "in a matter of minutes" with "linear analysis and virtually no grammatical errors," deeming this implausible via speech-to-text (citing

the need for reading and planning time, even at 150 wpm). No proctoring video exists (disabled for my accommodation), so the finding relies solely on this subjective judgment rather than direct evidence. Purdue Global's Academic Integrity policy defines specific violations (plagiarism, fabrication, unauthorized AI) but does not include any "implausibility" standard. This approach ignores my OCD-structured study schedule (seven classes over seven days), full-time academic dedication post-disability (unemployed/on workers' compensation from January 1, 2020, to November 9, 2025), and SAS approval of dictation software for all students. It risks bias against neurodiverse students using assistive technology accommodations.

Subjective, not policy: Purdue Global's Academic Integrity policy lists specific acts (plagiarism, fabrication, unauthorized AI presentation) but not "implausibility" as grounds.

https://www.purdue.edu/vpec/ocr/accessibility-resources/grievances-concerns/

Biased against disabilities: This approach ignores how OCD structure, full-time study (post-disability unemployment), or speech-to-text can produce fast, polished output. AI detectors are unreliable for neurodiverse and ELL students.

https://milawyersweekly.com/news/2026/02/12/university-rules-umich-student-sues-disability-discrimination-ai-claim/

SAS allows dictation for all students, yet prior appeals upheld my accommodation while still flagging my work, which shows a pattern of bias.

Purdue Global Law School's documented "implausibility" accusations by professors and deans have created potential disability discrimination liability under ADA Title II, Section 504, and Title IX.

Sincerely,

Nicole Lawtone-Bowles

NLB Notice of Report CL850

Dear Nicole Lawtone Bowles,

I have carefully reviewed this matter. Much of the concerns were addressed in more detail in the inquiry letter so I won't be repeating everything in detail here. I will be referring this matter to the Provost's office as an academic integrity violation.

It is important to clarify a few foundational matters:
- The appropriateness of speech to text technology for the assessments in this course is uncontested by the academic department.
- The use of spell check and ordinary grammar checkers (i.e. fixing your tense) on open book assessments are not a violation whether they use AI or not.
- The fact that a speech to text software uses AI to train itself to your voice, accent, or manner of speaking is not a violation.
- Using AI to generate expression such as sentences, paragraphs, etc, or substantially rewrite sentences, paragraphs, etc. would be a violation in this course.
- We are not relying on AI detection in determining whether to move forward with this violation.
- It's undisputed that you were given an opportunity to speak to your professor. The first you refused. The second, you agreed, but unfortunately the professor had a conflict. The third time, you refused.

Having reviewed your submitted materials, I found the properties of the documents the most helpful. You felt they were objective and dispositive. I find, particularly looking at Module One and Eight, concerning.

Module 8 assessment shows it was created over a period of 5 minutes for 6 pages and over a 1000 words. Module 1 (which you sent the properties for) was 29 pages long, with 6140 words, and produced over 194 minutes or approximately 3.25 hours. This means that you produced 8.92 pages of law school writing and analysis per hour including editing for Module 1 and about one page per minute for Module 8.

So while the properties seem to support that you put forth some effort to edit the material, the speed and quality of the documents produced in the amount of time is not believable without the aid of unpermitted resources such as generative artificial intelligence. Add to that the context of what you agree is full-time employment (plus other obligations) and the ordinary need for sleep and other tasks, the other 15 credits you were taking, it is not believable. I am also concerned that your correspondence, at times, belays that the quality of your analysis and knowledge of subjects you took at the school are not complete.

You ask us to believe you, and yet what we see demonstrated is not honesty. You stated on your attestation for the full-time program that you were only working 20 or fewer hours per week, but, in fact, you are working full-time and possibly more than that. You submitted the Module 1

assignment for review and feedback, knowing that was not allowed. You did not admit this was the reason for the very high Turnitin report until I prompted you. You filled out the end of module acknowledgements that you had completed the work and hours when you clearly had not (because the seminars had not happened yet, for one).

I know this is not the result you were hoping for. I will communicate my investigation to the Provost's office. As you know, they will reach out and you will have the opportunity to appeal. Note that if you intend to appeal, additional evidence or arguments must be submitted through that process as I have completed my investigation.

Here is a link to our student assistance service: https://campus.purdueglobal.edu/page/student-assistance-program. Their phone number is 855-384-1800.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Nicole Lawtone-Bowles<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Purdue Global Law School,<br>Purdue University Global,<br>Sarah Diab, Shaun Jamison,<br>Brian Victor, & Victoria Vidt<br>　　　　　　　　Defendants | Case No.: 4:26-cv-00028-PPS-AZ<br>Judge: Hon. Philip P. Simon<br>Magistrate Judge: Hon. Abizer Zanzi<br><br>PROPOSED RULE 26(f) REPORT AND<br>EXPEDITED DISCOVERY PLAN |

PROPOSED RULE 26(f) REPORT AND EXPEDITED DISCOVERY PLAN

Plaintiff Nicole Lawtone-Bowles submits this proposed Rule 26(f) Report. To accommodate Plaintiff's work schedule and medical appointments, all discovery deadlines and filings shall fall on Fridays. The sole non-Friday proceeding is the Court-mandated Rule 16 conference on Thursday, July 2, 2026. This schedule is compressed to ensure resolution before Plaintiff's August 25, 2026 degree conferral and February 2027 bar examination eligibility.

## I. PARTIES

Plaintiff: Nicole Lawtone-Bowles, pro se

Defendants: Purdue University Global; Purdue Global Law School; Sarah Diab; Shaun Jamison; Brian Victor; Victoria Vidt

Defense Counsel: John R. Maley, Amanda Jane Gallagher Barnes & Thornburg LLP

## II. EXPEDITED DISCOVERY SCHEDULE (ALL FRIDAYS)

| Event | Deadline |
|---|---|
| Rule 26(f) Report Filed | Friday, June 26, 2026 |
| Rule 16 Conference | Thursday, July 2, 2026 |
| Initial Disclosures (Rule 26(a)(1)) | Friday, July 10, 2026 |

| Written Discovery Served (Interrogatories, RFPs, RFAs) | Friday, July 17, 2026 |
|---|---|
| Expert Disclosures (Rule 26(a)(2)) | Friday, July 24, 2026 |
| Responses to Written Discovery Due | Friday, July 31, 2026 |
| Expert Depositions Completed | Friday, July 31, 2026 |
| Rolling ESI and Document Production Complete | Friday, August 7, 2026 |
| Fact Discovery Cutoff | Friday, August 7, 2026 |
| Joint Status Report | Friday, August 7, 2026 |
| Dispositive Motions Filed | Friday, August 14, 2026 |

## III. DISCOVERY PLAN

A. Initial Disclosures

All parties shall serve Rule 26(a)(1) initial disclosures by Friday, July 10, 2026, including: names

of individuals with discoverable information; copies or descriptions of relevant documents and

ESI; computations of damages; and insurance agreements.

B. Written Discovery

Each party is limited to 25 interrogatories and 25 requests for admission under Rules 33 and 36.

Requests for production are unlimited subject to proportionality.

C. Depositions

Given the expedited schedule and Plaintiff's August 25, 2026 graduation deadline, depositions

are limited to 3 per side, not to exceed 4 hours each, and shall be conducted remotely via Zoom

unless otherwise agreed. Plaintiff reserves the right to depose Brian Victor, Carolyn Nordstrom,

Howard Anderson, James Dodge, Jennifer Fishman, JoAnna Navarro, Martin Pritikin, Sarah Diab, Shaun Jamison, Sheri Dennis, Steve Bracci, Tamara Fudge, and Victoria Vidt. If necessary to resolve this matter before August 25, 2026.

D. Expert Discovery

Expert disclosures, if any, shall be served by Friday, July 24, 2026. Expert depositions, if any, shall be completed by Friday, July 31, 2026. The parties shall confer on whether expert testimony is necessary given the record evidence.

IV. ESI PROTOCOL, BLOCK INFORMATION, AND COURSE ACCESS REQUESTS

A. Preservation

Defendants shall continue to preserve all ESI as ordered by this Court on April 10, 2026, including: Turnitin and AI-detection reports; Instructor View outputs and metadata; Learning Management System logs; all emails and communications between Defendants regarding Plaintiff's academic dishonesty allegations, accommodations, or appeals; Disability Services records; all block information for Plaintiff's Purdue Global Law School coursework; and all recorded seminar sessions for every course in which Plaintiff was enrolled and able to appear.

B. Form of Production

ESI shall be produced in native format with metadata fields (custodian, date created, date modified, author, recipient). Documents shall be OCR-searchable. Defendants shall produce all responsive ESI on a rolling basis beginning Friday, July 17, 2026, with complete production no later than Friday, August 7, 2026.

C. Definition of Block Information

For purposes of this discovery plan, "block information" includes but is not limited to: all course block/term enrollment records; module, unit, and week-by-week block completion data; LMS block access logs and timestamps; student portal block views, downloads, and submissions; block-level grade books and scoring rubrics; any system flags, holds, or blocks placed on Plaintiff's account or course access; block registration records; and all administrative, registrar, or IT records reflecting block-level activity, restrictions, or status changes for Plaintiff's coursework.

D. Search Terms

Defendants shall run the following search terms across all custodians: "Nicole Lawtone-Bowles," "Lawtone," "Dragon," "assistive technology," "speech-to-text," "accommodation," "academic dishonesty," "academic integrity," "breach," "Turnitin," "AI detection," "Instructor View," "metadata," "disability," "OCD," "PTSD," "504," "ADA," "Title VI," "expulsion," "dismissal," "readmission," "hearing," "appeal," "Sarah Diab," "Shaun Jamison," "Victoria Vidt," "Brian Victor," "block," "course block," "module," "unit," "LMS access," "portal access," "account block," "registration block," "enrollment block," "hold," "restriction," "Brightspace," "Canvas," "student portal," "course shell," "block completion," "week 13," "term 2601L," "term 2509L," "term 2505L," "term 2501L," "seminar," "seminar recording," "archive," "class recording," "Zoom recording," "live session," "synchronous session."

E. Specific Production of Block Information and Course Materials

Defendants shall produce by Friday, July 31, 2026, all block information for Plaintiff's Purdue Global Law School coursework, including:

All course block enrollment and registration records for terms 2405L, 2408L, 2501L, 2505L, 2509L, and 2601L;

All LMS block/module access logs showing when Plaintiff accessed, viewed, downloaded, or submitted materials within each course block;

All block-level completion records, progress indicators, and unit/module grades;

All records of blocks, holds, restrictions, or access limitations placed on Plaintiff's student account, course portals, or registration;

All instructor-facing block information, including block-level Instructor View data, annotations, and feedback;

All system-generated records reflecting any automated or manual block placed on Plaintiff's coursework or account at any time.

F. Specific Production of Seminar Recordings

Defendants shall produce by Friday, July 31, 2026, all recorded seminar and synchronous class sessions for every course in which Plaintiff was enrolled during the 2405L, 2408L, 2501L, 2505L, 2509L, and 2601L terms, specifically including:

All video or audio recordings of weekly seminars, live sessions, or synchronous class meetings for CL780 Capstone I, CL760 Community Property, CL651 Constitutional Law II, CL701 Corporations II, CL850 Education Law, CL805 Federal Taxation, and CL735 Professional Responsibility during the Spring 2026 (2601L) term;

All video or audio recordings of weekly seminars or synchronous sessions for every other course Plaintiff completed or was enrolled in, to the extent such recordings are maintained in the ordinary course of business;

All access logs showing when Plaintiff attended, viewed, or appeared for any seminar or live session;

All transcripts, captions, chat logs, or supplementary materials generated in connection with any such seminar recording.

G. Immediate Restoration of Student Portal Access

To permit Plaintiff to identify what coursework remains outstanding from the Spring 2026 term and to prepare her case, Defendants shall immediately restore Plaintiff's access to the Purdue Global student portal and Learning Management System (Brightspace, Canvas, or equivalent), including:

Active login credentials so Plaintiff may access her student account, course shells, and portal directly from her phone or computer;

Access to all Spring 2026 course pages (CL780, CL760, CL651, CL701, CL850, CL805, CL735) to view, download, and print all assignments, discussion prompts, reading materials, syllabi, rubrics, and submission portals;

Access to all unsubmitted or incomplete assignment blocks so Plaintiff may identify exactly what work remains to be completed from Week 13 forward;

Access to all grade books, instructor feedback, and draft comments posted prior to April 5, 2026;

Access to all seminar recordings described in Section IV(F) above, so Plaintiff may review them for purposes of completing coursework and preparing her claims.

This access is necessary for Plaintiff to determine her precise academic status, to assert her claims regarding discriminatory grading and breach findings, and to demonstrate to the Court what coursework would be required to resume from Week 13 as of April 5, 2026.

## H. Privilege

Attorney-client privileged materials and work product shall be withheld subject to a privilege log. The parties shall confer on entry of a Rule 502(d) clawback agreement.

## V. CASE MANAGEMENT REQUESTS

Plaintiff respectfully requests the Court enter the following orders:

Adopt the expedited Friday schedule above to ensure resolution before Plaintiff's August 25, 2026 graduation date.

Order that all depositions shall be conducted remotely via Zoom given Plaintiff's medical condition and residence in New York.

Order that service of all discovery and pleadings may be effected by email.

Order Defendants to confirm in writing by Friday, July 10, 2026 that all ESI, block information, and seminar recordings have been preserved and that no auto-deletion policies have been applied to any custodian.

Order Defendants to produce all Turnitin reports, AI-detection outputs, LMS metadata, block information, seminar recordings, and accommodation records for Plaintiff by Friday, July 31, 2026, on a rolling basis.

Order Defendants to immediately restore Plaintiff's student portal and LMS access so she may view, download, and print all Spring 2026 coursework materials, assignment blocks, and seminar recordings necessary to identify what remains incomplete from Week 13.

Order the parties to file a joint status report by Friday, August 7, 2026, or, if Defendants decline to join, Plaintiff shall file a separate status report.

## VI. CONCLUSION

Plaintiff respectfully requests that this Court adopt this expedited Friday schedule and order production of all block information, seminar recordings, and immediate portal access necessary to establish Plaintiff's academic record, account access history, and the circumstances of her expulsion. Every day of delay jeopardizes Plaintiff's ability to complete her J.D. degree, sit for the February 2027 bar examination, and secure employment. This compressed timeline is necessary to prevent irreparable harm. Plaintiff has provided this proposal to Defendants' counsel for review and joint filing. If Defendants decline to join, Plaintiff reserves the right to file this proposal separately by Friday, June 26, 2026.

Respectfully submitted,
/s/ Nicole Lawtone-Bowles
Nicole Lawtone-Bowles,
Pro Se Plaintiff
56 Center Street
Highland Falls, New York 10928
(347) 538-5386
NicoleLawtone@aol.com