-FILED-

JUL 1 0 2026

At _____ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Nicole Lawtone-Bowles<br><br>Plaintiff,<br><br>v.<br><br>Purdue Global Law School,<br>Purdue University Global,<br>Sarah Diab, Shaun Jamison,<br>Brian Victor, & Victoria Vidt<br><br>Defendants | Case No.: 4:26-cv-00028-PPS-AZ<br>Judge: Hon. Philip P. Simon<br>Magistrate Judge: Hon. Abizer Zanzi<br><br>PLAINTIFF'S REPLY MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |

## PLAINTIFF'S REPLY MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Nicole Lawtone-Bowles, proceeding pro se, respectfully submits this Reply Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. 43) and in Further Support of her Renewed Motion for Preliminary Injunction (Doc. 47). For the reasons set forth herein, Defendants' motion should be denied in its entirety, and Plaintiff's request for immediate injunctive relief should be granted.

## I. INTRODUCTION

As of April 5, 2026, Plaintiff Nicole Lawtone-Bowles has been wrongfully deprived of 13 weeks of her spring semester and the entirety of her three-month summer semester—the final terms before her scheduled graduation. Defendants accepted her tuition, paid for with federal Title IV funds, and purported to provide her with disability accommodations, only to then penalize her for the very output

1

of those accommodations. This is not an isolated incident but part of an institutional pattern. Defendants' predecessor institution, Concord Law School of Kaplan University, was sued in 2011 by a disabled student for the same discriminatory conduct: systematically failing to provide reasonable accommodations. See King v. Concord Law School of Kaplan University (2011) (Santa Monica, California).

Defendants now ask this Court to dismiss Plaintiff's claims, arguing they were engaged in a legitimate academic integrity process. But the record reveals a process infected with bias, procedural shortcuts, and a fundamental misunderstanding—or willful ignorance—of disability law. Defendants did not evaluate Plaintiff's academic work; they punished her disability. Plaintiff, a 54-year-old Black woman on the verge of realizing her dream of becoming a lawyer, has been left with approximately $300,000 in non-dischargeable student loan debt and a shattered academic career. The harm is immediate, catastrophic, and irreparable. This Court should deny Defendants' motion and grant the preliminary injunction necessary to prevent further injustice.

## II. STATEMENT OF FACTS

Plaintiff is a 54-year-old Black woman with documented disabilities, including Obsessive Compulsive Disorder (OCD) and Post-Traumatic Stress Disorder (PTSD). Pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA), Defendants approved her use of assistive

2

technology, specifically Dragon NaturallySpeaking and Dragon Legal Anywhere speech-to-text software, as a reasonable accommodation. (Doc. 31, Ex. P-058).

With these accommodations, Plaintiff excelled. She was a Dean's List student and a Distinguished Scholar, on track to graduate with her Juris Doctor degree in August 25, 2026. (Doc. 31, Ex. P-077). Her academic success was abruptly halted when Defendants subjected her to three baseless academic integrity "breaches." These breaches were not the product of cheating, but the direct product of her disability and her use of approved accommodations, which allowed her to work at a pace Defendants deemed suspicious.

The institutional animus underlying these charges is not subtle. It was articulated with stunning clarity by Jennifer Fishman, a Senior Student Operations Manager at Purdue Global, who told Plaintiff verbatim: "Nuance Dragon Legal Anywhere is a cloud-based speech recognition service designed specifically for attorneys and legal professionals. You're not a professional; you're a law student and should not be using it." (NLB RULE 26(a)(1)INITIAL DISCLOSURES, p. 4). This statement is a direct admission of institutional bias—a belief that a disabled student, particularly a Black disabled woman, is not "professional" enough to use the advanced tools of the legal trade and does not belong in the profession.

This animus permeated the academic integrity process, which was overseen by all white & one non-black professors and administrators, including Victoria

3

Vidt, Brian Victor, Sarah Diab, and Associate Dean Shaun Jamison. In a field with a long and troubled history of excluding Black students, Plaintiff was subjected to a level of scrutiny and suspicion that her academic record cannot explain. Defendants deployed unproven and potentially discriminatory AI detection tools like GPT Zero & Turnitin to flag the output of her approved assistive technology, creating a pretext for discipline.

The consequences have been devastating. Plaintiff has accumulated approximately $300,000 in federal student loan debt for a degree she is now barred from completing. She has been deprived of the opportunity to sit for the February 2027 bar examination and to begin her career. The stress and baseless accusations have severely aggravated her OCD and PTSD symptoms. Defendants, meanwhile, continue to receive federal Title IV funds while systematically discriminating against the very students those funds are intended to help.

Plaintiff, financially ruined by this ordeal, now proceeds pro se against a large, powerful law firm, Barnes & Thornburg LLP, in a fight for her professional life. The pattern is undeniable and tracks precisely with the allegations in King v. Concord Law School of Kaplan University (2011), where Defendants' predecessor was sued for the same failure to accommodate disabled students. This is not a good-faith academic dispute; it is a civil rights violation.

4

### III. ARGUMENT
### A. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF HAS STATED PLAUSIBLE CLAIMS UNDER SECTION 504 OF THE REHABILITATION ACT, THE ADA, AND 42 U.S.C. § 1983

1. Defendants Penalized Plaintiff for Using Disability Accommodations, Constituting Discrimination Under Section 504 and the ADA Plaintiff has stated a clear claim for disability discrimination.

An educational institution that receives federal funds cannot penalize a student for the direct result of an approved disability accommodation. Section 504 of the Rehabilitation Act is unequivocal: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Defendants' entire case rests on the flawed premise that their academic integrity process was a legitimate exercise of academic judgment. However, when that judgment is used to punish the very accommodations the law requires, it becomes an instrument of discrimination. The Supreme Court recently clarified the standard for such claims. In A.J.T. v. Osseo Area Sch., the Court rejected any heightened "bad faith or gross misjudgment" standard for education-related disability claims, holding that they are subject to the same standards as other ADA and Rehabilitation Act contexts. 605 U.S. 335 (2025). A plaintiff need only show that the defendant acted with "deliberate indifference" by disregarding a strong

5

likelihood that its actions would violate federally protected rights. Id.

Here, Defendants' deliberate indifference is manifest. They were on notice of Plaintiff's disabilities and her approved accommodations. Yet, they initiated three separate academic integrity proceedings based on the speed and quality of her work—the precise effects her accommodations were designed to produce. This is a textbook failure to accommodate. See Reed v. Columbia St. Mary's Hosp., 915 F.3d 473, 485 (7th Cir. 2019) (withholding a specific accommodation "may support a viable failure-to-accommodate claim"); Constantine v. George Mason Univ., 411 F.3d 474 (4th Cir. 2005) (a law student denied reasonable accommodations and then penalized for her academic performance states a valid claim under the ADA and Rehabilitation Act).

Defendants' reliance on Royan v. Chicago State Univ., 145 F.4th 681 (7th Cir. 2025), is misplaced. The university in Royan was found to have "repeatedly accommodated" the student and applied its standards "without discrimination." Id. at 683. Here, the opposite is true. Purdue Global's process was discriminatory by its nature: it used unapproved AI detection tools to flag the output of Plaintiff's approved assistive technology, creating a false-positive for misconduct that was, in reality, a marker of her disability.

2. Defendants' Academic Integrity Proceedings Were Arbitrary, Capricious, and Devoid of Due Process.

Even if this Court were to set aside the discriminatory nature of the investigation, the academic integrity proceedings themselves were so procedurally flawed as to be arbitrary and capricious. The New York Supreme Court's decision in Matter of Newby v. Adelphi Univ. is directly analogous and highly persuasive. 2026 NY Slip Op 26021 (Nassau Cty. Sup. Ct. Jan. 28, 2026). In Newby, the court annulled an AI-related academic integrity finding because: (1) the accusing professor undermined his own claims; (2) the student was denied the right to an advisor of his choice; (3) the hearing officer failed to consider the student's exculpatory evidence (his own AI detection scans); and (4) the same administrator who issued the initial finding also decided the appeal, rendering the process a meaningless rubber stamp. Id.

Each of these fatal flaws is present here. First, the accusations are premised on a "disconnect" between Plaintiff's writing and her oral responses—a disconnect fully explained by her disabilities and use of assistive technology. Second, the Academic Appeals Committee (AAC) was rife with bias and failed to consider exculpatory evidence. AAC reviewer James Dodge, despite admitting he had to sue his own child's school district for disability rights, nonetheless voted to deny Plaintiff's appeal. The committee ignored that Plaintiff's speed was the direct

7

result of her approved technology. Third, the appeal process was illusory. Provost Carolyn Nordstrom, who was responsible for reviewing and upholding the first two breach findings, was the same person who made the final decision on the third breach and ultimate dismissal. (Doc.54, pp. 2, 7-9). This structure deliberately thwarts any meaningful review, just as the court found in Newby.

### 3. Defendants' Actions Were Motivated by Discriminatory Animus on the Basis of Race and Disability.

The record contains direct evidence of discriminatory animus. The statement from Senior Student Operations Manager Jennifer Fishman—that Plaintiff "should not be using" professional-grade legal software because she is "a law student" and "not a professional"—is dripping with condescension and bias. As the Supreme Court held in Ash v. Tyson Foods, Inc., 546 U.S. ___ (2006), the meaning of such statements depends on "context, inflection, tone of voice, local custom, and historical usage." When a white Senior Student Operations Manager of Purdue Global Law School tells a 54-year-old Black disabled woman that she is not a "professional" and should not use professional tools, the context of race, disability, and historical exclusion from the legal profession gives that statement a potent discriminatory meaning.

Furthermore, Defendants' claim that Plaintiff's work was suspect is a pretext for discrimination. In Ash, the Supreme Court rejected the notion that a plaintiff's

8

superior qualifications must "jump off the page and slap you in the face" to show pretext. Id. Here, Plaintiff's documented success as a Dean's List student and Distinguished Scholar stands in stark contrast to Defendants' sudden, unsubstantiated suspicions. A law school cannot ignore a student's proven academic ability and instead seize upon a disability-related workflow as a basis for dismissal without making an "individual assessment" of whether the disability and accommodations were the true cause of the perceived anomaly. See Forbes v. St. Thomas Univ., 768 F. Supp. 2d 1222, 1229 (S.D. Fla. 2010). Defendants made no such assessment; they simply presumed guilt.

4. Defendants' Reasons Are Pretextual and Plaintiff Is Otherwise Qualified

A student is "otherwise qualified" if she is "able to meet all of the program's requirements in spite of her disability, with or without a reasonable accommodation." Khan v. Midwestern Univ., 879 F.3d 838, 844 (7th Cir. 2018). Plaintiff was meeting, and exceeding, all program requirements with her approved accommodations. She was a distinguished scholar. She only ceased to be "qualified" in Defendants' eyes when they decided to re-brand her accommodations as academic misconduct.

The alleged "disconnect" between Plaintiff's written submissions and her oral responses is not evidence of cheating; it is evidence of her disability. Her OCD and PTSD are exacerbated by high-stress, spontaneous oral examinations. Her

reliance on prepared, edited work created with assistive technology is a core component of her accommodation. To use this difference as a basis for dismissal is to punish her for the very disability she is trying to overcome. This is the definition of pretext.

## B. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION

To obtain a preliminary injunction, a plaintiff must demonstrate (1) some likelihood of success on the merits, (2) irreparable harm for which there is no adequate remedy at law, and (3) that the balance of equities tips in her favor. Carr v. Walker, No. 19-cv-968, 2020 U.S. Dist. LEXIS 156172, at *4 (S.D. Ill. Aug. 28, 2020) (citing Woods v. Buss, 496 F.3d 620, 622 (7th Cir. 2007)). Plaintiff meets all three requirements.

### 1. Likelihood of Success on the Merits

As detailed in Section III.A, Plaintiff's claims are overwhelmingly likely to succeed. The Supreme Court's holding in A.J.T. confirms that no heightened standard of proof applies. Defendants' conduct—punishing the output of an approved accommodation, using biased AI tools, and conducting a procedurally bankrupt appeals process—demonstrates the "deliberate indifference" necessary to establish liability.

### 2. Irreparable Harm

Without immediate injunctive relief, Plaintiff will suffer profound and

10

irreparable harm for which money damages are wholly inadequate. See Hatton v. Storms, No. 1:21-cv-01584, 2022 U.S. Dist. LEXIS 228913 (S.D. Ind. Dec. 20, 2022) (recognizing irreparable harm in the educational context). The specific, irreparable harms include:

a. The Permanent Loss of Educational Opportunity: The loss of her final 13 weeks of law school and her summer semester can never be recovered. This has prevented her from graduating in August 2026 and destroyed her timeline to sit for the February 2027 bar examination. At age 54, every delay is critical and irretrievable.

b. Catastrophic Financial Ruin: Plaintiff is burdened with approximately $300,000 in federal student loan debt for a degree Defendants have wrongfully denied her. She has also lost eligibility for credits toward Public Service Loan Forgiveness (PSLF). This is not a harm that can be remedied later; it is a present and ongoing financial crisis.

c. Severe Medical and Emotional Distress: The baseless accusations and wrongful dismissal have caused a severe exacerbation of Plaintiff's OCD and PTSD, a harm that transcends monetary valuation.

. Reputational Devastation: The false findings of academic dishonesty have inflicted a permanent stain on her academic and professional reputation, jeopardizing her ability to ever gain admission to the bar or secure employment in

11

the legal field.

This is the definition of irreparable harm. There is no adequate remedy at law that can restore Plaintiff's lost time, her health, her reputation, or her opportunity to become a lawyer.

### 3. Balance of Equities and the Public Interest Favor Plaintiff

The balance of harms tips decisively in Plaintiff's favor. See Chicago Bd. of Realtors v. City of Chicago, 819 F.2d 732 (7th Cir. 1987). The harm to Plaintiff from being denied an injunction is the complete destruction of her academic and professional life. The harm to Defendants from granting an injunction is non-existent. They are merely being asked to allow a disabled, high-achieving student to complete the degree she has already paid for and earned.

The public interest strongly favors granting the injunction. The public has a profound interest in ensuring that educational institutions that receive federal funds comply with federal civil rights laws. See Mark H. v. Hamamoto, 849 F. Supp. 2d 990 (D. Haw. 2012) (finding deliberate indifference where a school failed to properly investigate accommodation needs). It is especially critical to vindicate the rights of Black disabled women, who have been historically and systematically excluded from the legal profession.

Allowing a university to use flawed technology and biased procedures to push out a student like Plaintiff would send a chilling message to all disabled

students and undermine the core purpose of the ADA and the Rehabilitation Act.

See Wiles v. Dep't of Educ., 555 F. Supp. 2d 1143 (D. Haw. 2008) (finding genuine

issues of fact regarding deliberate indifference in excluding a student from public

education).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Nicole Lawtone-Bowles respectfully

requests that this Court enter an Order:

**DENYING** Defendants' Motion to Dismiss in its entirety;

**GRANTING** Plaintiff's Motion for a Preliminary Injunction;

Ordering Defendants to immediately **REINSTATE** Plaintiff as a student in good

standing at Purdue Global Law School;

Ordering Defendants to **EXPUNGE** all findings of academic dishonesty from

Plaintiff's academic record;

Ordering Defendants to permit Plaintiff to complete her remaining degree

requirements and to **CONFER** her Juris Doctor degree upon her satisfaction of

those requirements; and

Granting such other and further relief as the Court deems just and proper.

Due Date: July 8, 2026.

Respectfully submitted,
/s/ Nicole Lawtone-Bowles
Nicole Lawtone-Bowles, Pro Se Plaintiff
56 Center Street
Highland Falls, New York 10928
NicoleLawtone@aol.com (347) 538-5386

13

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Nicole Lawtone-Bowles<br><br>Plaintiff,<br><br>v.<br><br>Purdue Global Law School,<br>Purdue University Global,<br>Sarah Diab, Shaun Jamison,<br>Brian Victor, & Victoria Vidt<br><br>Defendants | Case No.: 4:26-cv-00028-PPS-AZ<br>Judge: Hon. Philip P. Simon<br>Magistrate Judge: Hon. Abizer Zanzi<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served on Defendants' counsel of record via CM/ECF on the date received by the court:

John R. Maley, Esq. (jmaley@btlaw.com)
Amanda Jane Gallagher, Esq. (amanda.gallagher@btlaw.com)
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204

Respectfully submitted,
/s/ Nicole Lawtone-Bowles
Nicole Lawtone-Bowles, Pro Se Plaintiff
56 Center Street
Highland Falls, New York 10928
NicoleLawtone@aol.com (347) 538-5386

14